# UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

_____

No. 24-1815

## HOSPITAL AMERIMED CANCUN S A DE C V,

Plaintiff – Appellant

v.

## MARTIN'S POINT HEALTH CARE, INC.

Defendant – Appellee

Consolidated With:

No. 24-1816

## HOSPITAL QUIRURGICA DEL SUR,

Plaintiff-Appellant

v.

## MARTIN'S POINT HEALTH CARE, INC.

Defendant-Appellee

*On Appeal from the United States District Court for the District of Maine*

_____

## BRIEF OF APPELLANTS HOSPITAL AMERIMED CANCUN S A DE C V AND HOSPITAL QUIRURGICA DEL SUR
_____

Mark A. Darling (#4802)
Litchfield Cavo, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
(781) 309-1514
*Attorney for Plaintiff-Appellant*
*Hospital Cancun S A DE C V and*
*Hospital Quirurgica Del Sur*

## CORPORATE DISCLOSURE STATEMENT

Appellants have no parent corporations nor are there any publically held corporations that own 10% or more of Appellants' stock.

Corporate Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statement of Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Statement of Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    a.   Hospital Amerimed Cancun S A DV C E v. Martin's Point Health Care, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    b.   Hospital Quirurgica Del Sur v. Martin's Point Health Care, Inc. . . . . . . . . 9

    c.   Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    a.   Appellants, as Foreign Medical Providers, are Not Bound by the Standards for Domestic Medicare Providers . . . . . . . . . . . . . . . . . . . . . . 14

        i.   Appellants are Foreign Medical Providers . . . . . . . . . . . .  14

        ii.   Appellants' Claims Against Appellee are Based in Tort and Not Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        iii.   Appellants are not Challenging an Organizational Determination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...  19

        iv.   Appellants Have No Administrative Remedies to Exhaust. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        v.   Kim Baril and James Taliaferro are Not Interested Parties in this Dispute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    b.   Global Rescue Jets, LLC is Not Relevant to Appellants' Claims as the Provider in that Matter was a Domestic Medical Provider, Subject to the Rules and Regulations of Medicare . . . . . . . . . . . . . . . . 25

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Addendum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Baptist Hospital of Miami, Inc. et. al., v. Medica Healthcare Plans, Inc.*, Case No. 18-cv-25460-UU, 2019 WL 115386 (S.D. Fl. Mar. 21, 2019) ……………… 16

*Caris MPI, Inc. v. United HealthCare, Inc.*, 108 F.4th 340 (5th Cir. 2024)……………………………………………………....16,17,18,19

*Global Rescue Jets, LLC v. Kaiser Found. Heath Plan, Inc.*, 30 F.4th 905 (9th Cir. 2022) ……………………………………………………..12, 24, 25

*Irizarry v. U.S.*, 427 F.3d 76 (1st Cir. 2005) …………………………………… 11

*Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*, 449 F.3d 85 (1st Cir. 2006) ... 11

*Nunez Colon v. Toledo-Davila*, 648 F.3d 15 (1st Cir. 2011) ………………….. 11

*RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555 (5th Cir. 2004)……………………………………………………… 16, 19, 21

*Sarasota County Public Hospital Board v. Blue Cross and Blue Shield of Florida, Inc.*, 511 F. Supp.3d 1240 (M.D. Fl. 2004) ………………………………… 21

*Stinson v. SimplexGrinell LP*, No. 05-1410, 152 Fed. Appx. 8 (1st Cir. Oct. 21, 2005) ………………………………………………………………… 11

*Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F3d 584 (11th Cir. 2017) ………………………………………………. 21

<u>**Statutes**</u>

42 C.F.R. § 422.100(b)(1) ………………………………………………… 14

42 C.F.R. § 422.2 ………………………………………………………… 14, 20

42 C.F.R. § 422. 214 (a)(1) ………………………………………………….. 14

42 U.S.C. § 1395w-21- 26 ………………………………………………… 24

<u>**Rules**</u>

Fed. R. Civ. P. 12(b)(6). ………………………………………………… 11

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. Section §

1291 because it is an appeal of an order dismissing Appellant's Complaint.

Jurisdiction below was pursuant to 28 U.S.C. § 1332(a) (2). The Appellants filed a

timely notice of appeal on September 30, 2024.

## I.   <u>STATEMENT OF ISSUES</u>

Whether the District Court committed error in allowing motions to dismiss on jurisdictional grounds, ruling that foreign medical providers' negligent misrepresentation and promissory estoppel state law claims against a private health insurer were subject to the same exhaustion requirements of the administrative review process for domestic providers under Part C of the Medicare Act.

## II.   <u>STATEMENT OF CASE</u>

This appeal involves two separately filed cases, with similar factual circumstances that have been consolidated for appeal. *See* J.A., 1, 14. Appellants are Mexican Corporations located in Cancun, Mexico that provide hospital and health services to patients, and in this case, United States citizens who sought treatment at these Mexican Hospitals. *See* J.A., 2, p. 6; J.A., 15, p. 146. Appellee, Martin's Point Health Care, Inc. ("Martin's Point"), is a private, Maine corporation with a principal place of business in Portland, Maine. *See Id*. Appellants seek reimbursement for unpaid medical expenses, totaling $2,132,982.98 and $487,464, respectively. *See* J. A. 2, p. 9; J.A. 16, p. 149.

### a.   HOSPITAL AMERIMED CANCUN S A DV C E V. MARTIN'S POINT HEALTH CARE, INC.

From approximately October 10, 2022 to November 22, 2022, Kim Paul Baril, a United States Citizen, received medical care at Hospital Amerimed Cancun S.A. De C.V., in Cancun, Mexico. *See* J.A. 2, p. 7. During this time, Baril executed a

written agreement regarding his applicable health insurance. *See* J.A. 2, pp. 7-8.

Passage Health, the company in charge of billing, pre-authorization and collection

for the Hospital, regularly communicated with Martin's Point whom Mr. Baril

identified as his private medical insurer regarding coverage for Mr. Baril's medical

treatment. *See* J.A. 2, p. 8. Martin's Point provided assurances that Mr. Baril's

treatment would be covered by his insurance, and indeed, the Hospitals allege that

Martin's Point misled them during numerous, recorded voice and other

communications. *See* J.A. 6, pp. 46-49. In fact, one of Mr. Baril's providers spoke

with a Martin's Point representative, on November 8, 2022, and confirmed that Mr.

Baril's insurance provided coverage for in-patient international hospital

admissions. *See Id*. Further, a Martin's Point representative also confirmed that an

out-of-network hospital stay would incur a co-pay of $380 per day, for the first five

days of treatment. See *Id*. Appellant was never informed of any limit for treatment

at the time the services were being rendered and the pre-authorizations were

obtained.

   After Mr. Baril's treatment concluded, Martin's Point refused to reimburse

Hospital for Mr. Baril's pre-authorized treatment, citing a claimed limit of

$25,000– a limit that they did not disclose at the time services were being

rendered. *See* J.A. 2, p. 8; J.A. 6, p. 47. Hospital performed medical services to Mr.

Baril totaling $2,132,982.98 based on representations that the treatment was

covered by Martin's Point. Defendant only paid $24,500.00 towards Mr. Baril's medical bills, leaving $2,108.482.98 in unpaid medical bills. *See* J.A. 2, p. 8-9. These well plead facts must be accepted as true for the purpose of assessing whether or not the Court has jurisdiction.

### b. HOSPITAL QUIRURGICA DEL SUR V. MARTIN'S POINT HEALTH CARE, INC.

Mr. James Taliaferro received medical care at Hospital Quirurgica Del Sur in Cancun, Mexico from January 12, 2023 – February 16, 2023. *See* J.A. 16, p. 147. Passage Health, the company in charge of billing, pre-authorization and collection for the Hospital, as in Mr. Baril's case, regularly communicated with Martin's Point regarding coverage for Mr. Taliaferro's medical treatment. *See* J.A. 16, pp. 147-48. Martin's Point provided assurances that Mr. Taliaferro's treatment would be covered under his insurance. *See* J.A. 16, p. 148. In fact, one of Mr. Taliaferro's providers confirmed with a Martin's Point representative, via a phone call on January 18, 2023, that Mr. Taliaferro's insurance provided coverage for international emergency services. *See* J.A. 20, p. 185. Additionally, the Martin's Point representative confirmed international ambulance services were also covered under Mr. Taliaferro's benefits, with a completed authorization. See *Id*.

On January 30, 2023, Martin's Point approved an inpatient admission from January 18, 2023 – January 30, 2023. *See* J.A. 20, p. 185. After Mr. Taliaferro's

treatment concluded, Martin's Point refused to reimburse Hospital for Mr. Taliaferro's treatment, citing a claimed limit of $25,000. *See* J.A. 16, p. 148. These well plead facts must be accepted as true for the purpose of assessing whether or not the Court has jurisdiction.

### c. PROCEDURAL HISTORY

Appellants filed the instant actions on June 26, 2023, alleging claims of promissory estoppel and negligent misrepresentation against Martin's Point Health Care, Inc. *See* J.A. 2, 16. On November 13, 2023, Martin's Point filed Motions to Dismiss, alleging the Court lacked subject matter jurisdiction due to Appellants' alleged failure to abide by the Medicare exhaustion requirements. *See* J.A. 3, 17. Appellants filed a Response in Opposition on January 3, 2024, arguing the statutory requirements of the Medicare program did not apply to Appellants as foreign medical providers. *See* J.A. 5, 19. On April 23, 2024, the District of Maine granted Defendant's Motions to Dismiss, determining that Appellants' attempts to collect the outstanding balances from Martin's Point were "subject to the mandatory administrative review" and thus the lower court concluded it did not have jurisdiction to adjudicate the dispute between the Mexican Hospitals and Martin's Point. *See* J.A. 8, p. 107; J.A. 22, p. 226.

On May 21, 2024, Appellants filed Motions to Alter or Amend the Judgment of Dismissal pursuant to Federal Rule of Civil Procedure 59(e), arguing the District Court erred in applying CMS regulations to foreign medical providers, and providing further factual support for the fact that the foreign hospitals cannot seek any payments from Medicare and thus have no standing to participate in any Medicare appeal process. *See* J.A. 10-11, 24-25. On June 11, 2024, Appellee filed a response in Opposition, reiterating its argument that Appellants are required to exhaust all administrative remedies prior to bringing these claims. *See* J.A. 12, 26. On August 12, 2024, the Court denied Appellants' Motions and Appellants filed Notices of Appeal on September 6, 2024 to this Honorable Court. *See* J.A. 13-14, 27-28.

### III.    SUMMARY OF ARGUMENT

The District Court incorrectly ruled that foreign medical providers are required to exhaust Medicare administrative remedies before the district court has jurisdiction to adjudicate disputes. Appellants are foreign medical providers, not subject to Medicare's coverage in the United States. The Centers for Medicare and Medicaid Services ("CMS") does not review or handle disputes between a foreign provider and a Medicare Advantage Organization ("MAO"). This is another well plead fact that must be accepted as true for the purpose of assessing the viability of the plaintiffs' complaints.

The District Court, while not assessing the viability of the particular state law tort and equitable remedy claims being advanced, incorrectly ruled instead that Appellants, as foreign providers, were unable to seek such remedies at all since they had not engaged in any administrative review process through CMS. However, CMS does not even entertain billing disputes in the context of foreign provides, as doing so would place an unnecessary, and burdensome, strain on Medicare and exceed the scope of CMS' administrative authority. In essence, the foreign Hospitals are between a proverbial rock and hard place – they cannot seek Medicare Administrative Review, and yet the district court compels them to do so for the Court to have subject matter jurisdiction. The district judge erred in this determination, and the district court indeed does have subject matter jurisdiction to adjudicate state law claims between foreign nationals and a United States, corporate citizen.

## IV.  STANDARD OF REVIEW

This Court reviews the grant of a motion to dismiss *de novo*, specifically accepting "well-pleaded facts as true and draw[ing] all inferences in favor" of the appellant. Fed. R. Civ. P. 12(b)(6); *see also Irizarry v. U.S.*, 427 F.3d 76,77 (1st Cir. 2005) (citing *In Re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)); *Nunez Colon v. Toledo-Davila*, 648 F.3d 15 (1st Cir. 2011); *Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*, 449 F.3d 85 (1st Cir. 2006); *Stinson v.*

*SimplexGrinell LP*, No. 05-1410, 152 Fed. Appx. 8, 11 (1st Cir. Oct. 21, 2005) (requiring "determin[ation as to] whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory.").

## V.   <u>ARGUMENT</u>

In denying Appellants' Motions, the District Court expressed doubts that disputes related to Medicare benefits fall "outside the Medicare program." *See* J.A. 8, pp. 102-03; J.A. 22, pp. 221-22.  As a result, the court incorrectly held that Appellants in effect have no legal remedy until they have exhausted the mandatory administrative review process for which they are ineligible to participate. *See* J.A. 8, p. 107; J.A. 22, p. 227. The First Circuit has not yet weighed in on this issue, as demonstrated by the District Court's reliance on the interpretations from other Circuit Courts of Appeal. *See* J.A. 8, pp. 105-06; J.A. 22, pp. 224-25. The District Court relied principally on *Global Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc*, 30 F.4th 905 (9th Cir. 2022) as determinative for the issue of whether Appellants in this matter are required to exhaust Medicare's administrative remedies prior to bringing these Complaints. As discussed in further detail below, the facts in *Global Rescue Jets* are readily distinguishable from the present dispute, and therefore, inapplicable to the legal analysis involved here.

### a. APPELLANTS, AS FOREIGN MEDICAL PROVIDERS, ARE NOT BOUND BY THE STANDARDS FOR DOMESTIC MEDICARE PROVIDERS

The District Court erred when categorizing Appellants as non-contracted providers under Medicare since Appellants are foreign providers exempt from Medicare altogether. The threshold question for this Court's review is whether or not the district court had jurisdiction to hear state law claims of promissory estoppel and negligent misrepresentation under Maine law against the Appellee when there was no administrative review by CMS. As is further outlined below, the district court does have jurisdiction in diversity to hear this tort and equitable remedy claim because Appellants, as out-of-country medical providers, are not subject to, nor can they participate in, the administrative revew the court deemed necessary as a prerequisite to its jurisdiction. Moreover, the foreign Hoispitals provided extensive medical care to Kim Baril and James Taliaferro based on the representations and prior authorization provided by the Appellee. Appellee failed to reimburse Appellants for this treatment, apart from $25,000 for each individual, citing a previously, as alleged, concealed cap of coverage for these out-of-country services.

### i.    APPELLANTS ARE FOREIGN MEDICAL PROVIDERS

Appellants are both foreign Hospitals, who do not operate within the United States. CMS affords providers the ability to either contract with Medicare, through

Medicare Advantage Organizations, or prescribes rules which apply to providers who opt out of Medicare, i.e. non-contracting providers. Specifically, for non-contracting providers, Medicare provides:

> Any provider (other than a provider of services as defined in section 1861(u) of the Act) that does not have in effect a contract establishing payment amounts for services furnished to a beneficiary enrolled in an MA coordinated care plan, an MSA plan, or an MA private fee-for-service plan must accept, as payment in full, the amounts that the provider could collect if the beneficiary were enrolled in original Medicare.

42. C.F.R. § 422. 214(a)(1) Additionally, a provider is defined as:

(1) Any individual who is engaged in the delivery of health care services in a **State** and is licensed or certified by the State to engage in that activity in the State; and

(2) Any entity that is engaged in the delivery of health care services in a **State** and is licensed or certified to deliver those services if such licensing or certification is required by State law or regulation.

42. C.F.R. § 422.2 (emphasis added).

Foreign medical providers are not defined as "non-contracted providers" under the statute as these providers do not "engage[] in the delivery of health care services in a State." This categorization is distinct from non-contracted providers within the United States, i.e. providers who have opted out of Medicare altogether. 42 C.F.R. § 422.100(b)(1) (explaining payment must be made timely for "services obtained from a provider or supplier that does not contract with the [Medicare] service"). Medicare's regulations, *ipso facto*, do not extend beyond the United States, particularly in situations where foreign hospitals are not provided with the

opportunity to opt in, or out, of coverage. Appellants, as a foreign hospitals, are not able to enter into a contract with a Medicare Advantage Organization to provide Medicare benefits to enrollees. Therefore, the lower court describing Appellants as "non-contracting providers," or providers who simply chose not to contract with Medicare, is a core misapprehension of the applicable, federal law.

As foreign Hospitals, Appellants cannot participate in Medicare benefits, or enter into MAO contracts with insurance companies, like Appellee.

> Based on my personal knowledge, CMS declines to accept, handle or adjudicate any payment or billing disputes between foreign medical providers and any MAO since foreign medical providers are outside the scope of the CMS administrative review process. Foreign providers are neither contracting not non-contracting parties. They have no status with CMS and that is why CMS rejects such claims out of hand.

*See* J.A. 11, p. 118, ¶8; J.A. 25, p. 236, ¶8.  This is another, well plead fact that must be accepted as true for evaluating the viability of the district judge's erroneous jurisdiction analysis. As such, the Court's holding that foreign hospitals must engage in an administrative review process for which they simply are not eligible, was mistaken.

### ii.   APPELLANTS' CLAIMS AGAINST APPELLEE ARE BASED IN TORT AND NOT CONTRACT

Appellants asserted claims of promissory estoppel and negligent misrepresentation against Appellees based on state tort law.  *See* J.A. 2, 16. The

present matter is not a situation where the enrollees are asking for administrative review based on a dispute over <u>coverage</u> or non-coverage under Medicare, as Medicare does not pay any amounts towards out-of-country health benefits. *RenCare, Ltd. v. Humana Health Plan of Texas, Inc,* 395 F.3d 555 (5th Cir. 2004); *Baptist Hospital of Miami, Inc. et. al., v. Medica Healthcare Plans, Inc.*, Case No. 18-cv-25460-UU, 2019 WL 115386, at *2 (S.D. Fl. Mar. 21, 2019) ("In payment dispute cases, the parties agree that there is Medicare coverage, but disagree as to the reimbursement rate.").

In *Rencare*, the initial dispute between the provider and insurer related to the benefits provided pursuant to an executed contract. *Id*.; *see also Caris MPI, Inc. v. United HealthCare, Inc.*, 108 F.4th 340 (5th Cir. 2024). In *Rencare*, the enrollee and provider executed a written contract, and the dispute between the parties began as a dispute over reimbursement, pursuant to the terms of this contract. *RenCare, Ltd.*, 395 F.3d 555 (5th Cir. 2004). As this dispute progressed, the provider then sued the medical insurer for state law tort claims and breach of contract. *Id*. The court found the dispute did not involve Medicare benefits, but instead payment pursuant to a written contract. *Caris MPI, Inc.*, 108 F.4th at 349 (citing *Rencare*, 395 F.3d at 557-59). The *Rencare* court determined that "the administrative review process . . . does not extend to claims in which an enrollee has absolutely no interest." *Id*. (citing *Rencare*, 395 F.3d at 559-560). The Court further pointed out

that "[t]he Medicare administrative review process focuses on enrollees, not health care providers, and is designed to protect enrollees' rights to Medicare benefits." *Id.* As in *Caris*, the dispute here is based on tortious conduct alleged against Martin's Point, not its enrollees. The second claim for an equitable remedy is also exclusive to the conduct the Hospitals claim Martin's Point engaged in, not anything the enrollees did or failed to do. Thus, the enrollees are foreigners, if you will, to this dispute.

While *Caris* involved the recoupment from an overpayment of benefits from an out-of-network provider, which is not the precise issue at hand, the case still illustrates the reasons why the foreign Hospitals are entitled to proceed against the Appellee in this case. This matter is a dispute in tort between Appellants and Appellee, as an MAO. This dispute does not involve Kim Baril or James Taliaferro, because as Medicare enrollees, they are not entitled to any out-of-country health benefits from Medicare. They were not involved in any of the misrepresentations that the Hospitals allege Martins Point employees engaged in during the preauthorization process and the multiple communications that transpired over the course of the enrollees' treatment in Mexico. At no time during the treatment and continued authorization process were Appellants informed of the alleged $25,000 reimbursement cap for this treatment. Had they been so informed, the Appellants may have chosen to stabilize and discharge the patients, or arrange

care with other providers, either in Mexico or in the United States. Instead, Appellants repeatedly communicated with Martins Point and obtained continuing authorizations for treatment, outlining the services necessary for the treatment, and received approval. Similarly, Appellee represented to Appellants that the enrollees' benefits for out of country emergency services were unlimited, and the Hospitals should have the opportunity to prove the allegations from recorded calls between the parties in the course of discovery and litigation, not to have the proverbial door closed at the commencement of the litigation. In reliance on these misrepresentations, Appellants rendered extensive medical treatment to Kim Baril and James Taliaferro.

### iii. APPELLANTS ARE NOT CHALLENGING AN ORGANIZATIONAL DETERMINATION

These matters do not involve an organizational determination subject to the exhaustion of administrative remedies. The main purpose of Medicare Part C administrative appeals is to protect the rights of enrollees by ensuring they have a fair process to contest adverse decisions made by the MAOs. *See Caris MPI, Inc. v. United HealthCare, Inc.*, 108 F.4th 340 (5th Cir. 2024). However, in situations where enrollees' interests are not involved, the exhaustion of administrative appeals is not required, and would be a process without a meaning. *See Id.*  For example, if an MAO makes a payment to a non-contracting provider; it can, thereafter, do a post-payment audit to determine if an overpayment occurred. In

these situations, the enrollee is not involved as the dispute would be an overpayment claim between the MAO and non-contracted provider. In the present matter, although a claim for underpayment, Appellants are not challenging an "organization determination" nor are the enrollees' interests involved in the matter.[1] *Caris MPI, Inc. v. United HealthCare, Inc.*, 108 F.4th 340, 350 (5th Cir. 2024). No Medicare enrollees have been denied a covered service or been required to pay for the service; and both enrollees have already received the services. Further, no Medicare enrollees have sought an "organizational determination or appeal." *Id*. (citing *Rencare,* 395 F.3d at 559-60)*.* Therefore, the Medicare enrollees in the present matters "bear no financial risk inasmuch as they have already received the services for which [Appellants] seek reimbursement." *Caris MPI, Inc.*, 108 F.4th at 349 (citing *Rencare*, 395 F.3d at 559-60). There is no interested Medicare enrollee in the present dispute. *Id*. Instead, "[t]he only interest at issue is [Appellants'] interest in receiving payments" pursuant to what the Hospitals allege are misrepresentations Martin Point made that induced the Hospitals to provide the rendered treatment. *Id*.

---

[1] While not apparent from the Record in this case, if the case is sent back to the district court for adjudication, the Hospitals would likely amend their complaints to show that the enrollees are deceased. However, the key point is that the enrollees are not involved in any way, shape or form with the allegations of tortious conduct against Martins Point, and therefore, the enrollees could not be sued for such tortious conduct in which they never engaged.

### iv.    APPELLANTS HAVE NO ADMINISTRATIVE REMEDIES TO EXHAUST

Appellants are unable to exhaust Medicare's administrative appeal remedies as the Center for Medicare and Medicaid Services ("CMS") does not handle payment or billing disputes between foreign medical providers and Medicare Advantage Organizations ("MAO"). An MAO is defined as a "public or private entity organized and licenses by a State as a risk-bearing entity (with the exception of provider-sponsored organizations receiving waivers) that is certified by CMS as meeting the MA contract requirements. 42 C.F.R. § 422.2. Appellants are unable to "exhaust administrative remedies" as CMS is unable to review the care provided by Appellants, as a foreign medical provider. In fact, CMS rejects appeals submitted by foreign medical providers. *See* J.A. 11, pp. 117-28; J.A. 25, pp. 235-36.

The District Court misapplied the law as foreign medical providers do not have standing with CMS to receive adjudication of disputes with any MAO under Medicare. As a result, CMS treats those matters as disputes among private parties. In fact, CMS has regularly informed Appellants that it does not get involved in disputes between a foreign medical provider and an MAO, as such disputes cannot be adjudicated by CMS. *See* J.A. 11, pp. 117-27; J.A. 19, pp. 235-45. Put simply, CMS does not oversee or deal with appeals from foreign medical providers, as,

according to CMS, these appeals are outside CMS's scope of review for contracting or non-contracting parties.

Additionally, previous courts have held that contracted Medicare providers may, in certain circumstances, be exempt from Medicare's exhaustion requirement. *See RenCare, Ltd. V. Humana Health Plan of Texas, Inc.*, 395 F.3d 555 (5th Cir. 2004) (illustrating where a Court allowed a contracted provider to bring tort claims against the insurer without exhausting the administrative review process); *see also Sarasota County Public Hospital Board v. Blue Cross and Blue Shield of Florida, Inc.*, 511 F. Supp.3d 1240, 1252 (M.D. Fl. 2004)(explaining "extending an administrative exhaustion requirement to payment disputes purely between a [MAO] and a provider would improperly tax, and potentially overwhelm, CMS's limited resources.")

The District Court, in denying Appellants Motions to Alter Pursuant to Rule 59(e), sought to distinguish *RenCare* from the present matters as Appellants do not have a contract with an MAO. *See* J.A. 13, p. 136; J.A. 27, p. 254. In doing so, the lower court cited to *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, explaining "'Medicare regulations treat noncontract providers differently than contract providers' by permitting contract providers and Medicare Advantage Organizations ("MAOs") to define the terms of their agreements." *See* J.A. 13, p. 136; J.A. 27, p. 254; *see also* 875 F.3d 584, 591 (11th Cir. 2017). Here,

Appellants, as foreign providers, were never afforded the opportunity to contract with MAOs. And, by this same token, they cannot be labeled as "non-contracting" providers either because they are legally precluded from opting in, or out, of Medicare.

### v. KIM BARIL AND JAMES TALIAFERRO ARE NOT INTERESTED PARTIES IN THIS DISPUTE

There is a complete absence of enrollee interest in this dispute. As an MAO, Appellee is free to offer services and benefits to its enrollees beyond what Medicare may pay to the enrollees. As Medicare does not apply to treatment in foreign countries, MAO plans offer enrollees *added coverage benefits*, such as coverage for out-of-country treatment. The foreign Hospitals understand, obviously, that Medicare does not pay for treatment in their out of country facilities. That is why the Hospitals sought and obtained authorizations from the private medical insurer, Martins Point who was free to provide whatever additional coverage that Medicare did not provide, presumably as a means of enticing Medicare beneficiaries into its lucrative MAO programs. While these above and beyond Medicare benefits were apparently subject to a cap per the MAO's contract with the enrollee, the fact is that this cap was never communicated to the foreign Hospitals when they sought and obtained prior authorization approvals for treatment. In each of the present cases, Appellants allege a plausible set of facts that they communicated and inquired if they would be paid for treating each

patient. *See* J.A. 6, 20. And, in each scenario, Appellee represented to the out-of-country providers that they were authorized to perform treatment for Kim Baril and James Taliaferro, but, in each scenario, did not advise Appellants of the alleged $25,000 cap on reimbursement for this treatment until long after the treatment had been rendered.

Appellants' dispute is with the tortious actions of the insurance company and not the enrollees. Appellants are not suing for contracted medical services. Appellants, as out of country hospitals, have no ability to make a Medicare appeal. *See* J.A. 10, 24. Further, appellants did not take any assignments of benefits from the Kim Baril and James Taliaferro. Appellants brought suit solely based on the misrepresentations and tortious actions of Appellee in failing to advise Appellants of the purported $25,000 limit of coverage for out-of-country services, and instead authorizing the treatment to take place.

As a secondary matter, to the extent that Appellee attempts to argue these matters rest on the sufficiency of the preauthorization provided to each of the Appellants, those claims are the stuff of discovery and proof that are not amenable to resolution at the initial pleadings stage of this case, and in any event, do not relate to the sole reason the district court dismissed these cases – for purported lack of jurisdiction without demonstration of exhaustion of administrative remedies.

**b. *GLOBAL RESCUE JETS, LLC* IS NOT RELEVANT TO APPELLANTS' CLAIMS AS THE PROVIDER IN THAT MATTER WAS A DOMESTIC MEDICAL PROVIDER, SUBJECT TO THE RULES AND REGULATIONS OF MEDICARE**

The District Court erred in relying on the Court's decision in *Global Rescue Jets, LLC v. Kaiser Found. Health Plan* when granting Appellee's Motions to Dismiss. See J.A. 8, pp. 105-06; J.A. 22, pp. 224-25; *see also* 30 F.4th 905 (9th Cir. 2022). In *Global Rescue*, a domestic ambulance service, Global Rescue Jets d/b/a Jet Rescue, provided air ambulance services to Medicare patients in Mexico and flew them back to San Diego for treatment. *Id*. at 908-09. Global Rescue submitted the bill for its services to Kaiser Foundation Health Plan, but only a portion was paid citing the lower Medicare-approved rates. *Id*. at 909. Jet Rescue argued that its services were not covered by the terms of Medicare, and thus, it should be entitled to full reimbursement. *Id*. Jet Rescue then brought an independent action against Kaiser to recover the funds, however the Court granted Kaiser's Motion to Dismiss as a result of Rescue Jet's failure to exhaust Medicare's administrative remedies. *Id.* On appeal, the Ninth Circuit upheld the District Court's decision to dismiss the matter.

In fact, the Ninth Circuit agreed that Medicare Advantage Plans may apply to enrollee's ambulance or emergency medical services, "even if the provider does not have a contract" with Medicare. *Global Rescue*, F.4th at 910 (citing 42 U.S.C. §1395w-22(d)(1)(E)). In determining that administrative remedies must be

exhausted under Part C prior to filing suit, the Court posited that this failure to exhaust may be excused in certain circumstances. *Id*. at 915. The Court went on to embrace the holding in *Johnson v. Shalala*, allowing the exhaustion requirement to be excused where:

> (1) the plaintiff's claim is wholly collateral to a claim for Medicare benefits; (2) the plaintiff has made a colorable showing of irreparable harm; and (3) exhaustion would be futile.

F.3d 918, 921 (9th Cir. 1993). In determining that *Global Rescue*'s claims were "wholly collateral" to claims for Medicare benefits, the Court determined that "[e]xcusing exhaustion of administrative remedies would interfere with the agency's opportunity to review those claims." *Id*. at 919. Even further, in *Global Rescue*, after Kaiser rejected the provider's claim for additional sums of money for the international air ambulance services, Global sought reconsideration of Kaiser's position. *Id*. at 910.

Here, Appellants did not seek review since CMS simply does not handle payment disputes with foreign medical providers. Appellants in this matter are not domestic medical providers (as was *Global Rescue Jets*) who provided international emergency services to Kim Baril and James Taliaferro, but instead are foreign providers who do not do business in the United States. In *Global Rescue*, the medical provider was a domestic medical provider, providing international emergency services, while arguing that these services should not have

been covered under the Patients' Medicare plans. *Id*. at 910. Therefore, the District Court erred in relying on this case as convincing authority to hold it had no jurisdiction to review the dispute absent a showing of administrative exhaustion of remedies – a process for which the foreign Hospitals are not eligible.

## VI.  CONCLUSION

For the foregoing reasons, the judgment of dismissal based on lack of jurisdiction should be vacated and the case remanded for further proceedings.

Respectfully submitted,

*Attorney for Plaintiff-Appellant*
*Hospital Cancun S A DE C V and*
*Hospital Quirurgica Del Sur*
By its attorney,

/s/ Mark A. Darling
Mark A. Darling, Maine Bar # 4802
Litchfield Cavo, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
Darling@litchfieldcavo.com

**CERTIFICATE OF SERVICE**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, I hereby certify that on December 27, 2024. I served a true and correct copy of the foregoing document via the Court's Electronic Filing System, which will electronically send notice to all counsel of record.


/s/ Mark A. Darling
Mark A. Darling, Maine Bar # 4802
Litchfield Cavo, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
Darling@litchfieldcavo.com


Dated: December 27, 2024

## CERTIFICATE OF COMPLIANCE WITH F.R. A. P. 32(A)

I, Mark A. Darling, hereby certify that:

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as modified by the Court's Order and Revised Information Sheet authorizing 14,000 words dated May 26, 2017 because this brief contains 4677 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14-point Times New Roman type style.

/s/ Mark A. Darling
Mark A. Darling, Maine Bar # 4802
Litchfield Cavo, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
Darling@litchfieldcavo.com

Dated: December 27, 2024

# A<span style="font-variant:small-caps">DDENDUM</span>

Order on Defendant's Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Judgment of Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Order on Motion to Alter Judgment Pursuant to Rule 59(e) . . . . . . . . . . . . . . . . 13

Order on Defendant's Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Judgment of Dismissal . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . 28

Order on Motion to Alter Judgment Pursuant to Rule 59(e) . . . . . . . . . . . . . . . . 29

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MARTIN'S POINT HEALTH CARE, INC., | ) ) |
| | ) |
| Defendant. | ) |

No. 2:23-CV-00258-LEW

## <u>ORDER ON MOTION TO DISMISS</u>

In this action, Plaintiff Hospital Amerimed Cancun seeks to recover from Defendant Martin's Point, in its capacity as a healthcare insurer, the value of healthcare services it provided to an individual who participates in Martin's Point's Medicare Part C or "Medicare Advantage" program. The matter is before the Court on Martin's Point's Motion to Dismiss (ECF No. 19). For reasons that follow, the Motion is GRANTED.

### Background

Hospital Amerimed Cancun S A DE C V is a Mexican corporation that provides hospital and healthcare services to patients in Cancun, Mexico. From approximately October 10, 2022, to November 22, 2022, Kim Paul Baril was voluntarily admitted to Hospital Amerimed Cancun. Upon his admission and during his hospitalization, Baril signed a written contract acknowledging that he would be responsible for paying all monies

1

owed to Hospital Amerimed Cancun, and he informed Hospital Amerimed Cancun that he had health insurance with Martin's Point Health Care, Inc., a Maine corporation with its principal place of business in Portland, Maine.

Non-party Passage Health International LLC is a limited liability company with a principal place of business in Fort Lauderdale, Florida.   Passage performed billing submission, pre-authorization, and collection activities on behalf of Hospital Amerimed Cancun.   In connection with Mr. Baril's inpatient stay, Passage Health regularly communicated with, and received verification from Martin's Point that the proposed medical procedures in Mexico were covered by insurance provided by Martin's Point and that Baril had applicable benefits for out of country emergency services.   Based on these assurances, Hospital Amerimed Cancun treated Baril.

Hospital Amerimed Cancun alleges that the services it provided to Baril total $2,132,982.98.   Hospital Amerimed Cancun submitted medical bills to Martin's Point seeking payment in that amount.   After receiving Hospital Amerimed Cancun's bill, Martin's Point offered reimbursement of $25,000.00.   That amount is the maximum benefit for out-of-country medical services specified in Mr. Baril's Medicare Part C health insurance contract with Martin's Point.   Hospital Amerimed Cancun complains that Martin's Point never advised it of the existence of a $25,000.00 limitation even though Martin's Point informed Hospital Amerimed Cancun that Baril's medical treatment in Mexico was covered by insurance with Martin's Point.   More specifically, Hospital Amerimed Cancun alleges that it worked with Passage Health to verify coverage and

2

Passage Heath had communications with Martin's Point who made assurances that Baril's proposed medical procedures in Mexico were covered by its medical insurance.

Hospital Amerimed Cancun's Complaint asserts two causes of action: promissory estoppel and negligent misrepresentation. As to the latter cause of action, Hospital Amerimed Cancun alleges that Martin's Point supplied false information that guided Hospital Amerimed Cancun in its business transactions relating to Mr. Baril, to its detriment. Hospital Amerimed Cancun does not allege, specifically, that there was a conversation with Martin's Point concerning the existence of insurance coverage limitations, but states that Martin's Point informed Passage Health that Baril had "full medical insurance benefits." Compl. ¶ 27.

In support of its Motion to Dismiss, Martin's Point provides a letter exhibit. Mot. Ex. A (ECF No. 19-1). The letter is authored by Martin's Point HealthCare and authorizes inpatient service for Mr. Baril for several days. The letter also states that the approval is subject to Medicare coding requirements for coverage and includes a code for CMS approval. The letter also concludes, in bold, that PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE. *Id.* Martin's Point asserts that it is proper to consider the exhibit in the context of a motion to dismiss because the authorization verification form is "integral to the claims in the complaint." Mot. at 5 n.5 (citing *Brayman v. Porter*, No. 1:20-cv-00169-JAW, 2021 WL 342566 (D. Me. 2021)). The letter bears the date October 24, 2022, which is roughly 14 days into Mr. Baril's hospitalization.

In response to Martin's Point's Motion, Hospital Amerimed Cancun supplies exhibits of its own. These include a Passage Health Verification of Benefits form dated October 13, 2022, only three days after Baril's admission. The form reflects that the health insurance is available under a "Medicare Advantage HMO Plan." Response Ex. A (ECF No. 26-1).

Because the exhibits are integral to the communications between Martin's Point and Passage Health, and because those communications underlie Hospital Amerimed Cancun's causes of action, and because neither party disputes the authenticity of the documents, I have considered the documents in the context of the Motion to Dismiss, without converting the motion into a motion for summary judgment. *See Goldberg v. Unum Life Ins. Co. of Am.*, 527 F. Supp. 2d 164, 167 (D. Me. 2007).[1]

## DISCUSSION

Pursuant to Rule 12(b)(1), a defendant may file a motion to dismiss contending that the court lacks jurisdiction over the subject matter of the litigation. Fed. R. Civ. P. 12(b)(1). The burden to prove the existence of subject matter jurisdiction rests with the party invoking the court's jurisdiction. *Skwira v. United States*, 344 F.3d 64, 71 (1st Cir. 2003). For claims arising under the Medicare Act, which uses the same exhaustion requirement as the Social Security Act, the failure to exhaust administrative remedies provides a basis for the dismissal of a district court action on jurisdictional grounds. *Justiniano v. Soc. Sec.*

---

[1] This observation is offered only in an abundance of caution. In a Rule 12(b)(1) motion, "[t]he court, without conversion, may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiffs allegations." *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37 (1st Cir. 2000).

*Admin.*, 876 F.3d 14, 19 (1st Cir. 2017); *United States v. Lahey Clinic Hosp.*, *Inc.*, 399 F.3d 1, 7–8 & n.6 (1st Cir. 2005).

Martin's Point argues that Hospital Amerimed Cancun's causes of action cannot be maintained in this Court at this time and should be dismissed for lack of jurisdiction because federal law requires that Hospital Amerimed Cancun exhaust administrative remedies before filing a complaint seeking judicial review of its dispute with Martin's Point. Mot. at 7–13. Martin's Point's argument rests on its status as a Medicare Advantage organization ("MAO"), the fact that Mr. Baril was insured by Martin's Point under Part C of the Medicare Act, and the fact that Hospital Amerimed Cancun's civil action is based on alleged misrepresentations concerning the availability of insurance benefits.

In response, Hospital Amerimed Cancun relies on the notion that it has plausibly plead garden variety state law claims arising in diversity. Opposition at 1, 7–8. Hospital Amerimed Cancun also asserts that Martin's Point "is free to offer services for out-of-network international claims for emergency services" and that Hospital Amerimed Cancun "properly alleged that they did so here and later reneged on representations that coverage was available." *Id.* at 5. In its view, emergency overseas benefits "are not governed by Medicare" and, therefore, a foreign hospital "cannot enter into a contract with any Medicare Advantage Organization." *Id.* at 5–6.

For reasons that follow, I am not persuaded by Hospital Amerimed Cancun that Martin's Point is "free" to provide whatever coverage it desires for international emergency service and that disputes concerning such benefits fall outside the Medicare program.

The Medicare program is a federal welfare benefit program that provides health insurance coverage to, among others, people 65 years of age and older. *Medicaid & Medicare Advantage Prods. Ass'n of Puerto Rico, Inc. v. Emanuelli Hernández*, 58 F.4th 5, 8 (1st Cir. 2023) (citing 42 U.S.C. § 1395c). Parts A and B of the Medicare Act afford medical benefits according to a fee-for-service schedule established by the Centers for Medicare and Medicaid Services ("CMS"), a sub-agency of the Department of Health and Human Services. *Id.* Part C of the Medicare Act establishes a Medicare Advantage program through which CMS contracts with private insurers that then develop their own networks of care to deliver both mandated Medicare benefits and some supplemental benefits that are not available under Parts A and B of Medicare. *Id.* The payment system under Part C differs from the fee-for-service schedule of Parts A and B, and generally entails a mash-up of market, welfare, and managed care attributes that, it is said, resemble a market-oriented approach to the delivery of healthcare services. *Id.* & n.1. Nonetheless, the provision of Part C benefits and disputes over payments remain very much within the Medicare program.

Persons who enroll in a plan offered by a MAO pay for supplemental benefits by means of premiums or cost sharing. 42 C.F.R. §§ 422.110(c)(2), 422.102(c). Although "CMS generally has little say over the package of supplemental benefits that a plan chooses to offer," MAOs' plans are subject to a battery of rules and standards and CMS must approve all supplemental benefits included in a plan offered by a MAO. 42 U.S.C. §§ 1395w-26(b), 1395w-27(a); 42 C.F.R. § 422.110(f). The approval process includes a review to ensure the MAOs meet financial solvency and capital adequacy standards. 42

U.S.C. § 1395w-26(a).  Typically, MAOs arrange for the provision of healthcare services to their enrollees by means of contract providers or managed care networks.  However, Medicare requires that certain services provided to enrollees be paid for even if the provider is not a contract provider, one example being emergency medical services.  *Id.* § 1395w-22(d)(1)(E); 42 C.F.R. §§ 422.100(b)(1), 422.113.

MAOs are insulated from state interference in the form of supplemental standards and are subject to near exclusive regulation by the Secretary of Department of Health and Human Service and CMS.  42 U.S.C. § 1395w-26(b)(3) ("The standards established under [Part C] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part.").  When disputes arise over the payment of a MAO enrollee's medical bills, Congress has prescribed an administrative review process.  *Id.* § 1395w-22(g).  The review process begins with initial and reconsideration determinations by the MAO, 42 C.F.R. §§ 422.566, 422.578, 422.582; moves on to review by an independent outside entity, *id.* § 422.592; continues with a hearing before an administrative law judge, *id.* § 422.600; proceeds to the Medicare Appeals Council, *id.* § 422.608; and culminates with judicial review of the final administrative determination, *id.* § 422.612.  The administrative review process is open to providers, who may proceed as an assignee of the enrollee's right to coverage, though the regulations require that the provider waive any right to payment from the enrollee.  *Id.* §§ 422.566(c)(1)(ii), 422.574(b).

The Medicare Act also makes Part C disputes subject to the provisions of, inter alia, 42 U.S.C. § 405(h).  *See* 42 U.S.C. § 1395ii.  Section 405(h) provides:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).  Section 405(h) is understood to dictate that the administrative review process is the exclusive means of resolving disputes arising under the Medicare Act, even to the extent of actions brought under section 1332 of Title 28 (diversity jurisdiction).  *See Allstar Care Inc. v. Blue Cross & Blue Shield of S.C.*, 184 F. Supp. 2d 1295, 1298 (S.D. Fla. 2002) (first citing *Bodimetric Health Servs., Inc. v. Aetna Life & Casualty*, 903 F.2d 480, 489 (7th Cir. 1990); and then citing *Midland Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1003–04 (8th Cir. 1998)).

Based on this regulatory framework, the Ninth Circuit has held "that Congress intended to impose under the Medicare Advantage program the same administrative exhaustion requirement that applies to claims for benefits under original Medicare," meaning that judicial review must be held in abeyance until a final decision emerges from the administrative review system.  *Global Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905 (9th Cir. 2022); *cf. Puerto Rican Ass'n of Physical Med. & Rehab., Inc. v. United States*, 521 F.3d 46, 48 (1st Cir. 2008) (observing that the section 405(h) bar requires the channeling of "virtually all legal attacks through the agency" (quoting *Shalala*

8

*v. Ill. Council on Long Term Care*, *Inc*., 529 U.S. 1, 13 (2000))); *Ill. Council*, 529 U.S. at 23 (observing that litigants "remain free, . . . after following the special review route that the statutes prescribe, to contest in court the lawfulness of any regulation or statute upon which an agency determination depends"). In *Global Rescue Jets*, a rescue service provided emergency service to persons who became ill in Mexico. 30 F.4th at 908. The ill patients assigned their claims for Part C benefits from Kaiser to the rescue service. Kaiser declined to reimburse the rescue service except to the limit of Medicare approved rates, resulting in litigation. *Id.* at 908–10. The Ninth Circuit affirmed the dismissal of the lawsuit based on lack of subject matter jurisdiction—failure to exhaust administrative remedies. *Id.* at 919–20. It reasoned that the dispute over payment was "inextricably intertwined with claims for benefits under Part C of the Medicare Act," *id.* at 919, since the rescue service sought to recover payment from a MAO, *id.* at 916–19. According to the Ninth Circuit, "Congress intended to impose . . . the same administrative exhaustion requirement that applies to claims for benefits under original Medicare." *Id.* at 914; *see also id.* (observing that the "constraints on judicial review imposed by § 405(h) apply equally to claims for benefits under Part C" and citing *Tenet Healthsystem GB*, *Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584 (11th Cir. 2017)).[2]

---

[2] In *Tenet*, the Plaintiffs-Appellants were non-contract providers that presented the defendant MAO with periodic, recurring claims such that the MAO was able to adjust payments to recoup alleged, past overpayments, resulting in new, disputed underpayments. The *Tenet* Court held that a non-contract provider that delivers services to a Medicare Part C enrollee is subject to the Medicare Act's administrative apparatus because the provider's claim for reimbursement is based on the assignment of the Medicare Part C enrollee's right to coverage, and that the non-contract provider cannot plead its way around administrative exhaustion by presenting state common law claims arising out of the MAO's authorization to provide services and promise of reimbursement. *Id.* at 588–89.

For the reasons set forth in *Global Rescue Jets*, I am persuaded that Hospital Amerimed Cancun's effort to collect against Martin's Point is subject to the mandatory administrative review process. And based on *Allstar Care* and the authorities cited therein, *see supra*, Hospital Amerimed Cancun's reliance on diversity rather than federal question jurisdiction does not change the analysis.

Because Hospital Amerimed Cancun's claims seek to make a MAO pay for services provided to a Medicare Part C enrollee, I conclude that, at least for purposes of domestic litigation in state or federal court, their claims arise under the Medicare Act and must, preliminarily, be channeled through the administrative review process. Minimally, it is appropriate that this threshold jurisdictional question should be ironed out in this Circuit before this matter proceeds to discovery and trial (and before I consider Martin's Point's alternative arguments for dismissal for failure to state a claim). While Hospital Amerimed Cancun contends that its situation differs from the situation in *Global Rescue Jets*, because this case does not present a claim for breach of contract, I do not see why causes of action based on equity and torts should be treated differently than a cause of action based on contracts. All of these causes of action are similarly rooted in state common law and all succumb equally to the dictates of federal law.

Because the Complaint does not include allegations that demonstrate exhaustion of the administrative process, the Court lacks jurisdiction to review Martin's Point's refusal to pay the entire medical bill submitted by Hospital Amerimed Cancun.

CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 19) is

**GRANTED** and the case is **DISMISSED** for lack of subject matter jurisdiction.

SO ORDERED.

Dated this 23rd day of April, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge

11

11

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL NO. 2:23-cv-00258-LEW |
| MARTIN'S POINT HEALTH CARE INC | ) ) ) | |
| Defendant, | ) | |

JUDGMENT OF DISMISSAL

In accordance with the Order on Motion to Dismiss entered by Chief Judge Lance

E. Walker on April 23, 2024,

JUDGMENT of Dismissal for lack of subject matter jurisdiction is hereby

entered.

CHRISTA K. BERRY
CLERK

By:     /s/ Michele Mitchell
        Deputy Clerk

Dated: April 23, 2024

12

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:23-CV-00258-LEW |
| MARTIN'S POINT HEALTH CARE, INC., | ) ) ) | |
| Defendant. | ) ) | |

## <u>ORDER ON MOTION TO ALTER JUDGMENT</u>

Plaintiff Hospital Amerimed Cancun seeks to recover the costs of medical services that it provided to a patient in Mexico from Defendant Martin's Point Health Care, Inc. I previously granted Defendant's Motion to Dismiss because Plaintiff did not exhaust its administrative remedies. Order on Motion to Dismiss (ECF No. 29). The matter is before the Court on Plaintiff's Motion to Alter Judgment (ECF No. 31). Because Plaintiff has not demonstrated that the judgment of dismissal resulted from a manifest error of law, the Motion is DENIED.

Federal Rule of Civil Procedure 59(e) "permits an attack on a judgment on the ground that the judgment is based on a manifest error of law." *Venegas-Hernandez v. Sonolux Recs.*, 370 F.3d 183, 189 (1st Cir. 2004).

13

Plaintiff argues that this case was erroneously dismissed because it is a foreign provider of medical services and thus not able to access the administrative review process. Mot. at 2. In support, Plaintiff references the Fifth Circuit's decision in *RenCare*, *Ltd. v. Humana Health Plan of Texas*, *Inc*., 395 F.3d 555 (5th Cir. 2004), and observes "that a provider's direct claim against an insurer may not be subject to Medicare's administrative review." Mot. at 3. In *RenCare*, the payment "dispute [was] solely between Humana and RenCare" based on their "privately-agreed-to payment plan." 395 F.3d at 558. Because the parties had a private contract, the payment dispute was not "inextricably intertwined with a claim for Medicare benefits," so the exhaustion requirement did not apply. *Id.* at 557–58.[1] Because this case does not involve a contract, *RenCare* is distinguishable. *See Tenet Healthsystem GB*, *Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 591 (11th Cir. 2017) (explaining that "Medicare regulations treat noncontract providers differently than contract providers" by permitting contract providers and Medicare Advantage Organizations ("MAOs") to define the terms of their agreements).

---

[1] Plaintiff quotes an amicus brief filed by the United States Department of Health and Human Services in which it argued "'that third-party contract providers (rather than noncontract providers . . .) are not assignees' within the definition of Medicare's administrative exhaustion provisions." *Sarasota Cnty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla.*, *Inc.* 511 F. Supp. 3d 1240, 1252 (M.D. Fla. 2021) (ellipses in original) (quoting *Tenet Healthsystem GB*, *Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 590 (11th Cir. 2017)). As explained by the Eleventh Circuit, this argument overlooks the "critical" distinction "between contract providers and noncontract providers." *Tenet Healthsystem*, 875 F.3d at 590. When there is a billing dispute between a MAO and a contract provider, the provider is only pursuing a claim for reimbursement that belonged to itself under the contract, so its claim is not inextricably intertwined with a claim for Medicare benefits. *See id.* But when a hospital agrees to treat Medicare enrollees and agrees to hold those enrollees harmless for any costs incurred in connection with their medical treatments, the hospital "stand[s] in the shoes of the enrollees," so it must comply with the exhaustion requirement to assert an enrollees' claims. *Id.* at 589.

Plaintiff also argues that "[s]ince foreign medical providers are neither contracting nor non-contracting parties as those phrases are used in [Center for Medicare & Medicaid Services' (CMS)] nomenclature, they cannot be part of an administrative review process such as the providers in the cases the Court relie[d] upon." Mot. at 4. This checks off the lawyerly rhetoric box, but Plaintiff has not supported its argument with any case law. Instead, Plaintiff has offered the affidavit of Eindar M. Khant, the CEO of Passage Health International, Inc. Mot. Ex. 1 at 1–2. He states that CMS has "flatly rejected [appeals,] stating that it does not handle, remedy or adjudicate claims between any MAO and any foreign medical provider." *Id.* at 1. Khant further explains that "[f]oreign medical providers cannot be either contracting or non-contracting parties in the CMS vocabulary since they cannot participate in Medicare since they are outside of the USA." *Id.* In support, Plaintiff attached two emails capturing exchanges between other foreign medical providers and CMS in which CMS has purportedly rejected appeal requests. *Id.* at 11–18.

Plaintiff's argument confounds the grievance process with the distinct appeals process for payment disputes. The grievance process is reserved for "complaint[s] or dispute[s], *other than one that constitutes an organization determination*, expressing dissatisfaction with any aspect of an MA organization's or provider's operations, activities, or behavior, regardless of whether remedial action is requested." 42 C.F.R. § 422.561 (emphasis added). Organization determinations encompass the "MA organization's refusal to provide or pay for services, in whole or in part." 42 C.F.R. § 422.566(b)(3). Accordingly, Plaintiff's payment dispute entails an organizational determination, and it is subject to "mandatory administrative 'appeals procedures.'" *RenCare*, 395 F.3d at 559

15

(first citing 42 U.S.C. § 1395w-22(g); and then citing 42 C.F.R. §§ 422.560–422.622). Indeed, one of Plaintiff's proffered email exchanges references this appeals process. *See* Mot Ex. 1 at 9.

In sum, Plaintiff has not demonstrated that the judgment of dismissal rested on a manifest error of law.   Thus, Plaintiff's Motion to Alter Judgment (ECF No. 31) is **DENIED**.

SO ORDERED.

Dated this 12th day of August, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge

16

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| HOSPITAL QUIRURGICA DEL SUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-CV-00259-LEW |
| | ) | |
| MARTIN'S POINT HEALTH CARE, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER ON MOTION TO DISMISS</u>

In this action, Plaintiff Hospital Quirurgica Del Sur seeks to recover from Defendant Martin's Point, in its capacity as a healthcare insurer, the value of healthcare services it provided to an individual who participates in Martin's Point's Medicare Part C or "Medicare Advantage" program.  The matter is before the Court on Martin's Point's Motion to Dismiss (ECF No. 19).  For reasons that follow, the Motion is GRANTED.

### BACKGROUND

Hospital Quirurgica Del Sur is a Mexican corporation that provides hospital and healthcare services to patients in Cancun, Mexico.  From January 12, 2023, to February 16, 2023, James G. Taliaferro was voluntarily admitted to Hospital Quirurgica Del Sur.  Upon his admission to Hospital Quirurgica Del Sur and during his hospitalization, Taliaferro signed a written contract acknowledging that he would be responsible for paying all monies owed to the provider and/or billing administrator and provided information about his

17

applicable health insurance with Martin's Point Health Care, Inc., a Maine corporation with its principal place of business in Portland, Maine.

Non-party Passage Health International LLC is a limited liability company with a principal place of business in Fort Lauderdale, Florida. Passage performed billing submission, pre-authorization, and collection activities on behalf of Hospital Quirurgica Del Sur. Throughout Taliaferro's inpatient stay at Hospital Quirurgica Del Sur, Passage communicated with and received verification from Martin's Point that the proposed medical procedures in Mexico were covered by insurance provided by Martin's Point and that Taliaferro had applicable benefits for out of country emergency services. After receiving such assurances, Hospital Quirurgica Del Sur treated Taliaferro and he was eventually released.

Hospital Quirurgica Del Sur alleges that the services it provided to Taliaferro total $512,464.00. Hospital Quirurgica Del Sur's medical bills incurred on behalf of Taliaferro were provided to Martin's Point but Martin's Point refused to reimburse Hospital Quirurgica Del Sur except to the limit of $25,000.00. That amount is the maximum benefit for out-of-country medical services specified in Mr. Taliaferro's Medicare Part C health insurance contract with Martin's Point. Hospital Quirurgica Del Sur complains that Martin's Point never advised it of the existence of a $25,000.00 limitation even though Martin's Point informed Hospital Quirurgica Del Sur that Taliaferro's medical treatment in Mexico was covered by insurance with Martin's Point. More specifically, Hospital Quirurgica Del Sur alleges that it worked with Passage Health to verify coverage and Passage Heath had communications with Martin's Point, who made assurances that

Taliaferro's proposed medical procedures in Mexico were covered by its medical insurance.

Hospital Quirurgica Del Sur's Complaint asserts two causes of action: promissory estoppel and negligent misrepresentation.  As to the latter cause of action, Hospital Quirurgica Del Sur alleges that Martin's Point supplied false information that guided Hospital Quirurgica Del Sur in its business transactions relating to Mr. Taliaferro, to its detriment.  Hospital Quirurgica Del Sur does not allege, specifically, that there was a conversation with Martin's Point concerning the existence of insurance coverage limitations, but states that Martin's Point informed Passage Health that Taliaferro had "full medical insurance benefits."  Compl. ¶ 29.

In support of its Motion to Dismiss, Martin's Point provides a letter exhibit.  Mot. Ex. A (ECF No. 19-1).  The letter is authored by Martin's Point HealthCare and authorizes inpatient service for Mr. Taliaferro for several days.  The letter also states that the approval is subject to Medicare coding requirements for coverage and includes a code for CMS approval.  The letter also concludes, in bold, that PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE. *Id.*  Martin's Point asserts that it is proper to consider the exhibit in the context of a motion to dismiss because the authorization verification form is "integral to the claims in the complaint."  Mot. at 5 n.5 (citing *Brayman v. Porter*, No. 1:20-cv-00169-JAW, 2021 WL 342566 (D. Me. 2021)).  The letter bears the date January 30, 2023, which is roughly half-way through Mr. Taliaferro's hospitalization.

In response to Martin's Point's Motion, Hospital Quirurgica Del Sur supplies exhibits of its own. These include a Passage Health Verification of Benefits form dated January 18, 2023, shortly after Taliaferro's hospitalization. Response Ex. A (ECF No. 27-1). The documents do not appear to proclaim that Martin's Point is a Medicare Part C insurer, though there is a reference to "Medicare coding requirements" in at least one letter authored by Martin's Point.

Because the exhibits are integral to the communications between Martin's Point and Passage Health, and because those communications underlie Hospital Quirurgica Del Sur's causes of action, and because neither party disputes the authenticity of the documents, I have considered the documents in the context of the Motion to Dismiss, without converting the motion into a motion for summary judgment. *See Goldberg v. Unum Life Ins. Co. of Am.*, 527 F. Supp. 2d 164, 167 (D. Me. 2007).[1]

## DISCUSSION

Pursuant to Rule 12(b)(1), a defendant may file a motion to dismiss contending that the court lacks jurisdiction over the subject matter of the litigation. Fed. R. Civ. P. 12(b)(1). The burden to prove the existence of subject matter jurisdiction rests with the party invoking the court's jurisdiction. *Skwira v. United States*, 344 F.3d 64, 71 (1st Cir. 2003). For claims arising under the Medicare Act, which uses the same exhaustion requirement as the Social Security Act, the failure to exhaust administrative remedies provides a basis for

---

[1] This observation is offered only in an abundance of caution. In a Rule 12(b)(1) motion, "[t]he court, without conversion, may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiffs allegations." *Dynamic Image Techs.*, *Inc. v. United States*, 221 F.3d 34, 37 (1st Cir. 2000).

20

the dismissal of a district court action on jurisdictional grounds. *Justiniano v. Soc. Sec. Admin.*, 876 F.3d 14, 19 (1st Cir. 2017); *United States v. Lahey Clinic Hosp.*, *Inc.*, 399 F.3d 1, 7–8 & n.6 (1st Cir. 2005).

Martin's Point argues that Hospital Quirurgica Del Sur's causes of action cannot be maintained in this Court at this time and should be dismissed for lack of jurisdiction because federal law requires that Hospital Quirurgica Del Sur exhaust administrative remedies before filing a complaint seeking judicial review of its dispute with Martin's Point. Mot. at 7–13. Martin's Point's argument rests on its status as a Medicare Advantage organization ("MAO"), the fact that Mr. Taliaferro was insured by Martin's Point under Part C of the Medicare Act, and the fact that Hospital Quirurgica Del Sur's civil action is based on alleged misrepresentations concerning the availability of insurance benefits.

In response, Hospital Quirurgica Del Sur relies on the notion that it has plausibly plead garden variety state law claims arising in diversity. Opposition at 1–2, 4–8. Hospital Quirurgica Del Sur also asserts that "Martin's Point is applying inappropriate standards in asserting that the foreign hospital fails to comply with administrative requirements [because Hospital Quirurgica Del Sur] is . . . a non-Medicare, non-contracted provider, a distinction from a non-contracted provider within the United States"; Martin's Point "is free to offer services for out-of-network international claims for emergency services"; and Hospital Quirurgica Del Sur "properly alleged that they did so here and later reneged on . . . representations that coverage was available." *Id.* at 5. In its view, emergency overseas benefits "are not governed by Medicare" and, therefore, a foreign hospital "cannot enter into a contract with any Medicare Advantage Organization." *Id.* at 5–6.

21

For reasons that follow, I am not persuaded by Hospital Quirurgica Del Sur that Martin's Point is "free" to provide whatever coverage it desires for international emergency service and that disputes concerning such benefits fall outside the Medicare program.

The Medicare program is a federal welfare benefit program that provides health insurance coverage to, among others, people 65 years of age and older. *Medicaid & Medicare Advantage Prods. Ass'n of Puerto Rico*, *Inc. v. Emanuelli Hernández*, 58 F.4th 5, 8 (1st Cir. 2023) (citing 42 U.S.C. § 1395c). Parts A and B of the Medicare Act afford medical benefits according to a fee-for-service schedule established by the Centers for Medicare and Medicaid Services ("CMS"), a sub-agency of the Department of Health and Human Services. *Id.* Part C of the Medicare Act establishes a Medicare Advantage program through which CMS contracts with private insurers that then develop their own networks of care to deliver both mandated Medicare benefits and some supplemental benefits that are not available under Parts A and B of Medicare. *Id.* The payment system under Part C differs from the fee-for-service schedule of Parts A and B, and generally entails a mash-up of market, welfare, and managed care attributes that, it is said, resemble a market-oriented approach to the delivery of healthcare services. *Id.* & n.1. Nonetheless, the provision of Part C benefits and disputes over payments remain very much within the Medicare program.

Persons who enroll in a plan offered by a MAO pay for supplemental benefits by means of premiums or cost sharing. 42 C.F.R. §§ 422.110(c)(2), 422.102(c). Although "CMS generally has little say over the package of supplemental benefits that a plan chooses to offer," MAOs' plans are subject to a battery of rules and standards and CMS must

approve all supplemental benefits included in a plan offered by a MAO. 42 U.S.C. §§ 1395w-26(b), 1395w-27(a); 42 C.F.R. § 422.110(f). The approval process includes a review to ensure the MAOs meet financial solvency and capital adequacy standards. 42 U.S.C. § 1395w-26(a). Typically, MAOs arrange for the provision of healthcare services to their enrollees by means of contract providers or managed care networks. However, Medicare requires that certain services provided to enrollees be paid for even if the provider is not a contract provider, one example being emergency medical services. *Id.* § 1395w-22(d)(1)(E); 42 C.F.R. §§ 422.100(b)(1), 422.113.

MAOs are insulated from state interference in the form of supplemental standards and are subject to near exclusive regulation by the Secretary of Department of Health and Human Service and CMS. 42 U.S.C. § 1395w-26(b)(3) ("The standards established under [Part C] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part."). When disputes arise over the payment of a MAO enrollee's medical bills, Congress has prescribed an administrative review process. *Id.* § 1395w-22(g). The review process begins with initial and reconsideration determinations by the MAO, 42 C.F.R. §§ 422.566, 422.578, 422.582; moves on to review by an independent outside entity, *id.* § 422.592; continues with a hearing before an administrative law judge, *id.* § 422.600; proceeds to the Medicare Appeals Council, *id.* § 422.608; and culminates with judicial review of the final administrative determination, *id.* § 422.612. The administrative review process is open to providers, who may proceed as an assignee of the enrollee's right to coverage, though the

23

regulations require that the provider waive any right to payment from the enrollee.  *Id.*

§§ 422.566(c)(1)(ii), 422.574(b).

The Medicare Act also makes Part C disputes subject to the provisions of, inter alia,

42 U.S.C. § 405(h).  *See* 42 U.S.C. § 1395ii.  Section 405(h) provides:

> The findings and decision of the Commissioner of Social Security after a
> hearing shall be binding upon all individuals who were parties to such
> hearing.  No findings of fact or decision of the Commissioner of Social
> Security shall be reviewed by any person, tribunal, or governmental agency
> except as herein provided.  No action against the United States, the
> Commissioner of Social Security, or any officer or employee thereof shall be
> brought under section 1331 or 1346 of Title 28 to recover on any claim
> arising under this subchapter.

42 U.S.C. § 405(h).  Section 405(h) is understood to dictate that the administrative review

process is the exclusive means of resolving disputes arising under the Medicare Act, even

to the extent of actions brought under section 1332 of Title 28 (diversity jurisdiction).  *See*

*Allstar Care Inc. v. Blue Cross & Blue Shield of S.C.*, 184 F. Supp. 2d 1295, 1298 (S.D.

Fla. 2002) (first citing *Bodimetric Health Servs.*, *Inc. v. Aetna Life & Casualty*, 903 F.2d

480, 489 (7th Cir. 1990); and then citing *Midland Psychiatric Assocs.*, *Inc. v. United States*,

145 F.3d 1000, 1003–04 (8th Cir. 1998)).

Based on this regulatory framework, the Ninth Circuit has held "that Congress

intended to impose under the Medicare Advantage program the same administrative

exhaustion requirement that applies to claims for benefits under original Medicare,"

meaning that judicial review must be held in abeyance until a final decision emerges from

the administrative review system.  *Global Rescue Jets*, *LLC v. Kaiser Found. Health Plan*,

*Inc.*, 30 F.4th 905 (9th Cir. 2022); *cf. Puerto Rican Ass'n of Physical Med. & Rehab.*, *Inc.*

*v. United States*, 521 F.3d 46, 48 (1st Cir. 2008) (observing that the section 405(h) bar requires the channeling of "virtually all legal attacks through the agency" (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000))); *Ill. Council*, 529 U.S. at 23 (observing that litigants "remain free, . . . after following the special review route that the statutes prescribe, to contest in court the lawfulness of any regulation or statute upon which an agency determination depends"). In *Global Rescue Jets*, a rescue service provided emergency service to persons who became ill in Mexico. 30 F.4th at 908. The ill patients assigned their claims for Part C benefits from Kaiser to the rescue service. Kaiser declined to reimburse the rescue service except to the limit of Medicare approved rates, resulting in litigation. *Id.* at 908–10. The Ninth Circuit affirmed the dismissal of the lawsuit based on lack of subject matter jurisdiction—failure to exhaust administrative remedies. *Id.* at 919–20. It reasoned that the dispute over payment was "inextricably intertwined with claims for benefits under Part C of the Medicare Act," *id.* at 919, since the rescue service sought to recover payment from a MAO, *id.* at 916–19. According to the Ninth Circuit, "Congress intended to impose . . . the same administrative exhaustion requirement that applies to claims for benefits under original Medicare." *Id.* at 914; *see also id.* (observing that the "constraints on judicial review imposed by § 405(h) apply equally to claims for benefits under Part C" and citing *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584 (11th Cir. 2017)).[2]

---

[2] In *Tenet*, the Plaintiffs-Appellants were non-contract providers that presented the defendant MAO with periodic, recurring claims such that the MAO was able to adjust payments to recoup alleged, past overpayments, resulting in new, disputed underpayments. The *Tenet* Court held that a non-contract provider that delivers services to a Medicare Part C enrollee is subject to the Medicare Act's administrative

For the reasons set forth in *Global Rescue Jets*, I am persuaded that Hospital Quirurgica Del Sur's effort to collect against Martin's Point is subject to the mandatory administrative review process. And based on *Allstar Care* and the authorities cited therein, *see supra*, Hospital Quirurgica Del Sur's reliance on diversity rather than federal question jurisdiction does not change the analysis.

Because Hospital Quirurgica Del Sur's claims seek to make a MAO pay for services provided to a Medicare Part C enrollee, I conclude that, at least for purposes of domestic litigation in state or federal court, their claims arise under the Medicare Act and must, preliminarily, be channeled through the administrative review process. Minimally, it is appropriate that this threshold jurisdictional question should be ironed out in this Circuit before this matter proceeds to discovery and trial (and before I consider Martin's Point's alternative arguments for dismissal for failure to state a claim). While Hospital Quirurgica Del Sur contends that its situation differs from the situation in *Global Rescue Jets*, because this case does not present a claim for breach of contract, I do not see why causes of action based on equity and torts should be treated differently than a cause of action based on contracts. All of these causes of action are similarly rooted in state common law and all succumb equally to the dictates of federal law.

---

apparatus because the provider's claim for reimbursement is based on the assignment of the Medicare Part C enrollee's right to coverage, and that the non-contract provider cannot plead its way around administrative exhaustion by presenting state common law claims arising out of the MAO's authorization to provide services and promise of reimbursement. *Id.* at 588–89.

Because the Complaint does not include allegations that demonstrate exhaustion of the administrative process, the Court lacks jurisdiction to review Martin's Point's refusal to pay the entire medical bill submitted by Hospital Quirurgica Del Sur.

CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 19) is **GRANTED** and the case is **DISMISSED** for lack of subject matter jurisdiction.

SO ORDERED.

Dated this 23rd day of April, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge

27

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


HOSPITAL QUIRURGICA DEL SUR    )
    )
    )
Plaintiff,    )
    )
v.    )    CIVIL NO. 2:23-cv-00259-LEW
    )
MARTIN'S POINT HEALTH CARE INC    )
    )
Defendant,    )


<u>JUDGMENT OF DISMISSAL</u>


        In accordance with the Order on Motion to Dismiss entered by Chief Judge Lance

E. Walker on April 23, 2024,

        JUDGMENT of Dismissal for lack of subject matter jurisdiction is hereby

entered.


                            CHRISTA K. BERRY
                            CLERK


            By:    <u>/s/ Jennifer G. Driscoll</u>
                    Deputy Clerk


Dated: April 23, 2024

28

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| HOSPITAL QUIRURGICA DEL SUR | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-CV-00259-LEW |
| | ) | |
| MARTIN'S POINT HEALTH CARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER ON MOTION TO ALTER JUDGMENT</u>

Plaintiff Hospital Quirurgica Del Sur seeks to recover the costs of medical services that it provided to a patient in Mexico from Defendant Martin's Point Health Care, Inc.  I previously granted Defendant's Motion to Dismiss because Plaintiff did not exhaust its administrative remedies.  Order on Motion to Dismiss (ECF No. 29).  The matter is before the Court on Plaintiff's Motion to Alter Judgment (ECF No. 31).  Because Plaintiff has not demonstrated that the judgment of dismissal resulted from a manifest error of law, the Motion is DENIED.

Federal Rule of Civil Procedure 59(e) "permits an attack on a judgment on the ground that the judgment is based on a manifest error of law."  *Venegas-Hernandez v. Sonolux Recs.*, 370 F.3d 183, 189 (1st Cir. 2004).

Plaintiff argues that this case was erroneously dismissed because it is a foreign provider of medical services and thus not able to access the administrative review process.

29

Mot. at 2. In support, Plaintiff references the Fifth Circuit's decision in *RenCare*, *Ltd. v. Humana Health Plan of Texas*, *Inc.*, 395 F.3d 555 (5th Cir. 2004), and observes "that a provider's direct claim against an insurer may not be subject to Medicare's administrative review." Mot. at 3. In *RenCare*, the payment "dispute [was] solely between Humana and RenCare" based on their "privately-agreed-to payment plan." 395 F.3d at 558. Because the parties had a private contract, the payment dispute was not "inextricably intertwined with a claim for Medicare benefits," so the exhaustion requirement did not apply. *Id.* at 557–58.[1] Because this case does not involve a contract, *RenCare* is distinguishable. *See Tenet Healthsystem GB*, *Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 591 (11th Cir. 2017) (explaining that "Medicare regulations treat noncontract providers differently than contract providers" by permitting contract providers and Medicare Advantage Organizations ("MAOs") to define the terms of their agreements).

Plaintiff also argues that "[s]ince foreign medical providers are neither contracting nor non-contracting parties as those phrases are used in [Center for Medicare & Medicaid Services' (CMS)] nomenclature, they cannot be part of an administrative review process

---

[1] Plaintiff quotes an amicus brief filed by the United States Department of Health and Human Services in which it argued "'that third-party contract providers (rather than noncontract providers . . .) are not assignees' within the definition of Medicare's administrative exhaustion provisions." *Sarasota Cnty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla.*, *Inc.* 511 F. Supp. 3d 1240, 1252 (M.D. Fla. 2021) (ellipses in original) (quoting *Tenet Healthsystem GB*, *Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 590 (11th Cir. 2017)). As explained by the Eleventh Circuit, this argument overlooks the "critical" distinction "between contract providers and noncontract providers." *Tenet Healthsystem*, 875 F.3d at 590. When there is a billing dispute between a MAO and a contract provider, the provider is only pursuing a claim for reimbursement that belonged to itself under the contract, so its claim is not inextricably intertwined with a claim for Medicare benefits. *See id.* But when a hospital agrees to treat Medicare enrollees and agrees to hold those enrollees harmless for any costs incurred in connection with their medical treatments, the hospital "stand[s] in the shoes of the enrollees," so it must comply with the exhaustion requirement to assert an enrollees' claims. *Id.* at 589.

2

30

such as the providers in the cases the Court relie[d] upon." Mot. at 4.  This checks off the lawyerly rhetoric box, but Plaintiff has not supported its argument with any case law. Instead, Plaintiff has offered the affidavit of Eindar M. Khant, the CEO of Passage Health International, Inc.  Mot. Ex. 1 at 1–2.  He states that CMS has "flatly rejected [appeals,] stating that it does not handle, remedy or adjudicate claims between any MAO and any foreign medical provider."  *Id.* at 1.  Khant further explains that "[f]oreign medical providers cannot be either contracting or non-contracting parties in the CMS vocabulary since they cannot participate in Medicare since they are outside of the USA."  *Id.*  In support, Plaintiff attached two emails capturing exchanges between other foreign medical providers and CMS in which CMS has purportedly rejected appeal requests.  *Id.* at 10–17.

Plaintiff's argument confounds the grievance process with the distinct appeals process for payment disputes.  The grievance process is reserved for "complaint[s] or dispute[s], *other than one that constitutes an organization determination*, expressing dissatisfaction with any aspect of an MA organization's or provider's operations, activities, or behavior, regardless of whether remedial action is requested."  42 C.F.R. § 422.561 (emphasis added).  Organization determinations encompass the "MA organization's refusal to provide or pay for services, in whole or in part."  42 C.F.R. § 422.566(b)(3). Accordingly, Plaintiff's payment dispute entails an organizational determination, and it is subject to "mandatory administrative 'appeals procedures.'"  *RenCare*, 395 F.3d at 559 (first citing 42 U.S.C. § 1395w-22(g); and then citing 42 C.F.R. §§ 422.560–422.622). Indeed, one of Plaintiff's proffered email exchanges references this appeals process.  *See* Mot Ex. 1 at 9.

In sum, Plaintiff has not demonstrated that the judgment of dismissal rested on a manifest error of law.   Thus, Plaintiff's Motion to Alter Judgment (ECF No. 31) is **DENIED**.

SO ORDERED.

Dated this 12th day of August, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge

4

32