# IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

_____

No. 24-1815

## HOSPITAL AMERIMED CANCUN S A DE C V,

Plaintiff – Appellant

v.

## MARTIN'S POINT HEALTH CARE, INC.

Defendant – Appellee

Consolidated With:

No. 24-1816

## HOSPITAL QUIRURGICA DEL SUR,

Plaintiff-Appellant

v.

## MARTIN'S POINT HEALTH CARE, INC.

Defendant-Appellee

_On Appeal from the United States District Court for the District of Maine_

_____

## APPENDIX OF APPELLANT HOSPITAL AMERIMED CANCUN S A DE C V AND HOSPITAL QUIRURGICA DEL SUR

_____

Mark Darling (#4802)
Litchfield Cavo, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
_Attorney for Plaintiff-Appellant_
_Hospital Cancun S A DE C V and_
_Hospital Quirurgica Del Sur_

# APPENDIX

| Appendix Number | Description | Page Number |
|---|---|---|
| 1 | Docket Report, Hospital Amerimed Cancun S A DE C V v. Martin's Point Health Care, Inc. | 1 |
| 2 | Complaint, Hospital Amerimed Cancun S A DE C V v. Martin's Point Health Care, Inc. | 6 |
| 3 | Defendant's Motion to Dismiss | 13 |
| 4 | Exhibit A to Defendant's Motion to Dismiss | 33 |
| 5 | Plaintiff's Response in Opposition to Defendant's Motion to Dismiss | 36 |
| 6 | Affidavit of Plaintiff in Support of Plaintiff's Opposition to Motion to Dismiss | 46 |
| 7 | Defendant's Reply in Support of Motion to Dismiss | 90 |
| 8 | Order on Defendant's Motion to Dismiss | 98 |
| 9 | Judgment of Dismissal | 109 |
| 10 | Plaintiff's Motion to Alter Judgment Pursuant to Rule 59(e) | 110 |
| 11 | Affidavit in Support of Plaintiff's Motion to Alter Judgment Pursuant to Rule 59(e) | 117 |
| 12 | Defendant's Opposition to Motion to Alter Judgment Pursuant to Rule 59(e) | 128 |
| 13 | Order on Motion to Alter Judgment Pursuant to Rule 59(e) | 135 |
| 14 | Notice of Appeal, Hospital Amerimed Cancun S A DE C V v. Martin's Point Health Care, Inc. | 139 |

| | | |
|---|---|---|
| 15 | Docket Sheet, Hospital Quirurgica Del Sur v. Martin's Point Health Care, Inc. | 141 |
| 16 | Complaint, Hospital Quirurgica Del Sur v. Martin's Point Health Care, Inc. | 146 |
| 17 | Defendant's Motion to Dismiss | 152 |
| 18 | Exhibit A to Defendant's Motion to Dismiss | 172 |
| 19 | Plaintiff's Opposition to Defendant's Motion to Dismiss | 175 |
| 20 | Affidavit of Plaintiff in Support of Plaintiff's Opposition to Motion to Dismiss | 185 |
| 21 | Defendant's Reply in Support of Motion to Dismiss | 209 |
| 22 | Order on Defendant's Motion to Dismiss | 217 |
| 23 | Judgment of Dismissal | 228 |
| 24 | Plaintiff's Motion to Alter Judgment Pursuant to Rule 59(e) | 229 |
| 25 | Affidavit in Support of Plaintiff's Motion to Alter Judgment Pursuant to Rule 59(e) | 235 |
| 26 | Defendant's Opposition to Motion to Alter Judgment Pursuant to Rule 59(e) | 246 |
| 27 | Order on Motion to Alter Judgment Pursuant to Rule 59(e) | 253 |
| 28 | Notice of Appeal, Hospital Quirurgica Del Sur v. Martin's Point Health Care, Inc. | 257 |

**U.S. District Court**
**District of Maine (Portland)**
**CIVIL DOCKET FOR CASE #: 2:23-cv-00258-LEW**

HOSPITAL AMERIMED CANCUN S A DE C V v. MARTINS POINT HEALTH CARE INC
Assigned to: JUDGE LANCE E. WALKER
Referred to: MAGISTRATE JUDGE JOHN C. NIVISON
Demand: $2,108,000
Case in other court: First Circuit Court of Appeals, 24-01815
Cause: 28:1332 Diversity-Other Contract

Date Filed: 06/26/2023
Date Terminated: 04/23/2024
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**HOSPITAL AMERIMED CANCUN S A DE C V**                    represented by    **MARK A. DARLING**
LITCHFIELD CAVO LLP
6 KIMBALL LANE
SUITE 200
LYNNFIELD, MA 01940
781-309-1500
Email: darling@litchfieldcavo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MARTINS POINT HEALTH CARE INC**                    represented by    **TIMOTHY J. MCKEON**
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO P.C.
ONE FINANCIAL CENTER
BOSTON, MA 02111
617-348-4924
Email: tjmckeon@mintz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BRIAN P. DUNPHY**
ARNOLD & PORTER KAYE SCHOLER LLP
200 CLARENDON STREET
53RD FLOOR

1

BOSTON, MA 02116
617-351-8050
Fax: 627-226-9199
Email: Brian.Dunphy@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**LAURA E. MARTIN**
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO P.C.
ONE FINANCIAL CENTER
BOSTON, MA 02111
617-542-6000
Email: lemartin@mintz.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/26/2023 | 1 | COMPLAINT filed by HOSPITAL AMERIMED CANCUN S A DE C V against MARTINS POINT HEALTH CARE INC with Jury Demand **PAYMENT OF FILING FEE DUE WITHIN 48 HOURS. IF FILING FEE IS BEING PAID WITH A CREDIT CARD COUNSEL ARE INSTRUCTED TO LOGIN TO CMECF AND DOCKET** *Case Opening Filing Fee Paid* **FOUND IN THE** *Complaints and Other Initiating Documents* **CATEGORY. CHECK PAYMENTS DUE WITHIN 48 HOURS.**. (Service of Process Deadline 9/25/2023) Fee due by 6/28/2023. Per Civil Rule 7.1 as Amended December 1, 2022 Diversity Disclosure Statement due by 7/3/2023.(jwr) (Entered: 06/26/2023) |
| 06/26/2023 | 2 | CIVIL COVER SHEET. (jwr) (Entered: 06/26/2023) |
| 06/26/2023 | 3 | Summons Issued as to MARTINS POINT HEALTH CARE INC. **Counsel shall print the embossed summons and effect service in the manner in accordance with Fed.R.Civ.P.4.** **Note-If you are using Version 6 of Adobe Acrobat, be sure the PRINT WHAT field is set to DOCUMENTS AND COMMENTS (Click File, then Print to check this setting).** (jwr) (Entered: 06/26/2023) |
| 06/26/2023 | | Filing Fee Paid via Credit Card ( Filing fee $ 402 receipt number AMEDC-2819369.), filed by HOSPITAL AMERIMED CANCUN S A DE C V.(DARLING, MARK) (Entered: 06/26/2023) |
| 06/30/2023 | 4 | DIVERSITY DISCLOSURE STATEMENT by HOSPITAL AMERIMED CANCUN S A DE C V. (DARLING, MARK) (Entered: 06/30/2023) |
| 07/24/2023 | 5 | AFFIDAVIT of Service by HOSPITAL AMERIMED CANCUN S A DE C V. MARTINS POINT HEALTH CARE INC served on 7/20/2023. (DARLING, MARK) (Entered: 07/24/2023) |

| 07/24/2023 | | Set Answer Deadline Regarding Affidavit of Service for MARTINS POINT HEALTH CARE INC: Answer due by 8/10/2023. (mmy) (Entered: 07/24/2023) |
|---|---|---|
| 08/10/2023 | 6 | **FILED IN ERROR** STIPULATION *to Extend Time to Respond to Complaint* by HOSPITAL AMERIMED CANCUN S A DE C V. (DARLING, MARK) Modified on 8/10/2023 to indicate filed in error (mmy). (Entered: 08/10/2023) |
| 08/10/2023 | 7 | NOTICE of Docket Entry Modification regarding 6 Stipulation: This docket entry has been modified to indicate it was filed in error. Counsel are directed to refile as a Motion to Extend Time to Answer. (mmy) (Entered: 08/10/2023) |
| 08/10/2023 | 8 | Joint MOTION to Extend Time to File Answer by HOSPITAL AMERIMED CANCUN S A DE C V Responses due by 8/31/2023. (DARLING, MARK) (Entered: 08/10/2023) |
| 08/11/2023 | 9 | ORDER granting 8 Motion to Extend Time to File Response to Complaint. Time is extended to September 22, 2023. By MAGISTRATE JUDGE JOHN C. NIVISON. (NIVISON, JOHN) (Entered: 08/11/2023) |
| 08/11/2023 | | Reset Answer Deadline : Answer due by 9/22/2023. (cjd) (Entered: 08/11/2023) |
| 08/11/2023 | 10 | NOTICE of Appearance by TIMOTHY J. MCKEON on behalf of MARTINS POINT HEALTH CARE INC (MCKEON, TIMOTHY) (Entered: 08/11/2023) |
| 08/11/2023 | 11 | CORPORATE DISCLOSURE STATEMENT by MARTINS POINT HEALTH CARE INC. (MCKEON, TIMOTHY) (Entered: 08/11/2023) |
| 08/11/2023 | 12 | DIVERSITY DISCLOSURE STATEMENT by MARTINS POINT HEALTH CARE INC. (MCKEON, TIMOTHY) (Entered: 08/11/2023) |
| 08/11/2023 | 13 | CERTIFICATION for Admission Pro Hac Vice of Laura E. Martin filed by TIMOTHY J. MCKEON on behalf of MARTINS POINT HEALTH CARE INC (Total admission fee $ 100 receipt number AMEDC-2839203.) The District of Maine is a CM/ECF NextGen Court. If PHV counsel has not previously been granted electronic filing rights with the District of Maine, PHV counsel will now need to submit a PRO HAC VICE request in this District via PACER at www.pacer.uscourts.gov (MCKEON, TIMOTHY) (Entered: 08/11/2023) |
| 08/11/2023 | 14 | CERTIFICATION for Admission Pro Hac Vice of Brian P. Dunphy filed by TIMOTHY J. MCKEON on behalf of MARTINS POINT HEALTH CARE INC (Total admission fee $ 100 receipt number AMEDC-2839211.) The District of Maine is a CM/ECF NextGen Court. If PHV counsel has not previously been granted electronic filing rights with the District of Maine, PHV counsel will now need to submit a PRO HAC VICE request in this District via PACER at www.pacer.uscourts.gov (MCKEON, TIMOTHY) (Entered: 08/11/2023) |
| 09/18/2023 | 15 | MOTION to Extend Time to File Answer *or Otherwise Respond (JOINT)* by MARTINS POINT HEALTH CARE INC Responses due by 10/10/2023. (MCKEON, TIMOTHY) (Entered: 09/18/2023) |
| 09/18/2023 | 16 | ORDER granting 15 Motion to Extend Time to File Response to Complaint. Time is extended to October 13, 2023. By MAGISTRATE JUDGE JOHN C. NIVISON. (NIVISON, JOHN) (Entered: 09/18/2023) |
| 09/18/2023 | | Reset Answer Deadline for MARTINS POINT HEALTH CARE INC per Order #16: Answer due by 10/13/2023. (mmy) (Entered: 09/18/2023) |
| 10/11/2023 | 17 | MOTION to Extend Time to File Answer *or Otherwise Respond (JOINT)* by MARTINS POINT HEALTH CARE INC Responses due by 11/1/2023. (MCKEON, TIMOTHY) (Entered: 10/11/2023) |
| 10/11/2023 | 18 | ORDER granting 17 Motion to Extend Time to File Response to Complaint. Time is extended to November 13, 2023. By MAGISTRATE JUDGE JOHN C. NIVISON. (NIVISON, JOHN) (Entered: 10/11/2023) |

| 10/12/2023 | | Reset Answer Deadline for MARTINS POINT HEALTH CARE INC: Answer due by 11/13/2023. (mmy) (Entered: 10/12/2023) |
|---|---|---|
| 11/13/2023 | 19 | MOTION to Dismiss *Plaintiff Hospital Amerimed Cancun S A DE C V's Complaint With Incorporated Memorandum of Law* by MARTINS POINT HEALTH CARE INC Responses due by 12/4/2023. (Attachments: # 1 Exhibit A-Prior Authorization Verification Form) (MCKEON, TIMOTHY) (Entered: 11/13/2023) |
| 11/29/2023 | 20 | **FILED IN ERROR-TO BE RE-FILED AS A MOTION** STIPULATION re 19 MOTION to Dismiss Complaint *to Extend Time to Respond* by HOSPITAL AMERIMED CANCUN S A DE C V. (DARLING, MARK) Modified on 11/29/2023 re: error (mlm). (Entered: 11/29/2023) |
| 11/29/2023 | 21 | NOTICE Re: 20 Stipulation: This filing has been marked filed in error and shall be properly re-filed as a Motion at the Court's request. (mlm) (Entered: 11/29/2023) |
| 11/29/2023 | 22 | Joint MOTION to Extend Time to Respond to Motion to Dismiss by HOSPITAL AMERIMED CANCUN S A DE C V Responses due by 12/20/2023. (DARLING, MARK) (Entered: 11/29/2023) |
| 11/30/2023 | 23 | ORDER granting 22 Motion to Extend Time to File Response to Motion to Dismiss. Time for Plaintiff to file response to motion to dismiss is extended to December 20, 2023; time for Defendant to file reply memorandum in support of motion to dismiss is extended to January 10, 2024. By MAGISTRATE JUDGE JOHN C. NIVISON. (NIVISON, JOHN) (Entered: 11/30/2023) |
| 11/30/2023 | | Reset Deadlines as to 19 MOTION to Dismiss Complaint per Order #23: Responses due by 12/20/2023. Reply due by 1/10/2024. (mmy) (Entered: 11/30/2023) |
| 12/18/2023 | 24 | Joint MOTION to Extend Time to respond to Defendant's Motion to Dismiss by HOSPITAL AMERIMED CANCUN S A DE C V Responses due by 1/8/2024. (DARLING, MARK) (Entered: 12/18/2023) |
| 12/19/2023 | 25 | ORDER granting 24 Motion to Extend Time to File Response to Motion to Dismiss. Time for Plaintiff to file response to motion to dismiss is extended to January 3, 2024; time for Defendant to file reply memorandum in support of motion to dismiss is extended to January 24, 2024. By MAGISTRATE JUDGE JOHN C. NIVISON. (NIVISON, JOHN) (Entered: 12/19/2023) |
| 12/19/2023 | | Reset Deadlines as to 19 MOTION to Dismiss Complaint: Responses due by 1/3/2024. Reply due by 1/24/2024. (mmy) (Entered: 12/19/2023) |
| 01/03/2024 | 26 | RESPONSE in Opposition re 19 MOTION to Dismiss Complaint filed by HOSPITAL AMERIMED CANCUN S A DE C V. Reply due by 1/17/2024. (Attachments: # 1 Affidavit)(DARLING, MARK) Modified on 1/4/2024 to remove duplicative affidavit text (mmy). (Entered: 01/03/2024) |
| 01/04/2024 | 27 | ADDITIONAL ATTACHMENTS filed by HOSPITAL AMERIMED CANCUN S A DE C V re 26 Response in Opposition to Motion, . Main Document: Plaintiff's Affidavit. (Attachments: # 1 Exhibit A - Verification of Benefits, # 2 Exhibit B - Inpatient Authorization Request Form, # 3 Exhibit C - Initial Records, # 4 Exhibit D - Additional Records, # 5 Exhibit E - Additional Records, # 6 Exhibit F - Verification of Benefits Form, # 7 Exhibit G - Additional Records, # 8 Exhibit H - Additional Records, # 9 Exhibit I - Final Set of Records, # 10 Exhibit J - Check)(DARLING, MARK) (Entered: 01/04/2024) |
| 01/19/2024 | | Reset Deadlines as to 19 MOTION to Dismiss Complaint per Order #25: Reply due by 1/24/2024. (mmy) (Entered: 01/19/2024) |
| 01/24/2024 | 28 | REPLY to Response to Motion re 19 MOTION to Dismiss Complaint filed by MARTINS POINT HEALTH CARE INC. (MCKEON, TIMOTHY) (Entered: 01/24/2024) |

**4**

| | | |
|---|---|---|
| 04/23/2024 | 29 | ORDER ON MOTION TO DISMISS granting 19 Motion to Dismiss By JUDGE LANCE E. WALKER. (mlm) (Entered: 04/23/2024) |
| 04/23/2024 | 30 | JUDGMENT OF DISMISSAL By DEPUTY CLERK: Michele Mitchell. (mlm) (Entered: 04/23/2024) |
| 05/21/2024 | 31 | MOTION to Alter Judgment Pursuant to Rule 59(e) by HOSPITAL AMERIMED CANCUN S A DE C V Responses due by 6/11/2024. (Attachments: # 1 Exhibit Affidavit of Eindar M. Khant)(DARLING, MARK) Modified on 5/22/2024 to clean up docket text (clp) (Entered: 05/21/2024) |
| 06/11/2024 | 32 | RESPONSE in Opposition re 31 MOTION to Alter Judgment Pursuant to Rule 59(e) filed by MARTINS POINT HEALTH CARE INC. Reply due by 6/25/2024. (MCKEON, TIMOTHY) (Entered: 06/11/2024) |
| 08/12/2024 | 33 | ORDER ON MOTION TO ALTER JUDGMENT denying 31 Motion to Alter Judgment. By JUDGE LANCE E. WALKER. (cjd) (Entered: 08/12/2024) |
| 09/06/2024 | 34 | NOTICE OF APPEAL as to 33 Order on Motion for Judgment on the Pleadings, 29 Order on Motion to Dismiss, 30 Judgment by HOSPITAL AMERIMED CANCUN S A DE C V . ( Filing fee $ 605 receipt number AMEDC-3001428.)<br><br>**NOTICE TO FILER:** A transcript Report/Order form MUST be completed and submitted to the First Circuit Court of Appeals. The form can be found under the Forms & Fees section on their website at https://www.ca1.uscourts.gov.<br><br>**NOTICE TO COUNSEL:** Counsel should register for a First Circuit CM/ECF Appellate Filer Account at https://pacer.psc.uscourts.gov. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at https://www.ca1.uscourts.gov/cmecf (DARLING, MARK) (Entered: 09/06/2024) |
| 09/06/2024 | | COPIES of Notice of Appeal Sent to Counsel Re: 34 Notice of Appeal filed by HOSPITAL AMERIMED CANCUN S A DE C V. (clp) (Entered: 09/06/2024) |
| 09/06/2024 | 35 | APPEAL COVER SHEET Re: 34 Notice of Appeal(clp) (Entered: 09/06/2024) |
| 09/06/2024 | 36 | CLERK'S CERTIFICATE Re: 34 Notice of Appeal. Documents sent to the U.S. Court of Appeals. (clp) (Entered: 09/06/2024) |
| 09/06/2024 | | Abbreviated Appeal Record Transmitted Electronically to U.S. Court of Appeals re 34 Notice of Appeal. (clp) (Entered: 09/06/2024) |
| 09/06/2024 | 37 | USCA Case Number 24-1815 for 34 Notice of Appeal filed by HOSPITAL AMERIMED CANCUN S A DE C V. (clp) (Entered: 09/06/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| | Transaction Receipt | | |
| | 11/14/2024 11:45:04 | | |
| PACER Login: | MDarling262 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:23-cv-00258-LEW |
| Billable Pages: | 4 | Cost: | 0.40 |

**5**

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MARTIN'S POINT HEALTH CARE, INC. | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT & JURY TRIAL DEMAND**

Plaintiff, Hospital Amerimed Cancun S A DE C V (hereinafter "Plaintiff Hospital"), by and through its attorneys, Litchfield Cavo LLP, files the following Complaint and states as follows:

**PARTIES**

1. Hospital Amerimed Cancun S A DE C V is a Mexican Corporation duly authorized that provides hospital and health care services to patients in Cancun, Mexico [hereinafter, "Hospital"].

2. Defendant, Martin's Point Health Care, Inc. [hereinafter, "Martin's Point"], is a Maine corporation with its principal place of business in Portland, Maine. Martin's Point has continuous and systematic contacts with the State of New Hampshire and regularly conducts business in New Hampshire and is registered to do business in New Hampshire.

3. Martin's Point was a medical insurer for Baril, a New Hampshire resident, at the time services were rendered to Baril in Mexico.

1

**6**

## JURISDCITION

4. The plaintiff is a foreign corporation that provided medical services to a U.S. Citizen in Mexico, and through its agent in Florida, communicated with the defendant in the state of Maine numerous times relating to the status of the U.S. Citizen's health insurance medical insurance coverage before medical procedures were initiated in Mexico.

5. As such, the plaintiff has suffered injury in fact—a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent, not "conjectural" or "hypothetical."

6. There is a clearly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.

7. There is a likelihood that the requested relief will redress the alleged injury.

8. Accordingly, this the plaintiff has federal standing to bring this suit.

9. Subject-matter jurisdiction in this case is provided by alienage and diversity of citizenship. U.S. CONST. art. III, § 2, cl. 1; 28 U.S.C. § 1332(a)(2)

10. The requirements of diversity jurisdiction, and specifically alienage jurisdiction, are satisfied as plaintiff is a citizen of Mexico, a foreign state, and defendant, is a Maine corporation with a principal place of business in Maine and the actions of the defendant occurred substantially within the State of Maine.

## FACTS

11. From approximately October 10, 2022 to November 22, 2022, Kim Paul Baril was voluntarily admitted to Hospital Amerimed Cancun S.A. De C.V.

12. Upon his admission to Plaintiff Hospital and during his hospitalization, Baril signed a written contract acknowledging that he would be responsible for paying all monies owed

2

**7**

to the provider and/or billing administrator, and provided information about his applicable health insurance.

13. Passage Health International LLC, is a limited liability company with a principal place of business in Fort Lauderdale, Florida.  Passage is duly authorized by Hospital to perform billing submission, pre-authorization and collection activities.

14. Passage Health, throughout Baril's inpatient stay at Hospital, regularly communicated with, and received verification from Martin's Point that the proposed medical procedures in Mexico were covered by insurance provided by Martin's Point and that Baril had applicable benefits for out of country emergency services.

15. After receiving such assurances, Hospital treated Baril and he was eventually released.

16. Hospital's medical bills incurred on behalf of Baril were provided to Martin's Point who, despite prior assurances to the contrary, refused to reimburse for Hospital for Baril's treatment except to a later claimed limit of $25,000.00.

17. Martin's Point never advised Hospital of any $25,000.00 limit for treatment at the time Hospital sought and received assurances that Baril's medical treatment in Mexico was covered by insurance with Martin's Point.

18. Hospital worked with Passage Health to verify coverage and Passage Heath had communications with Martin's Point who made assurances that Baril's proposed medical procedures in Mexico were covered by its medical insurance.

19. Baril issued payment to the Hospital for $25,072.88 while at the facility.

20. Hospital performed medical services rendered to Baril in the total amount of $2,132,982.98.

3

**8**

21. Martin's Point later paid $24,500.00 toward the Baril medical bills, but refused to pay anything more.

22. Hospital has $2,108,482.98 remaining in unpaid medical bills for the treatment of Baril as alleged herein.

23. Martin's Point is the insurance provider for Baril and made certain representations to Plaintiff Hospital, through Passage Health, that Baril's medical bills in Mexico were covered by his insurance, and pretreatment authorizations were obtained through Martin's Point.

24. Martin's Point is accordingly liable and responsible for the outstanding charges.

## COUNT I
### Hospital Amerimed Cancun S A DE C V v. Martin's Point Health Care, Inc.
### (Promissory Estoppel)

25. Hospital Amerimed Cancun S A DE C V restates and re-alleges each and every allegation set forth in all prior paragraphs.

26. During Baril's treatment at Plaintiff Hospital in Mexico, Passage, on behalf of Hospital, remained in contact with Martin's Point, specifically a Martin's Point case manager, Kendra Bailey.

27. Ms. Bailey provided information and made representations and promises to Passage that Baril had full medical insurance benefits for the proposed, out of country emergency services proposed to be provided.

28. These promises and representations by Martin's Point were reasonably expected to induce action on the part of the Hospital to perform medical treatment for the benefit of Baril.

29. Martin's Point representations and promises to Hospital, through communications with Passage Health, in fact induced Hospital to act by providing medical treatment to Baril.

30. Hospital, through Passage, reasonably relied upon Ms. Bailey's statements and representations, and reasonably relied upon those representations she made on behalf of Martin's Point as an authorized case manager, and such promises and representations are binding since injustice can be avoided only by enforcement of those representations and promises.

31. Passage was later informed that a limitation on Baril's insurance policy limited out of country service to $25,000, but this was after the medical treatment had occurred and the bills had been incurred based on the prior representations and pre-authorizations.

32. Plaintiff Hospital has been severely prejudiced as a result of its reasonable reliance on Martin's Point's promises that there was applicable coverage for the proposed medical treatment thereafter incurred to treat and care for Baril in the Hospital, and Hospital continued to do so in reasonable reliance on the representations of Martin's Point and its authorized representatives.

33. As a result of Passage's reasonable reliance on Martin's Point's promises, Plaintiff Hospital has incurred costs and expenses in connection with the medical services rendered and medical supplies provided to Baril in the outstanding amount of $2,108,482.98.

34. Hospital has no reasonable prospect that Baril will be able to pay for the extensive medical services provided, and Hospital reasonably relied upon representations from Martin's Point to its detriment, that the medical bills incurred would be paid by Martin;s Point as the medical insurer for Baril.

## COUNT II
### Hospital Amerimed Cancun S A DE C V v. Martin's Point Health Care, Inc.
### (Negligent Misprepresenation)

35. Hospital Amerimed Cancun S A DE C V restates and re-alleges each and every allegation set forth in all prior paragraphs.

36. In the course of its business and/or professional operations, Martin's Point supplied false information to Passage Health and/or Hospital that guided the Hospital in its business transactions relating to its patient, Baril.

37. Hospital justifiably relied upon such false information in going forward with medical procedures for the health and benefit of Baril.

38. Martin's Point failed to exercise reasonable care or competence in obtaining or communicating information about its medical insurance benefits provided on behalf of Baril to Hospital, and Hospital has been damaged by such negligence.

WHEREFORE, Hospital Amerimed Cancun S A DE C V prays for judgment in its favor and against Defendant Martin's Point, in the amount of $2,108,482.98, pre-judgment interest and reasonable attorneys' fees, plus costs and for any and all other damages or additional relief as this Court deems just and appropriate.

### HOSPITAL AMERIMED CANCUN S A DE C V DEMANDS A TRIAL BY JURY ON ALL COUNTS.

Respectfully Submitted,
Plaintiff,
Hospital Amerimed Cancun S A DE C V,
By Its Attorney,

Mark A. Darling
Maine Bar #: 4802
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
781-309-1500
Darling@litchfieldcavo.com

7

**12**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:23-cv-00258-LEW |
| v. | ) ) | |
| MARTIN'S POINT HEALTH CARE, INC., | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT MARTIN'S POINT HEALTH CARE, INC.'S MOTION TO DISMISS PLAINTIFF HOSPITAL AMERIMED CANCUN S A DE C V'S COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ................................................................................ 4

III.  MEDICARE ADVANTAGE REGULATORY BACKGROUND ................................. 6

IV.   LEGAL STANDARDS ....................................................................................... 7

V.    ARGUMENT ..................................................................................................... 9

    A.    The Complaint Should be Dismissed because Hospital's Failure to
        Exhaust its Administrative Remedies Removes Subject Matter
        Jurisdiction. ........................................................................................... 9

        1.    The Medicare Act Requires Providers to Exhaust Administrative
            Remedies Prior to Filing Suit in Court. ..................................... 9

        2.    Hospital Must Exhaust its Administrative Remedies, Regardless of
            its Theory of Liability Because the Claims Arise Under the
            Medicare Act. ...................................................................... 11

    B.    The Complaint Should be Dismissed for Failure to Plead a Plausible
        Promissory Estoppel Claim ..................................................................... 13

    C.    The Complaint Should be Dismissed for Failure to Plead an Actionable
        Negligent Misrepresentation Claim. ........................................................ 15

VI.   CONCLUSION ................................................................................................ 17

## I.     <u>INTRODUCTION</u>

The Court should dismiss Plaintiff Hospital Amerimed Cancun S A DE C V's ("Hospital") threadbare Complaint (Dkt. 1) under both Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction, and Fed. R. Civ. P. 12(b)(6) because Hospital has alleged almost no facts, and no plausible facts, sufficient to support either of its two causes of action.

Hospital provided inpatient medical services in Mexico to an eligible Medicare beneficiary (Mr. Baril) enrolled in a Medicare Advantage health plan administered by Martin's Point.[1] Martin's Point paid Hospital pursuant to the beneficiary's Medicare Advantage plan's documented out-of-network payment limits. Hospital asserts that Martin's Point induced it to provide medical services to Mr. Baril by allegedly providing "assurances that Baril's medical treatment in Mexico was covered by insurance with Martin's Point" (Complaint, ¶ 17) and providing prior authorizations (which are a decision about whether care is medically necessary) to Hospital's medical biller, Passage Health International ("Passage Health"). Lacking any plausible facts that Martin's Point promised it would pay the entirety of the enormous claim that Hospital would eventually send to Martin's Point, what specific (future) services that Martin's Point promised to pay for, or in what amount, Hospital contends that Martin's Point now owes more than $2 million for the medical services Hospital purportedly rendered.

Except for very limited circumstances that do not apply here, Medicare does not pay for services furnished in a foreign country. *See* 42 C.F.R. 424 Subpart H ("Original Medicare Foreign Country Conditions for Payment"). Similarly, Medicare Advantage plans, described more fully in Section III, are not required to pay for medical claims incurred by eligible Medicare beneficiaries traveling outside the United States except: (a) as set forth under the Original Medicare Foreign

---

[1] A Medicare Advantage plan is a type of Medicare health plan offered to eligible Medicare beneficiaries through a private insurer pursuant to federal Medicare law and regulation.

Country Conditions for Payment, or (b) to the extent that the plan elects to offer a supplemental limited benefit for out-of-country emergency medical claims to their beneficiaries. Here, the circumstances of the services provided by Hospital do not meet the Original Medicare Foreign Country Conditions for Payment[2] and the sum sought by Hospital is more than eighty (80) times greater than Martin's Point's supplemental limited benefit for medical services rendered by an out-of-country provider as set forth in the beneficiary's plan documents.

As an initial matter, the Court does not have jurisdiction over Hospital's claims for payment of more than $2 million from a Medicare Advantage plan because Hospital (nor Passage Health) has not exhausted its administrative remedies, as it must do under federal Medicare law. The pervasive federal Medicare statutory and regulatory regime expansively regulates Medicare Advantage. The outcome of Hospital's demand for payment from Martin's Point for services to a Medicare Advantage beneficiary therefore requires the analysis, interpretation, and application of Medicare rules and regulations. Federal law mandates an administrative process to resolve Hospital's request for payment, which must be followed before Hospital can bring a lawsuit in federal court. These defined administrative steps are required for non-contracted providers, regardless of a plaintiff's cause of action or theory of liability. Hospital cannot plead around the federal regulatory regime. Because Hospital has not exhausted the mandatory administrative appeal process, the Court does not have jurisdiction and should dismiss this action under Fed. R. Civ. P. 12(b)(1). By doing so, the Court would join several courts that have dismissed lawsuits based on nearly identical circumstances, including where out-of-country health care providers asserted similar claims against Medicare Advantage plans.

---

[2] The beneficiary was not traveling within the United States or Canada when the services were provided by Hospital and Hospital was not more accessible to the beneficiary's residence within the United States. *See* 42 C.F.R. 424.122 and 422.123.

Without jurisdiction, the Court need not go further, but the Complaint also fails to meet the fundamental pleading requirements of Fed. R. Civ. P. 8(a) and should be dismissed under Fed. R. Civ. P. 12(b)(6). Hospital's Complaint fails to make plausible allegations against Martin's Point, and the perfunctory Complaint includes almost no factual details.

Hospital has not alleged sufficient facts as to each of the elements necessary to plausibly allege either of its two causes of action: promissory estoppel or negligent misrepresentation. Both causes of action rely on the same superficial allegations and fail for similar reasons. First, Hospital has not plausibly alleged facts that Martin's Point promised or represented to Hospital that Martin's Point would pay all medical claims submitted by Hospital, regardless of the type of services rendered, the duration of care, or the amount of those claims. Instead, Hospital simply repeats the mantra that Martin's Point told non-party Passage that Mr. Baril had "medical insurance benefits" and medical bills were "covered by insurance." None of these allegations establish a promise by Martin's Point to pay for any and all medical claims incurred by its beneficiary, and certainly not $2 million, an extraordinary sum that drastically exceeds the applicable payment limitation set forth in the beneficiary's Medicare Advantage plan documents. There are no allegations that Martin's Point promised that Mr. Baril's plan covered the total cost of out-of-country care, and it is unreasonable for a billing company with billing expertise to rely on any such representation.

Second, Hospital's purported reliance on Martin's Point's "pretreatment authorizations" referenced in the Complaint is not plausible. These documents plainly state "PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE." (Capitalization in the original.) There are no plausible factual allegations that such authorizations are promises or representations of unlimited payment for medical claims; in fact,

they are plainly not promises to pay every single claim submitted by Hospital.[3] The Court should therefore dismiss Hospital's Complaint with prejudice.

## II.   **FACTUAL BACKGROUND**[4]

Hospital is a Mexican Corporation that provides hospital and health care services to patients in Cancun, Mexico. Compl., at ¶ 1. Martin's Point is a Maine corporation that, among other things, offers Medicare Advantage health plans to Medicare-eligible beneficiaries in Maine and New Hampshire. *See id.* at ¶¶ 2, 23. Martin's Point Medicare Advantage health plan beneficiary Kim Paul Baril voluntarily admitted himself as a patient at Hospital between October 10, 2022 and November 22, 2022. *Id.* at ¶ 11. Throughout his inpatient stay, Mr. Baril was an eligible Medicare beneficiary covered by a Martin's Point Medicare Advantage plan. *See id.* at ¶ 3.

While at the Hospital, Mr. Baril signed a written agreement "acknowledging that he would be responsible for paying all monies owed to the provider and/or billing administrator." *Id.* at ¶ 12. Mr. Baril then provided his health insurance information to Hospital. *Id.*

Hospital authorized Passage Health, a Florida-based medical billing company presumably with knowledge of United States Medicare billing laws and regulations, to perform bill submission, pre-authorization and collection activities. *Id.* at ¶ 14. The Complaint alleges that Passage Health had communications with and received information from Martin's Point that Mr. Baril had medical insurance and procedures were covered by insurance. *Id.* The Complaint provides no detail about the content of the communications between Martin's Point and Passage Health. The Complaint

---

[3] Passage Health touts itself as "specializ[ing] in international medical claims receivables" and presumably understands Medicare and Medicare Advantage rules and regulations. *See* Passage Health International, About Us, *available at*: https://passagehi.com/about/ (last visited November 9, 2023).
[4] The Court must accept Hospital's allegation as true at the motion to dismiss stage, so Martin's Point describes the few factual allegations in the Complaint. But, in doing so, Martin's Point does not concede that any of the allegations are accurate.

contains no allegations that Martin's Point promised that Mr. Baril's plan reimbursed the total cost of out-of-country care. A copy of a prior authorization verification form that Martin's Point provided to Passage Health, referenced in the Complaint, is attached as Exhibit A.[5]

Hospital alleges that it only treated Mr. Baril after receiving assurances from its agent, Passage Health, that it would receive payment. *Id.* at ¶ 15. Passage Health received prior authorization forms and confirmation that Mr. Baril's plan included benefits for out-of-country emergency services. *Id.* at ¶ 14. Prior authorization forms do not confirm the availability of coverage or payment amounts, rather such forms affirm that the requested service is allowed to be billed to the health plan and the provider will be reimbursed according to the terms of the beneficiary's health plan. The prior authorization forms plainly state "PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE." Exhibit A. In addition, confirming that the beneficiary has out-of-country benefits does not equate to a promise of unlimited payment or an amount of payment.

Hospital asserts the cost of Mr. Baril's care totaled $2,132,982.98. *Id.* at ¶ 20. Mr. Baril submitted a payment of $25,072.88 while at the Hospital. *Id.* at ¶ 19. Consistent with the payment limits of Mr. Baril's Medicare Advantage plan, Martin's Point paid the full $24,500 limit for out-of-country emergency services, less the beneficiary's $500 deductible. *Id.* at ¶ 21.

Hospital alleges that Martin's Point never advised its United States-based medical biller, Passage Health, of the $25,000 Medicare coverage limit prior to rendering services. *Id.* at ¶ 17.

---

[5] Attaching the prior authorization form will not convert this motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 12(d) because the prior authorization verification forms are integral to the claims in the complaint. *See Brayman v. Porter*, No. 1:20-cv-00169-JAW, 2021 U.S. Dist. LEXIS 18640, at *3 (D. Me. Feb. 1, 2021).

The Complaint does not allege that Passage Health or Hospital followed or exhausted the Medicare administrative appeal process prior to filing this lawsuit.[6]

## III.   MEDICARE ADVANTAGE REGULATORY BACKGROUND

Medicare is the federal health insurance program administered by the Centers for Medicare and Medicaid Services ("CMS"). Medicare is a vast, complex, and heavily regulated healthcare program. The Medicare enabling statute is divided into four parts labeled Part A, Part B, Part C and Part D ("Medicare Act"). There are substantial applicable regulations and sub-regulatory guidance and manuals governing Medicare. Medicare beneficiaries can elect to receive their benefits directly from CMS ("Original Medicare") or, as described below, through a private health plan under the Medicare Advantage program.

Part C of the Medicare Act created Medicare Advantage, which provides Medicare beneficiaries with the option to enroll in private health plans to obtain Medicare benefits, as well as options for additional supplemental benefit coverage. 42 U.S.C. §§ 1395w-21−1395w-28. Medicare Advantage plans are administered by private health plans. Organizations that provide Medicare Advantage plans are called Medicare Advantage Organizations ("MAO"). 42 U.S.C. § 1395w-21. All of the benefits provided under the MAO plan – including supplemental benefits – are offered pursuant to a contract between CMS and the MAO. 42 U.S.C. § 1395w-27.

MAOs may also contract with health care providers to confirm the services that the provider will render to the Medicare Advantage plan's enrollees and the rate at which the Medicare Advantage plan will reimburse the provider for such services. These providers are known as contracted providers. *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc*., 30 F.4th 905, 909-910 (9th Cir. 2022). Medicare Advantage plans must also provide coverage for emergency

---

[6] Although the parties have engaged in discussions about payment, these discussions do not exhaust the required administrative appeals process.

6

**20**

services that are provided by non-contracted providers within the United States, and, only to the extent required by the beneficiary's benefits, outside of the United States; non-contracted providers are providers that have not entered into a contract with the MAO to confirm the services to be provided and the rates to be paid. 42 C.F.R. § 422.100(b)(1). Medicare regulations control the relationship between MAOs and non-contracted providers. *See* 42 C.F.R. §§ 422.100–422.138. And non-contracted providers, such as Hospital, "are obligated to accept the Medicare-approved rate as payment in full" to the extent benefits are available. *Glob. Rescue Jets,* 30 F.4th at 910 (*citing* 42 U.S.C. § 1395w-22(k)(1); 42 C.F.R. § 422.214(a)(1)).

Here, Martin's Point is a MAO that administers Medicare Advantage plans. When Mr. Baril received services at Hospital, he was a Medicare-eligible beneficiary enrolled in Martin's Point's Medicare Advantage plan. Hospital did not have a contract with Martin's Point when it provided services to Mr. Baril. Hospital is thus a "non-contracting provider" and subject to Medicare regulations. Martin's Point has paid Hospital the amount it is obligated to pay pursuant to the terms of Mr. Baril's Medicare Advantage plan, which is solely established by the amount of supplemental limited benefit offered under the plan because the services provided by Hospital to Mr. Baril did not meet the Original Medicare Foreign Country Conditions for Payment.[7]

## IV. **LEGAL STANDARDS**

Under Rule 12(b)(1), a Court should dismiss a complaint for lack of jurisdiction, and may even do so on its own, when "plaintiff's complaint, taken at face value, fail[s] to bring the case within the court's subject-matter jurisdiction." *Gordo-González v. United States*, 873 F.3d 32, 35 (1st Cir. 2017). In reviewing a Rule 12(b)(1) motion, a court "must credit the plaintiff's well-pled

---

[7] Original Medicare pays for emergency hospital services provided in a foreign country only when a Medicare beneficiary was in the United States when the emergency occurred or traveling through Canada and the foreign hospital was closer or more accessible to the beneficiary than a similar hospital in the United States. *See* 42 C.F.R. 424.122.

factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). The court "may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" *Id. (quoting Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996)). When a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of proving jurisdiction. *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007). If a motion to dismiss under Rule 12(b)(1) is successful, the court is without jurisdiction and need not consider any other basis for dismissal. *See Godin v. Schencks*, 629 F.3d 79, 83 (1st Cir. 2010) ("court has an obligation to inquire *sua sponte* into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting") (*quoting In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir. 1988).

The Court should dismiss a complaint under Rule 12(b)(6) where a plaintiff fails to satisfy the pleading standards of Rule 8(a). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In evaluating whether a complaint states a plausible claim, [courts] 'perform [a] two-step analysis.'" *Saldivar v. Racine,* 818 F.3d 14, 18 (1st Cir. 2016) (alteration in original) (*quoting Cardigan Mt. Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)). First, "the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012) (*citing Iqbal*, 556 U.S. at 678). Second, the court "must determine whether 'the factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 224. "A pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, *citing Bell Atl. Corp.*, 550 U.S. at 555.

## V.   ARGUMENT

### A.   The Complaint Should be Dismissed because Hospital's Failure to Exhaust its Administrative Remedies Removes Subject Matter Jurisdiction.

Hospital did not exhaust its administrative remedies, as it must, under the Medicare Act before filing suit, and therefore, the court does not have subject matter jurisdiction over any of the Hospital's causes of action in this lawsuit. 42 U.S.C. § 1395ff; 42 C.F.R. § 405.900 et. seq. Other courts have reached the same result in nearly identical cases. *See Glob. Rescue Jets*, 30 F.4th 905 (dismissing under 12(b)(1) breach of contract, good faith and fair dealing, quantum meruit, and California unfair competition claims brought by a non-contracted Mexican helicopter transport company against an MAO because plaintiff failed to exhaust its administrative remedies); *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584 (11th Cir. 2017) (dismissing under 12(b)(1) hospitals' unjust enrichment and quantum meruit claims against an MAO because the non-contracted hospitals failed to exhaust their administrative remedies). Moreover, 42 U.S.C. § 405(g), provides an exclusive means for an individual to seek judicial review "after any final decision of the [Secretary] made after a hearing to which he was a party" and thus removes diversity jurisdiction where a plaintiff has failed to exhaust its administrative remedies.

### 1.   The Medicare Act Requires Providers to Exhaust Administrative Remedies Prior to Filing Suit in Court.

Before filing a lawsuit, all providers, contracted and non-contracted, who have a dispute with an MAO over a claim for benefits must exhaust their administrative remedies. 42 U.S.C. § 405(g); 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.612; 42 U.S.C. § 405(h); *see Heckler v. Ringer*, 466 U.S. 602, 605 (1984). MAO determinations about whether to reimburse for treatment

are subject to administrative review. 42 U.S.C. § 1395w-22(g). The administrative review process applies to both basic and "optional supplemental benefits." 42 C.F.R. § 422.566(a).

Medicare's statutory and regulatory framework defines a series of appellate steps that providers must undergo, up to receiving a final decision from the Secretary of HHS. *Heckler,* 466 U.S. at 605. A "final decision" from the Secretary is necessary before judicial review. 42 U.S.C. § 405(g). Although the Medicare regulatory framework discussed in *Heckler* applies to original Medicare, courts have found that the regulatory framework applies to the Medicare Advantage program, as well. *Glob. Rescue Jets*, 30 F.4th at 914 (stating that "Section 1395w-22(g), like its statutory counterpart under original Medicare, conditions judicial review on a 'final decision' of the Secretary and channels judicial review through § 405(g), subject to the same jurisdictional limitations imposed by § 405(h)"); *see also McCue v. Sec'y of HHS*, No. 1:18-cv-00011-LEW, 2019 U.S. Dist. LEXIS 1505, at *8 (D. Me. Jan. 4, 2019). "[A] 'final decision' is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review." *Heckler,* 466 U.S. at 606. To exhaust its administrative remedies:

1. Hospital must request an organization determination from Martin's Point regarding what payments Hospital is entitled to receive according to benefits available under Mr. Baril's plan. 42 C.F.R. §§ 422.566(c)(1)(ii), 422.574(d).

2. Hospital must then challenge Martin's Point's payment determination by submitting a request for reconsideration to Martin's Point. 42 C.F.R. § 422.582.

3. If Martin's Point affirms its decision, Hospital must present the disputed issue for review to an independent review entity. 42 C.F.R. § 422.592.

4. If the independent entity affirms Martin's Point's decision, Hospital must request a hearing before an administrative law judge. 42 C.F.R. §§ 422.600, 422.602.

5. If the administrative law judge affirms Martin's Point's determination, Hospital must then request a review of the disputed issue by the Medicare Appeals Council. 42 C.F.R. § 422.608.

Only after the Medicare Appeals Council makes its decision is there a "final decision" which a District Court may review. *See* 42 U.S.C. § 405(h); 42 C.F.R. § 422.612.

Parties required to utilize the administrative review process include the Hospital as the assignee of the beneficiary, as well as "[a]ny other provider or entity determined to have an appealable interest in the proceeding." 42 C.F.R. § 422.574. For clarity, the administrative appeal process should be initiated by "[a]ny provider that furnishes, or intends to furnish, services to the enrollee." 42 C.F.R. § 422.566(c)(1)(ii).

This Court has recognized that plaintiffs challenging Medicare Advantage coverage decisions must exhaust administrative remedies. In *McCue v. Sec'y of HHS*, the plaintiff was a Medicare Advantage beneficiary who challenged his Medicare Advantage plan's denial of coverage for a laser ablation procedure. No. 1:18-cv-00011-LEW, 2019 U.S. Dist. LEXIS 1505, at *4 (D. Me. Jan. 4, 2019). There, the plaintiff properly exhausted all administrative review requirements, appealing his health plan's denial to an administrative law judge and then to the Medicare Appeals Council. Only then did the District Court have authority to review the Secretary's final decision under the Medicare Act. *Id.* at *8. By contrast, here, Hospital has failed to allege that it completed the administrative exhaustion processes required by federal law, and it has not done so. This Court does not have jurisdiction, and thus all of Hospital's causes of action must be dismissed under Rule 12(b)(1).

> **2.** **Hospital Must Exhaust its Administrative Remedies, Regardless of its Theory of Liability Because the Claims Arise Under the Medicare Act.**

Hospital must exhaust its administrative remedies before bringing any lawsuit, regardless of the legal theory asserted in the lawsuit, because challenging a reimbursement amount from a Medicare Advantage plan, of course, "arises under" the Medicare Act. *See* 42 U.S.C. § 1395w-22(g)(5). "[A] claim 'arises under' the . . . Medicare Act if 'the standing and the substantive basis'

for the claim derive[s] from that statute." *Parkview Adventist Med. Ctr. v. United States*, 2:15-cv-00320-JDL, 2016 U.S. Dist. LEXIS 68550, *18 (D. Me) *quoting Puerto Rican Ass'n of Physical Med. and Rehab., Inc. v. United States*, 521 F.3d 46, 48 (1st Cir. 2008) (stating the jurisdictional provision "mandates" the funneling of "virtually all legal attacks through the agency").

Hospital cannot evade complying with Medicare's comprehensive regulatory scheme, which requires administrative exhaustion, by fashioning its claim for reimbursement as state-law claims.[8] Other federal courts have recognized that state law claims, like these, "arise under" the Medicare Act because these are "cleverly concealed claims for benefits." *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141-42 (9th Cir. 2010) (upholding dismissal of Medicare beneficiaries' breach of contract and unjust enrichment claims because administrative appeals were not properly exhausted) (citation omitted).

Here, Hospital is challenging the reimbursement amount from a federal Medicare Advantage plan for the services provided to Mr. Baril. Even though Hospital attempts to circumvent the federal Medicare administrative exhaustion requirement by labeling its reimbursement challenges as "negligent misrepresentation" and "promissory estoppel," the theory asserted by a Plaintiff cannot undermine the clear federal requirements; Hospital's causes of action seek a payment for services from a Medicare Advantage plan. *Sarene Servs. v. Empire Blue Cross/Blue Shield*, No. 17-CV-5276 (DRH)(AYS), 2019 U.S. Dist. LEXIS 15605, at *19-20 (E.D.N.Y. Jan. 29, 2019) (breach of contract and unjust enrichment claims are still claims regarding "decisions by an MAO to not cover or reimburse for treatment"); *see also MJG Mgmt. Assocs. v. NHIC Corp.*, Civil Action No. 12-11414-FDS, 2013 U.S. Dist. LEXIS 66238, at *11

---

[8] Moreover, the regulatory scheme contemplates initial agency review of constitutional challenges arising out of Medicare scheme. *See Puerto Rican Ass'n of Physical Med. and Rehab., Inc. v. United States*, 521 F.3d 46, 48 (1st Cir. 2008) (plaintiff's failure to present constitutional claims arising under Medicare through the administrative review process resulted in lack of subject matter jurisdiction).

(D. Mass. May 9, 2013) (the plaintiff's claim concerning payments that were delayed or denied under the Medicare program "clearly arises under the Medicare Act").

Indeed, both the Ninth and Eleventh circuit have upheld dismissals of a non-contracted provider's state law claims against a MAO for failure to exhaust administrative remedies, based on nearly identical facts. *See Glob. Rescue Jets*, 30 F.4th at 918-20 (dismissing claims brought by a non-contracted Mexican helicopter transport company against an MAO because plaintiff failed to exhaust its administrative remedies); *see also Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.,* 875 F.3d 584 (11th Cir. 2017) (non-contracted providers' unjust enrichment and quantum meruit claims dismissed for failure to exhaust administrative remedies). Hospital is in the same position as the Mexican helicopter transport company in *Glob. Rescue Jets*, where the Ninth Circuit dismissed the claim after finding the non-contracted helicopter transport company was required, but failed, to exhaust its administrative remedies. For the same reasons, the Court should dismiss all of Hospital's causes of action against Martin's Point for lack of jurisdiction as Hospital has not exhausted its administrative remedies.

### B. The Complaint Should be Dismissed for Failure to Plead a Plausible Promissory Estoppel Claim.

The Court need not go further. But the Court should dismiss Count I for the additional reason that Hospital has not alleged plausible facts as to each of the essential elements of a promissory estoppel claim. Hospital's threadbare Complaint relies on conclusory allegations and offers only labels, conclusions, and recitations of the elements of a cause of action that fail to meet the pleading requirements of *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678.

Maine applies the doctrine of promissory estoppel set forth in the Restatement (Second) of Contracts: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or

forbearance is binding if injustice can be avoided only by enforcement of the promise." *Harvey v. Dow,* 962 A.2d 322, 325 (Me. 2008). To establish a claim for promissory estoppel there must be a "promise" allegedly relied upon. *Id.* at 325 *quoting* Restatement (Second) of Contracts § 90(1) (1981)). Hospital has not alleged that Martin's Point promised to pay over $2 million in medical fees that Hospital demands in this lawsuit.

Instead, Hospital contends that Passage Health contacted Martin's Point for insurance verification before performing services, and only performed services after it received assurances that "proposed medical procedures in Mexico were covered by its medical insurance." Compl. at ¶ 18. Hospital alleges no plausible facts that Martin's Point promised it would pay the entirety of the bill that Hospital would send Martin's Point, or what specific (future) services that Martin's Point promised to pay, or in what amount. Rather, Hospital only vaguely alleges that a Martin's Point call center employee "provided information and made representations and promises" to Passage Health about Mr. Baril's benefits. Compl., at ¶ 27. This is insufficient and simply parrots the elements of Hospital's cause of action. *See Old Town Util. & Tech. Park, LLC v. Consol. Edison & Sols., LLC*, 2019 U.S. Dist. LEXIS 168043, *38-39 (D. Me.) (dismissing promissory estoppel claim because the complaint's allegations concerning defendant's promises were conclusory and merely cited the elements of promissory estoppel); *see also Aton Ctr., Inc. v. Blue Cross & Blue Shield of S.C.*, No. 3:20-cv-00496-WQH-BGS, 2020 U.S. Dist. LEXIS 149292, at *17 (S.D. Cal. Aug. 17, 2020) (dismissing promissory estoppel claim because vague allegations that the defendant negligently represented coverage payment amounts is insufficient when the plaintiff failed to establish what treatment the defendant promised to pay for).

Moreover, Passage Health received prior authorization to treat Mr. Baril from Martin's Point—not a promise or verification of payment. Exhibit A.[9] Obtaining prior authorization for medical services is not a promise to pay any particular amount for services. Hospital has not plausibly alleged facts that Martin's Point promised to pay for any and all services, at any amount, or that Hospital reasonably relied on or expected payment for over $2 million of billed charges. Because Hospital relies on conclusory allegations, without facts, the promissory estoppel claim should be dismissed.

### C.   The Complaint Should be Dismissed for Failure to Plead an Actionable Negligent Misrepresentation Claim.

The Court should dismiss Count II because Hospital has also failed under Fed. R. Civ. P. 8(a) to allege plausible facts necessary to allege the essential elements of a negligent misrepresentation claim. To allege negligent misrepresentation, Hospital must plausibly allege facts that (1) there was a transaction in which Martin's Point had a pecuniary interest, (2) Martin's Point provided false information to Hospital in connection with the transaction, (3) without exercising reasonable care or competence, and (4) Hospital justifiably relied on that false information in that transaction. *Rand v. Bath Iron Works Corp.*, 832 A.2d 771, 774 (Me. 2003) (*citing Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990)). A negligent misrepresentation claim, similar to promissory estoppel, requires the defendant to "make a false representation of present fact and that the plaintiff justifiably rely on the representation as true." *Berry v. WorldWide*

---

[9] The Court may properly consider Exhibit A with this motion to dismiss because it is a document central to Hospital's claim and sufficiently referenced within the Complaint. Compl., at ¶¶ 14, 18, 23; *see Newman v. Lehman Bros. Holdings*, 901 F.3d 19, 25 (1st Cir. 2018). The First Circuit recognizes that a "court's inquiry into the viability of [a plaintiff's] allegations should not be hamstrung simply because the plaintiff fails to append to the complaint the very document upon which by [the plaintiff's] own admission the allegations rest." *Brayman v. Porter*, No. 1:20-cv-00169-JAW, 2021 U.S. Dist. LEXIS 18640, at *3-4 (D. Me. Feb. 1, 2021) *quoting Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

*Language Res., Inc.,* 716 F. Supp. 2d 34, 48 (D. Me. 2010), *citing Kearney v. J.P. King Auction Co.*, 265 F.3d 27, 34 n.8 (1st Cir. 2001).

Hospital alleges that Martin's Point supplied false information that guided its business transactions when providing medical procedures for the health and benefit of Baril. Compl., at ¶¶ 36-37. This mere recitation of the elements of negligent misrepresentation is insufficient because Hospital failed to identify ***what*** Martin's Point communicated and what was false. *Howell v. Advantage Payroll Servs.*, 2017 U.S. Dist. LEXIS 27530, *20-21 (D. Me.) (negligent misrepresentation claim dismissed because it did "little more than plead the black letter elements"). Vague references to Passage Health's communications with Martin's Point are insufficient to establish the false information Martin's Point purportedly supplied, and there are no plausible allegations providing any facts about what information was purportedly supplied, other than a conclusory statement that Martin's Point stated that Mr. Baril had "insurance benefits." Without more, the Complaint falls far short of meeting federal pleading standards.

Moreover, Hospital has not alleged any plausible facts that it justifiably relied on the (unspecified) information Martin's Point provided. Hospital's agent—upon information and belief, an experienced medical biller—unreasonably disregarded or failed to communicate to Hospital the fact that there is ***no*** Medicare coverage for the out-of-country medical services purportedly rendered here. Hospital's agent also unreasonably disregarded the fact that to the extent a Medicare Advantage plan even offers out-of-country coverage to beneficiaries, that coverage necessarily will be subject to a payment limit (and corresponding beneficiary payment liability) if it communicated to Hospital that it would receive over $2 million in payment from Martin's Point. Considering the Medicare Act's requirements, industry knowledge about Medicare and Medicare Advantage payment, and Hospital's agent's alleged expertise in medical billing, any

reliance on Martin's Point's prior authorization forms as promises of payment for any and all of the services, at an undefined and unlimited cost, was unreasonable. Indeed, the prior authorization forms cited in the Complaint plainly state "PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE." Exhibit A. No reasonable medical biller would presume that the prior authorizations affirmed the payment amount. Having failed to allege plausible facts sufficient to state a claim for negligent misrepresentation, the Court should dismiss Count II.

## VI.    **CONCLUSION**

For the reasons stated above, Martin's Point respectfully requests that the Court dismiss the Complaint.

Dated: November 13, 2023                Respectfully submitted,

Martin's Point Health Care, Inc.

By its attorneys,

*/s/ Timothy J. McKeon*
Timothy J. McKeon, Maine Bar # 005379
Brian Dunphy (*pro hac vice*)
Laura Martin (*pro hac vice*)
Mintz, Levin, Cohn, Ferris, Glovsky
 and Popeo, P.C.
One Financial Center
Boston, MA 02111
Tel. (617) 542-6000
Fax (617) 542-2241
TJMcKeon@mintz.com
BDunphy@mintz.com
LEMartin@mintz.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2023, I served a true and correct copy of the

foregoing document via the Court's Electronic Filing System, which will electronically send

notice to all counsel of record.

*/s/ Timothy J. McKeon*

Timothy J. McKeon

# EXHIBIT A



10/24/2022

HOSPITAL AMERIMED CANCUN S A DE C V
701 E Commercial Blvd Fl4
Fort Lauderdale, FL 33334

This letter is to inform you that the following service has been **AUTHORIZED:**

Member Name: KIM BARIL
Member ID: ██████████
Member DOB: ██████████
Authorization #: IP0088637040
Authorization Date: 10/19/2022
Approved Service:
**1  Admission Inpatient –  0120**
Number of treatments of days authorized: **7 Days**
Authorization Period: **10/10/2022- 10/17/2022**
Approved Service:
**2  Admission Inpatient –  0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/17/2022- 10/22/2022**
Approved Service:
**3  Admission Inpatient –  0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/22/2022- 10/27/2022**

Provider Name(s): HOSPITAL AMERIMED CANCUN S A DE C V
Facility (if applicable): HOSPITAL AMERIMED CANCUN S A DE C V

**Please be aware that this service is authorized only for the number of visits or days listed above and only during the authorization period listed above. This approval is subject to Medicare coding requirements for coverage. In addition, you must be a Martin's Point Generations Advantage member at the time of the service.**

**MEMBERS:**

Y0044_2013_035 CMS Approved 4/16/2013
Martin's Point Generation Advantage
PO Box 9746  | Portland, Maine 04104  | MartinsPoint.org

**34**



Please be aware that out-of-network providers have not been reviewed or credentialed by Martin's Point Health Care.  If you have questions about this authorization, your benefits, or billing, please call a Member Services Representative at 1-866-544-7504. TTY call 711.  We are open 8am to 8pm (EST), seven days a week from October 1 - February 14, and 8am to 8pm (EST) Monday - Friday February 15 – September 30

**PROVIDERS:**
If you have questions about this authorization, billing or benefits available to our members, please call Generations Advantage Provider Inquiry Department at 1-888-732-7364.  TTY call 711. We are open Monday through Friday from 8 am to 5 pm.

To submit claims, please mail to:

Martin's Point Generations Advantage Claims Department
PO Box 11410
Portland, Maine 04104-7410

PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE.

 Health Management Department

## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V, <br><br> Plaintiff, <br><br> v. <br><br> MARTIN'S POINT HEALTH CARE, INC., <br><br> Defendant. | Civil Action No. 2:23-cv-00258-LEW |

### PLAINTIFF, HOSPITAL AMERIMED CANCUN S A DE C V, RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

NOW COMES the Plaintiff, Hospital Amerimed Cancun S A DE C V ("Hospital"), and hereby opposes Defendant's Motion to Dismiss Plaintiff's Complaint.

### I.     INTRODUCTION

This Court should deny Defendant's Motion to Dismiss Plaintiff's Complaint because the pleadings allege plausible facts to support Plaintiff's Complaint for promissory estoppel and negligent misrepresentation.  The defendant's insistence upon demanding all of the facts of the case in the context of a Motion to Dismiss is beyond the pale where a plausible set of facts – not each and every fact that will come out in discovery or at trial – has been plead that support each of the essential elements of the state law claims in this diversity case.[1]

---

[1] While the plaintiff certainly understands that presenting facts outside of the complaint is not necessary in this matter, since the defendant has raised facts about its authorizations being limited in scope (even though not alleged as such in the complaint) the plaintiff takes this opportunity to provide the Court with specific, additional facts under oath showing that what happened here was a pattern of continued approvals for ongoing medical treatment and not a solitary authorization for all of the alleged treatment. AFFIDAVIT.

From approximately October 10, 2022 to November 22, 2022, Kim Paul Baril received medical care at Hospital Amerimed Cancun S.A. De C.V. See Pl. Compl. ¶ 11. Baril executed a written agreement regarding his applicable health insurance. See *Id*. at ¶12.  Passage Health, the company in charge of billing, pre-authorization and collection for the Hospital, regularly communicated with Martin's Point regarding coverage for Mr. Baril's medical treatment. See *Id*. at ¶¶ 13-14. Martin's Point provided assurances that Mr. Baril's treatment would be covered under his insurance. See *Id*. at ¶15. In fact, one of Mr. Baril's providers confirmed with a Martin's Point representative, on November 8, 2022, via phone call that Mr. Baril's insurance provided coverage for in-patient international hospital admissions. *See* Exhibit "A", Affidavit at ¶6. Additionally, the Martin's Point representative confirmed an out-of-network hospital stay would incur a co-pay of $380 per day, for the first five days of treatment. See *Id*.

After Mr. Baril's treatment concluded, Martin's Point refused to reimburse Hospital for Mr. Baril's treatment, citing a claimed limit of $25,000. See *Id*. at ¶¶ 16-17. Hospital performed medical services to Mr. Baril totaling $2,132,982.98. Defendant only paid $24,500.00 towards Mr. Baril's medical bills, leaving a remaining $2,108.482.98 in unpaid medical bills. See *Id*. at ¶¶ 19-22.

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) allows courts to dismiss a claim if Plaintiff's Complaint "fails to state a claim upon relief can be granted." FRCP 12(b)(6). To overcome a motion to dismiss, the "[c]omplaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,678 (2009)(citing *Twombly*, 550 U.S. 544, 570 (2007)). The court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of plaintiff[s]." *Gargano v. Liberty Intern.*

*Underwriters, Inc.*, 572 F.3d 45, 48 (1ˢᵗ Cir. 2009)(citing *Fitzgerald v. Harris*, 549 F.3d 46,52 (1ˢᵗ Cir. 2008)). Further, to overcome a motion to dismiss, "the complaint must allege 'a plausible entitlement to relief.'" *Id*. at 49 (citing *Fitzgerald*, 549 F.3d at 52).

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must set forth 'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery.'" *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996) (quoting *Gooley v. Mobile Oil Corp.,* 851 F.2d 513, 514 (1st Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (internal quotations and citations omitted).

When the sufficiency of a complaint is challenged by a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the factual allegations are sufficient "to raise a right to relief above the speculative level."  *Id.*, 127 S.Ct. at 1965.  Under the new "plausibility" standard enunciated by the Court in *Bell Atlantic,* to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," moving "across the line from conceivable to plausible."  *Id.*, 127 S.Ct. at 1960.  In sum, the plaintiff's pleaded facts must "'possess enough heft to sho[w] that [they are] entitled to relief.' " *Clark v. Boscher,* 514 F.3d 107, 112 (1st Cir. 2008) (quoting *Bell Atlantic,* 127 S.Ct. at 1959).

Applying this standard, the Court should deny Defendant's Motion to Dismiss as Plaintiff's Complaint alleges facts sufficient to plausibly state a claim for relief.[2] There are two claims

---

[2] While it is improper for respondent to interject additional facts into its Response to Defendant's Motion to Dismiss, Plaintiff anticipates a multitude of additional facts will arise during the discovery process that will provide further support for Plaintiff's well-pleaded allegations in the Complaint. Namely, recorded phone conversations, signed authorization forms, and verified affidavits will be submitted spelling out additional facts. Nonetheless, such affidavits

presented, both of which contain plausible factual allegations that Plaintiff sought authorization and approval for coverage from Martin's Point. Plaintiff spoke to Martin's Point representatives on the phone who represented that coverage for the treatment was authorized.  Relying on these conversations, Plaintiff performed extensive medical care to its patient. While Martin's Point may try to downplay the extent of its representation and authorizations, that is all the stuff of discovery and trial, not a Motion to Dismiss.

### A. Subject Matter Jurisdiction Exists because complete diversity exists amongst the parties and the amount plead exceeds $75,000.

Defendant's Motion to Dismiss should be denied because Plaintiff's Complaint properly invokes this Court's diversity jurisdiction because the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. §1332 provides this court with jurisdiction over matters that "exceed[] the sum or value of $75,000, exclusive of interest and costs, and is between - citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. §1332(a)(2); *Servicios Azucareros de Venezuela, C.A. v. John Deere*, 702 F.3d 794 (2012) (upholding a Venezuelan Corporation's right to bring suit against a domestic corporation).

Hospital is a Mexican Corporation that provides hospital and health to patients in Cancun, Mexico, and in this case, a U.S. citizen. See Pl. Compl. ¶ 1. Defendant, Martin's Point Health Care, Inc. ("Martin's Point"), is a Maine corporation with a principal place of business in Portland, Maine. See *Id.* at ¶ 2. Additionally, Defendant possesses continuous and systematic contacts with the State of New Hampshire. See *Id.* Lastly, the Complaint seeks reimbursement for $2,132,982.98 in medical expenses. See *Id.* at ¶ 20.

---

are not necessary on a motion to dismiss. But, since the plaintiff has injected facts beyond the Complaint, the Defendant is responding to those facts out of an abundance of caution. The affidavits are based on business records and an attested version will be filed with the Court in the next day or two.

Under Medicare, it is indeed correct to say in the broad sense that coverage for medical expenses incurred outside the country is not provided. However, Martin Point's global supplemental coverage for emergencies is distinct from Medicare coverage and operates independently of Medicare guidance or restrictions. Contrary to Martin Point's claim, the foreign hospital is not a non-contracted provider. Martin's Point is applying inappropriate standards in asserting that the foreign hospital fails to comply with administrative requirements for non-contracted providers. The foreign hospital is categorized as a non-Medicare, non-contracted provider, a distinction from a non-contracted provider within the United States. Martin Point's assertion that the foreign hospital is a non-contracted provider is inaccurate and applies only to U.S. national hospitals. "Fact Sheet: Medicare Coverage outside the United States", available at https://www.medicare.gov/Pubs/pdf/11037-Medicare-Coverage-Outside-United-States.pdf   (last updated Jan. 2024). While the international claim pertains to out-of-network services, Martin Point's policies cover out-of-network care in emergency situations, aligning with the practices of numerous other Medicare insurers who offer coverage in addition to what Medicare provides. Additionally, Martin Point, like other insurers, is free to offer services for out-of-network international claims for emergency services and it is properly alleged that they did so here and later reneged on those representations that coverage was available to the patient for care in Mexico.

Simply put, Medicare regulations do not extend beyond the U.S, and foreign hospitals are not provided with the option to opt in or out of Medicare. *See Id.* Martin's Point offers policies with emergency benefits overseas that are not governed by Medicare. While Martin's Point Medicare Advantage Plan must adhere to Medicare rules, while seeking reimbursement for eligible care in the United States, it cannot use that as a shield when faced with a claim for a foreign hospital based on negligent misrepresentation and promissory estoppel.  The foreign hospital

cannot enter into a contract with any Medicare Advantage Organization (MAO) since Medicare rules do not apply outside the United States and its territories. *See Id.* Therefore, the foreign hospital is not obliged to accept Medicare-approved rates as full payment, as asserted by Martin's Point.

The multiple specifics of the various communications and authorizations are the stuff of discovery, and eventually are the stuff of a jury trial to determine whether or not the Plaintiff can prove each and every element of the claims asserted. A motion to dismiss need not contain each and every fact asserted in discovery or at the time of trial, but only a plain statement of plausible facts to support a claim. This complaint does so, but even if the court finds it lacking in enough detail, the plaintiff should be allowed to amend to state a whole host of acts as set forth in the attached Affidavit.

Defendant's Motion makes reference to two cases, *Global Rescue Jets, LLC v. Kaiser Foundation Health Plan, Inc.*, 30 F.4th 905 (2022) and *Tenant Healthsystem GB, Inc. v. Care Improvement Plus South Central*, 875 F.3d 584 (M.D. Fl. 2021), to support its allegation that the court is unable to exercise jurisdiction in the present matter. However, these cases are readily distinguishable from Plaintiff's Complaint.

Here, Plaintiff's claims are based in tort and equity. Plaintiff is not making a claim for breach of contract, in contrast to claims at issue in *Global Rescue* and *Tenant Healthsystem*. Instead, Plaintiff is only asserting claims for promissory estoppel and negligent misrepresentation. Further, Defendant continuously claims that Medicare rules apply to Plaintiff's Complaint, but this is not a Medicare situation. Defendant continues to erroneously claim that Medicare rules apply to a non-Medicare hospital and non-Medicare treatment.

**B. Plaintiff's Promissory Estoppel claim alleges facts upon which relief can be granted because Hospital reasonably relied on the representations made by Martin's Point regarding Kim Baril's insurance coverage when it rendered medical care.**

A party is estopped from denying the existence of a promise where:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Harvey v. Dow*, 962 A.2d 322 (Me. 2008)(citing Restatement (Second) of Contracts §90(1)(1981)).

Hospital's Complaint alleges Passage, on behalf of Hospital, remained in contact with Martin's Point during Mr. Baril's hospital stay. *See* Exhibit "A." Martin's Point provided information to Passage that Mr. Baril possessed full medical benefits for the proposed, out of country emergency services. Martin's Point's statements and representations were reasonably likely to induce Hospital's actions. Based on this information, Hospital reasonably relied upon this information when rendering medical care to Mr. Baril. See Pl. Compl. ¶ 20.

Throughout Mr. Baril's treatment, a Passage representative remained in contact with Martin's Point, who provided representations to Passage that Mr. Baril possessed full coverage for the provided out of country emergency services. See Pl. Compl. ¶¶ 26-27. In fact, a Passage representative spoke with a representative for Martin's Point on the phone for the purpose of verifying Mr. Baril's insurance coverage. *See* Exhibit "A." Based on these representations, Hospital proceed to provide medical care to Mr. Baril. Further, Hospital reasonably relied upon the representations made by Martin's Point and rendered medical care to Mr. Baril at the Hospital. If alternative information was provided by Martin's Point, Plaintiff could have taken a different

course of action. Instead, this reliance resulted in severe prejudice to Plaintiff as Defendant failed to provide coverage for the outstanding amount of medical services.

As such, the Complaint and attachments hereto allege facts sufficient to plausibly state a promissory estoppel claim.

### C. Negligent representation claim states a claim upon which relief can be granted because Martin's Point representative falsely claimed that Mr. Baril's insurance provided coverage for international in-patient admissions.

In order to prove a claim of negligent representation, Plaintiff must show:

      1)      Plaintiff was supplied false information by the defendant;

      2)      of a material fact;

      3)      the defendant did not exercise reasonable care or competent in communicating the information; and

      4)      the plaintiff justifiably relied on that false information causing him economic harm.

*Knowlton v. Shaw*, 791 F.Supp.2d 220, 261 (D. Maine 2011)(citing *Binette v. Dryer liberty Ass'n*, 688 A.2d 898, 903 (Me. 1996)).

Martin's Point represented to the hospital that it had no limitations on insurance coverage, and therefore induced the hospital to provide care. A representative for Martin's Point told Plaintiff that Mr. Baril's insurance provided coverage for international in-patient admissions. Martin's Point did not misrepresentation coverage, in fact, they repeatedly represented coverage existed. This information was material to Plaintiff as Plaintiff is an international care provider. Martin's Point acted negligently by providing this false information to Plaintiff, knowing Plaintiff was likely to rely on it when providing care to Mr. Baril. Plaintiff suffered economic harm as a direct

result of this false information as it rendered millions of dollars in medical care to Mr. Baril, based on the reasonable information provided to it by Martin's Point.

As such, the Complaint and attachments hereto allege facts sufficient to plausibly state a claim for negligent representation.

**III.**    <u>**CONCLUSION**</u>

Defendant's Motion must be denied as Plaintiff's Complaint alleges facts sufficient to plausibly state a claim for relief. Plaintiff therefore respectfully request that the Court deny Defendant's Motion to Dismiss. If the Court feels that the factual allegations are too meager, then the plaintiff seeks an opportunity to file an amended complaint to set forth in greater detail the course of events that occurred and the communications it had with the defendant over a period of time.

Respectfully submitted,

Hospital Amerimed Cancun S A DE C V

By its attorney,

/s/ Mark A. Darling

Mark A. Darling, Maine Bar # 4802
Litchfield Cavo, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
Darling@litchfieldcavo.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 3, 2024, I served a true and correct copy of the foregoing

document via the Court's Electronic Filing System, which will electronically send notice to all

counsel of record.

/s/  Mark A. Darling              
Mark A. Darling

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2:23-cv-00258-LEW |
| MARTIN'S POINT HEALTH CARE, INC., | ) ) | |
| Defendant. | ) ) ) | |

### PLAINTIFF'S AFFIDAVIT

1.     Kim Baril's benefits were first verified on October 13, 2022.  See Exhibit "A."

2.     An inpatient authorization request form was completed on October 18, 2022. See Exhibit "B"

3.     Martin's Point sent Kim Baril's initial records to Plaintiff via an initial authorization approval on 10/24/22. An inpatient admission was authorized for 10/10/22 – 10/27/22. See Exhibit "C."

4.     Kim Baril's additional records were sent via fax on 10/28/22 via a second authorization approval. An inpatient admission was authorized for 10/17/22 – 11/01/22. See Exhibit "D."

5.      Additional records were produced via a third authorization approval on 11/02/22. An inpatient admission was authorized for 10/10/22 – 11/07/22. See Exhibit "E."

6.      On 11/08/22, one of Ms. Baril's providers confirmed with a Martin's Point representative via a phone call that Ms. Baril's insurance provided coverage for in-patient international hospital admissions. However, an out of network stay required a completed authorization form and if approved, Ms. Baril would incur a $380 co-pay per day, through the first five days of treatment.

7.      On 11/08/22, Kim Baril's benefits were verified a second time via a Verification of Benefits form and a call. See Exhibit "F."

8.      On 11/10/22, additional records were produced via a fourth authorization approval. These records indicated an inpatient admission authorized for 10/10/22 – 11/14/22. See Exhibit "G."

9.      On 11/15/22, more records were produced via a fifth authorization approval. These records indicated an inpatient admission authorized for 10/20/22 – 11/20/22. See Exhibit "H."

10.     A final set of records were produced via a sixth authorization approval on 11/21/22. These records indicated an inpatient admission authorized for 10/10/22 – 11/26/22. See Exhibit "I."

11.     On 12/22/22, Martin's Point was billed for the claim, then followed up on the claim status on February 2nd and February 22nd. On 02/22/23, Martin's Point advised the claim was received on 01/04/23 and processed on 02/07/23. Payment was issued on 02/17/23, totaling $24,500.00, with a $90.00 co-pay, due to the limitation for out of country services of $25,000.00 (CK#2699311). See Exhibit "J."

12.      It was advised that the member was liable for the remaining balance. This payment posted to the system on 03/10/23. Further, a $25,072.88 deposit was obtained from the patient on November 22, 2022.

**Verification**

I, Eindar Khant  verify that I am authorized to make this affidavit on behalf of Hospital Amerimed Cancun S A DE C V,and that, I am an employee or agent of Hospital Amerimed Cancun S A DE C V and have been authorized to make this affidavit on its behalf and that the facts above set forth are true and correct to the best of  my knowledge, information and belief.

Date: January 3, 2024

# EXHIBIT A

Today's Date: ___10/13/2022___

**Verification of Benefits**



Patient Name: ___Kim P Baril_____ DOB: ▮▮▮▮▮▮_____

Hospital: ___Hospital Amerimed Cancun S.A de C.V___ Diagnostic : Pneumonia

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**Insurance Company**

Insurance Co.: Martins Point Healthcare_____ Policy ID: 10000091519

Type of Policy: _Medicare Advantage HMO Plan_____ Effective Date: 01/01/2022

Deductible: __$0.00 USD_____ Met: __$0.00 USD_____

Copay: __$380.00 USD Per day (Days1-5)_____ Co-Insurance: __100%

MOOP: _$6500.00 USD_____ Met: _$ 0.00 USD_____

Max. Benefit: Unlimited_____

Hospital Admission Pre-Auth/Pre-Cert/Case Notification Require: YES __X__/NO___ Ref #_____

Air Ambulance: YES__X_/ NO_____ Pre-Authorization: YES _X___/NO_____ Max. Benefit: Unlimited

Rep. Name: _Theresa_____ Phone #: __888-732-7364_____ Call Ref #: _3190982_____

Address to Submit Claim: _____ Po Box- 11410_____

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**Assistance Company (If any)**

Insurance Co.: _____ Rep. Name: _____

GOP Request: YES_____/NO___ Cost Estimate Request: YES___/NO___ GOP Amount: _____

Address to Submit Claims: _____

Case #: _____ Call Ref. #: _____

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**Additional Notes or Comments:**

Please charge the patient a deposit of Copay $380.00 USD per day (Days1-5) and a Moop not more than$ 6500.00 USD

Please provide us with the following as soon as possible:

- PHI Forms (make sure the forms are legible and includes complete patient contact information, including an email address), Travel Itinerary
- Medical Records
- Claim Forms
- Please notify us as soon as the patient gets discharge.

    Verified by: Santhosh.S

Disclaimer: The medical provider acknowledges that a quote of benefits and/or authorization does not guarantee payment or verify eligibility. Payment of benefits are subject to all terms, conditions, limitations, and exclusions of the member's contract at time of service.  Nothing herein should be construed as a binding agreement to validate health benefits.  The information provided may result in non- coverage of services due to the fact that Passage Health International (PHI) relies on information being provided at the time of verification, which may not include coverage information for highest level of specificity.  PHI assumes no liability on the accuracy of the information being provided.  If any doubt provider is encouraged to collect from the patient at the time of service.

# EXHIBIT B

**Martin's Point Health Care**　　　　**Inpatient Authorization Request Form**

Health Plan: ☐ US Family Health Plan  ☒ Generations Advantage　　Today's Date: _10/18/22_

**MEMBER**
Last Name: _BARIL_　　　　　First Name: _Kim_
DOB: ▮▮▮▮▮▮▮ Policy #: _____　　Actual/Anticipated Inpatient Admit Date: _____

**FORM SUBMITTER**
Name: _Arturo Velasco Gutiérrez_　　Email: _admissions@amerimedhospitals.com_
Phone: _+52-998-881-3400 Ext 3014_　　_concierge.cancun@amerimedhospitals.com_
Fax: _____

**HOSPTIAL UTILIZATION REVIEW CONTACT INFORMATION**
Name: _Hospital Amerimed Cancún_　　Phone: _+52 9989913400 Ext 3004_　Fax: _____

**ATTENDING PROVIDER**
Last Name: _Velasco Gutiérrez_　　First Name: _Gut. Velasco Arturo_
Provider NPI: _____
Physical Address: _Av. Tulum Sur No 260 Mza 4, 5, 9. SM9_
Mailing Address (if different from physical address): _____

**SERVICING FACILITY**
Name: _Hospital Amerimed Cancun_
NPI#: _____　　　　Tax ID #: _____
Physical Address: _Av. Tulum Sur No 260 M9A 4 5 y 9 SM 7_
Mailing Address (if different from physical address): _admissions@amerimedhospitals.com_
Phone: _+52-998-881-3400_　　Fax: _____

**REQUESTED SERVICE**
☒ Inpatient Medical Admission　☐ Inpatient Rehabilitation Facility　☐ Long Term Care Acute Hospital
☐ Inpatient Surgical Admission　☐ Skilled Nursing Facility
☐ Obstetric　　　　　　　　☐ Swing Bed
ICD Diagnosis Codes: _E.C.M.O and C.R.R.T support_
CPT/HCPC Codes (if applicable for surgical admission): _____

**Fax completed form to 1-207-828-7857 INCLUDING SUPPORTING CLINICAL DOCUMENTATION**
**DO NOT REQUEST OUTPATIENT SERVICES USING THIS FORM.**

# EXHIBIT C



**MARTIN'S POINT**

**HEALTH CARE**

| | |
|---|---|
| **To:** UM Dept | **From:** Nancy Keegan |
| **Company:** Amerimed | **Date:** 10/24/22 2:01:23 PM |
| **Fax Number:** 954-376-6163 | **Pages (Including cover):** 4 |
| **Re:** Approval & NRD RE: KB | |

**Please see next page.**

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this message in error please notify us immediately by telephone. Thank you.

**Notes:**

NOTIFICATION OF APPROVAL AND NEXT REVIEW DATE for Inpatient
Authorizations

Member Name: KIM BARIL
Member DOB:

Please see the attached approval letter. The next continued stay
review is being requested on 10/27/22. Please fax a clinical update
or discharge information at that time to the Utilization Review team
at 207-828-7859.

Any questions pertaining to this authorization may be directed to
our Health Management Department's Utilization Management Phone Line
at 877-746-2888.

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain
information that is privileged, confidential and exempt from disclosure under applicable law. If the reader
of this message is not the intended recipient, you are hereby notified that any dissemination, distribution
or copying of this communication is strictly prohibited. If you received this message in error please notify
us immediately by telephone. Thank you.



## Martin's Point®
### HEALTHCARE

10/24/2022

HOSPITAL AMERIMED CANCUN S A DE C V
701 E Commercial Blvd Fl4
Fort Lauderdale, FL 33334

This letter is to inform you that the following service has been **AUTHORIZED:**

Member Name: KIM BARIL
Member ID: 10000087906
Member DOB:
Authorization #: IP0088637040
Authorization Date: 10/19/2022
Approved Service:
**1  Admission Inpatient -  0120**
Number of treatments of days authorized: **7 Days**
Authorization Period: **10/10/2022- 10/17/2022**
Approved Service:
**2  Admission Inpatient -  0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/17/2022- 10/22/2022**
Approved Service:
**3  Admission Inpatient -  0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/22/2022- 10/27/2022**

Provider Name(s): HOSPITAL AMERIMED CANCUN S A DE C V
Facility (if applicable): HOSPITAL AMERIMED CANCUN S A DE C V

**Please be aware that this service is authorized only for the number of visits or days listed above and only during the authorization period listed above. This approval is subject to Medicare coding requirements for coverage. In addition, you must be a Martin's Point Generations Advantage member at the time of the service.**

**MEMBERS:**

Y0044_2013_035 CMS Approved 4/16/2013
Martin's Point Generation Advantage
PO Box 9746  | Portland, Maine 04104  | MartinsPoint.org



MARTIN'S POINT®
HEALTHCARE

Please be aware that out-of-network providers have not been reviewed or credentialed by Martin's Point Health Care. If you have questions about this authorization, your benefits, or billing, please call a Member Services Representative at 1-866-544-7504. TTY call 711. We are open 8am to 8pm (EST), seven days a week from October 1 - February 14, and 8am to 8pm (EST) Monday - Friday February 15 – September 30

**PROVIDERS:**
If you have questions about this authorization, billing or benefits available to our members, please call Generations Advantage Provider Inquiry Department at 1-888-732-7364. TTY call 711. We are open Monday through Friday from 8 am to 5 pm.

To submit claims, please mail to:

Martin's Point Generations Advantage Claims Department
PO Box 11410
Portland, Maine 04104-7410

PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE.

Health Management Department

Martin's Point Generation Advantage
PO Box 9746 | Portland, Maine 04104 | MartinsPoint.org

# EXHIBIT D



# MARTIN'S POINT™
## HEALTHCARE

| | |
|---|---|
| **To:** UR Dept | **From:** Jane Lockhart |
| **Company:** Amerimed | **Date:** 10/28/22  1:14:27 PM |
| **Fax Number:** 954-376-6163 | **Pages (Including cover):** 4 |
| **Re:** approval KB | |

**Please see next page.**

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this message in error please notify us immediately by telephone. Thank you.

**Notes:**

NOTIFICATION OF APPROVAL AND NEXT REVIEW DATE for Inpatient
Authorizations

Name: BARIL, KIM DOB:

Please see the attached approval letter. The next continued stay
review is being requested on 11/1/22. Please fax a clinical update
or discharge information at that time to the Utilization Review team
at 207-828-7859.

Any questions pertaining to this authorization may be directed to
our Health Management Department's Utilization Management Phone Line
at 877-746-2888.

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain
information that is privileged, confidential and exempt from disclosure under applicable law. If the reader
of this message is not the intended recipient, you are hereby notified that any dissemination, distribution
or copying of this communication is strictly prohibited. If you received this message in error please notify
us immediately by telephone. Thank you.



**MARTIN'S POINT**
HEALTHCARE

10/28/2022

HOSPITAL AMERIMED CANCUN S A DE C V
701 E Commercial Blvd Fl4
Fort Lauderdale, FL 33334

This letter is to inform you that the following service has been **AUTHORIZED:**

Member Name: KIM BARIL
Member ID: 10000087906
Member DOB: ▮▮▮▮▮▮▮
Authorization #: IP0088637040
Authorization Date: 10/19/2022
Approved Service:
**1  Admission Inpatient -  0120**
Number of treatments of days authorized: **7 Days**
Authorization Period: **10/10/2022- 10/17/2022**
Approved Service:
**2  Admission Inpatient -  0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/17/2022- 10/22/2022**
Approved Service:
**3  Admission Inpatient -  0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/22/2022- 10/27/2022**
Approved Service:
**4  Admission Inpatient -  0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/27/2022- 11/01/2022**

Provider Name(s): HOSPITAL AMERIMED CANCUN S A DE C V
Facility (if applicable): HOSPITAL AMERIMED CANCUN S A DE C V

**Please be aware that this service is authorized only for the number of visits or days listed above and only during the authorization period listed above. This approval is subject to Medicare coding requirements for coverage. In addition, you must be a Martin's Point Generations Advantage member at the time of the**

Y0044_2013_035 CMS Approved 4/16/2013
Martin's Point Generation Advantage
PO Box 9746  | Portland, Maine 04104  | MartinsPoint.org

**62**



MARTIN'S POINT®
HEALTHCARE

**service.**

**MEMBERS:**
Please be aware that out-of-network providers have not been reviewed or credentialed by Martin's Point Health Care. If you have questions about this authorization, your benefits, or billing, please call a Member Services Representative at 1-866-544-7504. TTY call 711. We are open 8am to 8pm (EST), seven days a week from October 1 - February 14, and 8am to 8pm (EST) Monday - Friday February 15 – September 30

**PROVIDERS:**
If you have questions about this authorization, billing or benefits available to our members, please call Generations Advantage Provider Inquiry Department at 1-888-732-7364. TTY call 711. We are open Monday through Friday from 8 am to 5 pm.

To submit claims, please mail to:

Martin's Point Generations Advantage Claims Department
PO Box 11410
Portland, Maine 04104-7410

PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE.

Health Management Department

# EXHIBIT E



## MARTIN'S POINT™
### HEALTHCARE

| | |
|---|---|
| **To:** UR Dept | **From:** Kendra Bailey |
| **Company:** Amerimed Cancun | **Date:** 11/ 2/22  4:43:43 PM |
| **Fax Number:** 954-376-6163 | **Pages (Including cover):** 4 |
| **Re:** Approval and NRD KB | |

Please see next page.

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this message in error please notify us immediately by telephone. Thank you.

**Notes:**

NOTIFICATION OF APPROVAL AND NEXT REVIEW DATE for Inpatient
Authorizations

Member Name: KIM BARIL
Member ID: 10000087906
Member DOB: 

Please see the attached approval letter. The next continued stay
review is being requested on 11/7/22. Please fax a clinical update
or discharge information at that time to the Utilization Review team
at 207-828-7859.

Any questions pertaining to this authorization may be directed to
our Health Management Department's Utilization Management Phone Line
at 877-746-2888.

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain
information that is privileged, confidential and exempt from disclosure under applicable law. If the reader
of this message is not the intended recipient, you are hereby notified that any dissemination, distribution
or copying of this communication is strictly prohibited. If you received this message in error please notify
us immediately by telephone. Thank you.



**MARTIN'S POINT**®
HEALTHCARE

11/02/2022

HOSPITAL AMERIMED CANCUN S A DE C V
701 E Commercial Blvd Fl4
Fort Lauderdale, FL 33334

This letter is to inform you that the following service has been **AUTHORIZED:**

Member Name: KIM BARIL
Member ID: 10000087906
Member DOB: 10/19/1955
Authorization #: IP0088637040
Authorization Date: 
Approved Service:
**1 Admission Inpatient - 0120**
Number of treatments of days authorized: **7 Days**
Authorization Period: **10/10/2022- 10/17/2022**
Approved Service:
**2 Admission Inpatient - 0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/17/2022- 10/22/2022**
Approved Service:
**3 Admission Inpatient - 0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/22/2022- 10/27/2022**
Approved Service:
**4 Admission Inpatient - 0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/27/2022- 11/01/2022**
Approved Service:
**5 Admission Inpatient - 0120**
Number of treatments of days authorized: **6 Days**
Authorization Period: **11/01/2022- 11/07/2022**

Provider Name(s): HOSPITAL AMERIMED CANCUN S A DE C V
Facility (if applicable): HOSPITAL AMERIMED CANCUN S A DE C V

Y0044_2013_035 CMS Approved 4/16/2013
Martin's Point Generation Advantage
PO Box 9746 | Portland, Maine 04104 | MartinsPoint.org



**MARTIN'S POINT®**
HEALTHCARE

**Please be aware that this service is authorized only for the number of visits or days listed above and only during the authorization period listed above. This approval is subject to Medicare coding requirements for coverage. In addition, you must be a Martin's Point Generations Advantage member at the time of the service.**

**MEMBERS:**
Please be aware that out-of-network providers have not been reviewed or credentialed by Martin's Point Health Care. If you have questions about this authorization, your benefits, or billing, please call a Member Services Representative at 1-866-544-7504. TTY call 711. We are open 8am to 8pm (EST), seven days a week from October 1 - February 14, and 8am to 8pm (EST) Monday - Friday February 15 – September 30

**PROVIDERS:**
If you have questions about this authorization, billing or benefits available to our members, please call Generations Advantage Provider Inquiry Department at 1-888-732-7364. TTY call 711. We are open Monday through Friday from 8 am to 5 pm.

To submit claims, please mail to:

Martin's Point Generations Advantage Claims Department
PO Box 11410
Portland, Maine 04104-7410

PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE.

Health Management Department

Martin's Point Generation Advantage
PO Box 9746 | Portland, Maine 04104 | MartinsPoint.org

# EXHIBIT F

Today's Date: ___11/08/2022___

## Verification of Benefits



**PASSAGE**
HEALTH INTERNATIONAL

Patient Name: ___Kim P Baril___ DOB: ██████

Hospital: ___Hospital Amerimed Cancun S.A de C.V___ Diagnostic : Pneumonia

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

### Insurance Company

Insurance Co.: Martins Point Healthcare          Policy ID: 10000091519

Type of Policy: _Medicare Advantage HMO Plan_          Effective Date: 01/01/2022

Deductible: _$0.00 USD_          Met: _$0.00 USD_

Copay: _$380.00 USD Per day (Days1-5)_          Co-Insurance: _100%_

MOOP: _$6500.00 USD_          Met: _$ 0.00 USD_

Max. Benefit: Unlimited_____

Hospital Admission Pre-Auth/Pre-Cert/Case Notification Require: YES__X__/NO___ Ref #_____

Air Ambulance: YES__X_/ NO____   Pre-Authorization: YES _X___/NO_____ Max. Benefit: Unlimited

Rep. Name: Chris____ Phone #: ___888-732-7364___          Call Ref #: ___3212505___

Address to Submit Claim: ___Po Box- 11410_____

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

### Assistance Company (If any)

Insurance Co.: _____          Rep. Name: _____

GOP Request: YES____/NO___ Cost Estimate Request: YES___/NO___ GOP Amount: _____

Address to Submit Claims: _____

Case #: _____ Call Ref. #: _____

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**Additional Notes or Comments:**

Please charge the patient a deposit of Copay $380.00 USD per day (Days1-5) and a Moop not more than$ 6500.00 USD

Please provide us with the following as soon as possible:

- Please notify us as soon as the patient gets discharge.

        Verified by: Santhosh.S

Disclaimer: The medical provider acknowledges that a quote of benefits and/or authorization does not guarantee payment or verify eligibility. Payment of benefits are subject to all terms, conditions, limitations, and exclusions of the member's contract at time of service.  Nothing herein should be construed as a binding agreement to validate health benefits.  The information provided may result in non- coverage of services due to the fact that Passage Health International (PHI) relies on information being provided at the time of verification, which may not include coverage information for highest level of specificity.  PHI assumes no liability on the accuracy of the information being provided.  If any doubt provider is encouraged to collect from the patient at the time of service.

# EXHIBIT G



# MARTIN'S POINT™
## HEALTHCARE

| | |
|---|---|
| **To:** Lokesh S | **From:** Jane Lockhart |
| **Company:** Internation Billing Office | **Date:** 11/10/22 7:42:18 AM |
| **Fax Number:** 954-376-6163 | **Pages (Including cover):** 4 |
| **Re:** approval LB | |

**Please see next page.**

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this message in error please notify us immediately by telephone. Thank you.

**Notes:**

NOTIFICATION OF APPROVAL AND NEXT REVIEW DATE for Inpatient
Authorizations

BARIL, KIM

Please see the attached approval letter. The next continued stay
review is being requested on  11/14/22. Please fax a clinical update
or discharge information at that time to the Utilization Review team
at 207-828-7859.

Any questions pertaining to this authorization may be directed to
our Health Management Department's Utilization Management Phone Line
at 877-746-2888.

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain
information that is privileged, confidential and exempt from disclosure under applicable law. If the reader
of this message is not the intended recipient, you are hereby notified that any dissemination, distribution
or copying of this communication is strictly prohibited. If you received this message in error please notify
us immediately by telephone. Thank you.



**MARTIN'S POINT®**
HEALTHCARE

11/10/2022

HOSPITAL AMERIMED CANCUN S A DE C V
701 E Commercial Blvd Fl4
Fort Lauderdale, FL 33334

This letter is to inform you that the following service has been **AUTHORIZED:**

Member Name: KIM BARIL
Member ID: 10000087906
Member DOB: ▆▆▆▆▆▆
Authorization #: IP0088637040
Authorization Date: 10/19/2022
Approved Service:
**1 Admission Inpatient - 0120**
Number of treatments of days authorized: **7 Days**
Authorization Period: **10/10/2022- 10/17/2022**
Approved Service:
**2 Admission Inpatient - 0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/17/2022- 10/22/2022**
Approved Service:
**3 Admission Inpatient - 0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/22/2022- 10/27/2022**
Approved Service:
**4 Admission Inpatient - 0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/27/2022- 11/01/2022**
Approved Service:
**5 Admission Inpatient - 0120**
Number of treatments of days authorized: **6 Days**
Authorization Period: **11/01/2022- 11/07/2022**
Approved Service:
**6 Admission Inpatient - 0120**
Number of treatments of days authorized: **7 Days**

Y0044_2013_035 CMS Approved 4/16/2013
Martin's Point Generation Advantage
PO Box 9746 | Portland, Maine 04104 | MartinsPoint.org



**MARTIN'S POINT®**
HEALTHCARE

Authorization Period: **11/07/2022- 11/14/2022**

Provider Name(s): HOSPITAL AMERIMED CANCUN S A DE C V
Facility (if applicable): HOSPITAL AMERIMED CANCUN S A DE C V

**Please be aware that this service is authorized only for the number of visits or days listed above and only during the authorization period listed above. This approval is subject to Medicare coding requirements for coverage. In addition, you must be a Martin's Point Generations Advantage member at the time of the service.**

**MEMBERS:**
Please be aware that out-of-network providers have not been reviewed or credentialed by Martin's Point Health Care. If you have questions about this authorization, your benefits, or billing, please call a Member Services Representative at 1-866-544-7504. TTY call 711. We are open 8am to 8pm (EST), seven days a week from October 1 - February 14, and 8am to 8pm (EST) Monday - Friday February 15 – September 30

**PROVIDERS:**
If you have questions about this authorization, billing or benefits available to our members, please call Generations Advantage Provider Inquiry Department at 1-888-732-7364. TTY call 711. We are open Monday through Friday from 8 am to 5 pm.

To submit claims, please mail to:

Martin's Point Generations Advantage Claims Department
PO Box 11410
Portland, Maine 04104-7410

PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE.

Health Management Department

Martin's Point Generation Advantage
PO Box 9746 | Portland, Maine 04104 | MartinsPoint.org

**75**

# EXHIBIT H



## MARTIN'S POINT™
### HEALTHCARE

| | |
|---|---|
| **To:** Aamir Abass | **From:** Jane Lockhart |
| **Company:** Hosp Amerimed Cancun | **Date:** 11/15/22  8:44:51 AM |
| **Fax Number:** 954- 376-6163 | **Pages (Including cover):** 4 |
| **Re:** approval KB | |

Please see next page.

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this message in error please notify us immediately by telephone. Thank you.

## Notes:

Name: BARIL, KIM DOB: █████████

Please see the attached approval letter. The next continued stay review is being requested on 11/20/22. Please fax a clinical update or discharge information at that time to the Utilization Review team at 207-828-7859.

Any questions pertaining to this authorization may be directed to our Health Management Department's Utilization Management Phone Line at 877-746-2888.

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this message in error please notify us immediately by telephone. Thank you.



MARTIN'S POINT*
HEALTHCARE

11/15/2022

HOSPITAL AMERIMED CANCUN S A DE C V
701 E Commercial Blvd Fl4
Fort Lauderdale, FL 33334

This letter is to inform you that the following service has been **AUTHORIZED:**

Member Name: KIM BARIL
Member ID: 10000087906
Member DOB: ▮▮▮▮▮▮▮
Authorization #: IP0088637040
Authorization Date: 10/19/2022
Approved Service:
**1  Admission Inpatient -  0120**
Number of treatments of days authorized: **7 Days**
Authorization Period: **10/10/2022- 10/17/2022**
Approved Service:
**2  Admission Inpatient -  0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/17/2022- 10/22/2022**
Approved Service:
**3  Admission Inpatient -  0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/22/2022- 10/27/2022**
Approved Service:
**4  Admission Inpatient -  0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/27/2022- 11/01/2022**
Approved Service:
**5  Admission Inpatient -  0120**
Number of treatments of days authorized: **6 Days**
Authorization Period: **11/01/2022- 11/07/2022**
Approved Service:
**6  Admission Inpatient -  0120**
Number of treatments of days authorized: **7 Days**

Y0044_2013_035 CMS Approved 4/16/2013
Martin's Point Generation Advantage
PO Box 9746  | Portland, Maine 04104  | MartinsPoint.org

**79**



**MARTIN'S POINT®**
HEALTH CARE

Authorization Period: **11/07/2022- 11/14/2022**
Approved Service:
**7 Admission Inpatient - 0120**
Number of treatments of days authorized: **6 Days**
Authorization Period: **11/14/2022- 11/20/2022**

Provider Name(s): HOSPITAL AMERIMED CANCUN S A DE C V
Facility (if applicable): HOSPITAL AMERIMED CANCUN S A DE C V

**Please be aware that this service is authorized only for the number of visits or days listed above and only during the authorization period listed above. This approval is subject to Medicare coding requirements for coverage. In addition, you must be a Martin's Point Generations Advantage member at the time of the service.**

**MEMBERS:**
Please be aware that out-of-network providers have not been reviewed or credentialed by Martin's Point Health Care. If you have questions about this authorization, your benefits, or billing, please call a Member Services Representative at 1-866-544-7504. TTY call 711. We are open 8am to 8pm (EST), seven days a week from October 1 - February 14, and 8am to 8pm (EST) Monday - Friday February 15 – September 30

**PROVIDERS:**
If you have questions about this authorization, billing or benefits available to our members, please call Generations Advantage Provider Inquiry Department at 1-888-732-7364. TTY call 711. We are open Monday through Friday from 8 am to 5 pm.

To submit claims, please mail to:

Martin's Point Generations Advantage Claims Department
PO Box 11410
Portland, Maine 04104-7410

PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE.

Health Management Department

Martin's Point Generation Advantage
PO Box 9746 | Portland, Maine 04104 | MartinsPoint.org

# EXHIBIT I



# MARTIN'S POINT

### HEALTHCARE

| | |
|---|---|
| **To:** International Billing Office | **From:** Kendra Bailey |
| **Company:** Amerimed Cancun | **Date:** 11/21/22 3:04:17 PM |
| **Fax Number:** 954-376-6163 | **Pages (Including cover):** 4 |
| **Re:** Approval and NRD KB | |

Please see next page.

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this message in error please notify us immediately by telephone. Thank you.

**Notes:**

NOTIFICATION OF APPROVAL AND NEXT REVIEW DATE for Inpatient
Authorizations

Member Name: KIM BARIL
Member ID: 10000087906
Member DOB:

******* With next update, can you please include notes about
member's discharge plan from the hospital. ****

Please see the attached approval letter. The next continued stay
review is being requested on 11/26/22. Please fax a clinical update
or discharge information at that time to the Utilization Review team
at 207-828-7859.

Any questions pertaining to this authorization may be directed to
our Health Management Department's Utilization Management Phone Line
at 877-746-2888.

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain
information that is privileged, confidential and exempt from disclosure under applicable law. If the reader
of this message is not the intended recipient, you are hereby notified that any dissemination, distribution
or copying of this communication is strictly prohibited. If you received this message in error please notify
us immediately by telephone. Thank you.



**MARTIN'S POINT®**
HEALTHCARE

11/21/2022

HOSPITAL AMERIMED CANCUN S A DE C V
701 E Commercial Blvd Fl4
Fort Lauderdale, FL 33334

This letter is to inform you that the following service has been **AUTHORIZED:**

Member Name: KIM BARIL
Member ID: 10000087906
Member DOB: █████████
Authorization #: IP0088637040
Authorization Date: 10/19/2022
Approved Service:
**1 Admission Inpatient - 0120**
Number of treatments of days authorized: **7 Days**
Authorization Period: **10/10/2022- 10/17/2022**
Approved Service:
**2 Admission Inpatient - 0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/17/2022- 10/22/2022**
Approved Service:
**3 Admission Inpatient - 0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/22/2022- 10/27/2022**
Approved Service:
**4 Admission Inpatient - 0120**
Number of treatments of days authorized: **5 Days**
Authorization Period: **10/27/2022- 11/01/2022**
Approved Service:
**5 Admission Inpatient - 0120**
Number of treatments of days authorized: **6 Days**
Authorization Period: **11/01/2022- 11/07/2022**
Approved Service:
**6 Admission Inpatient - 0120**
Number of treatments of days authorized: **7 Days**

Y0044_2013_035 CMS Approved 4/16/2013
Martin's Point Generation Advantage
PO Box 9746 | Portland, Maine 04104 | MartinsPoint.org

**84**



**MARTIN'S POINT®**
HEALTHCARE

Authorization Period: **11/07/2022- 11/14/2022**
Approved Service:
**7 Admission Inpatient - 0120**
Number of treatments of days authorized: **6 Days**
Authorization Period: **11/14/2022- 11/20/2022**
Approved Service:
**8 Admission Inpatient - 0120**
Number of treatments of days authorized: **6 Days**
Authorization Period: **11/20/2022- 11/26/2022**

Provider Name(s): HOSPITAL AMERIMED CANCUN S A DE C V
Facility (if applicable): HOSPITAL AMERIMED CANCUN S A DE C V

**Please be aware that this service is authorized only for the number of visits or days listed above and only during the authorization period listed above. This approval is subject to Medicare coding requirements for coverage. In addition, you must be a Martin's Point Generations Advantage member at the time of the service.**

**MEMBERS:**
Please be aware that out-of-network providers have not been reviewed or credentialed by Martin's Point Health Care. If you have questions about this authorization, your benefits, or billing, please call a Member Services Representative at 1-866-544-7504. TTY call 711. We are open 8am to 8pm (EST), seven days a week from October 1 - February 14, and 8am to 8pm (EST) Monday - Friday February 15 – September 30

**PROVIDERS:**
If you have questions about this authorization, billing or benefits available to our members, please call Generations Advantage Provider Inquiry Department at 1-888-732-7364. TTY call 711. We are open Monday through Friday from 8 am to 5 pm.

To submit claims, please mail to:

Martin's Point Generations Advantage Claims Department
PO Box 11410
Portland, Maine 04104-7410

PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE.

Health Management Department

Martin's Point Generation Advantage
PO Box 9746 | Portland, Maine 04104 | MartinsPoint.org

# EXHIBIT J

THIS CHECK IS PROTECTED BY A VOID PANTOGRAPH, MICROPRINT SIGNATURE LINE AND A HEAT SENSITIVE PADLOCK ICON.  ADDITIONAL SECURITY FEATURES ARE LISTED ON BACK.

**MARTIN'S POINT GENERATIONS ADVANTAGE, INC.**

(207)-774-5801

331 VERANDA STREET · P.O. BOX 9746
Portland, ME  04104-5040


**Bank**
America's Most Convenient Bank®

| DATE | AMOUNT |
|---|---|
| 02/17/2023 | $***24,543.46 |

***Twenty Four Thousand Five Hundred Forty Three and 46/100 Dollars

PAY
TO THE
ORDER
OF:

HOSPITAL AMERIMED CANCUN S A DE C V
PO Box 39662
Att: International Billing Office
Fort Lauderdale,FL 33339

CLAIMS ACCOUNT
VOID AFTER 90 DAYS

AUTHORIZED SIGNATURE

*Handwritten notes:*
- C-51832
- Hospital Amerimed Cancun
- C-51832 → 24500
- C-54498 → 43.46.

**MARTIN'S POINT** HealthCare   GENERATIONS ADVANTAGE

# Provider Remittance

2/17/2023 1:12 PM

**Payee:** HOSPITAL AMERIMED CANCUN S A DE C V

PO Box 39662, Att: International Billing Office

Fort Lauderdale, FL 33339

**Tax ID:** ▮

Pay Date: 2/17/2023

Generations Advantage Program

**Check Number:** ▮

**Provider:** HOSPITAL AMERIMED CANCUN S A DE C V

BARIL, KIM   Member ID: 10000087906   Claim: 23004000072   Status: PAID   Patient #: OOC IP

| # | From Date | CPT-Mod | Amt Billed | Qty | Contractual Adjustment | Allowed | Copay | Coins. | Withheld | Other Ins | **Sequestration Reduction | Net | |
|---|-----------|---------|-----------|-----|------------------------|---------|-------|--------|----------|-----------|---------------------------|-----|--|
| 1 | 10/10/2022 | WW102 | $2,158,055.86 | 1 | $.00 | $2,158,055.86 | $90.00 | $0.00 | $0.00 | $0.00 | $500.00 | $24,500.00 | Benefit Limits Exceeded |
| | | | $2,158,055.86 | 1 | $.00 | $2,158,055.86 | $90.00 | $0.00 | $0.00 | $0.00 | $500.00 | $24,500.00 | Payment interest for eligible claim not paid in 30 days: $43.46 |

**Disbursement Funds by Check/EFT Number**

| | |
|---|---|
| Check/EFT #: | 2699311 |
| Amt Billed: | $2,158,055.86 |
| Disallowed: | $0.00 |
| Allowed: | $2,158,055.86 |
| Witheld: | $0.00 |
| Co-Pay: | $90.00 |
| **Sequestration Reduction | $500.00 |
| Co-Insurance: | $0.00 |
| Benefit Amount: | $25,000.00 |
| COB Applied: | $0.00 |
| Capped Amount: | $0.00 |
| Simple Interest: | $43.46 |
| Retraction/Adjustment: | $0.00 |
| Refund Received (Info Only): | $0.00 |
| Check Amount: | $24,543.46 |

2

MARTIN'S POINT
HealthCare

GENERATIONS ADVANTAGE

# Provider Remittance

2/17/2023 1:12 PM

*Not Covered Amount is Negative Because Allowed Amount is Greater than the Amount Billed

## ** Payment Reduction Due to Sequestration

*The Budget Control Act of 2011 requires mandatory cuts to Federal spending on health programs—including Medicare. Accordingly, Martin's Point Generations Advantage will apply a payment reduction to all claims with dates of service on or after April 1, 2013. The reduction is applied after any member applicable coinsurance or deductibles, and any applicable Secondary Payment adjustments. Questions? Please call 1-888-732-7364.*

- *Non-contract providers have the right to request a reconsideration of the plan's denial of payment;*
- *Non-contract providers have 60 calendar days from the remittance notification date to file the reconsideration;*
- *Non-contract providers must include a signed Waiver of Liability form holding the enrollee harmless regardless of the outcome of the appeal, form available at:*
  *https://medicare.martinspoint.org/member-toolkit/resources*
- *Non-contract providers should include documentation such as a copy of the original claim, remittance notification showing the denial, and any clinical records and other documentation that supports the provider's argument for reimbursement;*
- *Non-contract providers must mail the reconsideration to the following address:*

**GA Member Services – Appeals Coordinator**
**Martin's Point Health Care**
**PO BOX 8832**
**Portland ME 04104-9861**

**If there are any questions regarding this payment, please contact us at 1-888-732-7364.** **Appeals must be written and sent within 60 days of receipt**

3

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:23-cv-00258-LEW |
| v. | ) ) | |
| MARTIN'S POINT HEALTH CARE, INC., | ) ) | |
| Defendant. | ) ) ) | |

### DEFENDANT MARTIN'S POINT HEALTH CARE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF HOSPITAL AMERIMED CANCUN S A DE C V'S COMPLAINT

Plaintiff Hospital Amerimed Cancun S A DE C V's ("Hospital") Opposition falls far short of demonstrating that the Complaint (Dkt. 1) should survive Defendant Martin's Point Health Care Inc.'s ("Martin's Point") Motion to Dismiss (Dkt. 19).  First, Hospital does not and cannot explain why it is relieved of the obligations to follow the heavily regulated Medicare program's administrative steps to resolve a dispute about payment from a Medicare Advantage plan for services purportedly rendered to a Medicare Advantage beneficiary, and it does not offer a single statute, regulation, case, or other authority that supports its argument.  Rather, it simply contends that foreign non-contracted providers are different from domestic non-contracted providers, but that distinction is irrelevant under Medicare regulations.  (Dkt. 26, at p. 4-6).  Hospital's Opposition does nothing to rebut Martin's Point's detailed explanation that this Court does not have jurisdiction because Hospital has not exhausted its administrative remedies.  Indeed, Hospital's arguments are almost entirely devoid of citations to statutes, case law, or regulations.

Second, Hospital has not plausibly alleged facts sufficient to state either of its causes of action. Apparently acknowledging the deficiency of its allegations, Hospital inappropriately (and untimely) submitted an affidavit of "additional facts" along with its Opposition. (Dkt. 27). Yet, even if the Court were to accept this affidavit, the attached additional documents only undermine Hospital's assertion that it justifiably or reasonably relied on any of Martin's Point's representations about guaranteeing payment for all of the charges that Hospital submitted to Martin's Point.  This additional information provided by Hospital demonstrates that Hospital's complaint should be dismissed with prejudice because any amendment will be futile.

## I.    Hospital is Not Exempt from Medicare's Administrative Exhaustion Requirement.

Hospital advances no authority demonstrating why it need not exhaust Medicare's administrative process to dispute a payment from a Medicare Advantage plan for the care offered

to a Medicare beneficiary.[1/]   Hospital must follow Medicare's dispute processes before filing a lawsuit, as Martin's Point demonstrated in its Motion to Dismiss. (Dkt. 19, at p. 9-13).   Hospital cannot bill a Medicare Advantage plan and then reject Medicare's processes and procedures for challenging the payment it received, and it cites no authority allowing it to evade Medicare's requirements.   Instead, Hospital makes the unsupported argument that a foreign non-contracted provider is different from a domestic non-contracted provider.   But Hospital does not explain why that difference is legally significant or relieves Hospital of its obligation to follow Medicare's administrative review process for a dispute about Medicare payments for a Medicare beneficiary. Each of Hospital's arguments fail for several reasons.

First, Hospital incorrectly argues—again without any citation supporting its assertion— that Martin's Point offers supplemental coverage for emergencies that is separate from Medicare and that it "operates independently of Medicare guidelines or restrictions."  (Dkt. 26, at p. 5). Contrary to Hospital's contention, federal Medicare regulations unequivocally demonstrate that the Medicare program regulates a Medicare Advantage plan's supplemental coverage.  42 U.S.C. § 1395w-22(a)(3) (providing authority to offer supplemental benefits); 42 C.F.R. § 422.566(a) (requiring Medicare Advantage plans to have a process for making timely organizational determinations regarding both basic and supplemental benefits); *see also Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 918 (9th Cir. 2022) ("supplemental benefits offered under a Medicare Advantage plan constitute benefits that are offered under . . . the Medicare Act. . . . Congress made determinations regarding an enrollee's entitlement to basic *and*

---

[1/]     Because this is a dispute about payment from a Medicare Advantage plan, Medicare regulations require administrative review by experts in the regulatory scheme before review by federal courts. Hospital has presented no basis—no case law or regulatory support—for its assertion that Medicare regulations do not apply. Even if the Court accepts Hospital's baseless assertion that Medicare does not apply to its dispute about the payment it received, any question about the applicability of Medicare regulations is required to be presented for administrative review before a federal court can have subject matter jurisdiction.

supplemental benefits subject to [Medicare Advantage's] administrative review scheme."). Because the Medicare program regulates supplemental benefits offered by a Medicare Advantage plan, any dispute about payment related to those benefits is subject to Medicare's administrative exhaustion requirement, as Martin's Point demonstrated. (Dkt. 19, at p. 9-11).

In addition, even Hospital's threadbare allegations show that before submitting payment to Martin's Point, Hospital had actual knowledge that Mr. Baril was an eligible Medicare beneficiary covered by a Medicare Advantage plan. (Dkt. 1 at ¶ 3). Hospital asked Mr. Baril to sign a written agreement "acknowledging that he would be responsible for paying all monies owed to the provider and/or billing administrator." *Id.* at ¶ 12. On this form, Mr. Baril provided his Medicare Advantage plan information to Hospital. *Id.* Rather than billing Mr. Baril, Hospital authorized Passage Health to submit bills to Martin's Point. *Id.* at ¶¶ 13, 16.

This is significant because the administrative review process applies to hospitals that are the assignee of the beneficiary, as well as "[a]ny other provider or entity determined to have an appealable interest in the proceeding." 42 C.F.R. § 422.574. The administrative appeal process may be initiated by Mr. Baril's assignee, including "[a]ny provider that furnishes, or intends to furnish, services to the enrollee" such as Hospital. 42 C.F.R. § 422.566(c)(1)(ii); Letter from Jerry Mulcahy, Dir., Medicare Enrollment and Appeals Group, CMS, to Non-Contract Provider Access to Medicare Administrative Appeals Process, (Sept. 3, 2020), available at: https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/ncpdp_hpms_memo_09-23-2020_final.pdf.

Second, Hospital further argues that the cases Martin's Point cited to support administrative exhaustion are distinguishable because they are breach of contract cases. This argument misstates these cases, and plaintiffs in these cases brought claims similar to Hospital's claims here. *See*

*Glob. Rescue Jets*, 30 F.4th 905 (dismissing under 12(b)(1) breach of contract, good faith and fair dealing, quantum meruit, and California unfair competition claims brought by a non-contracted helicopter transport company providing services from Mexico against a Medicare Advantage plan); *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.,* 875 F.3d 584 (11th Cir. 2017) (dismissing under 12(b)(1) hospitals' unjust enrichment and quantum meruit claims against a Medicare Advantage plan).

Third, Hospital asserts that diversity jurisdiction is sufficient to allow this Court to retain subject matter jurisdiction. This is also incorrect. Cases based on diversity jurisdiction are still subject to the Medicare Act's exhaustion requirement, and judicial review is permitted only "after any final decision of the [Secretary] made after a hearing to which he was a party" 42 U.S.C. § 405(g) (provides the exclusive means for an individual to seek judicial review). The statute thus removes jurisdiction where a plaintiff has failed to exhaust its administrative remedies. *Id.* Further, 42 U.S.C. § 405(h) voids diversity jurisdiction where a plaintiff has failed to exhaust its administrative remedies. *Do Sung Uhm v. Humana, Inc.* 620 F.3d 1134, 1141 n.11 (9th Cir. 2010) (upholding dismissal of breach of contract and unjust enrichment claims for failure to exhaust administrative remedies, even though complaint asserted diversity jurisdiction under 28 U.S.C. § 1332); *see also Midland Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998) (holding that actions brought pursuant to diversity jurisdiction under § 1332 are also subject to the Act's exhaustion provisions); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 488-90 (7th Cir. 1990) (same); *see also Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 347 (3d Cir. 2012).

A dispute about payment for services rendered to a Medicare beneficiary, or even the application of Medicare law, is precisely the type of issue that should undergo administrative

review prior to review by a federal court. Because this Court does not have jurisdiction, Hospital's complaint should be dismissed under Rule 12(b)(1).

## II.    Hospital's Affidavit Demonstrates That Hospital's Alleged Reliance on Purported Promises Was Unreasonable and Unjustified.

If the Court reaches the issue, Hospital's promissory estoppel and negligent misrepresentation claims should be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff has not alleged plausible facts supporting its claims. The documents that Plaintiff improperly adds via affidavit in connection with its opposition purportedly to bolster its causes of action only undermine these claims.   These additional documents show that: (1) Hospital cannot plausibly allege facts that Martin's Point promised to pay for any and all services, at any amount, or that Hospital reasonably relied on or expected payment for over $2 million of billed charges; and (2) Hospital cannot demonstrate that it justifiably relied on the (unspecified) information that Martin's Point provided. (Dkt. 19, at p. 13-17).

Although Hospital inappropriately introduced additional documents into the record,[2] the provided documents clearly display the following disclaimer on Passage Health's forms in prominent language (bold and red font in the original):

> **Disclaimer: The medical provider acknowledges that a quote of benefits and/or authorization does not guarantee payment or verify eligibility. Payment of benefits are subject to all terms, conditions, limitations, and exclusions of the member's contract at time of service.  Nothing herein should be construed as a binding agreement to validate health benefits.  The information provided may result in non- coverage of services due to the fact that Passage Health International (PHI) relies on information being provided at the time of verification, which may not include coverage information for highest level of specificity.  PHI assumes no liability on the accuracy of the information being provided.  If any doubt provider is encouraged to collect from the patient at the time of service.**

---

[2] "Factual allegations made for the first time in a responsive memorandum are not properly considered in evaluating the sufficiency of a complaint under Rule 12(b)(6)."  *Forrester Winne v. Nat'l Collegiate Student Loan Tr. 2005-1*, No. 1:16-cv-00229-JDL, 2017 U.S. Dist. LEXIS 131174, at *15 (D. Me. Aug. 17, 2017) (citing *Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 365 n.5 (D.P.R. 2015) ("But the plaintiffs cannot, of course, add allegations or claims by furnishing them for the first time in an opposition to a motion to dismiss.")).

Thus, the documentary evidence demonstrates that Hospital's purported reliance or expectation of payment from a phone conversation is unreasonable when both the Prior Authorization forms and the Verification of Benefits form received by Hospital make clear that there was no guarantee of payment from those communications.

These documents further establish that Hospital has not and cannot plausibly allege the essential elements of either a promissory estoppel or negligent misrepresentation claim. As such, any amended complaint will be futile because the amended complaint will fail to meet the pleading requirements of Fed. R. Civ. P. 8. The court must consider "futility through the lens of Federal Rule of Civil Procedure 12(b)(6)." *Parker v. Landry*, 935 F.3d 9, 13 (1st Cir. 2019). "[A] proposed amendment is futile if it fails to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

For the reasons stated above, Martin's Point respectfully requests that the Court dismiss the Complaint, with prejudice.

Dated: January 24, 2024

Respectfully submitted,

Martin's Point Health Care, Inc.

By its attorneys,

*/s/   Timothy J. McKeon*
Timothy J. McKeon, Maine Bar # 005379
Brian Dunphy (*pro hac vice*)
Laura Martin (*pro hac vice*)
Mintz, Levin, Cohn, Ferris, Glovsky
  and Popeo, P.C.
One Financial Center
Boston, MA 02111
Tel. (617) 542-6000
Fax (617) 542-2241
TJMcKeon@mintz.com
BDunphy@mintz.com
LEMartin@mintz.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 24, 2024, I served a true and correct copy of the foregoing document via the Court's Electronic Filing System, which will electronically send notice to all counsel of record.

*/s/  Timothy J. McKeon*
Timothy J. McKeon

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-CV-00258-LEW |
| | ) | |
| MARTIN'S POINT HEALTH CARE, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER ON MOTION TO DISMISS</u>

In this action, Plaintiff Hospital Amerimed Cancun seeks to recover from Defendant Martin's Point, in its capacity as a healthcare insurer, the value of healthcare services it provided to an individual who participates in Martin's Point's Medicare Part C or "Medicare Advantage" program.  The matter is before the Court on Martin's Point's Motion to Dismiss (ECF No. 19).  For reasons that follow, the Motion is GRANTED.

### BACKGROUND

Hospital Amerimed Cancun S A DE C V is a Mexican corporation that provides hospital and healthcare services to patients in Cancun, Mexico.  From approximately October 10, 2022, to November 22, 2022, Kim Paul Baril was voluntarily admitted to Hospital Amerimed Cancun.  Upon his admission and during his hospitalization, Baril signed a written contract acknowledging that he would be responsible for paying all monies

owed to Hospital Amerimed Cancun, and he informed Hospital Amerimed Cancun that he had health insurance with Martin's Point Health Care, Inc., a Maine corporation with its principal place of business in Portland, Maine.

Non-party Passage Health International LLC is a limited liability company with a principal place of business in Fort Lauderdale, Florida.   Passage performed billing submission, pre-authorization, and collection activities on behalf of Hospital Amerimed Cancun.   In connection with Mr. Baril's inpatient stay, Passage Health regularly communicated with, and received verification from Martin's Point that the proposed medical procedures in Mexico were covered by insurance provided by Martin's Point and that Baril had applicable benefits for out of country emergency services.   Based on these assurances, Hospital Amerimed Cancun treated Baril.

Hospital Amerimed Cancun alleges that the services it provided to Baril total $2,132,982.98.   Hospital Amerimed Cancun submitted medical bills to Martin's Point seeking payment in that amount.   After receiving Hospital Amerimed Cancun's bill, Martin's Point offered reimbursement of $25,000.00.   That amount is the maximum benefit for out-of-country medical services specified in Mr. Baril's Medicare Part C health insurance contract with Martin's Point.   Hospital Amerimed Cancun complains that Martin's Point never advised it of the existence of a $25,000.00 limitation even though Martin's Point informed Hospital Amerimed Cancun that Baril's medical treatment in Mexico was covered by insurance with Martin's Point.   More specifically, Hospital Amerimed Cancun alleges that it worked with Passage Health to verify coverage and

Passage Heath had communications with Martin's Point who made assurances that Baril's proposed medical procedures in Mexico were covered by its medical insurance.

Hospital Amerimed Cancun's Complaint asserts two causes of action: promissory estoppel and negligent misrepresentation. As to the latter cause of action, Hospital Amerimed Cancun alleges that Martin's Point supplied false information that guided Hospital Amerimed Cancun in its business transactions relating to Mr. Baril, to its detriment. Hospital Amerimed Cancun does not allege, specifically, that there was a conversation with Martin's Point concerning the existence of insurance coverage limitations, but states that Martin's Point informed Passage Health that Baril had "full medical insurance benefits." Compl. ¶ 27.

In support of its Motion to Dismiss, Martin's Point provides a letter exhibit. Mot. Ex. A (ECF No. 19-1). The letter is authored by Martin's Point HealthCare and authorizes inpatient service for Mr. Baril for several days. The letter also states that the approval is subject to Medicare coding requirements for coverage and includes a code for CMS approval. The letter also concludes, in bold, that PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE. *Id.* Martin's Point asserts that it is proper to consider the exhibit in the context of a motion to dismiss because the authorization verification form is "integral to the claims in the complaint." Mot. at 5 n.5 (citing *Brayman v. Porter*, No. 1:20-cv-00169-JAW, 2021 WL 342566 (D. Me. 2021)). The letter bears the date October 24, 2022, which is roughly 14 days into Mr. Baril's hospitalization.

In response to Martin's Point's Motion, Hospital Amerimed Cancun supplies exhibits of its own.  These include a Passage Health Verification of Benefits form dated October 13, 2022, only three days after Baril's admission.  The form reflects that the health insurance is available under a "Medicare Advantage HMO Plan."  Response Ex. A (ECF No. 26-1).

Because the exhibits are integral to the communications between Martin's Point and Passage Health, and because those communications underlie Hospital Amerimed Cancun's causes of action, and because neither party disputes the authenticity of the documents, I have considered the documents in the context of the Motion to Dismiss, without converting the motion into a motion for summary judgment.  *See Goldberg v. Unum Life Ins. Co. of Am.*, 527 F. Supp. 2d 164, 167 (D. Me. 2007).[1]

## DISCUSSION

Pursuant to Rule 12(b)(1), a defendant may file a motion to dismiss contending that the court lacks jurisdiction over the subject matter of the litigation.  Fed. R. Civ. P. 12(b)(1).  The burden to prove the existence of subject matter jurisdiction rests with the party invoking the court's jurisdiction.  *Skwira v. United States*, 344 F.3d 64, 71 (1st Cir. 2003).  For claims arising under the Medicare Act, which uses the same exhaustion requirement as the Social Security Act, the failure to exhaust administrative remedies provides a basis for the dismissal of a district court action on jurisdictional grounds.  *Justiniano v. Soc. Sec.*

---

[1] This observation is offered only in an abundance of caution.  In a Rule 12(b)(1) motion, "[t]he court, without conversion, may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiffs allegations."  *Dynamic Image Techs.*, *Inc. v. United States*, 221 F.3d 34, 37 (1st Cir. 2000).

4

*Admin.*, 876 F.3d 14, 19 (1st Cir. 2017); *United States v. Lahey Clinic Hosp.*, *Inc.*, 399 F.3d 1, 7–8 & n.6 (1st Cir. 2005).

Martin's Point argues that Hospital Amerimed Cancun's causes of action cannot be maintained in this Court at this time and should be dismissed for lack of jurisdiction because federal law requires that Hospital Amerimed Cancun exhaust administrative remedies before filing a complaint seeking judicial review of its dispute with Martin's Point. Mot. at 7–13. Martin's Point's argument rests on its status as a Medicare Advantage organization ("MAO"), the fact that Mr. Baril was insured by Martin's Point under Part C of the Medicare Act, and the fact that Hospital Amerimed Cancun's civil action is based on alleged misrepresentations concerning the availability of insurance benefits.

In response, Hospital Amerimed Cancun relies on the notion that it has plausibly plead garden variety state law claims arising in diversity. Opposition at 1, 7–8. Hospital Amerimed Cancun also asserts that Martin's Point "is free to offer services for out-of-network international claims for emergency services" and that Hospital Amerimed Cancun "properly alleged that they did so here and later reneged on representations that coverage was available." *Id.* at 5. In its view, emergency overseas benefits "are not governed by Medicare" and, therefore, a foreign hospital "cannot enter into a contract with any Medicare Advantage Organization." *Id.* at 5–6.

For reasons that follow, I am not persuaded by Hospital Amerimed Cancun that Martin's Point is "free" to provide whatever coverage it desires for international emergency service and that disputes concerning such benefits fall outside the Medicare program.

The Medicare program is a federal welfare benefit program that provides health insurance coverage to, among others, people 65 years of age and older. *Medicaid & Medicare Advantage Prods. Ass'n of Puerto Rico*, *Inc. v. Emanuelli Hernández*, 58 F.4th 5, 8 (1st Cir. 2023) (citing 42 U.S.C. § 1395c). Parts A and B of the Medicare Act afford medical benefits according to a fee-for-service schedule established by the Centers for Medicare and Medicaid Services ("CMS"), a sub-agency of the Department of Health and Human Services. *Id.* Part C of the Medicare Act establishes a Medicare Advantage program through which CMS contracts with private insurers that then develop their own networks of care to deliver both mandated Medicare benefits and some supplemental benefits that are not available under Parts A and B of Medicare. *Id.* The payment system under Part C differs from the fee-for-service schedule of Parts A and B, and generally entails a mash-up of market, welfare, and managed care attributes that, it is said, resemble a market-oriented approach to the delivery of healthcare services. *Id.* & n.1. Nonetheless, the provision of Part C benefits and disputes over payments remain very much within the Medicare program.

Persons who enroll in a plan offered by a MAO pay for supplemental benefits by means of premiums or cost sharing. 42 C.F.R. §§ 422.110(c)(2), 422.102(c). Although "CMS generally has little say over the package of supplemental benefits that a plan chooses to offer," MAOs' plans are subject to a battery of rules and standards and CMS must approve all supplemental benefits included in a plan offered by a MAO. 42 U.S.C. §§ 1395w-26(b), 1395w-27(a); 42 C.F.R. § 422.110(f). The approval process includes a review to ensure the MAOs meet financial solvency and capital adequacy standards. 42

U.S.C. § 1395w-26(a).  Typically, MAOs arrange for the provision of healthcare services to their enrollees by means of contract providers or managed care networks.  However, Medicare requires that certain services provided to enrollees be paid for even if the provider is not a contract provider, one example being emergency medical services.  *Id.* § 1395w-22(d)(1)(E); 42 C.F.R. §§ 422.100(b)(1), 422.113.

MAOs are insulated from state interference in the form of supplemental standards and are subject to near exclusive regulation by the Secretary of Department of Health and Human Service and CMS.  42 U.S.C. § 1395w-26(b)(3) ("The standards established under [Part C] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part.").  When disputes arise over the payment of a MAO enrollee's medical bills, Congress has prescribed an administrative review process.  *Id.* § 1395w-22(g).  The review process begins with initial and reconsideration determinations by the MAO, 42 C.F.R. §§ 422.566, 422.578, 422.582; moves on to review by an independent outside entity, *id.* § 422.592; continues with a hearing before an administrative law judge, *id.* § 422.600; proceeds to the Medicare Appeals Council, *id.* § 422.608; and culminates with judicial review of the final administrative determination, *id.* § 422.612.  The administrative review process is open to providers, who may proceed as an assignee of the enrollee's right to coverage, though the regulations require that the provider waive any right to payment from the enrollee.  *Id.* §§ 422.566(c)(1)(ii), 422.574(b).

The Medicare Act also makes Part C disputes subject to the provisions of, inter alia, 42 U.S.C. § 405(h).  *See* 42 U.S.C. § 1395ii.  Section 405(h) provides:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).  Section 405(h) is understood to dictate that the administrative review process is the exclusive means of resolving disputes arising under the Medicare Act, even to the extent of actions brought under section 1332 of Title 28 (diversity jurisdiction).  *See Allstar Care Inc. v. Blue Cross & Blue Shield of S.C.*, 184 F. Supp. 2d 1295, 1298 (S.D. Fla. 2002) (first citing *Bodimetric Health Servs.*, *Inc. v. Aetna Life & Casualty*, 903 F.2d 480, 489 (7th Cir. 1990); and then citing *Midland Psychiatric Assocs.*, *Inc. v. United States*, 145 F.3d 1000, 1003–04 (8th Cir. 1998)).

Based on this regulatory framework, the Ninth Circuit has held "that Congress intended to impose under the Medicare Advantage program the same administrative exhaustion requirement that applies to claims for benefits under original Medicare," meaning that judicial review must be held in abeyance until a final decision emerges from the administrative review system.  *Global Rescue Jets*, *LLC v. Kaiser Found. Health Plan*, *Inc*., 30 F.4th 905 (9th Cir. 2022); *cf. Puerto Rican Ass'n of Physical Med. & Rehab.*, *Inc. v. United States*, 521 F.3d 46, 48 (1st Cir. 2008) (observing that the section 405(h) bar requires the channeling of "virtually all legal attacks through the agency" (quoting *Shalala*

8

*v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000))); *Ill. Council*, 529 U.S. at 23 (observing that litigants "remain free, . . . after following the special review route that the statutes prescribe, to contest in court the lawfulness of any regulation or statute upon which an agency determination depends"). In *Global Rescue Jets*, a rescue service provided emergency service to persons who became ill in Mexico. 30 F.4th at 908. The ill patients assigned their claims for Part C benefits from Kaiser to the rescue service. Kaiser declined to reimburse the rescue service except to the limit of Medicare approved rates, resulting in litigation. *Id.* at 908–10. The Ninth Circuit affirmed the dismissal of the lawsuit based on lack of subject matter jurisdiction—failure to exhaust administrative remedies. *Id.* at 919–20. It reasoned that the dispute over payment was "inextricably intertwined with claims for benefits under Part C of the Medicare Act," *id.* at 919, since the rescue service sought to recover payment from a MAO, *id.* at 916–19. According to the Ninth Circuit, "Congress intended to impose . . . the same administrative exhaustion requirement that applies to claims for benefits under original Medicare." *Id.* at 914; *see also id.* (observing that the "constraints on judicial review imposed by § 405(h) apply equally to claims for benefits under Part C" and citing *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584 (11th Cir. 2017)).[2]

---

[2] In *Tenet*, the Plaintiffs-Appellants were non-contract providers that presented the defendant MAO with periodic, recurring claims such that the MAO was able to adjust payments to recoup alleged, past overpayments, resulting in new, disputed underpayments. The *Tenet* Court held that a non-contract provider that delivers services to a Medicare Part C enrollee is subject to the Medicare Act's administrative apparatus because the provider's claim for reimbursement is based on the assignment of the Medicare Part C enrollee's right to coverage, and that the non-contract provider cannot plead its way around administrative exhaustion by presenting state common law claims arising out of the MAO's authorization to provide services and promise of reimbursement. *Id.* at 588–89.

9

For the reasons set forth in *Global Rescue Jets*, I am persuaded that Hospital Amerimed Cancun's effort to collect against Martin's Point is subject to the mandatory administrative review process. And based on *Allstar Care* and the authorities cited therein, *see supra*, Hospital Amerimed Cancun's reliance on diversity rather than federal question jurisdiction does not change the analysis.

Because Hospital Amerimed Cancun's claims seek to make a MAO pay for services provided to a Medicare Part C enrollee, I conclude that, at least for purposes of domestic litigation in state or federal court, their claims arise under the Medicare Act and must, preliminarily, be channeled through the administrative review process. Minimally, it is appropriate that this threshold jurisdictional question should be ironed out in this Circuit before this matter proceeds to discovery and trial (and before I consider Martin's Point's alternative arguments for dismissal for failure to state a claim). While Hospital Amerimed Cancun contends that its situation differs from the situation in *Global Rescue Jets*, because this case does not present a claim for breach of contract, I do not see why causes of action based on equity and torts should be treated differently than a cause of action based on contracts. All of these causes of action are similarly rooted in state common law and all succumb equally to the dictates of federal law.

Because the Complaint does not include allegations that demonstrate exhaustion of the administrative process, the Court lacks jurisdiction to review Martin's Point's refusal to pay the entire medical bill submitted by Hospital Amerimed Cancun.

CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 19) is

**GRANTED** and the case is **DISMISSED** for lack of subject matter jurisdiction.

SO ORDERED.

Dated this 23rd day of April, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge

11

**108**

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   CIVIL NO. 2:23-cv-00258-LEW |
| | ) |
| MARTIN'S POINT HEALTH CARE INC | ) ) |
| Defendant, | ) |

JUDGMENT OF DISMISSAL

     In accordance with the Order on Motion to Dismiss entered by Chief Judge Lance E. Walker on April 23, 2024,

     JUDGMENT of Dismissal for lack of subject matter jurisdiction is hereby entered.

CHRISTA K. BERRY
CLERK


By:   /s/ Michele Mitchell
Deputy Clerk


Dated: April 23, 2024

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V, <br><br>      Plaintiff, <br><br> v. <br><br> MARTIN'S POINT HEALTH CARE, INC., <br><br>      Defendant. |   )<br>)<br>)<br>)<br>)     Civil Action No. 2:23-cv-00258-LEW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF'S MOTION TO ALTER JUDGMENT PURSUANT TO RULE 59(e)

Pursuant to Federal Rule of Civ. P. 59(e), Plaintiff Hospital Amerimed Cancun S A DE C V, by and through their counsel, hereby files this motion to alter the Court's Order Granting Defendant's Motion to Dismiss, and to enter a new Order denying the motion and vacating the Judgment, and in support thereof states as follows:

### I.  FACTS

As the Court knows from prior pleadings and motion practice, Plaintiff Hospital is a Mexican Corporation that provides healthcare to patients in Cancun, Mexico, and in this case, a U.S. citizen. See Pl. Compl. ¶ 1. Defendant, Martin's Point Health Care, Inc. ("Martin's Point"), is a Maine corporation with a principal place of business in Portland, Maine. See *Id.* at ¶ 2. From approximately October 10, 2022 to November 22, 2022, Kim Paul Baril received medical care at Hospital Amerimed Cancun S.A. De C.V, after executing a written agreement regarding his applicable health insurance. See Pl. Compl. ¶¶ 11-12. After Mr. Baril's treatment concluded, Martin's Point refused to reimburse Hospital for Mr. Baril's treatment, citing a claimed limit of

$25,000. See *Id*. at ¶¶ 16-17. Plaintiff's Complaint seeks reimbursement for $2,132,982.98 in medical expenses. See *Id.* at ¶ 20.

On April 23, 2024, this honorable Court granted Defendant's Motion to Dismiss. . See *ECF. Docket No.* 29. In doing so, this Court expressed doubt that disputes regarding benefits available to a Medicare recipient fall "outside the Medicare program." *Id.* at pg. 5-6. In doing so, this Court determined that Plaintiff's efforts to collect the outstanding balance against Defendant is "subject to the mandatory administrative review." *Id.* at pg. 8. Lastly, this Court held it lacked jurisdiction to review Defendant's refusal to pay for medical services based on a failure to "demonstrate exhaustion of the administrative process." *Id*. at pg. 10.

The Centers for Medicare and Medicaid Services ("CMS") does not consider billing disputes in the context of foreign provider disputes. *See* Ex. A, Affidavit Of Eindar Khant filed herewith. Doing so would place an unnecessary, and burdensome, strain on Medicare and exceed the scope of CMS' administrative authority. Plaintiff hereby submits this Motion to Amend the entry of dismissal in this matter as Plaintiff literally has no administrative remedies to exhaust, and as foreign provider of medical services, is outside the scope of review by CMS.

## II.    ARGUMENT

Federal Rule of Civil Procedure 59(e) allows litigants the opportunity to file "[a] motion to alter or amend a judgment." A party seeking relief pursuant to Rule 59(e) may be granted where "the original judgment evidence a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations. *Fontanillas-Lopez v. Morell Bauza Cartagena & Dapena, LLC*, 832 F.3d 50, 55 (1st Cir. 2016) (citing *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014)). Rule 59(e) allows "an attack on a judgment on the ground that the judgment is

based on a manifest error of law." *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 189

(1st Cir. 2004) (referencing *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55 (1st Cir. 2003)).

<u>CMS or Medicare</u>

      CMS rejects appeals from foreign medical providers since such providers fall outside the

scope of CMS's purview to review either contracting or non-contracting party appeals from

MAO insurers. A MAO under the Medicare Advantage Program is defined as a "public or

private entity organized and licensed by a State as a risk-bearing entity (with the exception of

provider-sponsored organizations receiving waivers) that is certified by CMS as meeting the MA

contract requirements. 42 C.F.R. Section 422.2. A "grievance" is defined as "any complaint or

dispute, other than one that constitutes an organization determination, expressing dissatisfaction

with any aspect of an MA organization's or provider's operations, activities, or behavior,

regardless of whether remedial action is requested." 42 C.F.R. Section 422.561. A MAO is

required to "promptly determine and inform the enrollee whether the complaint is subject to its

grievance procedures or its appeal procedures." 42 C.F.R. Section 422.564(b). The statute goes

on to further explain the grievance guidelines pertaining to MAOs. 42 C.F.R. Section 422.562.

      The Fifth Circuit has determined that a provider's direct claim against an insurer may not

be subject to Medicare's administrative review. *see also RenCare Ltd. V. Humana Health Plan

of Texas, Inc.*, 395 F.3d 555,559 (5th Cir. 2004). An "organization determination" may be a

"refusal to provide or pay for services, in whole or in part." *RenCare Ltd.*, 395 F.3d at 559. In

*RenCare,* the Court heard a dispute between a contracted provider regarding alleged breach of an

express agreement. *Id.* Non-Medicare benefits are not always subject to the exhaustion

requirement of Medicare.

In addressing the issue relating to non-contract providers (and this foreign hospital is even more removed from the CMS process than a non-contracting provider), the Court in *Sarasota County Public Hospital Board, v. Blue Cross and Blue Shield of Florida, Inc.*, 511 F.Supp.3d 1240 (M.D. Fl. 2004)*, noted:

> [The United States Department of Health and Human Services] unequivocally expresses its belief [1] that third-party contract providers (rather than noncontract providers ...) are not assignees" within the definition of Medicare's administrative exhaustion provisions and (2) that "extending an administrative exhaustion requirement to payment disputes purely between [a Medicare Advantage organization] and a provider would improperly tax, and potentially overwhelm, CMS's limited resources."

*Sarasota*, 511 F.Supp.3d at 1252 (citing *Tenet Health System*, 875 F.3d at 590–91).

In *Sarasota*, the Court described the action as "aris[ing] from a private billing dispute" and embraced *RenCare*'s holding that the contracted party Plaintiff retained "no duty to exhaust an administrative remedy under Medicare." *Id*. at 1253 (citing *Ohio State Chiropractic,* 647 F.App'x at 625).

As the Court pointed out in it Order, the First Circuit has not yet weighed in on this issue, and none of the cases relied upon by the Court involved foreign medical providers. Since foreign medical providers are neither contracting nor non-contracting parties as those phrases are used in CMS nomenclature, they cannot be part of an administrative review process such as the providers in the cases the Court relies upon in its decision.

CMS has regularly informed Passage Health that it does not get involved in any dispute between a foreign medical provider and an MAO and that such disputes cannot be adjudicated by CMS. See Affidavit of Eindar M. Khant filed herewith, and supporting written rejections from CMS of appeal requests made on behalf of other, foreign medical providers such as the plaintiff in each of the two matters filed in this Court.

Respectfully, the Court misapplied the applicable law as foreign medical providers have no standing with CMS to seek or receive adjudication from CMS of disputes with any MAO under the Medicare system.  Accordingly, CMS treats such matters as private party disputes out of its bailiwick, and the plaintiff asks the Court to do the same and to adjudicate what is a private party dispute – a tort claim over which this Court has diversity jurisdiction.  Otherwise, the plaintiffs in each of these cases is placed in between the proverbial rock and hard place, and has nowhere to go to have its respective grievances addressed.  It is the essential function of courts to adjudicate disputes, and here, where there is no other recourse, the plaintiffs will receive a windfall when the plaintiff cannot have its disputes heard in any forum, let alone this one.  Such a situation removes "the ability of litigants to utilize judicial procedures designed to guarantee due process of law and by attempting to usurp a quintessential aspect of the judicial power traditionally vested in courts."  <u>Centennial Puerto Rico License Corp. v. Telecommunications Regul. Bd. of Puerto Rico</u>, 634 F.3d 17, 29 (1st Cir. 2011).

III.     **<u>CONCLUSION</u>**

Plaintiff respectfully requests that this Court alter its decision and withdraw the Judgment of Dismissal.

Respectfully submitted,

Hospital Amerimed Cancun S A DE C V

By its attorney,

/s/ Mark A. Darling
Mark A. Darling, Maine Bar # 4802
Litchfield Cavo, LLP

**114**

6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
Darling@litchfieldcavo.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2024, I served a true and correct copy of the foregoing document via the Court's Electronic Filing System, which will electronically send notice to all counsel of record.

/s/  Mark A. Darling
Mark A. Darling

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 2:23-cv-00258-LEW ) |
| MARTIN'S POINT HEALTH CARE, INC., | ) ) ) |
| Defendant. | ) ) |

**AFFIDAVIT OF EINDAR M. KHANT**

I, Eindar M. Khant, swear and aver as follows:

1. I am the CEO OF Passage Health International, Inc.  I have personal knowledge of, and have reviewed company records relating to submission of billing disputes to CMS (Centers for Medicare Services) between Passage Health's foreign, medical provider clients and MAO or Medicare Part C providers.

2. Attached are two examples of situations where Passage Health submitted billing and payment requests on behalf of foreign medical providers to a Part C or MAO provider, and where CMS flatly rejected any appeal stating that it does not handle, remedy or adjudicate claims between any MAO and any foreign medical provider.  Foreign medical providers cannot be either contracting or non-contracting parties in the CMS vocabulary since they cannot participate in Medicare since they are outside of the USA.

3. In example matter number 1. Plaintiff submitted a complaint to CMS on August 28, 2023. *See* Exhibit 1.

**117**

4.  On August 29, 2023, CMS responded and stated "CMS does <u>not</u> adjudicate or process claims on behalf of MAO plans from this office." *Id.* My understanding of the phrase "this office" does not mean that such claims are adjudicated at a different geographical office, since CMS responds to claims by region, and no region will adjudicate a payment dispute between any foreign provider and any MAO.

5.  On November 20, 2023, Plaintiff submitted a Complaint to CMS for another foreign medical provider for unpaid medical bills from an MAO. *See* Exhibit 2.

6.  On May 8, 2024, Plaintiff send a follow-up e-mail inquiring about the status of this complaint.

7.  On this same day, CMS responded stating "CMS does not investigate, mediate, etc. between plans and providers." *Id*.

8.  Based on my personal knowledge, CMS declines to accept, handle or adjudicate any payment or billing disputes between foreign medical providers and any MAO since foreign medical providers are outside the scope of the CMS administrative review process. Foreign providers are neither contracting not non-contracting parties.  They have no status with CMS and that is why CMS rejects such claims out of hand.

**SIGNED AND SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY THIS __21st__ DAY OF MAY 2024.**

*Eindar Khant*
_____
EINDAR M. KHANT

# EXHIBIT 1

# RE: Complaint-Submission | CMS ID: H5425-█

### CMS ROSFODHPP <ROSFODHPP@cms.hhs.gov>

Tue 8/29/2023 3:31 PM

To: Mursaleen Nissar <mnissar@internationalbillingoffice.com>;

📎  1 attachments (174 KB)

Provider Claims Disputes and Complaints Ver 3 EXTERNAL (005).pdf;

Mursaleen,

Please resubmit your complaint using the attached Provider Complaint form file. Be aware that CMS needs to copy and paste from your file.

Also, you did not provide the beneficiary's Medicare number or SS# in section 1.5. When submitting the Provider Complaint form, please make sure to complete all the sections on the Provider complaint form especially section 1.5 regarding the Medicare Beneficiary Number (MBN).  The MBN is the beneficiary's Medicare number located on the beneficiary's red, white and blue Medicare card.  You may need to contact the beneficiary to obtain the beneficiary's Medicare number.

For section 1.11, please enter the date the appeal was filed with the plan and include a summary of the complaint.
For section 1.12, please enter the name(s) of individual (s) at the plan your organization communicated with to resolve the appeal issue and include the dates communicated.

if services were rendered in California, Arizona, Nevada, Hawaii and Pacific Territories (States and areas under the jurisdiction of CMS San Francisco Regional office), you may complete the attached Provider Claims Disputes and Complaints form, version 3 (Provider complaint form) and submit it to CMS San Francisco Regional office at rosfodhpp@cms.hhs.gov for review. If a Complaint is entered the plan will contact you directly with resolution within 30 days. You may also choose to follow up on the status of the complaint with the plan directly with the complaint ID provided by CMS.

If services were not rendered in California, Arizona, Nevada, Hawaii and/or Pacific territories, please refer to the below chart regarding the appropriate CMS Regional office to send the completed Provider form. The chart shows the CMS Regional offices, which States and areas assigned to each CMS Regional office and the corresponding mailbox to send your completed form.

As a reminder, CMS may assist you in facilitating communication with the MAO plan however <u>not</u> in a routine basis. MAO plans are responsible for defining and adhering to an appeal process for contracted providers as elaborated in the provider's and plan contracts.

Additionally, it is not CMS' role to determine medical necessity for an appeal case nor to determine appropriate claims payment amounts for payment disputes. CMS does <u>not</u> adjudicate or process claims on behalf of MAO plans from this office.

Finally, please submit your completed Provider complaint form password protected and email the password in a separate email. please provide your current contact information and include your company name and address on your email. Do <u>not</u> include additional files in your submission.

<u>CMS Regional offices</u>

| CMS/DHPO Location | Assigned States | DHPO Mailbox Address |
| --- | --- | --- |
| Boston | CT, MA, ME, NH, VT | robosdmhpo@cms.hhs.gov |
| New York | NJ, NY, PR | ronyprovider@cms.hhs.gov |

**120**

| Philadelphia | DC, DE, MD, PA, VA, WV | partdcomplaints_ro3@cms.hhs.gov |
| Atlanta | AL, FL, GA, KY, MS, NC, SC, TN | partdcomplaints_ro4@cms.hhs.gov |
| Chicago | IL, IN, MI, MN, OH, WI | rochidmo@cms.hhs.gov |
| Dallas | AR, LA, NM, OK, TX | rodalmahpb@cms.hhs.gov |
| Kansas City | IA, KS, MO, NE | rokcmhpo@cms.hhs.gov |

Thanks,

CMS ROSFODHPP-R

**From:** Mursaleen Nissar <mnissar@internationalbillingoffice.com>
**Sent:** Monday, August 28, 2023 2:00 PM
**To:** CMS ROSFODHPP <ROSFODHPP@cms.hhs.gov>
**Subject:** Complaint-Submission | CMS ID: H5425-█

Dear Team

Please see the attached corrected complaint letter

Company Name: Passage Health International
Servicing address: PO BOX 39662, Fort Lauderdale, Florida 33339, United States
Physical Address: 701 E Commercial Blvd FL 4, Oakland Park, FL 33334, United States
Contact Number: (954)-889-3791

Thank you

--
**Mursaleen Nissar**
JR International Claim Specialist

_____

Office: +1 954 903 7445 X 324
Fax: +1 954 376 6163
_____

Please always forward your responses or inquiries to info@internationalbillingoffice.com This ensures that your e-mails or requests are answered in a timely manner.

_____

Confidentiality Notice: This email is sent in an unsecured format and is not encrypted. Response to this email signifies that you accept any risks involved in unauthorized access to this email and choose to continue communicating with us in this fashion. This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information and/or protected health information (PHI) intended only for the use of the recipient(s) named above and may be subject to protection under HIPAA in the USA, PIPEDA in Canada, GDPR in the European Union and other countries, applicable under international laws. If you are not the intended recipient, or the employee or the agent responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying,distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone at +1 (954) 903-7445,and permanently delete this e-mail and any attachments.

---

Passage Health International, L.L.C. is doing business as (dba) International Billing Office.

# EXHIBIT 2

# RE: Complaint RE-Submission | CMS ID: H1112- 

### Nash, Panya (CMS/OPOLE) <Panya.Nash@cms.hhs.gov>

Wed 5/8/2024 4:24 PM

To: Mursaleen Nissar <mnissar@internationalbillingoffice.com>;

Good afternoon Nissar,

CMS does not interceding in such matters, and we are unable to dictate what claims plans enter into their system. The inquiry submitted fostered the intended communication, it was not intended to dictate the plans actions. Please contact the plan regarding this issue.

Thanks,

Panya Nash PhD, LCSW
Senior Caseworker
Philadelphia/Atlanta Drug & Health Plan Operations Group
Office of Program Operations & Local Engagement
Centers for Medicare & Medicaid Services
P: (404) 562-7175
F: (443) 380-7479

---

**From:** Mursaleen Nissar <mnissar@internationalbillingoffice.com>
**Sent:** Wednesday, May 8, 2024 4:15 PM
**To:** Nash, Panya (CMS/OPOLE) <Panya.Nash@cms.hhs.gov>
**Subject:** Re: Complaint RE-Submission | CMS ID: H1112- ■

Dear Panya

The insurance never rejected , denied or acknowledged the claim therefore there is no claim on their end to appeal on,  because whenever we try to contact them they say the same thing that there is no claim on file and they advice us to re-submit the claim and again and again without reaching to any resolution

The CMS complaint was previously initiated on this case but the insurance still didn't entered this claim into their systems

Thank you

**Mursaleen Nissar**
*International Claims Specialist*

**Office: +1 954 903 7445 Ext: 324**
**Fax: +1 954 376 6163**
**Please always forward your responses or inquiries to info@internationalbillingoffice.com This ensures that your e-mails or requests are answered in a timely manner.**

**Confidentiality Notice:** This email is sent in an unsecured format and is not encrypted. Response to this email signifies that you accept any risks involved in unauthorized access to this email and choose to continue communicating with us in this fashion. This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information and/or protected health information (PHI) intended only for the use of the recipient(s) named above and may be subject to protection under HIPAA in the USA, PIPEDA in Canada, GDPR in the European Union and other countries, applicable under international laws. If you are not the intended recipient, or the employee or the agent responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone at +1 (954) 903-7445,and permanently delete this e-mail and any attachments.

**Passage Health International, L.L.C. is doing business as (dba) International Billing Office.**

---

**From:** Nash, Panya (CMS/OPOLE) <Panya.Nash@cms.hhs.gov>
**Sent:** Wednesday, May 8, 2024 3:53:15 PM
**To:** Mursaleen Nissar
**Subject:** RE: Complaint RE-Submission | CMS ID: H1112-█

Good afternoon,

Please note CMS complaints/inquiries only fosters communication (we enter the case and the plan reaches out to you within 30 days) between the plan and provider, hence why we require providers to exhaust the appeals process from the plan. CMS does not investigate, mediate, etc. between plans and providers.

Please provide evidence of having received a final decision notice from the appeals process for this office to review your complaint.

Thanks,

Panya Nash PhD, LCSW
Senior Caseworker
Philadelphia/Atlanta Drug & Health Plan Operations Group
Office of Program Operations & Local Engagement
Centers for Medicare & Medicaid Services
P: (404) 562-7175
F: (443) 380-7479

---

**From:** Mursaleen Nissar <mnissar@internationalbillingoffice.com>
**Sent:** Wednesday, May 8, 2024 10:30 AM
**To:** CMS PartCDInquiriesRO4 <PartCDInquiriesRO4@cms.hhs.gov>
**Subject:** Re: Complaint RE-Submission | CMS ID: H1112-█

Dear Team

We have submitted our complaint regarding the above beneficiary on 11/20/2023 which was initiated under complaint ID# C2303240342

However we have been advised by a Medicare complaints handler that we need to submit our claim to the medical group directly, but as of today we have still not received a response from the medical group or even from the Medicare complaints handler , the claim still remains non paid and not entered by the plan

Please send an inquiry to the plan regarding this matter

Thank you

**_Mursaleen Nissar_**
_International Claims Specialist_

**Office: +1 954 903 7445 Ext: 324**
**Fax: +1 954 376 6163**
**Please always forward your responses or inquiries to info@internationalbillingoffice.com This ensures that your e-mails or requests are answered in a timely manner.** _____

**Confidentiality Notice:** This email is sent in an unsecured format and is not encrypted. Response to this email signifies that you accept any risks involved in unauthorized access to this email and choose to continue communicating with us in this fashion. This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information and/or protected health information (PHI) intended only for the use of the recipient(s) named above and may be subject to protection under HIPAA in the USA, PIPEDA in Canada, GDPR in the European Union and other countries, applicable under international laws. If you are not the intended recipient, or the employee or the agent responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone at +1 (954) 903-7445,and permanently delete this e-mail and any attachments.
**Passage Health International, L.L.C. is doing business as (dba) International Billing Office.**

**From:** Mursaleen Nissar
**Sent:** Monday, November 20, 2023 3:46:02 PM
**To:** partdcomplaints_ro4@cms.hhs.gov
**Subject:** Re: Complaint RE-Submission | CMS ID: H1112-█

Dear Team

The file is password protected , the password for the attached file is : **passage**

Thank you

---

**From:** Mursaleen Nissar
**Sent:** Monday, November 20, 2023 3:45:10 PM
**To:** partdcomplaints_ro4@cms.hhs.gov
**Subject:** Complaint RE-Submission | CMS ID: H1112-█

Dear Team

Please find the attached complaint letter

Company Name: Passage Health International
Servicing address: PO BOX 11577, Fort Lauderdale, Florida 33339, United States
Physical Address: 5900 N ANDREWS AVE. STE 802 FORT LAUDERDALE FL. 33309
Contact Number: (954)-903-7445 ext. 324

Thank you

# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V, | ) ) ) |  |
| Plaintiff, | ) ) ) | Civil Action No. 2:23-cv-00258-LEW |
| v. | ) ) |  |
| MARTIN'S POINT HEALTH CARE, INC., | ) ) |  |
| Defendant. | ) ) |  |

## DEFENDANT MARTIN'S POINT HEALTH CARE, INC.'S OPPOSITION TO PLAINTIFF HOSPITAL AMERIMED CANCUN S A DE C V'S MOTION TO ALTER JUDGMENT PURSUANT TO RULE 59(e)

Plaintiff Hospital Amerimed Cancun S A DE C V's ("Hospital") Motion to Alter Judgment Pursuant to Rule 59(e) contends that the Court made an error of law, but rather than demonstrating any error by the Court, Hospital's motion demonstrates its incorrect understanding of Medicare's mandated administrative appeal process. Because Hospital has not met the standard under Rule 59(e), Martin's Point Health Care Inc. ("Martin's Point") thus urges the Court to deny Hospital's motion and uphold dismissal of Hospital's complaint.

Relief through a Rule 59(e) motion "is granted sparingly," and Hospital cannot demonstrate the judgment (Dkt. 30) is a manifest error of law. Hospital does not, and cannot, show that it can proceed with a lawsuit in federal court unless it exhausts its administrative remedies through the Medicare administrative appeal process. This appeal process is mandated by the heavily regulated Medicare program when seeking to resolve a dispute about payment from a Medicare Advantage plan for services rendered to a Medicare Advantage beneficiary. Hospital does not offer a single statute, regulation, case, or other authority that supports its contention that the Court erred.

Although Hospital impermissibly tries to introduce new documents into the record that were not included with the Complaint or in its briefing to oppose the motion to dismiss, those documents undermine its argument. If the Court were to consider the new documents, the communications from the Centers for Medicare & Medicaid Services ("CMS") instruct Hospital to exhaust the administrative appeal process, as the Court found Hospital must do. Hospital confuses the CMS grievance process with the "separate and distinct" Medicare administrative appeal process for payment disputes that Hospital must exhaust before this Court has jurisdiction over its claims.[1] 42 CFR 422.564(b) (stating that grievances are "[d]istinguished from appeals. Grievance procedures are separate and distinct from appeal procedures, which address organization determinations as defined in § 422.566(b)."). Because Hospital has not satisfied the standards under Rule 59(e), the Court should deny the motion and the judgment dismissing the case should stand.

## I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Hospital provides hospital and health care services to patients in Cancun, Mexico. (Dkt. 1, at ¶ 1). Martin's Point Medicare Advantage health plan beneficiary, Kim Paul Baril, was admitted as a patient at Hospital. (*Id.* at ¶ 11). Hospital does not have a contract with Martin's Point. Hospital's agent, Passage Health, communicated with Martin's Point and Hospital alleges that it only treated Mr. Baril after receiving assurances from Passage Health that it would receive payment. (*Id.* at ¶¶ 14-15). Martin's Point reimbursed Hospital for the services provided according to the terms of Mr. Baril's Medicare Advantage health plan. (*See id.* at ¶ 21). Hospital contends that Martin's Point has not properly reimbursed it for services provided to Mr. Baril. (*See id.* at ¶¶

---

[1] Martin's Point described the appeals process in earlier briefing. (Dkt. 19, at p. 9-13).

22-24). The Complaint does not allege that Passage Health or Hospital followed or exhausted the Medicare administrative appeal process prior to filing this lawsuit.

After considering briefing from both parties, the Court granted Martin's Point's Motion to Dismiss because Hospital's "claims seek to make a MAO pay for services provided to a Medicare Part C enrollee [therefore], at least for purposes of domestic litigation in state or federal court, their claims arise under the Medicare Act and must, preliminarily, be channeled through the administrative review process." (Dkt. 29, at p. 10). Hospital now brings this motion asserting the Court "misapplied the applicable law." (Dkt. 31, at p. 5).

## II.   **LEGAL STANDARD**

As this Court has explained, a Fed. R. Civ. P. Rule 59(e) motion "is granted sparingly, and only when the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations." *Roe v. Lynch*, No. 1:20-cv-00050-LEW, 2020 U.S. Dist. LEXIS 138284, at *1 (D. Me. June 22, 2020) quoting *Biltcliffe v. CitiMortgage, Inc.*, 772 F. 3d 925, 930 (1st Cir. 2014). A manifest error "is plain and indisputable, and [] amounts to a complete disregard of the controlling law." *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004) quoting Black's Law Dictionary 563 (7th ed. 1999) (finding a manifest error of law when judge calculated damages based on the infringed songs rather than the infringing albums). A Rule 59(e) motion is not "a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (citation omitted), *see also Markel Am. Ins. Co. v. D'az-Santiago*, 674 F.3d 21, 32-33 (1st Cir. 2012) (affirming denial of Rule 59(e) motion) ("As we have repeatedly admonished parties, [a Rule 59(e)] motion is not the place to present arguments that could, and should, have been raised before the court's pulling of its judgment trigger") (citation omitted).

III.   **ARGUMENT**

Hospital fails to meet the standard for this Court to grant its Rule 59(e) motion because Hospital has not demonstrated that this Court's ruling is a manifest error of law. Further, Hospital relies on documents that it did not previously provide to the Court and which undermine its argument. In its decision, the Court carefully considered the pervasive Medicare regulatory scheme, the applicable administrative appeals process, and case law to determine that Hospital must exhaust its administrative remedies before filing suit, but Hospital had failed to do so.

First, Hospital repeats the argument that a foreign provider without a contract with a Medicare Advantage Organization (MAO) need not follow Medicare's administrative process to challenge payment, without providing any credible support. Hospital does not have a contract with Martin's Point yet relies on several cases where the providers have contracts with health plans. These cases are distinguishable because a provider with a contract must settle disputes according to the terms of the written contracts, whereas a non-contracted provider must follow the Medicare Act's administrative process. *See Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 591 (11th Cir. 2017) ("A contract provider's claims are determined entirely by reference to the written contract, not the Medicare Act.").

Hospital argues it is "even more removed from the CMS process than a non-contracting provider" (Dkt. 31, at p. 4) but Hospital does not have a contract with Martin's Point and is thus itself is a non-contracting provider. Further, Hospital relies on an inapposite case where the provider had a contract with a health plan (unlike Hospital), and the case involved a billing dispute with the health plan under their contract.[2] *Sarasota County Public Hospital Board, v. Blue Cross*

---

[2] A contracted provider has an agreement with the MAO to provide Medicare Advantage plan enrollees with benefits pursuant to an agreed upon rate, whereas a non-contracted provider, such as Hospital, does not have a contract with a MAO and is "obligated to accept the Medicare-approved rate as payment in full" to the extent

*and Blue Shield of Florida, Inc.*, 511 F. Supp. 3d 1240, 1252 (M.D. Fl. 2021). The cited case does not establish that Hospital is relieved of its obligations to follow Medicare's administrative process. Hospital also contends that "a provider's direct claim against an insurer may not be subject to Medicare's administrative review" (Dkt. 31, at p. 3) by relying on a case involving a provider with a contract. *RenCare Ltd. V. Humana Health Plan of Texas, Inc.*, 395 F.3d 555, 558-59 (5th Cir. 2004) (reversing lower court because RenCare waived it's right to seek payment from Medicare enrollees when it entered a contract with Humana to provide kidney dialysis services to the Medicare enrollees).

Second, Hospital contends that CMS "does not consider billing disputes in the context of foreign provider disputes" (Dkt. 31, at p. 2) and refers the Court to the separate and distinct grievance process throughout its brief. Hospital fails to acknowledge that CMS does not resolve billing disputes through this grievance process. A "grievance" is defined as "any complaint or dispute, ***other than*** one that constitutes an organization determination, expressing dissatisfaction with any aspect of an MA organization's or provider's operations, activities, or behavior, regardless of whether remedial action is requested." 42 C.F.R. § 422.561 (emphasis added). Organization determinations include the "MA organization's refusal to provide or pay for services, in whole or in part." 42 CFR § 422.566(b)(3). By definition, CMS's grievance process does not apply to payment disputes with MAOs.

Hospital's lawsuit against Martin's Point is clearly a dispute over payment, which is an organization determination that is separate and distinct from CMS's grievance process. Hospital's own brief cites to case law that clearly acknowledges that the Medicare administrative process, not the grievance process, is designed to address payment disputes such as the one before the Court,

---

benefits are available. (Dkt. 19, at p. 9 citing *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 910 (9th Cir. 2022) citing 42 U.S.C. § 1395w-22(k)(1); 42 C.F.R. § 422.214(a)(1)).

and thus Hospital must follow the administrative appeal procedures. (*See* Dkt. 31 at p. 3, citing *RenCare Ltd.,* 395 F.3d at 559 (stating that "Part C and CMS's implementing regulations establish mandatory administrative 'appeals procedures' for resolving disputes over 'organization determinations.' Disputes over any other matter are not subject to the same appeals process to which organization determinations are subject, but, instead have their own 'grievance procedures'.") (internal citations omitted)). *See also* 42 CFR 422.564(b). As such, Hospital has not shown that the Court's judgment is an error of law.

Indeed, Hospital's affidavit and the attached documents further show no error of law. Should the Court consider this improperly filed affidavit and additional materials not previously provided, the Court will see that CMS directed Hospital to follow and exhaust the administrative review process, as the Court concluded Hospital must do. Exhibit 1 is an email from CMS responding to a grievance that Hospital filed and referencing health plans' appeal processes for payment disputes:

> Additionally, it is not CMS' role to determine medical necessity for an appeal case nor to determine appropriate claims payment amounts for payment disputes. CMS does _not_ adjudicate or process claims on behalf of MAO plans from this office.

In Exhibit 2, CMS states "we require providers to exhaust the appeals process from the plan," directing Hospital to follow the administrative process with the health plan, which is consistent with the Court's decision. Thus, Hospital has not shown any error of law.

As the Court correctly determined, because this is a dispute about payment received from a MAO for a Medicare Advantage plan beneficiary, Medicare requires administrative review before Hospital can file a lawsuit in federal courts. (Dkt. 29, at p. 10). The administrative appeal process is separate and distinct from the CMS grievance process Hospital relies on in its motion.

For the reasons stated above, Martin's Point respectfully requests that the Court deny Hospital's Motion to Alter Judgment Pursuant to Rule 59(e).

Dated: June 11, 2024                    Respectfully submitted,

                                        Martin's Point Health Care, Inc.

                                        By its attorneys,

                                        */s/ Timothy J. McKeon*
                                        Timothy J. McKeon, Maine Bar # 005379
                                        Brian Dunphy (*pro hac vice*)
                                        Laura Martin (*pro hac vice*)
                                        Mintz, Levin, Cohn, Ferris, Glovsky
                                         and Popeo, P.C.
                                        One Financial Center
                                        Boston, MA 02111
                                        Tel. (617) 542-6000
                                        Fax (617) 542-2241
                                        TJMcKeon@mintz.com
                                        BDunphy@mintz.com
                                        LEMartin@mintz.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2024, I served a true and correct copy of the foregoing document via the Court's Electronic Filing System, which will electronically send notice to all counsel of record.

                                        */s/ Timothy J. McKeon*
                                        Timothy J. McKeon

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:23-CV-00258-LEW |
| MARTIN'S POINT HEALTH CARE, INC., | ) ) ) | |
| Defendant. | ) ) | |

## <u>ORDER ON MOTION TO ALTER JUDGMENT</u>

Plaintiff Hospital Amerimed Cancun seeks to recover the costs of medical services that it provided to a patient in Mexico from Defendant Martin's Point Health Care, Inc. I previously granted Defendant's Motion to Dismiss because Plaintiff did not exhaust its administrative remedies. Order on Motion to Dismiss (ECF No. 29). The matter is before the Court on Plaintiff's Motion to Alter Judgment (ECF No. 31). Because Plaintiff has not demonstrated that the judgment of dismissal resulted from a manifest error of law, the Motion is DENIED.

Federal Rule of Civil Procedure 59(e) "permits an attack on a judgment on the ground that the judgment is based on a manifest error of law." *Venegas-Hernandez v. Sonolux Recs.*, 370 F.3d 183, 189 (1st Cir. 2004).

Plaintiff argues that this case was erroneously dismissed because it is a foreign provider of medical services and thus not able to access the administrative review process. Mot. at 2.  In support, Plaintiff references the Fifth Circuit's decision in *RenCare*, *Ltd. v. Humana Health Plan of Texas*, *Inc*., 395 F.3d 555 (5th Cir. 2004), and observes "that a provider's direct claim against an insurer may not be subject to Medicare's administrative review." Mot. at 3.  In *RenCare*, the payment "dispute [was] solely between Humana and RenCare" based on their "privately-agreed-to payment plan."  395 F.3d at 558.  Because the parties had a private contract, the payment dispute was not "inextricably intertwined with a claim for Medicare benefits," so the exhaustion requirement did not apply.  *Id.* at 557–58.[1]  Because this case does not involve a contract, *RenCare* is distinguishable.  *See Tenet Healthsystem GB*, *Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 591 (11th Cir. 2017) (explaining that "Medicare regulations treat noncontract providers differently than contract providers" by permitting contract providers and Medicare Advantage Organizations ("MAOs") to define the terms of their agreements).

---

[1] Plaintiff quotes an amicus brief filed by the United States Department of Health and Human Services in which it argued "'that third-party contract providers (rather than noncontract providers . . .) are not assignees' within the definition of Medicare's administrative exhaustion provisions." *Sarasota Cnty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla.*, *Inc.*  511 F. Supp. 3d 1240, 1252 (M.D. Fla. 2021) (ellipses in original) (quoting *Tenet Healthsystem GB*, *Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 590 (11th Cir. 2017)).  As explained by the Eleventh Circuit, this argument overlooks the "critical" distinction "between contract providers and noncontract providers." *Tenet Healthsystem*, 875 F.3d at 590. When there is a billing dispute between a MAO and a contract provider, the provider is only pursuing a claim for reimbursement that belonged to itself under the contract, so its claim is not inextricably intertwined with a claim for Medicare benefits. *See id.*  But when a hospital agrees to treat Medicare enrollees and agrees to hold those enrollees harmless for any costs incurred in connection with their medical treatments, the hospital "stand[s] in the shoes of the enrollees," so it must comply with the exhaustion requirement to assert an enrollees' claims. *Id.* at 589.

2

Plaintiff also argues that "[s]ince foreign medical providers are neither contracting nor non-contracting parties as those phrases are used in [Center for Medicare & Medicaid Services' (CMS)] nomenclature, they cannot be part of an administrative review process such as the providers in the cases the Court relie[d] upon." Mot. at 4. This checks off the lawyerly rhetoric box, but Plaintiff has not supported its argument with any case law. Instead, Plaintiff has offered the affidavit of Eindar M. Khant, the CEO of Passage Health International, Inc. Mot. Ex. 1 at 1–2. He states that CMS has "flatly rejected [appeals,] stating that it does not handle, remedy or adjudicate claims between any MAO and any foreign medical provider." *Id.* at 1. Khant further explains that "[f]oreign medical providers cannot be either contracting or non-contracting parties in the CMS vocabulary since they cannot participate in Medicare since they are outside of the USA." *Id.* In support, Plaintiff attached two emails capturing exchanges between other foreign medical providers and CMS in which CMS has purportedly rejected appeal requests. *Id.* at 11–18.

Plaintiff's argument confounds the grievance process with the distinct appeals process for payment disputes. The grievance process is reserved for "complaint[s] or dispute[s], *other than one that constitutes an organization determination*, expressing dissatisfaction with any aspect of an MA organization's or provider's operations, activities, or behavior, regardless of whether remedial action is requested." 42 C.F.R. § 422.561 (emphasis added). Organization determinations encompass the "MA organization's refusal to provide or pay for services, in whole or in part." 42 C.F.R. § 422.566(b)(3). Accordingly, Plaintiff's payment dispute entails an organizational determination, and it is subject to "mandatory administrative 'appeals procedures.'" *RenCare*, 395 F.3d at 559

3

(first citing 42 U.S.C. § 1395w-22(g); and then citing 42 C.F.R. §§ 422.560–422.622). Indeed, one of Plaintiff's proffered email exchanges references this appeals process. *See* Mot Ex. 1 at 9.

In sum, Plaintiff has not demonstrated that the judgment of dismissal rested on a manifest error of law.   Thus, Plaintiff's Motion to Alter Judgment (ECF No. 31) is **DENIED**.

SO ORDERED.

Dated this 12th day of August, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge

4

**138**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| HOSPITAL AMERIMED CANCUN S A DE C V, | ) |
| | ) |
| Plaintiff, | ) |
| | )  Civil Action No. 2:23-cv-00258-LEW |
| v. | ) |
| | ) |
| MARTIN'S POINT HEALTH CARE, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S NOTICE OF APPEAL**

Plaintiff Hospital Amerimed Cancun S A DE C V, by and through their counsel, hereby files this Notice of Appeal with respect to the following:

1) Order on Defendant's Motion to Dismiss dated April 23, 2024 and resulting Judgment of Dismissal dated April 23, 2024; and

2) Order dated August 12, 2024 denying Rule 59 (e) Motion (filed on May 21, 2024) to Alter the Court's April 23, 2024 Order and Judgment of Dismissal.

Respectfully submitted,

Hospital Amerimed Cancun S A DE C V

By its attorney,

/s/ Mark A. Darling
Mark A. Darling, Maine Bar # 4802
Litchfield Cavo, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2024, I served a true and correct copy of the foregoing document via the Court's Electronic Filing System, which will electronically send notice to all counsel of record.

/s/  Mark A. Darling
Mark A. Darling

**U.S. District Court**
**District of Maine (Portland)**
**CIVIL DOCKET FOR CASE #: 2:23-cv-00259-LEW**

HOSPITAL QUIRURGICA DEL SUR v. MARTINS POINT HEALTH CARE INC
Assigned to: JUDGE LANCE E. WALKER
Referred to: MAGISTRATE JUDGE JOHN C. NIVISON
Demand: $487,000
Case in other court: First Circuit Court of Appeals, 24-01816
Cause: 28:1332 Diversity-Other Contract

Date Filed: 06/26/2023
Date Terminated: 04/23/2024
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**HOSPITAL QUIRURGICA DEL SUR**                    represented by    **MARK A. DARLING**
LITCHFIELD CAVO LLP
6 KIMBALL LANE
SUITE 200
LYNNFIELD, MA 01940
781-309-1500
Email: darling@litchfieldcavo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MARTINS POINT HEALTH CARE INC**                  represented by    **TIMOTHY J. MCKEON**
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO P.C.
ONE FINANCIAL CENTER
BOSTON, MA 02111
617-348-4924
Email: tjmckeon@mintz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BRIAN P. DUNPHY**
ARNOLD & PORTER KAYE SCHOLER LLP
200 CLARENDON STREET
53RD FLOOR

**141**

BOSTON, MA 02116
617-351-8050
Fax: 627-226-9199
Email: Brian.Dunphy@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**LAURA E. MARTIN**
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO P.C.
ONE FINANCIAL CENTER
BOSTON, MA 02111
617-542-6000
Email: lemartin@mintz.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/26/2023 | 1 | COMPLAINT filed by HOSPITAL QUIRURGICA DEL SUR against MARTINS POINT HEALTH CARE INC with Jury Demand **PAYMENT OF FILING FEE DUE WITHIN 48 HOURS. IF FILING FEE IS BEING PAID WITH A CREDIT CARD COUNSEL ARE INSTRUCTED TO LOGIN TO CMECF AND DOCKET** *Case Opening Filing Fee Paid* **FOUND IN THE** *Complaints and Other Initiating Documents* **CATEGORY. CHECK PAYMENTS DUE WITHIN 48 HOURS.**. (Service of Process Deadline 9/25/2023) Fee due by 6/28/2023. Per Civil Rule 7.1 as Amended December 1, 2022 Diversity Disclosure Statement due by 7/3/2023.(jwr) (Entered: 06/26/2023) |
| 06/26/2023 | 2 | CIVIL COVER SHEET. (jwr) (Entered: 06/26/2023) |
| 06/26/2023 | 3 | Summons Issued as to MARTINS POINT HEALTH CARE INC.<br><br>**Counsel shall print the embossed summons and effect service in the manner in accordance with Fed.R.Civ.P.4.**<br><br>**Note-If you are using Version 6 of Adobe Acrobat, be sure the PRINT WHAT field is set to DOCUMENTS AND COMMENTS (Click File, then Print to check this setting).**<br><br>(jwr) (Entered: 06/26/2023) |
| 06/26/2023 | | Filing Fee Paid via Credit Card ( Filing fee $ 402 receipt number AMEDC-2819343.), filed by HOSPITAL QUIRURGICA DEL SUR. (DARLING, MARK) (Entered: 06/26/2023) |
| 06/30/2023 | 4 | DIVERSITY DISCLOSURE STATEMENT by HOSPITAL QUIRURGICA DEL SUR. (DARLING, MARK) (Entered: 06/30/2023) |
| 07/24/2023 | 5 | AFFIDAVIT of Service by HOSPITAL QUIRURGICA DEL SUR. MARTINS POINT HEALTH CARE INC served on 7/20/2023. (DARLING, MARK) (Entered: 07/24/2023) |
| 07/24/2023 | | Set Answer Deadline Regarding Affidavit of Service for MARTINS POINT HEALTH CARE INC: Answer due by 8/10/2023. (mmy) (Entered: 07/24/2023) |

**142**

| 08/10/2023 | 6 | **FILED IN ERROR** STIPULATION *to Extend Time to Respond to Complaint* by HOSPITAL QUIRURGICA DEL SUR. (DARLING, MARK) Modified on 8/10/2023 to indicate filed in error (mmy). (Entered: 08/10/2023) |
|---|---|---|
| 08/10/2023 | 7 | NOTICE of Docket Entry Modification regarding 6 Stipulation: This docket entry has been modified to indicate it was filed in error. Counsel are directed to refile as a Motion to Extend Time to Answer. (mmy) (Entered: 08/10/2023) |
| 08/10/2023 | 8 | Joint MOTION to Extend Time to File Answer by HOSPITAL QUIRURGICA DEL SUR Responses due by 8/31/2023. (DARLING, MARK) (Entered: 08/10/2023) |
| 08/11/2023 | 9 | ORDER granting 8 Motion to Extend Time to File Response to Complaint. Time is extended to September 22, 2023. By MAGISTRATE JUDGE JOHN C. NIVISON. (NIVISON, JOHN) (Entered: 08/11/2023) |
| 08/11/2023 | | Reset Answer Deadline : Answer due by 9/22/2023. (cjd) (Entered: 08/11/2023) |
| 08/11/2023 | 10 | NOTICE of Appearance by TIMOTHY J. MCKEON on behalf of MARTINS POINT HEALTH CARE INC (MCKEON, TIMOTHY) (Entered: 08/11/2023) |
| 08/11/2023 | 11 | CORPORATE DISCLOSURE STATEMENT by MARTINS POINT HEALTH CARE INC. (MCKEON, TIMOTHY) (Entered: 08/11/2023) |
| 08/11/2023 | 12 | DIVERSITY DISCLOSURE STATEMENT by MARTINS POINT HEALTH CARE INC. (MCKEON, TIMOTHY) (Entered: 08/11/2023) |
| 08/11/2023 | 13 | CERTIFICATION for Admission Pro Hac Vice of Laura E. Martin filed by TIMOTHY J. MCKEON on behalf of MARTINS POINT HEALTH CARE INC (Total admission fee $ 100 receipt number AMEDC-2839226.) The District of Maine is a CM/ECF NextGen Court. If PHV counsel has not previously been granted electronic filing rights with the District of Maine, PHV counsel will now need to submit a PRO HAC VICE request in this District via PACER at www.pacer.uscourts.gov (MCKEON, TIMOTHY) (Entered: 08/11/2023) |
| 08/11/2023 | 14 | CERTIFICATION for Admission Pro Hac Vice of Brian P. Dunphy filed by TIMOTHY J. MCKEON on behalf of MARTINS POINT HEALTH CARE INC (Total admission fee $ 100 receipt number AMEDC-2839227.) The District of Maine is a CM/ECF NextGen Court. If PHV counsel has not previously been granted electronic filing rights with the District of Maine, PHV counsel will now need to submit a PRO HAC VICE request in this District via PACER at www.pacer.uscourts.gov (MCKEON, TIMOTHY) (Entered: 08/11/2023) |
| 09/18/2023 | 15 | MOTION to Extend Time to File Answer *or Otherwise Respond (JOINT)* by MARTINS POINT HEALTH CARE INC Responses due by 10/10/2023. (MCKEON, TIMOTHY) (Entered: 09/18/2023) |
| 09/18/2023 | 16 | ORDER granting 15 Motion to Extend Time to File Response to Complaint. Time is extended to October 13, 2023. By MAGISTRATE JUDGE JOHN C. NIVISON. (NIVISON, JOHN) (Entered: 09/18/2023) |
| 09/18/2023 | | Reset Answer Deadline for MARTINS POINT HEALTH CARE INC per Order #16: Answer due by 10/13/2023. (mmy) (Entered: 09/18/2023) |
| 10/11/2023 | 17 | MOTION to Extend Time to File Answer *or Otherwise Respond (JOINT)* by MARTINS POINT HEALTH CARE INC Responses due by 11/1/2023. (MCKEON, TIMOTHY) (Entered: 10/11/2023) |
| 10/13/2023 | 18 | ORDER granting 17 Motion to Extend Time to File Response to Complaint. Time is extended to November 13, 2023. By MAGISTRATE JUDGE JOHN C. NIVISON. (NIVISON, JOHN) (Entered: 10/13/2023) |
| 10/13/2023 | | Reset Answer Deadline for MARTINS POINT HEALTH CARE INC: Answer due by 11/13/2023. (mmy) (Entered: 10/13/2023) |

| 11/13/2023 | 19 | MOTION to Dismiss *Plaintiff Hospital Quirurgica Del Sur's Complaint With Incorporated Memorandum of Law* by MARTINS POINT HEALTH CARE INC Responses due by 12/4/2023. (Attachments: # 1 Exhibit A-Prior Authorization Verification Form)(MCKEON, TIMOTHY) (Entered: 11/13/2023) |
|---|---|---|
| 11/29/2023 | 20 | STIPULATION re 19 MOTION to Dismiss Complaint *to Extend Time to Respond* by HOSPITAL QUIRURGICA DEL SUR. (DARLING, MARK) (Entered: 11/29/2023) |
| 11/29/2023 | 21 | **FILED IN ERROR-TO BE RE-FILED AS A MOTION** NOTICE Re: 20 Stipulation: This filing has been marked filed in error and shall be properly re-filed as a Motion at the Court's request. (mlm) Modified on 11/29/2023 re: error (mlm). (Entered: 11/29/2023) |
| 11/29/2023 | 22 | Joint MOTION to Extend Time to Respond to Motion to Dismiss by HOSPITAL QUIRURGICA DEL SUR Responses due by 12/20/2023. (DARLING, MARK) (Entered: 11/29/2023) |
| 11/30/2023 | 23 | ORDER granting 22 Motion to Extend Time to File Response to Motion to Dismiss. Time for Plaintiff to file response to motion to dismiss is extended to December 20, 2023; time for Defendant to file reply memorandum in support of motion to dismiss is extended to January 10, 2024. By MAGISTRATE JUDGE JOHN C. NIVISON. (NIVISON, JOHN) (Entered: 11/30/2023) |
| 11/30/2023 | | Reset Deadlines as to 19 MOTION to Dismiss Complaint per Order #23: Responses due by 12/20/2023. Reply due by 1/10/2024. (mmy) (Entered: 11/30/2023) |
| 12/18/2023 | 24 | Joint MOTION to Extend Time to respond to Defendant's Motion to Dismiss by HOSPITAL QUIRURGICA DEL SUR Responses due by 1/8/2024. (DARLING, MARK) (Entered: 12/18/2023) |
| 12/19/2023 | 25 | ORDER granting 24 Motion to Extend Time to File Response to Motion to Dismiss. Time for Plaintiff to file response to motion to dismiss is extended to January 3, 2024; time for Defendant to file reply memorandum in support of motion to dismiss is extended to January 24, 2024. By MAGISTRATE JUDGE JOHN C. NIVISON. (NIVISON, JOHN) (Entered: 12/19/2023) |
| 12/19/2023 | | Reset Deadlines as to 19 MOTION to Dismiss Complaint: Responses due by 1/3/2024. Reply due by 1/24/2024. (mmy) (Entered: 12/19/2023) |
| 01/03/2024 | 26 | RESPONSE in Opposition re 19 MOTION to Dismiss Complaint filed by HOSPITAL QUIRURGICA DEL SUR. Reply due by 1/17/2024. (Attachments: # 1 Affidavit)(DARLING, MARK) Modified on 1/4/2024 to remove duplicative affidavit text (mmy). (Entered: 01/03/2024) |
| 01/04/2024 | 27 | ADDITIONAL ATTACHMENTS filed by HOSPITAL QUIRURGICA DEL SUR re 26 Response in Opposition to Motion . Main Document: Plaintiff's Affidavit. (Attachments: # 1 Exhibit A - Verification of Benefits, # 2 Exhibit B - Inpatient Authorization Request Form, # 3 Exhibit C - Request for Additional Information, # 4 Exhibit D - Second Authorization Request, # 5 Exhibit E - Approval of Inpatient Admission, # 6 Exhibit F - Check)(DARLING, MARK) (Entered: 01/04/2024) |
| 01/19/2024 | | Reset Deadlines as to 19 MOTION to Dismiss Complaint per Order #25: Reply due by 1/24/2024. (mmy) (Entered: 01/19/2024) |
| 01/24/2024 | 28 | REPLY to Response to Motion re 19 MOTION to Dismiss Complaint filed by MARTINS POINT HEALTH CARE INC. (MCKEON, TIMOTHY) (Entered: 01/24/2024) |
| 04/23/2024 | 29 | ORDER ON MOTION TO DISMISS granting 19 Motion to Dismiss. By JUDGE LANCE E. WALKER. (jgd) (Entered: 04/23/2024) |
| 04/23/2024 | 30 | JUDGMENT OF DISMISSAL. By DEPUTY CLERK: J. Driscoll. (jgd) (Entered: 04/23/2024) |

| 05/21/2024 | 31 | MOTION to Alter Judgment Pursuant to Rule 59(e) by HOSPITAL QUIRURGICA DEL SUR Responses due by 6/11/2024. (Attachments: # 1 Exhibit Affidavit of Eindar M. Khant)(DARLING, MARK) Modified on 5/22/2024 to clean up docket text (clp). (Entered: 05/21/2024) |
|---|---|---|
| 06/11/2024 | 32 | RESPONSE in Opposition re 31 MOTION to Alter Judgment Pursuant to Rule 59(e) filed by MARTINS POINT HEALTH CARE INC. Reply due by 6/25/2024. (MCKEON, TIMOTHY) (Entered: 06/11/2024) |
| 08/12/2024 | 33 | ORDER ON MOTION TO ALTER JUDGMENT denying 31 Motion to Alter Judgment. By JUDGE LANCE E. WALKER. (cjd) Modified on 8/12/2024 to reflect correct name of pleading(cjd). (Entered: 08/12/2024) |
| 09/06/2024 | 34 | NOTICE OF APPEAL as to 30 Judgment, 33 Order on Motion for Judgment on the Pleadings, 29 Order on Motion to Dismiss by HOSPITAL QUIRURGICA DEL SUR . ( Filing fee $ 605 receipt number AMEDC-3001439.)<br><br>**NOTICE TO FILER:** A transcript Report/Order form <u>MUST</u> be completed and submitted to the First Circuit Court of Appeals. The form can be found under the Forms & Fees section on their website at https://www.ca1.uscourts.gov.<br><br>**NOTICE TO COUNSEL:** Counsel should register for a First Circuit CM/ECF Appellate Filer Account at https://pacer.psc.uscourts.gov. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at https://www.ca1.uscourts.gov/cmecf (DARLING, MARK) (Entered: 09/06/2024) |
| 09/06/2024 | | COPIES of Notice of Appeal Sent to Counsel Re: 34 Notice of Appeal filed by HOSPITAL QUIRURGICA DEL SUR. (clp) (Entered: 09/06/2024) |
| 09/06/2024 | 35 | **FILED IN ERROR** APPEAL COVER SHEET Re: 34 Notice of Appeal (clp) Modified on 9/6/2024 to add filed in error notation--this was filed in the wrong case (clp). (Entered: 09/06/2024) |
| 09/06/2024 | 36 | NOTICE of Docket Entry Modification regarding 35 Appeal Cover Sheet : Modified by the Clerk's Office on 9/6/2024 to add filed in error notation--this was filed in the wrong case. (clp) (Entered: 09/06/2024) |
| 09/06/2024 | 37 | APPEAL COVER SHEET Re: 34 Notice of Appeal (clp) (Entered: 09/06/2024) |
| 09/06/2024 | 38 | CLERK'S CERTIFICATE Re: 34 Notice of Appeal. Documents sent to the U.S. Court of Appeals. (clp) (Entered: 09/06/2024) |
| 09/06/2024 | | Abbreviated Appeal Record Transmitted Electronically to U.S. Court of Appeals re 34 Notice of Appeal (clp) (Entered: 09/06/2024) |
| 09/06/2024 | 39 | USCA Case Number 24-1816 for 34 Notice of Appeal filed by HOSPITAL QUIRURGICA DEL SUR. (clp) (Entered: 09/06/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 11/14/2024 11:45:40 | | | |
| **PACER Login:** | MDarling262 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:23-cv-00259-LEW |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

**145**

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HOSPITAL QUIRURGICA DEL SUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MARTIN'S POINT HEALTH CARE, INC. | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT & JURY TRIAL DEMAND

Plaintiff, Hospital Quirurgica Del Sur (hereinafter "Plaintiff Hospital"), by and through

its attorneys, Litchfield Cavo LLP, files the following Complaint and states as follows:

### PARTIES

1.  Hospital Quirurgica Del Sur is a Mexican Corporation duly authorized that provides

    hospital and health care services to patients in Cancun, Mexico ("Hospital").

2.  Defendant, Martin's Point Health Care, Inc. ("Martin's Point"), is a Maine corporation

    with its principal place of business in Portland, Maine.

3.  Martin's Point was a medical insurer for James G. Taliaferro ("Taliaferro") at the time

    services were rendered to Mr. Taliaferro in Mexico.

### JURISDCITION

4.  The plaintiff is a foreign corporation that provided medical services to a U.S. Citizen in

    Mexico, and through its agent in Florida, communicated with the defendant in the state of

    Maine numerous times relating to the status of the U.S. Citizen's health insurance

    medical insurance coverage before medical procedures were initiated in Mexico.

1

5. As such, the plaintiff has suffered injury in fact—a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent, not "conjectural" or "hypothetical."

6. There is a clearly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.

7. There is a likelihood that the requested relief will redress the alleged injury.

8. Accordingly, this the plaintiff has federal standing to bring this suit.

9. Subject-matter jurisdiction in this case is provided by alienage and diversity of citizenship. U.S. CONST. art. III, § 2, cl. 1; 28 U.S.C. § 1332(a)(2)

10. The requirements of diversity jurisdiction, and specifically alienage jurisdiction, are satisfied as plaintiff is a citizen of Mexico, a foreign state, and defendant, is a Maine corporation with a principal place of business in Maine and the actions of the defendant occurred substantially within the State of Maine.

## **FACTS**

11. From January 12, 2023 to February 16, 2023, James G. Taliaferro was voluntarily admitted to Hospital.

12. Upon his admission to Hospital and during his hospitalization, Taliaferro signed a written contract acknowledging that he would be responsible for paying all monies owed to the provider and/or billing administrator, and provided information about his applicable health insurance.

13. Passage Health International LLC ("Passage"), is a limited liability company with a principal place of business in Fort Lauderdale, Florida. Passage is duly authorized by Hospital to perform billing submission, pre-authorization and collection activities.

2

**147**

14. Passage, throughout Taliaferro's inpatient stay at Hospital, regularly communicated with, and received verification from Martin's Point that the proposed medical procedures in Mexico were covered by insurance provided by Martin's Point and that Taliaferro had applicable benefits for out of country emergency services.

15. After receiving such assurances, Hospital treated Taliaferro and he was eventually released.

16. Upon information and belief, Taliaferro died on February 20, 2023.

17. Hospital's medical bills incurred on behalf of Taliaferro were provided to Martin's Point who, despite prior assurances to the contrary, refused to reimburse for Hospital for Taliaferro's treatment except to a later claimed limit of $25,000.00.

18. Martin's Point never advised Hospital of the $25,000.00 limit for treatment at the time Hospital sought and received assurances that Taliaferro's medical treatment in Mexico was covered by insurance with Martin's Point.

19. Hospital worked with Passage to verify coverage and Passage had communications with Martin's Point who made assurances that Taliaferro's proposed medical procedures in Mexico were covered by its medical insurance.

20. Martin's Point later paid $24,406.90 toward the Taliaferro medical bills, but refused to pay anything more.

21. A sequestration amount of $498.10 was paid and processed through Medicare toward the Taliaferro medical bills.

22. Hospital performed medical services rendered to Taliaferro in the amount of $512,464.00.

3

**148**

23. Martin's Point has refused to pay toward the remaining amount of medical services rendered to Taliaferro.

24. Hospital has $487,464.00 remaining in unpaid medical bills for the treatment of Taliaferro as alleged herein.

25. Martin's Point is the insurance provider for Taliaferro and made certain representation to Hospital, through Passage, that Taliaferro's medical bills in Mexico were covered by his insurance, and pretreatment authorizations were obtained through Martin's Point.

26. Martin's Point is accordingly liable and responsible for the outstanding charges.

**COUNT I**
**Hospital Quirurgica Del Sur v. Martin's Point Health Care, Inc.**
**(Promissory Estoppel)**

27. Hospital Quirurgica Del Sur restates and realleges each and every allegation set forth in all prior paragraphs.

28. During Taliaferro's treatment at Hospital, Passage, on behalf of Hospital remained in contact with Martin's Point.

29. Passage provided information and made representation and promises to Passage that Taliaferro had full medical insurance benefits for the proposed, out of country emergency services proposed to be provided.

30. These promises and representations by Martin's Point were reasonably expected to induce action on the part of Hospital to perform medical treatment for the benefit of Taliaferro.

31. Martin's Point representations and promises to Hospital, through communications with Passage, in fact induced Hospital to act by providing medical treatment to Taliaferro.

4

32. Hospital, through Passage, reasonably relied upon Martin's Point's statements and representations, and reasonably relied upon those representations made and such promises and representations are binding since injustice can be avoided by enforcement of those representations and promises.

33. Passage was later informed that a limitation on Taliaferro's insurance policy limited out of country service to $25,000, but this was after the medical treatment had occurred and the bills had been incurred based on the prior representation and pre-authorizations.

34. Hospital has bene severely prejudiced as a result of t its reasonable reliance Martin's Point's promises that there was applicable coverage for the proposed medical treatment thereafter incurred to treat and care for Taliaferro in the Hospital, and Hospital continued to do so in reasonable reliance on the representations of Martin's Point and its authorized representatives.

35. As a result of Passage's reasonable reliance on Martin's Point's promises, Hospital has incurred costs and expenses in connection with the medical services rendered and medical supplies provided to Taliaferro in the outstanding amount of $487,464.00.

36. Hospital has no reasonable prospect that Taliaferro will be able to pay for the extensive medical services provided, and Hospital reasonably relied upon representation from Martin's Point to its detriment, that the medical bills incurred would be paid by Martin's Point as the medical insurer for Taliaferro.

WHEREFORE, Hospital Quirurgica Del Sur prays for judgment in its favor and against Defendant Martin's Point, in the amount of $487,464.00 pre-judgment interest and reasonable attorneys' fees, plus costs and for any and all other damages or additional relief as this Court deems just and appropriate.

5

**150**

**COUNT II**
**Hospital Quirurgica Del Sur V v. Martin's Point Health Care, Inc.**
**(Negligent Misrepresentation)**

37. Hospital restates and re-alleges each and every allegation set forth in all prior paragraphs.

38. In the course of its business and/or professional operations, Martin's Point supplied false information to Passage and/or Hospital that guided the Hospital in its business transactions relating to its patient, Taliaferro.

39. Hospital justifiably relied upon such false information in going forward with medical procedures for the health and benefit of Taliaferro.

40. Martin's Point failed to exercise care or competence in obtaining or communicating information about its medical insurance benefits provided on behalf of Taliaferro to Hospital, and Hospital has been damaged by such negligence.

WHEREFORE, Hospital Quirurgica Del Sur prays for judgment in its favor and against Defendant Martin's Point, in the amount of $487,464.00, pre-judgment interest and reasonable attorneys' fees, plus costs and for any and all other damages or additional relief as this Court deems just and appropriate.

**HOSPITAL QUIRURGICA DEL SUR DEMANDS A TRIAL BY JURY ON ALL COUNTS.**

Respectfully Submitted,
Plaintiff,
By Its Counsel,

Mark A. Darling, Maine Bar # 4802
Litchfield Cavo, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
(781) 309-1500
(781) 246-0167 Fax
Darling@litchfieldcavo.com

6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| HOSPITAL QUIRURGICA DEL SUR,      ) | |
|         ) | |
|     Plaintiff,           ) | |
|         ) | Civil Action No. 2:23-cv-00259-LEW |
| v.           ) | |
|         ) | |
| MARTIN'S POINT HEALTH CARE, INC.,   ) | |
|         ) | |
|     Defendant.         ) | |

## DEFENDANT MARTIN'S POINT HEALTH CARE, INC.'S MOTION TO DISMISS PLAINTIFF HOSPITAL QUIRURGICA DEL SUR'S COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL BACKGROUND.................................................................................. 4

III.  MEDICARE ADVANTAGE REGULATORY BACKGROUND ......................... 6

IV.   LEGAL STANDARDS ......................................................................................... 8

V.    ARGUMENT......................................................................................................... 9

      A.    The Complaint Should be Dismissed because Hospital's Failure to
           Exhaust its Administrative Remedies Removes Subject Matter
           Jurisdiction.................................................................................................. 9

           1.    The Medicare Act Requires Providers to Exhaust Administrative
                 Remedies Prior to Filing Suit in Court. .................................................. 10

           2.    Hospital Must Exhaust its Administrative Remedies, Regardless of
                 its Theory of Liability Because the Claims Arise Under the
                 Medicare Act.......................................................................................... 12

      B.    The Complaint Should be Dismissed for Failure to Plead a Plausible
           Promissory Estoppel Claim........................................................................ 13

      C.    The Complaint Should be Dismissed for Failure to Plead an Actionable
           Negligent Misrepresentation Claim. .......................................................... 15

VI.   CONCLUSION ................................................................................................... 17

## I.  <u>INTRODUCTION</u>

The Court should dismiss Plaintiff Hospital Quirurgica Del Sur's ("Hospital") threadbare Complaint (Dkt. 1) under both Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction, and Fed. R. Civ. P. 12(b)(6) because Hospital has alleged almost no facts, and no plausible facts, sufficient to support either of its two causes of action.

Hospital provided inpatient medical services in Mexico to an eligible Medicare beneficiary (Mr. Taliaferro) enrolled in a Medicare Advantage health plan administered by Martin's Point.[1] Martin's Point paid Hospital pursuant to the beneficiary's Medicare Advantage plan's documented out-of-network payment limits. Hospital asserts that Martin's Point induced it to provide medical services to Mr. Taliaferro by allegedly providing "assurances that Taliaferro's medical treatment in Mexico was covered by insurance with Martin's Point" (Complaint, ¶ 18) and providing prior authorizations (which are a decision about whether care is medically necessary) to Hospital's medical biller, Passage Health International ("Passage Health"). Lacking any plausible facts that Martin's Point promised it would pay the entirety of the enormous claim that Hospital would eventually send to Martin's Point, what specific (future) services that Martin's Point promised to pay for, or in what amount, Hospital contends that Martin's Point now owes more than $480,000 for the medical services Hospital purportedly rendered.

Except for very limited circumstances that do not apply here, Medicare does not pay for services furnished in a foreign country. *See* 42 C.F.R. 424 Subpart H ("Original Medicare Foreign Country Conditions for Payment"). Similarly, Medicare Advantage plans, described more fully in Section III, are not required to pay for medical claims incurred by eligible Medicare beneficiaries

---

[1] A Medicare Advantage plan is a type of Medicare health plan offered to eligible Medicare beneficiaries through a private insurer pursuant to federal Medicare law and regulation.

traveling outside the United States except: (a) as set forth under the Original Medicare Foreign Country Conditions for Payment, or (b) to the extent that the plan elects to offer a supplemental limited benefit for out-of-country emergency medical claims to their beneficiaries.  Here, the circumstances of the services provided by Hospital do not meet the Original Medicare Foreign Country Conditions for Payment[2] and the sum sought by Hospital is almost twenty (20) times greater than Martin's Point's supplemental limited benefit for medical services rendered by an out-of-country provider as set forth in the beneficiary's plan documents.

As an initial matter, the Court does not have jurisdiction over Hospital's claims for payment of more than $480,000 from a Medicare Advantage plan because Hospital (nor Passage Health) has not exhausted its administrative remedies, as it must do under federal Medicare law. The pervasive federal Medicare statutory and regulatory regime expansively regulates Medicare Advantage. The outcome of Hospital's demand for payment from Martin's Point for services to a Medicare Advantage beneficiary therefore requires the analysis, interpretation, and application of Medicare rules and regulations. Federal law mandates an administrative process to resolve Hospital's request for payment, which must be followed before Hospital can bring a lawsuit in federal court. These defined administrative steps are required for non-contracted providers, regardless of a plaintiff's cause of action or theory of liability. Hospital cannot plead around the federal regulatory regime. Because Hospital has not exhausted the mandatory administrative appeal process, the Court does not have jurisdiction and should dismiss this action under Fed. R. Civ. P. 12(b)(1). By doing so, the Court would join several courts that have dismissed lawsuits

---

[2] The beneficiary was not traveling within the United States or Canada when the services were provided by Hospital and Hospital was not more accessible to the beneficiary's residence within the United States. *See* 42 C.F.R. 424.122 and 422.123.

based on nearly identical circumstances, including where out-of-country health care providers asserted similar claims against Medicare Advantage plans.

Without jurisdiction, the Court need not go further, but the Complaint also fails to meet the fundamental pleading requirements of Fed. R. Civ. P. 8(a) and should be dismissed under Fed. R. Civ. P. 12(b)(6). Hospital's Complaint fails to make plausible allegations against Martin's Point, and the perfunctory Complaint includes almost no factual details.

Hospital has not alleged sufficient facts as to each of the elements necessary to plausibly allege either of its two causes of action: promissory estoppel or negligent misrepresentation. Both causes of action rely on the same superficial allegations and fail for similar reasons. First, Hospital has not plausibly alleged facts that Martin's Point promised or represented to Hospital that Martin's Point would pay all medical claims submitted by Hospital, regardless of the type of services rendered, the duration of care, or the amount of those claims. Instead, Hospital simply repeats the mantra that Martin's Point told non-party Passage that Mr. Taliaferro had "medical insurance benefits" and medical bills were "covered by insurance." None of these allegations establish a promise by Martin's Point to pay for any and all medical claims incurred by its beneficiary, and certainly not more than $480,000, an extraordinary sum that drastically exceeds the applicable payment limitation set forth in the beneficiary's Medicare Advantage plan documents. There are no allegations that Martin's Point promised that Mr. Taliaferro's plan covered the total cost of out-of-country care, and it is unreasonable for a billing company with billing expertise to rely on any such representation.

Second, Hospital's purported reliance on Martin's Point's "pretreatment authorizations" referenced in the Complaint is not plausible. These documents plainly state "PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF

SERVICE." (Capitalization in the original.) There are no plausible factual allegations that such authorizations are promises or representations of unlimited payment for medical claims; in fact, they are plainly not promises to pay every single claim submitted by Hospital.[3] The Court should therefore dismiss Hospital's Complaint with prejudice.

## II.   **FACTUAL BACKGROUND**[4]

Hospital is a Mexican Corporation that provides hospital and health care services to patients in Cancun, Mexico. Compl., at ¶ 1. Martin's Point is a Maine corporation that, among other things, offers Medicare Advantage health plans to Medicare-eligible beneficiaries in Maine and New Hampshire. *See id.* at ¶¶ 2. Martin's Point Medicare Advantage health plan beneficiary James G. Taliaferro voluntarily admitted himself as a patient at Hospital between January 12, 2023 and February 16, 2023. *Id.* at ¶ 11. Throughout his inpatient stay, Mr. Taliaferro was an eligible Medicare beneficiary covered by a Martin's Point Medicare Advantage plan. *See id.* at ¶ 3.

While at the Hospital, Mr. Taliaferro signed a written agreement "acknowledging that he would be responsible for paying all monies owed to the provider and/or billing administrator." *Id.* at ¶ 12. Mr. Taliaferro then provided his health insurance information to Hospital. *Id.* Mr. Taliaferro died on February 20, 2023. *Id.* at ¶ 16.

Hospital authorized Passage Health, a Florida-based medical billing company presumably with knowledge of United States Medicare billing laws and regulations, to perform bill submission, pre-authorization and collection activities. *Id.* at ¶ 13. The Complaint alleges that Passage Health had communications with and received information from Martin's Point that Mr. Taliaferro had

---

[3] Passage Health touts itself as "specializ[ing] in international medical claims receivables" and presumably understands Medicare and Medicare Advantage rules and regulations. *See* Passage Health International, About Us, *available at*: https://passagehi.com/about/ (last visited November 9, 2023).
[4] The Court must accept Hospital's allegation as true at the motion to dismiss stage, so Martin's Point describes the few factual allegations in the Complaint. But, in doing so, Martin's Point does not concede that any of the allegations are accurate.

medical insurance and procedures were covered by insurance. *Id*. at ¶ 14. The Complaint provides no detail about the content of the communications between Martin's Point and Passage Health. The Complaint contains no allegations that Martin's Point promised that Mr. Taliaferro's plan reimbursed the total cost of out-of-country care. A copy of a prior authorization verification form that Martin's Point provided to Passage Health, referenced in the Complaint, is attached as Exhibit A.[5,6]

Hospital alleges that it only treated Mr. Taliaferro after receiving assurances from its agent, Passage Health, that it would receive payment. *Id*. at ¶ 15. Passage Health received prior authorization forms and confirmation that Mr. Taliaferro's plan included benefits for out-of-country emergency services. *Id*. at ¶ 14. Prior authorization forms do not confirm the availability of coverage or payment amounts, rather such forms affirm that the requested service is allowed to be billed to the health plan and the provider will be reimbursed according to the terms of the beneficiary's health plan. The prior authorization forms plainly state "PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE." Exhibit A. In addition, confirming that the beneficiary has out-of-country benefits does not equate to a promise of unlimited payment or an amount of payment.

Hospital asserts the cost of Mr. Taliaferro's care totaled $512,464.00. *Id*. at ¶ 22. Consistent with the payment limits of Taliaferro's Medicare Advantage plan, Martin's Point paid the full $24,406.90 limit for out-of-country emergency services. *Id*. at ¶ 20. Medicare paid a sequestration amount of $498.10 to Hospital for Mr. Taliaferro's care. *Id*. at ¶ 21.

---

[5] Attaching the prior authorization form will not convert this motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 12(d) because the prior authorization verification forms are integral to the claims in the complaint. *See Brayman v. Porter*, No. 1:20-cv-00169-JAW, 2021 U.S. Dist. LEXIS 18640, at *3 (D. Me. Feb. 1, 2021).

[6] Although addressed to Mr. Taliaferro, this prior authorization form was faxed to Hospital. *See* Compl., at ¶ 25.

Hospital alleges that Martin's Point never advised its United States-based medical biller, Passage Health, of the $25,000 Medicare coverage limit prior to rendering services. *Id.* at ¶ 18. The Complaint does not allege that Passage Health or Hospital followed or exhausted the Medicare administrative appeal process prior to filing this lawsuit.[7]

## III.   MEDICARE ADVANTAGE REGULATORY BACKGROUND

Medicare is the federal health insurance program administered by the Centers for Medicare and Medicaid Services ("CMS"). Medicare is a vast, complex, and heavily regulated healthcare program. The Medicare enabling statute is divided into four parts labeled Part A, Part B, Part C and Part D ("Medicare Act"). There are substantial applicable regulations and sub-regulatory guidance and manuals governing Medicare. Medicare beneficiaries can elect to receive their benefits directly from CMS ("Original Medicare") or, as described below, through a private health plan under the Medicare Advantage program.

Part C of the Medicare Act created Medicare Advantage, which provides Medicare beneficiaries with the option to enroll in private health plans to obtain Medicare benefits, as well as options for additional supplemental benefit coverage. 42 U.S.C. §§ 1395w-21−1395w-28. Medicare Advantage plans are administered by private health plans. Organizations that provide Medicare Advantage plans are called Medicare Advantage Organizations ("MAO"). 42 U.S.C. § 1395w-21. All of the benefits provided under the MAO plan – including supplemental benefits – are offered pursuant to a contract between CMS and the MAO. 42 U.S.C. § 1395w-27.

MAOs may also contract with health care providers to confirm the services that the provider will render to the Medicare Advantage plan's enrollees and the rate at which the Medicare Advantage plan will reimburse the provider for such services. These providers are known as

---

[7] Although the parties have engaged in discussions about payment, these discussions do not exhaust the required administrative appeals process.

contracted providers. *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc*., 30 F.4th 905, 909-910 (9th Cir. 2022). Medicare Advantage plans must also provide coverage for emergency services that are provided by non-contracted providers within the United States, and, only to the extent required by the beneficiary's benefits, outside of the United States; non-contracted providers are providers that have not entered into a contract with the MAO to confirm the services to be provided and the rates to be paid. 42 C.F.R. § 422.100(b)(1). Medicare regulations control the relationship between MAOs and non-contracted providers. *See* 42 C.F.R. §§ 422.100–422.138. And non-contracted providers, such as Hospital, "are obligated to accept the Medicare-approved rate as payment in full" to the extent benefits are available. *Glob. Rescue Jets,* 30 F.4th at 910 (*citing* 42 U.S.C. § 1395w-22(k)(1); 42 C.F.R. § 422.214(a)(1)).

Here, Martin's Point is a MAO that administers Medicare Advantage plans. When Mr. Taliaferro received services at Hospital, he was a Medicare-eligible beneficiary enrolled in Martin's Point's Medicare Advantage plan. Hospital did not have a contract with Martin's Point when it provided services to Mr. Taliaferro. Hospital is thus a "non-contracting provider" and subject to Medicare regulations. Martin's Point has paid Hospital the amount it is obligated to pay pursuant to the terms of Mr. Taliaferro's Medicare Advantage plan, which is solely established by the amount of supplemental limited benefit offered under the plan because the services provided by Hospital to Mr. Taliaferro did not meet the Original Medicare Foreign Country Conditions for Payment.[8]

---

[8] Original Medicare pays for emergency hospital services provided in a foreign country only when a Medicare beneficiary was in the United States when the emergency occurred or traveling through Canada and the foreign hospital was closer or more accessible to the beneficiary than a similar hospital in the United States. *See* 42 C.F.R. 424.122.

## IV.   <u>LEGAL STANDARDS</u>

Under Rule 12(b)(1), a Court should dismiss a complaint for lack of jurisdiction, and may even do so on its own, when "plaintiff's complaint, taken at face value, fail[s] to bring the case within the court's subject-matter jurisdiction." *Gordo-González v. United States*, 873 F.3d 32, 35 (1st Cir. 2017). In reviewing a Rule 12(b)(1) motion, a court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). The court "may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" *Id. (quoting Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996)). When a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of proving jurisdiction. *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007). If a motion to dismiss under Rule 12(b)(1) is successful, the court is without jurisdiction and need not consider any other basis for dismissal. *See Godin v. Schencks*, 629 F.3d 79, 83 (1st Cir. 2010) ("court has an obligation to inquire *sua sponte* into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting") (*quoting In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir. 1988).

The Court should dismiss a complaint under Rule 12(b)(6) where a plaintiff fails to satisfy the pleading standards of Rule 8(a). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In evaluating whether a complaint states a plausible claim, [courts] 'perform [a] two-step analysis.'" *Saldivar v. Racine,* 818 F.3d 14, 18 (1st Cir. 2016) (alteration in original) (*quoting Cardigan Mt. Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)). First, "the court must separate the complaint's factual allegations (which must be accepted

as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012) (*citing Iqbal*, 556 U.S. at 678). Second, the court "must determine whether 'the factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 224. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, *citing Bell Atl. Corp.,* 550 U.S. at 555.

## V.  ARGUMENT

### A.  The Complaint Should be Dismissed because Hospital's Failure to Exhaust its Administrative Remedies Removes Subject Matter Jurisdiction.

Hospital did not exhaust its administrative remedies, as it must, under the Medicare Act before filing suit, and therefore, the court does not have subject matter jurisdiction over any of the Hospital's causes of action in this lawsuit. 42 U.S.C. § 1395ff; 42 C.F.R. § 405.900 et. seq. Other courts have reached the same result in nearly identical cases. *See Glob. Rescue Jets*, 30 F.4th 905 (dismissing under 12(b)(1) breach of contract, good faith and fair dealing, quantum meruit, and California unfair competition claims brought by a non-contracted Mexican helicopter transport company against an MAO because plaintiff failed to exhaust its administrative remedies); *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.,* 875 F.3d 584 (11th Cir. 2017) (dismissing under 12(b)(1) hospitals' unjust enrichment and quantum meruit claims against an MAO because the non-contracted hospitals failed to exhaust their administrative remedies). Moreover, 42 U.S.C. § 405(g), provides an exclusive means for an individual to seek judicial review "after any final decision of the [Secretary] made after a hearing to which he was a party" and thus removes diversity jurisdiction where a plaintiff has failed to exhaust its administrative remedies.

1.    **The Medicare Act Requires Providers to Exhaust Administrative Remedies Prior to Filing Suit in Court.**

Before filing a lawsuit, all providers, contracted and non-contracted, who have a dispute with an MAO over a claim for benefits must exhaust their administrative remedies. 42 U.S.C. § 405(g); 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.612; 42 U.S.C. § 405(h); *see Heckler v. Ringer*, 466 U.S. 602, 605 (1984). MAO determinations about whether to reimburse for treatment are subject to administrative review. 42 U.S.C. § 1395w-22(g). The administrative review process applies to both basic and "optional supplemental benefits." 42 C.F.R. § 422.566(a).

Medicare's statutory and regulatory framework defines a series of appellate steps that providers must undergo, up to receiving a final decision from the Secretary of HHS. *Heckler,* 466 U.S. at 605. A "final decision" from the Secretary is necessary before judicial review. 42 U.S.C. § 405(g). Although the Medicare regulatory framework discussed in *Heckler* applies to original Medicare, courts have found that the regulatory framework applies to the Medicare Advantage program, as well. *Glob. Rescue Jets*, 30 F.4th at 914 (stating that "Section 1395w-22(g), like its statutory counterpart under original Medicare, conditions judicial review on a 'final decision' of the Secretary and channels judicial review through § 405(g), subject to the same jurisdictional limitations imposed by § 405(h)"); *see also McCue v. Sec'y of HHS*, No. 1:18-cv-00011-LEW, 2019 U.S. Dist. LEXIS 1505, at *8 (D. Me. Jan. 4, 2019). "[A] 'final decision' is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review." *Heckler,* 466 U.S. at 606. To exhaust its administrative remedies:

1. Hospital must request an organization determination from Martin's Point regarding what payments Hospital is entitled to receive according to benefits available under Mr. Taliaferro's plan. 42 C.F.R. §§ 422.566(c)(1)(ii), 422.574(d).

2. Hospital must then challenge Martin's Point's payment determination by submitting a request for reconsideration to Martin's Point. 42 C.F.R. § 422.582.

10

3. If Martin's Point affirms its decision, Hospital must present the disputed issue for review to an independent review entity. 42 C.F.R. § 422.592.

4. If the independent entity affirms Martin's Point's decision, Hospital must request a hearing before an administrative law judge. 42 C.F.R. §§ 422.600, 422.602.

5. If the administrative law judge affirms Martin's Point's determination, Hospital must then request a review of the disputed issue by the Medicare Appeals Council. 42 C.F.R. § 422.608.

Only after the Medicare Appeals Council makes its decision is there a "final decision" which a District Court may review. *See* 42 U.S.C. § 405(h); 42 C.F.R. § 422.612.

Parties required to utilize the administrative review process include the Hospital as the assignee of the beneficiary, as well as "[a]ny other provider or entity determined to have an appealable interest in the proceeding." 42 C.F.R. § 422.574. For clarity, the administrative appeal process should be initiated by "[a]ny provider that furnishes, or intends to furnish, services to the enrollee." 42 C.F.R. § 422.566(c)(1)(ii).

This Court has recognized that plaintiffs challenging Medicare Advantage coverage decisions must exhaust administrative remedies. In *McCue v. Sec'y of HHS*, the plaintiff was a Medicare Advantage beneficiary who challenged his Medicare Advantage plan's denial of coverage for a laser ablation procedure. No. 1:18-cv-00011-LEW, 2019 U.S. Dist. LEXIS 1505, at *4 (D. Me. Jan. 4, 2019). There, the plaintiff properly exhausted all administrative review requirements, appealing his health plan's denial to an administrative law judge and then to the Medicare Appeals Council. Only then did the District Court have authority to review the Secretary's final decision under the Medicare Act. *Id.* at *8. By contrast, here, Hospital has failed to allege that it completed the administrative exhaustion processes required by federal law, and it has not done so. This Court does not have jurisdiction, and thus all of Hospital's causes of action must be dismissed under Rule 12(b)(1).

11

       2.     **Hospital Must Exhaust its Administrative Remedies, Regardless of its Theory of Liability Because the Claims Arise Under the Medicare Act.**

Hospital must exhaust its administrative remedies before bringing any lawsuit, regardless of the legal theory asserted in the lawsuit, because challenging a reimbursement amount from a Medicare Advantage plan, of course, "arises under" the Medicare Act. *See* 42 U.S.C. § 1395w-22(g)(5). "[A] claim 'arises under' the . . . Medicare Act if 'the standing and the substantive basis' for the claim derive[s] from that statute." *Parkview Adventist Med. Ctr. v. United States*, 2:15-cv-00320-JDL, 2016 U.S. Dist. LEXIS 68550, *18 (D. Me) *quoting Puerto Rican Ass'n of Physical Med. and Rehab., Inc. v. United States*, 521 F.3d 46, 48 (1st Cir. 2008) (stating the jurisdictional provision "mandates" the funneling of "virtually all legal attacks through the agency").

Hospital cannot evade complying with Medicare's comprehensive regulatory scheme, which requires administrative exhaustion, by fashioning its claim for reimbursement as state-law claims.[9] Other federal courts have recognized that state law claims, like these, "arise under" the Medicare Act because these are "cleverly concealed claims for benefits." *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141-42 (9th Cir. 2010) (upholding dismissal of Medicare beneficiaries' breach of contract and unjust enrichment claims because administrative appeals were not properly exhausted) (citation omitted).

Here, Hospital is challenging the reimbursement amount from a federal Medicare Advantage plan for the services provided to Mr. Taliaferro. Even though Hospital attempts to circumvent the federal Medicare administrative exhaustion requirement by labeling its reimbursement challenges as "negligent misrepresentation" and "promissory estoppel," the theory

---

[9] Moreover, the regulatory scheme contemplates initial agency review of constitutional challenges arising out of Medicare scheme. *See Puerto Rican Ass'n of Physical Med. and Rehab., Inc. v. United States*, 521 F.3d 46, 48 (1st Cir. 2008) (plaintiff's failure to present constitutional claims arising under Medicare through the administrative review process resulted in lack of subject matter jurisdiction).

asserted by a Plaintiff cannot undermine the clear federal requirements; Hospital's causes of action seek a payment for services from a Medicare Advantage plan. *Sarene Servs. v. Empire Blue Cross/Blue Shield*, No. 17-CV-5276 (DRH)(AYS), 2019 U.S. Dist. LEXIS 15605, at *19-20 (E.D.N.Y. Jan. 29, 2019) (breach of contract and unjust enrichment claims are still claims regarding "decisions by an MAO to not cover or reimburse for treatment"); *see also MJG Mgmt. Assocs. v. NHIC Corp.*, Civil Action No. 12-11414-FDS, 2013 U.S. Dist. LEXIS 66238, at *11 (D. Mass. May 9, 2013) (the plaintiff's claim concerning payments that were delayed or denied under the Medicare program "clearly arises under the Medicare Act").

Indeed, both the Ninth and Eleventh circuit have upheld dismissals of a non-contracted provider's state law claims against a MAO for failure to exhaust administrative remedies, based on nearly identical facts. *See Glob. Rescue Jets*, 30 F.4th at 918-20 (dismissing claims brought by a non-contracted Mexican helicopter transport company against an MAO because plaintiff failed to exhaust its administrative remedies); *see also Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.,* 875 F.3d 584 (11th Cir. 2017) (non-contracted providers' unjust enrichment and quantum meruit claims dismissed for failure to exhaust administrative remedies). Hospital is in the same position as the Mexican helicopter transport company in *Glob. Rescue Jets*, where the Ninth Circuit dismissed the claim after finding the non-contracted helicopter transport company was required, but failed, to exhaust its administrative remedies. For the same reasons, the Court should dismiss all of Hospital's causes of action against Martin's Point for lack of jurisdiction as Hospital has not exhausted its administrative remedies.

### B.   The Complaint Should be Dismissed for Failure to Plead a Plausible Promissory Estoppel Claim.

The Court need not go further. But the Court should dismiss Count I for the additional reason that Hospital has not alleged plausible facts as to each of the essential elements of a

promissory estoppel claim. Hospital's threadbare Complaint relies on conclusory allegations and offers only labels, conclusions, and recitations of the elements of a cause of action that fail to meet the pleading requirements of *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678.

Maine applies the doctrine of promissory estoppel set forth in the Restatement (Second) of Contracts: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Harvey v. Dow,* 962 A.2d 322, 325 (Me. 2008). To establish a claim for promissory estoppel there must be a "promise" allegedly relied upon. *Id.* at 325 *quoting* Restatement (Second) of Contracts § 90(1) (1981)). Hospital has not alleged that Martin's Point promised to pay over $480,000 in medical fees that Hospital demands in this lawsuit.

Instead, Hospital contends that Passage Health contacted Martin's Point for insurance verification before performing services, and only performed services after it received assurances that "proposed medical procedures in Mexico were covered by its medical insurance." Compl. at ¶ 19. Hospital alleges no plausible facts that Martin's Point promised it would pay the entirety of the bill that Hospital would send Martin's Point, or what specific (future) services that Martin's Point promised to pay, or in what amount. Rather, Hospital only vaguely alleges that Martin's Point "provided information and made representations and promises" to Passage Health about Mr. Taliaferro's benefits. Compl., at ¶ 29[10]. This is insufficient and simply parrots the elements of Hospital's cause of action. *See Old Town Util. & Tech. Park, LLC v. Consol. Edison & Sols., LLC*, 2019 U.S. Dist. LEXIS 168043, *38-39 (D. Me.) (dismissing promissory estoppel claim because the complaint's allegations concerning defendant's promises were conclusory and merely cited the

---

[10]We understand the initial reference to "Passage" in paragraph 29 is a reference to Martin's Point.

elements of promissory estoppel); *see also Aton Ctr., Inc. v. Blue Cross & Blue Shield of S.C.*, No. 3:20-cv-00496-WQH-BGS, 2020 U.S. Dist. LEXIS 149292, at *17 (S.D. Cal. Aug. 17, 2020) (dismissing promissory estoppel claim because vague allegations that the defendant negligently represented coverage payment amounts is insufficient when the plaintiff failed to establish what treatment the defendant promised to pay for).

Moreover, Passage Health received prior authorization to treat Mr. Taliaferro from Martin's Point—not a promise or verification of payment. Exhibit A.[11] Obtaining prior authorization for medical services is not a promise to pay any particular amount for services. Hospital has not plausibly alleged facts that Martin's Point promised to pay for any and all services, at any amount, or that Hospital reasonably relied on or expected payment for over $480,000 of billed charges. Because Hospital relies on conclusory allegations, without facts, the promissory estoppel claim should be dismissed.

### C. The Complaint Should be Dismissed for Failure to Plead an Actionable Negligent Misrepresentation Claim.

The Court should dismiss Count II because Hospital has also failed under Fed. R. Civ. P. 8(a) to allege plausible facts necessary to allege the essential elements of a negligent misrepresentation claim. To allege negligent misrepresentation, Hospital must plausibly allege facts that (1) there was a transaction in which Martin's Point had a pecuniary interest, (2) Martin's Point provided false information to Hospital in connection with the transaction, (3) without exercising reasonable care or competence, and (4) Hospital justifiably relied on that false

---

[11] The Court may properly consider Exhibit A with this motion to dismiss because it is a document central to Hospital's claim and sufficiently referenced within the Complaint. Compl., at ¶¶ 14, 18, 23; *see Newman v. Lehman Bros. Holdings*, 901 F.3d 19, 25 (1st Cir. 2018). The First Circuit recognizes that a "court's inquiry into the viability of [a plaintiff's] allegations should not be hamstrung simply because the plaintiff fails to append to the complaint the very document upon which by [the plaintiff's] own admission the allegations rest." *Brayman v. Porter*, No. 1:20-cv-00169-JAW, 2021 U.S. Dist. LEXIS 18640, at *3-4 (D. Me. Feb. 1, 2021) *quoting Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

information in that transaction. *Rand v. Bath Iron Works Corp*., 832 A.2d 771, 774 (Me. 2003) (*citing Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990)). A negligent misrepresentation claim, similar to promissory estoppel, requires the defendant to "make a false representation of present fact and that the plaintiff justifiably rely on the representation as true." *Berry v. WorldWide Language Res., Inc.,* 716 F. Supp. 2d 34, 48 (D. Me. 2010), *citing Kearney v. J.P. King Auction Co.*, 265 F.3d 27, 34 n.8 (1st Cir. 2001).

Hospital alleges that Martin's Point supplied false information that guided its business transactions when providing medical procedures for the health and benefit of Taliaferro. Compl., at ¶¶ 38-40. This mere recitation of the elements of negligent misrepresentation is insufficient because Hospital failed to identify ***what*** Martin's Point communicated and what was false. *Howell v. Advantage Payroll Servs.*, 2017 U.S. Dist. LEXIS 27530, *20-21 (D. Me.) (negligent misrepresentation claim dismissed because it did "little more than plead the black letter elements"). Vague references to Passage Health's communications with Martin's Point are insufficient to establish the false information Martin's Point purportedly supplied, and there are no plausible allegations providing any facts about what information was purportedly supplied, other than a conclusory statement that Martin's Point stated that Mr. Taliaferro had "insurance benefits." Without more, the Complaint falls far short of meeting federal pleading standards.

Moreover, Hospital has not alleged any plausible facts that it justifiably relied on the (unspecified) information Martin's Point provided. Hospital's agent—upon information and belief, an experienced medical biller—unreasonably disregarded or failed to communicate to Hospital the fact that there is ***no*** Medicare coverage for the out-of-country medical services purportedly rendered here. Hospital's agent also unreasonably disregarded the fact that to the extent a Medicare Advantage plan even offers out-of-country coverage to beneficiaries, that

coverage necessarily will be subject to a payment limit (and corresponding beneficiary payment liability) if it communicated to Hospital that it would receive over $480,000 in payment from Martin's Point. Considering the Medicare Act's requirements, industry knowledge about Medicare and Medicare Advantage payment, and Hospital's agent's alleged expertise in medical billing, any reliance on Martin's Point's prior authorization forms as promises of payment for any and all of the services, at an undefined and unlimited cost was unreasonable. Indeed, the prior authorization forms cited in the Complaint plainly state "PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE." Exhibit A. No reasonable medical biller would presume that the prior authorizations affirmed the payment amount. Having failed to allege plausible facts sufficient to state a claim for negligent misrepresentation, the Court should dismiss Count II.

## VI.   <u>CONCLUSION</u>

For the reasons stated above, Martin's Point respectfully requests that the Court dismiss the Complaint.

Dated: November 13, 2023

Respectfully submitted,

Martin's Point Health Care, Inc.

By its attorneys,

<u>/s/ Timothy J. McKeon</u>
Timothy J. McKeon, Maine Bar # 005379
Brian Dunphy (*pro hac vice*)
Laura Martin (*pro hac vice*)
Mintz, Levin, Cohn, Ferris, Glovsky
  and Popeo, P.C.
One Financial Center
Boston, MA 02111
Tel. (617) 542-6000
Fax (617) 542-2241
TJMcKeon@mintz.com
BDunphy@mintz.com
LEMartin@mintz.com

17

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 13, 2023, I served a true and correct copy of the

foregoing document via the Court's Electronic Filing System, which will electronically send

notice to all counsel of record.

*/s/ Timothy J. McKeon*
Timothy J. McKeon

# EXHIBIT A



**MARTIN'S POINT®**
HEALTHCARE

01/30/2023

JAMES G TALIAFERRO


This letter is to inform you that the following service has been **AUTHORIZED:**

Member Name: JAMES TALIAFERRO
Member ID:
Member DOB:
Authorization #: IP0090409568
Authorization Date: 01/27/2023
Approved Service:
**1  Admission Inpatient -  0120**
Number of treatments of days authorized: **12 Days**
Authorization Period: **01/18/2023- 01/30/2023**

Provider Name(s): SERVICIOS MEDICOS PARA TODOS S A DE C V
Facility (if applicable): SERVICIOS MEDICOS PARA TODOS S A DE C V

**Please be aware that this service is authorized only for the number of visits or days listed above and only during the authorization period listed above. This approval is subject to Medicare coding requirements for coverage. In addition, you must be a Martin's Point Generations Advantage member at the time of the service.**

**MEMBERS:**
Please be aware that out-of-network providers have not been reviewed or credentialed by Martin's Point Health Care.  If you have questions about this authorization, your benefits, or billing, please call a Member Services Representative at 1-866-544-7504. TTY call 711.  We are open 8am to 8pm (EST), seven days a week from October 1 - February 14, and 8am to 8pm (EST) Monday - Friday February 15 – September 30

**PROVIDERS:**

Y0044_2013_035 CMS Approved 4/16/2013



If you have questions about this authorization, billing or benefits available to our members, please call Generations Advantage Provider Inquiry Department at 1-888-732-7364.  TTY call 711. We are open Monday through Friday from 8 am to 5 pm.

To submit claims, please mail to:

Martin's Point Generations Advantage Claims Department
PO Box 11410
Portland, Maine 04104-7410

PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE.

 Health Management Department

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| HOSPITAL QUIRURGICA DEL SUR, | ) |
| | ) |
| Plaintiff, | ) |
| | )    Civil Action No. 2:23-CV-00259 |
| v. | ) |
| | ) |
| MARTIN'S POINT HEALTH CARE, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF, HOSPITAL QUIRURGICA DEL SUR, RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

NOW COMES the Plaintiff, Hospital Quirurgica Del Sur ("Hospital"), and hereby opposes Defendant's Motion to Dismiss Plaintiff's Complaint.

## I.    **INTRODUCTION**

This Court should deny Defendant's Motion to Dismiss Plaintiff's Complaint because the pleadings allege plausible facts to support Plaintiff's Complaint for promissory estoppel and negligent misrepresentation.  The defendant's insistence upon demanding all of the facts of the case in the context of a Motion to Dismiss is beyond the pale where a plausible set of facts – not each and every fact that will come out in discovery or at trial – has been plead that support each of the essential elements of the state law claims in this diversity case.

Mr. James Taliaferro received medical care at Hospital Quirurgica Del Sur in Mexico. See Pl. Compl. ¶ 11. Passage Health, the company in charge of billing, pre-authorization and collection for the Hospital, regularly communicated with Martin's Point regarding coverage for Mr. Taliaferro's medical treatment. See *Id*. at ¶¶ 13-14. Martin's Point provided assurances that Mr.

**175**

Taliaferro's treatment would be covered under his insurance. See *Id*. at ¶15. In fact, one of Mr. Taliaferro's providers confirmed with a Martin's Point representative, on January 18, 2023, via phone call that Mr. Taliaferro's insurance provided coverage for international emergency services. *See* Exhibit "A", Affidavit at ¶6.[1] Additionally, the Martin's Point representative confirmed international ambulance services were also covered under Mr. Taliaferro's benefits, via a completed authorization. See *Id*.

On January 30, 2023, Martin's Point approved an inpatient admission from January 18, 2023 – January 30, 2023. After Mr. Taliaferro's treatment concluded, Martin's Point refused to reimburse Hospital for Mr. Taliaferro's treatment, citing a claimed limit of $25,000. See *Id*. at ¶¶ 16-17.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) allows courts to dismiss a claim if Plaintiff's Complaint "fails to state a claim upon relief can be granted." FRCP 12(b)(6). To overcome a motion to dismiss, the "[c]omplaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,678 (2009)(citing *Twombly*, 550 U.S. 544, 570 (2007)). The court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of plaintiff[s]." *Gargano v. Liberty Intern. Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009)(citing *Fitzgerald v. Harris*, 549 F.3d 46,52 (1st Cir. 2008)). Further, to overcome a motion to dismiss, "the complaint must allege 'a plausible entitlement to relief.'" *Id*. at 49 (citing *Fitzgerald*, 549 F.3d at 52).

---

[1] While the plaintiff certainly understands that presenting facts outside of the complaint is not necessary in this matter, since the defendant has raised facts about its authorizations being limited in scope (even though not alleged as such in the complaint) the plaintiff takes this opportunity to provide the Court with specific, additional facts under oath showing that what happened here was a pattern of continued approvals for ongoing medical treatment and not a solitary authorization for all of the alleged treatment.  AFFIDAVIT.

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must set forth 'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery.'" *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996) (quoting *Gooley v. Mobile Oil Corp.,* 851 F.2d 513, 514 (1st Cir. 1988)).   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (internal quotations and citations omitted).

When the sufficiency of a complaint is challenged by a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the factual allegations are sufficient "to raise a right to relief above the speculative level." *Id.*, 127 S.Ct. at 1965.  Under the new "plausibility" standard enunciated by the Court in *Bell Atlantic,* to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," moving "across the line from conceivable to plausible."  *Id.*, 127 S.Ct. at 1960.  In sum, the plaintiff's pleaded facts must "'possess enough heft to sho[w] that [they are] entitled to relief.' " *Clark v. Boscher,* 514 F.3d 107, 112 (1st Cir. 2008) (quoting *Bell Atlantic,* 127 S.Ct. at 1959).

Applying this standard, the Court should deny Defendant's Motion to Dismiss as Plaintiff's Complaint alleges facts sufficient to plausibly state a claim for relief.[2] There are two claims presented, both of which contain plausible factual allegations that Plaintiff sought authorization

---

[2] While it is improper for respondent to interject additional facts into its Response to Defendant's Motion to Dismiss, Plaintiff anticipates a multitude of additional facts will arise during the discovery process that will provide further support for Plaintiff's well-pleaded allegations in the Complaint. Namely, recorded phone conversations, signed authorization forms, and verified affidavits will be submitted spelling out additional facts. Nonetheless, such affidavits are not necessary on a motion to dismiss. But, since the plaintiff has injected facts beyond the Complaint, the Defendant is responding to those facts out of an abundance of caution. The affidavits are based on business records and an attested version will be filed with the Court in the next day or two.

and approval for coverage from Martin's Point. Plaintiff spoke to Martin's Point representatives on the phone who represented that coverage for the treatment was authorized.  Relying on these conversations, Plaintiff performed extensive medical care to its patient. While Martin's Point may try to downplay the extent of its representation and authorizations, that is all the stuff of discovery and trial, not a Motion to Dismiss.

### III.   <u>ARGUMENT</u>

**A. Subject Matter Jurisdiction Exists because complete diversity exists amongst the parties and the amount plead exceeds $75,000.**

Defendant's Motion to Dismiss should be denied because Plaintiff's Complaint properly invokes this Court's diversity jurisdiction because the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. §1332 provides this court with jurisdiction over matters that "exceed[] the sum or value of $75,000, exclusive of interest and costs, and is between - citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. §1332(a)(2); *Servicios Azucareros de Venezuela, C.A. v. John Deere*, 702 F.3d 794 (2012) (upholding a Venezuelan Corporation's right to bring suit against a domestic corporation).

Hospital is a Mexican Corporation that provides hospital and health to patients in Cancun, Mexico, and in this case, a U.S. citizen. See Pl. Compl. ¶ 1. Defendant, Martin's Point Health Care, Inc. ("Martin's Point"), is a Maine corporation with a principal place of business in Portland, Maine. See *Id.* at ¶ 2. Additionally, Defendant possesses continuous and systematic contacts with the State of New Hampshire. See *Id.* Lastly, the Complaint seeks reimbursement for $2,132,982.98 in medical expenses. See *Id.* at ¶ 20.

Under Medicare, it is indeed correct to say in the broad sense that coverage for medical expenses incurred outside the country is not provided. However, Martin Point's global

supplemental coverage for emergencies is distinct from Medicare coverage and operates independently of Medicare guidance or restrictions. Contrary to Martin Point's claim, the foreign hospital is not a non-contracted provider. Martin's Point is applying inappropriate standards in asserting that the foreign hospital fails to comply with administrative requirements for non-contracted providers. The foreign hospital is categorized as a non-Medicare, non-contracted provider, a distinction from a non-contracted provider within the United States. Martin Point's assertion that the foreign hospital is a non-contracted provider is inaccurate and applies only to U.S. national hospitals. "Fact Sheet: Medicare Coverage outside the United States", available at https://www.medicare.gov/Pubs/pdf/11037-Medicare-Coverage-Outside-United-States.pdf   (last updated Jan. 2024). While the international claim pertains to out-of-network services, Martin Point's policies cover out-of-network care in emergency situations, aligning with the practices of numerous other Medicare insurers who offer coverage in addition to what Medicare provides. Additionally, Martin Point, like other insurers, is free to offer services for out-of-network international claims for emergency services and it is properly alleged that they did so here and later reneged on those representations that coverage was available to the patient for care in Mexico.

Simply put, Medicare regulations do not extend beyond the U.S, and foreign hospitals are not provided with the option to opt in or out of Medicare. *See Id.* Martin's Point offers policies with emergency benefits overseas that are not governed by Medicare. While Martin's Point Medicare Advantage Plan must adhere to Medicare rules, while seeking reimbursement for eligible care in the United States, it cannot use that as a shield when faced with a claim for a foreign hospital based on negligent misrepresentation and promissory estoppel.  The foreign hospital cannot enter into a contract with any Medicare Advantage Organization (MAO) since Medicare rules do not apply outside the United States and its territories. *See Id.* Therefore, the foreign

hospital is not obliged to accept Medicare-approved rates as full payment, as asserted by Martin's Point.

The multiple specifics of the various communications and authorizations are the stuff of discovery, and eventually are the stuff of a jury trial to determine whether or not the Plaintiff can prove each and every element of the claims asserted. A motion to dismiss need not contain each and every fact asserted in discovery or at the time of trial, but only a plain statement of plausible facts to support a claim. This complaint does so, but even if the court finds it lacking in enough detail, the plaintiff should be allowed to amend to state a whole host of acts as set forth in the attached Affidavit.

Defendant's Motion makes reference to two cases, *Global Rescue Jets, LLC v. Kaiser Foundation Health Plan, Inc.*, 30 F.4th 905 (2022) and *Tenant Healthsystem GB, Inc. v. Care Improvement Plus South Central*, 875 F.3d 584 (M.D. Fl. 2021), to support its allegation that the court is unable to exercise jurisdiction in the present matter. However, these cases are readily distinguishable from Plaintiff's Complaint.

Here, Plaintiff's claims are based in tort and equity. Plaintiff is not making a claim for breach of contract, in contrast to claims at issue in *Global Rescue* and *Tenant Healthsystem*. Instead, Plaintiff is only asserting claims for promissory estoppel and negligent misrepresentation. Further, Defendant continuously claims that Medicare rules apply to Plaintiff's Complaint, but this is not a Medicare situation. Defendant continues to erroneously claim that Medicare rules apply to a non-Medicare hospital and non-Medicare treatment.

**B. Plaintiff's Promissory Estoppel claim alleges facts upon which relief can be granted because Hospital reasonably relied on the representations made by Martin's Point regarding Mr. Taliaferro's insurance coverage when it rendered medical care to Mr. Taliaferro.**

180

A party is estopped from denying the existence of a promise where:

> A promise which the promisor should reasonably expect to induce action or
> forbearance on the part of the promise or a third person and which does induce such
> action or forbearance is binding if injustice can be avoided only by enforcement of
> the promise.

*Harvey v. Dow*, 962 A.2d 322 (Me. 2008)(citing Restatement (Second) of Contracts
§90(1)(1981)).

Hospital's Complaint alleges Passage, on behalf of Hospital, remained in contact with
Martin's Point during Mr. Taliaferro's hospital stay. *See* Exhibit "A." Martin's Point provided
information to Passage that Mr. Taliaferro possessed full medical benefits for the proposed, out of
country emergency services. Martin's Point's statements and representations were reasonably
likely to induce Hospital's actions. Based on this information, Hospital reasonably relied upon this
information when rendering medical care to Mr. Taliaferro. See Pl. Compl. ¶ 20.

Throughout Mr. Taliaferro's treatment, a Passage representative remained in contact with
Martin's Point, who provided representations to Passage that Mr. Taliaferro possessed full
coverage for the provided out of country emergency services. See Pl. Compl. ¶¶ 26-27. In fact, a
Passage representative spoke with a representative for Martin's Point on the phone for the purpose
of verifying Mr. Taliaferro's insurance coverage. *See* Exhibit "A." Based on these representations,
Hospital proceed to provide medical care to Mr. Taliaferro. Further, Hospital reasonably relied
upon the representations made by Martin's Point and rendered medical care to Mr. Taliaferro at
the Hospital. If alternative information was provided by Martin's Point, Plaintiff could have taken
a different course of action. Instead, this reliance resulted in severe prejudice to Plaintiff as
Defendant failed to provide coverage for the outstanding amount of medical services.

As such, the Complaint and attachments hereto allege facts sufficient to plausibly state a promissory estoppel claim.

**C. Negligent representation claim states a claim upon which relief can be granted because Martin's Point representative falsely claimed that Mr. Taliaferro's insurance provided coverage for international in-patient admissions.**

In order to prove a claim of negligent representation, Plaintiff must show:

    1)      Plaintiff was supplied false information by the defendant;

    2)      of a material fact;

    3)      the defendant did not exercise reasonable care or competent in communicating the information; and

    4)      the plaintiff justifiably relied on that false information causing him economic harm.

*Knowlton v. Shaw*, 791 F.Supp.2d 220, 261 (D. Maine 2011)(citing *Binette v. Dryer liberty Ass'n*, 688 A.2d 898, 903 (Me. 1996)).

Martin's Point represented to the hospital that it had no limitations on insurance coverage, and therefore induced the hospital to provide care. A representative for Martin's Point told Plaintiff that Mr. Taliaferro's insurance provided coverage for international in-patient admissions. Martin's Point did not misrepresentation coverage, in fact, they repeatedly represented coverage existed. This information was material to Plaintiff as Plaintiff is an international care provider. Martin's Point acted negligently by providing this false information to Plaintiff, knowing Plaintiff was likely to rely on it when providing care to Mr. Taliaferro. Plaintiff suffered economic harm as a direct result of this false information as it rendered millions of dollars in medical care to Mr. Taliaferro, based on the reasonable information provided to it by Martin's Point.

As such, the Complaint and attachments hereto allege facts sufficient to plausibly state a claim for negligent representation.

## IV.   **CONCLUSION**

Defendant's Motion must be denied as Plaintiff's Complaint alleges facts sufficient to plausibly state a claim for relief. Plaintiff therefore respectfully request that the Court deny Defendant's Motion to Dismiss. If the Court feels that the factual allegations are too meager, then the plaintiff seeks an opportunity to file an amended complaint to set forth in greater detail the course of events that occurred and the communications it had with the defendant over a period of time.

Respectfully submitted,

Hospital Quirurgica Del Sur

By its attorney,

/s/ Mark A. Darling

Mark A. Darling, Maine Bar # 4802
Litchfield Cavo, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
Darling@litchfieldcavo.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 3, 2024, I served a true and correct copy of the foregoing document via the Court's Electronic Filing System, which will electronically send notice to all counsel of record.

/s/  Mark A. Darling
Mark A. Darling

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HOSPITAL QUIRURGICA DEL SUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 2:23-CV-00259 |
| | ) |
| MARTIN'S POINT HEALTH CARE, INC. | ) |
| | ) |
| Defendants. | ) |

## **PLAINTIFF'S AFFIDAVIT**

1.      Mr. James Taliaferro's benefits were first verified on January 18, 2023. See Exhibit "A."

2.      On January 18, 2023, a phone call with Mr. Taliaferro's provider and a Martin's Point representative confirmed Mr. Taliaferro's benefits provided coverage for international emergency services. Further, the phone call confirmed international ambulance services were also covered if an authorization was completed and provided to Martin's Point.

3.      On January 18, 2023, an inpatient authorization form was sent to Plaintiff. See Exhibit "B."

4.      On January 23, 2023, Martin's Point requested additional information. See Exhibit "C."

5.      On January 27, 2023, a second authorization request was sent. See Exhibit "D."

6.      On January 30, 2023, Martin's Point approved the services, specifically an inpatient admission from 1/18/23 – 1/30/23. See Exhibit "E."

7.      On March 01, 2023, Martin's Point billed the claim. Plaintiff began to follow up on March 20, 2023, May 19, 2023, and June 21, 2023. On June 21, 2023, Plaintiff was advised the claim was paid in the amount of $24,406.90 (CK #272678), and Mr. Taliaferro was responsible for a $95.00 co-pay. A medical sequestration amount of $498.10 was applied and it was advised to allow 30 days for receipt of payment. Payment was received on October 02, 2023. See Exhibit "F." The patient did not pay a deposit.

<u>**Verification**</u>

I, Eindar Khant , verify that I am authorized to make this affidavit on behalf of Hospital Quirurgica Del Sur, and that, I am an employee or agent of Hospital Quirurgica Del Sur, and have been authorized to make this affidavit on its behalf and that the facts above set forth are true and correct to the best of my knowledge, information and belief.

Date: January 3, 2024

# EXHIBIT A

Today's Date: __01/18/2023__

**\*\* <u>Verification of Benefits for emergency conditions only</u> \*\***



Patient Name: __James Taliaferro_____   DOB: ▓▓▓▓▓▓

Hospital: __Hospital Quirurgica Del Sur_____   __   Diagnostic: <u>Lower Gastrointestinal Bleeding</u>

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

**<u>Insurance Company</u>**

Insurance Co.: __Martins Point Health Care___   Policy ID: _10000032518_

Type of Policy: __PPO Plan__   Effective Date: <u>01/01/2023</u>

Deductible: <u>$0.00 USD</u>   Met: <u>$0.00 USD</u>   Co-pay: <u>$350.00 USD</u> Co-Insurance:<u>100%</u>

MOOP: _$6700.00 USD___   Met: _$20.00 USD___ Max. Benefit: <u>Unlimited</u>

Hospital Admission Pre-Auth/Pre-Cert/Case Notification Require: YES __X__/NO___ Ref _____

Air Ambulance: YES_X__/ NO_____   Pre-Authorization: YES _X___/NO____ Max. Benefit: <u>Unlimited</u>

Rep. Name: __Theresa _____ Phone #: <u>888-732-7364</u>  Call Ref # _3272721_____

Address to Submit Claim: __Po Box-11410__

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

**<u>Assistance Company (If any)</u>**

Insurance Co.: _____   Rep. Name: _____

GOP Request: YES____/NO___ Cost Estimate Request: YES___/NO___ GOP Amount: _____

Address to Submit Claims: _____   _____

Case #: _____   Call Ref. #: _____

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

**Additional Notes or Comments:**

Please charge the patient a deposit of Copay$350.00 USD Per Day (Days 1-5) Moop not more than $6680.00 USD

<u>Please provide us with the following as soon as possible:</u>

- PHI Forms (make sure the forms are legible and includes complete patient contact information, including an email address), Travel Itinerary
- Medical Records
- Claim Forms
- Please notify us as soon as the patient gets discharge.

**\*\*\* <u>Notice:</u>** Medial facility may charge an amount that exceed the deductible, co-payment or maximum out of pocket and it is based on the medical treatment.

Verified by: __Santhosh. S__

Disclaimer: The medical provider acknowledges that a quote of benefits and/or authorization does not guarantee payment or verify eligibility. Payment of benefits are subject to all terms, conditions, limitations, and exclusions of the member's contract at time of service. Nothing herein should be construed as a binding agreement to validate health benefits. The information provided may result in non- coverage of services due to the fact that Passage Health International (PHI) relies on information being provided at the time of verification, which may not include coverage information for highest level of specificity. PHI assumes no liability on the accuracy of the information being provided. If any doubt provider is encouraged to collect from the patient at the time of service.

**189**

# EXHIBIT B

# Inpatient Authorization Request Form Guidelines



MARTIN'S POINT
HEALTH CARE

## PREAUTHORIZATION REQUESTS (PRESERVICE or CONCURRENT)

***For Martin's Point Generations Advantage and US Family Health Plan***:

▸ Preservice should be submitted at least two weeks prior to the date of service or facility admission

▸ Concurrent: Not required prior to emergency care, but authorization for inpatient hospital admission should be submitted within 24 hours of admission to hospital.

▸ **If the servicing provider is not part of the Martin's Point Generations Advantage or US Family Health Plan network, submit this form with a letter of medical necessity (including clinical documentation) explaining why the service(s) can only be provided by this specialist.**

▸ For mental health/substance abuse services call Behavioral Health Care Program (BHCP) at 1-888-812-7335.

▸ For Part D drug preauthorization, visit https://martinspoint.org/for-providers/resources/pharmacy.

▸ For more information, visit https://martinspoint.org/for-providers/tools/authorizations.

## RETROSPECTIVE AUTHORIZATION REQUESTS (POSTSERVICE)

***US Family Health Plan:*** We will review retrospective authorization requests for all qualified care, before or after claim submission. Participating and nonparticipating providers may use this form. Determinations will be made within 30 calendar days of the date of form receipt.

***Generations Advantage:*** We will review retrospective authorization requests only under the following circumstances:

▸ **Urgent/Emergent:** Requests for medical treatment required in order to prevent death or serious impairment of health, or medical treatment needed for an illness or injury that is not immediately life-threatening but requires professional medical attention to prevent a serious risk to the member's health.

▸ **Unable to Know:** When the provider did not have, and was unable to obtain, the patient's insurance information pre-service (i.e., unresponsive patient delivered to an emergency room).

▸ **Not Enough Time:** When the patient requires immediate or very near-term medical services (typically related to a service already being performed). For example, during a procedure, the provider identifies an acute need for hospital admission or, the procedure that evolves into a different/additional procedure which is performed immediately or scheduled for the same day.

**Please read the complete definitions of these exception criteria before submitting a retrospective authorization request.**

▸ **Participating providers** seeking retrospective authorization for a Generations Advantage member must file a claim for that service, wait for claim denial, and then submit a Generations Advantage Authorization Dispute Form (PDF). **If your situation meets one of the above criteria, please submit a** Generations Advantage Authorization Dispute Form (PDF) **with documentation that supports the "Urgent/Emergent," "Unable to Know" or "Not Enough Time" exception. We will first assess the criteria for coverage and then for medical necessity.**

▸ **Non-participating providers** seeking retrospective authorization for a Generations Advantage member must file a claim for that service, wait for claim denial and then initiate the claim appeal process on behalf of the member. We cannot begin the appeal process without a signed Waiver of Liability Form (PDF) and Medicare Appointment of Representative Form (PDF).

## FORM SUBMISSION INSTRUCTIONS:

▸ **All fields are required.** Incomplete forms cannot be processed. Please include supporting clinical documentation.

▸ For **inpatient** authorization requests, please fax the completed form to **1-207-828-7857.**

▸ Or, call **1-888-339-7982,** 8 am to 4:30 pm, weekdays for inpatient or outpatient authorization requests.

▸ Please do not resubmit authorization requests unless you are specifically requested to do so by Martin's Point.

▸ To check the status of a request visit https://Providers.MartinsPoint.org/Tools/Authorizations or call **1-888-339-7982.**

▸ Authorization requests and approvals are not a guarantee of payment.

Revised 20/08/2020

**Martin's Point Health Care**                    **Inpatient Authorization Request Form**

Health Plan:  ☐ US Family Health Plan   ☑ Generations Advantage       Today's Date: 01/18/2023

**MEMBER**

Last Name: Taliaferro                          First Name: James

DOB: ███████      Policy #: 001      Actual/Anticipated Inpatient Admit Date: 01/18/2023

**FORM SUBMITTER**

Name: Lucy Taliaferro                          Email: Lucy.taliaferro@gmail.com

Phone: 207-310-8692                            Fax:

**HOSPTIAL UTILIZATION REVIEW CONTACT INFORMATION**

Name: Hospital Quirúrgica del sur.   Phone: (998) 843-5454   Fax:

**ATTENDING PROVIDER**

Last Name: Ortega                              First Name: Alejandro

Provider NPI: _____

Physical Address: Av. Lopez Portillo Mz. 37 Lote 2 Cancún Quintana Roo

Mailing Address (if different from physical address): _____

**SERVICING FACILITY**

Name: _____

NPI#: _____      Tax ID #: _____

Physical Address: _____

Mailing Address (if different from physical address): _____

Phone: _____      Fax: _____

**REQUESTED SERVICE**

☒ Inpatient Medical Admission        ☐ Inpatient Rehabilitation Facility      ☑ Long Term Care Acute Hospital
☐ Inpatient Surgical Admission       ☐ Skilled Nursing Facility
☐ Obstetric                          ☐ Swing Bed

ICD Diagnosis Codes: R57.1 Choque hipovolémico

CPT/HCPC Codes (if applicable for surgical admission): _____

**Fax completed form to 1-207-828-7857 INCLUDING SUPPORTING CLINICAL DOCUMENTATION**
**DO NOT REQUEST OUTPATIENT SERVICES USING THIS FORM.**

# EXHIBIT C



# MARTIN'S POINT®
## HEALTHCARE

| | |
|---|---|
| **To:** Lokesh | **From:** Melissa Moody |
| **Company:** | **Date:** 01/23/23 10:00:06 AM |
| **Fax Number:** 954-376-6163 | **Pages (Including cover):** 4 |
| **Re:** request for information | |

**Please see next page.**

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this message in error please notify us immediately by telephone. Thank you.

**Notes:**

INCOMPLETE AUTHORIZATION REQUEST:

Action required to initiate authorization review process.

Member's Name: James Taliaferro
DOB: 01.16.49

Please be advised that we cannot process your authorization request
for your Martin's Point health plan member because some or all the
information listed below is missing from your original submission.

· NPI Number
* Tax ID
· Servicing Provider Name
· Servicing Facility Name


This will be our ONLY request to submit these documents. Please fax
the needed documentation to 207-828-7859.

***If we do not receive records by 01.24.23 2pm, the case will be
denied for lack of information. Updates received after case closure
will be processed through the retrospective or
reconsideration/appeals process.

***If you have already faxed this information, please disregard this
request and call our Health Management Department at 888-339-7982 to
verify that the information was received.

To determine if an authorization is required, go to this link
https://providers.martinspoint.org/ and create a login to the
Martin's Point provider portal.

If you have any questions, please call the Health Management
Department at 888-339-7982.

Thank you,
Martin's Point Health Management Department


CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain
information that is privileged, confidential and exempt from disclosure under applicable law. If the reader
of this message is not the intended recipient, you are hereby notified that any dissemination, distribution
or copying of this communication is strictly prohibited. If you received this message in error please notify
us immediately by telephone. Thank you.

# Guidelines

 HEALTH CARE

## PREAUTHORIZATION REQUESTS (PRESERVICE or CONCURRENT)

**For Martin's Point Generations Advantage and US Family Health Plan**:

▶ Preservice should be submitted at least two weeks prior to the date of service or facility admission

▶ Concurrent: Not required prior to emergency care, but authorization for inpatient hospital admission should be submitted within 24 hours of admission to hospital.

▶ **If the servicing provider is not part of the Martin's Point Generations Advantage or US Family Health Plan network, submit this form with a letter of medical necessity (including clinical documentation) explaining why the service(s) can only be provided by this specialist.**

▶ For mental health/substance abuse services call Behavioral Health Care Program (BHCP) at 1-888-812-7335.

▶ For Part D drug preauthorization, visit **https://martinspoint.org/for-providers/resources/pharmacy.**

▶ For more information, visit **https://martinspoint.org/for-providers/tools/authorizations.**

## RETROSPECTIVE AUTHORIZATION REQUESTS (POSTSERVICE)

**US Family Health Plan:** We will review retrospective authorization requests for all qualified care, before or after claim submission. Participating and nonparticipating providers may use this form. Determinations will be made within 30 calendar days of the date of form receipt.

**Generations Advantage:** We will review retrospective authorization requests only under the following circumstances:

▶ **Urgent/Emergent:** Requests for medical treatment required in order to prevent death or serious impairment of health, or medical treatment needed for an illness or injury that is not immediately life-threatening but requires professional medical attention to prevent a serious risk to the member's health.

▶ **Unable to Know:** When the provider did not have, and was unable to obtain, the patient's insurance information pre-service (i.e., unresponsive patient delivered to an emergency room).

▶ **Not Enough Time:** When the patient requires immediate or very near-term medical services (typically related to a service already being performed). For example, during a procedure, the provider identifies an acute need for hospital admission or, the procedure that evolves into a different/additional procedure which is performed immediately or scheduled for the same day.

**Please read the complete definitions of these exception criteria before submitting a retrospective authorization request.**

▶ **Participating providers** seeking retrospective authorization for a Generations Advantage member must file a claim for that service, wait for claim denial, and then submit a Generations Advantage Authorization Dispute Form (PDF). **If your situation meets one of the above criteria, please submit a** Generations Advantage Authorization Dispute Form (PDF) **with documentation that supports the "Urgent/Emergent," "Unable to Know" or "Not Enough Time" exception. We will first assess the criteria for coverage and then for medical necessity.**

▶ **Non-participating providers** seeking retrospective authorization for a Generations Advantage member must file a claim for that service, wait for claim denial and then initiate the claim appeal process on behalf of the member. We cannot begin the appeal process without a signed Waiver of Liability Form (PDF) and Medicare Appointment of Representative Form (PDF).

## FORM SUBMISSION INSTRUCTIONS:

▶ **All fields are required.** Incomplete forms cannot be processed. Please include supporting clinical documentation.

▶ For **inpatient** authorization requests, please fax the completed form to **1-207-828-7857.**

▶ Or, call **1-888-339-7982,** 8 am to 4:30 pm, weekdays for inpatient or outpatient authorization requests.

▶ Please do not resubmit authorization requests unless you are specifically requested to do so by Martin's Point.

▶ To check the status of a request visit **https://Providers.MartinsPoint.org/Tools/Authorizations** or call **1-888-339-7982.**

▶ Authorization requests and approvals are not a guarantee of payment.

Revised 20/08/2020

Health Plan:   ☐ US Family Health Plan   ☐ Generations Advantage      Today's Date: _____

## MEMBER

Last Name: _____   First Name: _____

DOB: _____   Policy #: _____   Actual/Anticipated Inpatient Admit Date: _____

## FORM SUBMITTER

Name: _____   Email: _____

Phone: _____   Fax: _____

## HOSPTIAL UTILIZATION REVIEW CONTACT INFORMATION

Name: _____   Phone: _____   Fax: _____

## ATTENDING PROVIDER

Last Name: _____   First Name: _____

Provider NPI: _____

Physical Address: _____

Mailing Address (if different from physical address): _____

## SERVICING FACILITY

Name: _____

NPI#: _____   Tax ID #: _____

Physical Address: _____

Mailing Address (if different from physical address): _____

Phone: _____   Fax: _____

## REQUESTED SERVICE

☐ Inpatient Medical Admission      ☐ Inpatient Rehabilitation Facility      ☐ Long Term Care Acute Hospital
☐ Inpatient Surgical Admission     ☐ Skilled Nursing Facility
☐ Obstetric                        ☐ Swing Bed

ICD Diagnosis Codes: _____

CPT/HCPC Codes (if applicable for surgical admission): _____

**Fax completed form to 1-207-828-7857 INCLUDING SUPPORTING CLINICAL DOCUMENTATION**
**DO NOT REQUEST OUTPATIENT SERVICES USING THIS FORM.**

# EXHIBIT D

# Guidelines



HEALTH CARE

## PREAUTHORIZATION REQUESTS (PRESERVICE or CONCURRENT)

**For Martin's Point Generations Advantage and US Family Health Plan**:

▶ Preservice should be submitted at least two weeks prior to the date of service or facility admission

▶ Concurrent: Not required prior to emergency care, but authorization for inpatient hospital admission should be submitted within 24 hours of admission to hospital.

▶ **If the servicing provider is not part of the Martin's Point Generations Advantage or US Family Health Plan network, submit this form with a letter of medical necessity (including clinical documentation) explaining why the service(s) can only be provided by this specialist.**

▶ For mental health/substance abuse services call Behavioral Health Care Program (BHCP) at 1-888-812-7335.

▶ For Part D drug preauthorization, visit <u>https://martinspoint.org/for-providers/resources/pharmacy.</u>

▶ For more information, visit <u>https://martinspoint.org/for-providers/tools/authorizations.</u>

## RETROSPECTIVE AUTHORIZATION REQUESTS (POSTSERVICE)

**US Family Health Plan:** We will review retrospective authorization requests for all qualified care, before or after claim submission. Participating and nonparticipating providers may use this form. Determinations will be made within 30 calendar days of the date of form receipt.

**Generations Advantage:** We will review retrospective authorization requests only under the following circumstances:

▶ **Urgent/Emergent:** Requests for medical treatment required in order to prevent death or serious impairment of health, or medical treatment needed for an illness or injury that is not immediately life-threatening but requires professional medical attention to prevent a serious risk to the member's health.

▶ **Unable to Know:** When the provider did not have, and was unable to obtain, the patient's insurance information pre-service (i.e., unresponsive patient delivered to an emergency room).

▶ **Not Enough Time:** When the patient requires immediate or very near-term medical services (typically related to a service already being performed). For example, during a procedure, the provider identifies an acute need for hospital admission or, the procedure that evolves into a different/additional procedure which is performed immediately or scheduled for the same day.

**Please read the complete definitions of these exception criteria before submitting a retrospective authorization request.**

▶ **Participating providers** seeking retrospective authorization for a Generations Advantage member must file a claim for that service, wait for claim denial, and then submit a <u>Generations Advantage Authorization Dispute Form (PDF).</u> **If your situation meets one of the above criteria, please submit a** <u>Generations Advantage Authorization Dispute Form (PDF)</u> **with documentation that supports the "Urgent/Emergent," "Unable to Know" or "Not Enough Time" exception. We will first assess the criteria for coverage and then for medical necessity.**

▶ **Non-participating providers** seeking retrospective authorization for a Generations Advantage member must file a claim for that service, wait for claim denial and then initiate the <u>claim appeal process</u> on behalf of the member. We cannot begin the appeal process without a signed <u>Waiver of Liability Form (PDF)</u> and <u>Medicare Appointment of Representative Form (PDF).</u>

## FORM SUBMISSION INSTRUCTIONS:

▶ **All fields are required.** Incomplete forms cannot be processed. Please include supporting clinical documentation.

▶ For **inpatient** authorization requests, please fax the completed form to **1-207-828-7857.**

▶ Or, call **1-888-339-7982,** 8 am to 4:30 pm, weekdays for inpatient or outpatient authorization requests.

▶ Please do not resubmit authorization requests unless you are specifically requested to do so by Martin's Point.

▶ To check the status of a request visit <u>https://Providers.MartinsPoint.org/Tools/Authorizations</u> or call **1-888-339-7982.**

▶ Authorization requests and approvals are not a guarantee of payment.

Revised 20/08/2020

Health Plan:  ☐ US Family Health Plan   ☐ Generations Advantage        Today's Date: __01/27/2023__

**MEMBER**
Last Name: _____Taliaferro_____        First Name: _____James_____

DOB: _____  Policy #: ___10000032518___   Actual/Anticipated Inpatient Admit Date: __01/18/2023__

**FORM SUBMITTER**
Name: _____Lokesh S_____        Email: ____lokesh@internationalbillingoffice.com____

Phone: ____954-376-6163 Extn 305_____        Fax: ____954-376-6163_____

**HOSPTIAL UTILIZATION REVIEW CONTACT INFORMATION**
Name: _____Lokesh S_____        Phone: ___954-903-7445 X 305___   Fax: ___954-376-6163___

**ATTENDING PROVIDER**
Last Name: _____Alcala Briones_____        First Name: _____Ricardo Daniel_____

Provider NPI: _____N/A_____

Physical Address: _____Paseo López Portillo, SM 59,77515 Cancun, Quintana Roo, Mexico_____

Mailing Address (if different from physical address): _____

**SERVICING FACILITY**
Name: _____Hospital Quirurgica Del Sur_____

NPI#: _____1063910230_____        Tax ID #: _____981403909_____

Physical Address: _____Paseo López Portillo, SM 59_____
                              77515 Cancun, Quintana Roo
Mailing Address (if different from physical address): ____Mexico_____

Phone: _____954-903-7445 X 305_____        Fax: _____954-376-6163_____

**REQUESTED SERVICE**
☒ Inpatient Medical Admission            ☐ Inpatient Rehabilitation Facility            ☐ Long Term Care Acute Hospital
☐ Inpatient Surgical Admission           ☐ Skilled Nursing Facility
☐ Obstetric                              ☐ Swing Bed

ICD Diagnosis Codes: _____

CPT/HCPC Codes (if applicable for surgical admission): _____

**Fax completed form to 1-207-828-7857 INCLUDING SUPPORTING CLINICAL DOCUMENTATION**
**DO NOT REQUEST OUTPATIENT SERVICES USING THIS FORM.**

# EXHIBIT E



# MARTIN'S POINT°

## HEALTHCARE

| **To:** UM Dept | **From:** Theresa Carr |
|---|---|
| **Company:** SERVICIOS MEDICOS PARA TODOS S A DE C V | **Date:** 01/30/23 5:16:17 PM |
| **Fax Number:** 9543766163 | **Pages (Including cover):** 4 |
| **Re:** Approval re: JT | |

**Please see next page.**

CONFIDENTIALITY NOTICE

This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this message in error please notify us immediately by telephone. Thank you.

**Notes:**

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain
information that is privileged, confidential and exempt from disclosure under applicable law. If the reader
of this message is not the intended recipient, you are hereby notified that any dissemination, distribution
or copying of this communication is strictly prohibited. If you received this message in error please notify
us immediately by telephone. Thank you.



## MARTIN'S POINT®
### HEALTHCARE

01/30/2023

JAMES G TALIAFERRO

This letter is to inform you that the following service has been **AUTHORIZED:**

Member Name: JAMES TALIAFERRO
Member ID: 10000032518
Member DOB:
Authorization #: IP0090409568
Authorization Date: 01/27/2023
Approved Service:
**1 Admission Inpatient - 0120**
Number of treatments of days authorized: **12 Days**
Authorization Period: **01/18/2023- 01/30/2023**

Provider Name(s): SERVICIOS MEDICOS PARA TODOS S A DE C V
Facility (if applicable): SERVICIOS MEDICOS PARA TODOS S A DE C V

**Please be aware that this service is authorized only for the number of visits or days listed above and only during the authorization period listed above. This approval is subject to Medicare coding requirements for coverage. In addition, you must be a Martin's Point Generations Advantage member at the time of the service.**

**MEMBERS:**
Please be aware that out-of-network providers have not been reviewed or credentialed by Martin's Point Health Care. If you have questions about this authorization, your benefits, or billing, please call a Member Services Representative at 1-866-544-7504. TTY call 711. We are open 8am to 8pm (EST), seven days a week from October 1 - February 14, and 8am to 8pm (EST) Monday - Friday February 15 – September 30

**PROVIDERS:**

Y0044_2013_035 CMS Approved 4/16/2013
Martin's Point Generation Advantage
PO Box 9746 | Portland, Maine 04104 | MartinsPoint.org



MARTIN'S POINT®
HEALTHCARE

If you have questions about this authorization, billing or benefits available to our members, please call Generations Advantage Provider Inquiry Department at 1-888-732-7364. TTY call 711. We are open Monday through Friday from 8 am to 5 pm.

To submit claims, please mail to:

Martin's Point Generations Advantage Claims Department
PO Box 11410
Portland, Maine 04104-7410

PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE.

 Health Management Department

Martin's Point Generation Advantage
PO Box 9746 | Portland, Maine 04104 | MartinsPoint.org

# EXHIBIT F

MARTIN'S POINT GENERATIONS ADVANTAGE, INC.

**TD Bank**
America's Most Convenient Bank

(207)-774-5801

331 VERANDA STREET · P.O. BOX 9746
Portland, ME  04104-5040

| DATE | AMOUNT |
|------|--------|
| 09/22/2023 | $***24,406.90 |

***Twenty Four Thousand Four Hundred Six and 90/100 Dollars

PAY
TO THE
ORDER
OF:

HOSPITAL QUIRURGICA DEL SUR
Passage Health International
PO Box 11577
Fort Lauderdale, FL 33339

CLAIMS ACCOUNT
VOID AFTER 90 DAYS

AUTHORIZED SIGNATURE



MARTIN'S POINT
HEALTHCARE

GENERATIONS ADVANTAGE

# Provider Remittance

Tax ID: 981403909

9/22/2023 12:05 PM
Pay Date: 9/22/2023

Generations Advantage
Program
Check Number: 2744724

**Payee:** HOSPITAL QUIRURGICA DEL SUR
Passage Health International, PO Box 11577
Fort Lauderdale, FL 33339

**Provider:** HOSPITAL QUIRURGICA DEL SUR    Member ID: 1000003251 8    Claim: 2326300002    Status: PAID    Patient #:

TALIAFERRO, JAMES G

| # | From Date | Mod | CPT- | Amt Billed | Qty | Contractual Adjustment | Allowed | Copay | Coins. | Withheld | Other Ins | **Sequestration Reduction | RAP Penalty | Net |
|---|-----------|-----|------|-----------|-----|------------------------|---------|-------|--------|----------|-----------|---------------------------|-------------|-----|
| 1 | 1/18/2023 | WW1102 | | $512,464.0 0 | 1 | $487,464.00 | $25,000.00 | $95.00 | $0.00 | $0.00 | $0.00 | $498.10 | $0.00 | $24,406.90 |
| | | | | $512,464.0 0 | 1 | $487,464.00 | $25,000.00 | $95.00 | $0.00 | $0.00 | $0.00 | $498.10 | $0.00 | $24,406.90 |

**Disbursement Funds by Check/EFT Number**

| | |
|---|---|
| Check/EFT #: | 2744724 |
| Amt Billed: | $512,464.00 |
| Disallowed: | $0.00 |
| Allowed: | $25,000.00 |
| Withheld: | $0.00 |
| Co-Pay: | $95.00 |
| **Sequestration Reduction: | $498.10 |
| Co-Insurance: | $0.00 |
| Benefit Amount: | $24,905.00 |
| COB Applied: | $0.00 |
| Capped Amount: | $0.00 |
| Simple Interest: | $0.00 |
| Retraction/Adjustment: | $0.00 |
| RAP Penalty: | $0.00 |
| Refund Received (Info Only): | $0.00 |
| **Check Amount:** | $24,406.90 |

*Not Covered Amount is Negative Because Allowed Amount is Greater than the Amount Billed

C - 53694

Apply Balance to C-53693

2 Claims

C - 53694 — $9512.00

$14,894.90

C-53693

2

**208**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

|  |  |  |
|---|---|---|
| HOSPITAL QUIRURGICA DEL SUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:23-cv-00259-LEW |
| v. | ) | |
| | ) | |
| MARTIN'S POINT HEALTH CARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT MARTIN'S POINT HEALTH CARE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF HOSPITAL QUIRURGICA DEL SUR'S COMPLAINT

Plaintiff Hospital Quirurgica Del Sur's ("Hospital") Opposition falls far short of demonstrating that the Complaint (Dkt. 1) should survive Defendant Martin's Point Health Care Inc.'s ("Martin's Point") Motion to Dismiss (Dkt. 19).  First, Hospital does not and cannot explain why it is relieved of the obligations to follow the heavily regulated Medicare program's administrative steps to resolve a dispute about payment from a Medicare Advantage plan for services purportedly rendered to a Medicare Advantage beneficiary, and it does not offer a single statute, regulation, case, or other authority that supports its argument.  Rather, it simply contends that foreign non-contracted providers are different from domestic non-contracted providers, but that distinction is irrelevant under Medicare regulations.  (Dkt. 26, at p. 4-6).  Hospital's Opposition does nothing to rebut Martin's Point's detailed explanation that this Court does not have jurisdiction because Hospital has not exhausted its administrative remedies.  Indeed, Hospital's arguments are almost entirely devoid of citations to statutes, case law, or regulations.

Second, Hospital has not plausibly alleged facts sufficient to state either of its causes of action.  Apparently acknowledging the deficiency of its allegations, Hospital inappropriately (and untimely) submitted an affidavit of "additional facts" along with its Opposition. (Dkt. 27).  Yet, even if the Court were to accept this affidavit, the attached additional documents only undermine Hospital's assertion that it justifiably or reasonably relied on any of Martin's Point's representations about guaranteeing payment for all of the charges that Hospital submitted to Martin's Point.  This additional information provided by Hospital demonstrates that Hospital's complaint should be dismissed with prejudice because any amendment will be futile.

## I.     Hospital is Not Exempt from Medicare's Administrative Exhaustion Requirement.

Hospital advances no authority demonstrating why it need not exhaust Medicare's administrative process to dispute a payment from a Medicare Advantage plan for the care offered

to a Medicare beneficiary.[1/]  Hospital must follow Medicare's dispute processes before filing a lawsuit, as Martin's Point demonstrated in its Motion to Dismiss. (Dkt. 19, at p. 9-13).  Hospital cannot bill a Medicare Advantage plan and then reject Medicare's processes and procedures for challenging the payment it received, and it cites no authority allowing it to evade Medicare's requirements.  Instead, Hospital makes the unsupported argument that a foreign non-contracted provider is different from a domestic non-contracted provider.  But Hospital does not explain why that difference is legally significant or relieves Hospital of its obligation to follow Medicare's administrative review process for a dispute about Medicare payments for a Medicare beneficiary. Each of Hospital's arguments fail for several reasons.

First, Hospital incorrectly argues—again without any citation supporting its assertion— that Martin's Point offers supplemental coverage for emergencies that is separate from Medicare and that it "operates independently of Medicare guidelines or restrictions."  (Dkt. 26, at p. 5). Contrary to Hospital's contention, federal Medicare regulations unequivocally demonstrate that the Medicare program regulates a Medicare Advantage plan's supplemental coverage.  42 U.S.C. § 1395w-22(a)(3) (providing authority to offer supplemental benefits); 42 C.F.R. § 422.566(a) (requiring Medicare Advantage plans to have a process for making timely organizational determinations regarding both basic and supplemental benefits); *see also Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 918 (9th Cir. 2022) ("supplemental benefits offered under a Medicare Advantage plan constitute benefits that are offered under . . . the Medicare Act. . . . Congress made determinations regarding an enrollee's entitlement to basic *and*

---

[1/]        Because this is a dispute about payment from a Medicare Advantage plan, Medicare regulations require administrative review by experts in the regulatory scheme before review by federal courts. Hospital has presented no basis—no case law or regulatory support—for its assertion that Medicare regulations do not apply. Even if the Court accepts Hospital's baseless assertion that Medicare does not apply to its dispute about the payment it received, any question about the applicability of Medicare regulations is required to be presented for administrative review before a federal court can have subject matter jurisdiction.

supplemental benefits subject to [Medicare Advantage's] administrative review scheme."). Because the Medicare program regulates supplemental benefits offered by a Medicare Advantage plan, any dispute about payment related to those benefits is subject to Medicare's administrative exhaustion requirement, as Martin's Point demonstrated. (Dkt. 19, at p. 9-11).

In addition, even Hospital's threadbare allegations show that before submitting payment to Martin's Point, Hospital had actual knowledge that Mr. Taliaferro was an eligible Medicare beneficiary covered by a Medicare Advantage plan. (Dkt. 1 at ¶ 3). Hospital asked Mr. Taliaferro to sign a written agreement "acknowledging that he would be responsible for paying all monies owed to the provider and/or billing administrator." *Id.* at ¶ 12. On this form, Mr. Taliaferro provided his Medicare Advantage plan information to Hospital. *Id.* Rather than billing Mr. Taliaferro, Hospital authorized Passage Health to submit bills to Martin's Point. *Id.* at ¶¶ 13, 17.

This is significant because the administrative review process applies to hospitals that are the assignee of the beneficiary, as well as "[a]ny other provider or entity determined to have an appealable interest in the proceeding." 42 C.F.R. § 422.574. The administrative appeal process may be initiated by Mr. Taliaferro's assignee, including "[a]ny provider that furnishes, or intends to furnish, services to the enrollee" such as Hospital. 42 C.F.R. § 422.566(c)(1)(ii); Letter from Jerry Mulcahy, Dir., Medicare Enrollment and Appeals Group, CMS, to Non-Contract Provider Access to Medicare Administrative Appeals Process, (Sept. 3, 2020), available at: https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/ncpdp_hpms_memo_ 09-23-2020_final.pdf.

Second, Hospital further argues that the cases Martin's Point cited to support administrative exhaustion are distinguishable because they are breach of contract cases. This argument misstates these cases, and plaintiffs in these cases brought claims similar to Hospital's claims here. *See*

*Glob. Rescue Jets*, 30 F.4th 905 (dismissing under 12(b)(1) breach of contract, good faith and fair dealing, quantum meruit, and California unfair competition claims brought by a non-contracted helicopter transport company providing services from Mexico against a Medicare Advantage plan); *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.,* 875 F.3d 584 (11th Cir. 2017) (dismissing under 12(b)(1) hospitals' unjust enrichment and quantum meruit claims against a Medicare Advantage plan).

Third, Hospital asserts that diversity jurisdiction is sufficient to allow this Court to retain subject matter jurisdiction. This is also incorrect. Cases based on diversity jurisdiction are still subject to the Medicare Act's exhaustion requirement, and judicial review is permitted only "after any final decision of the [Secretary] made after a hearing to which he was a party" 42 U.S.C. § 405(g) (provides the exclusive means for an individual to seek judicial review). The statute thus removes jurisdiction where a plaintiff has failed to exhaust its administrative remedies. *Id*. Further, 42 U.S.C. § 405(h) voids diversity jurisdiction where a plaintiff has failed to exhaust its administrative remedies. *Do Sung Uhm v. Humana, Inc.* 620 F.3d 1134, 1141 n.11 (9th Cir. 2010) (upholding dismissal of breach of contract and unjust enrichment claims for failure to exhaust administrative remedies, even though complaint asserted diversity jurisdiction under 28 U.S.C. § 1332); *see also Midland Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998) (holding that actions brought pursuant to diversity jurisdiction under § 1332 are also subject to the Act's exhaustion provisions); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 488-90 (7th Cir. 1990) (same); *see also Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 347 (3d Cir. 2012).

A dispute about payment for services rendered to a Medicare beneficiary, or even the application of Medicare law, is precisely the type of issue that should undergo administrative

review prior to review by a federal court. Because this Court does not have jurisdiction, Hospital's complaint should be dismissed under Rule 12(b)(1).

## II.    Hospital's Affidavit Demonstrates That Hospital's Alleged Reliance on Purported Promises Was Unreasonable and Unjustified.

If the Court reaches the issue, Hospital's promissory estoppel and negligent misrepresentation claims should be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff has not alleged plausible facts supporting its claims. The documents that Plaintiff improperly adds via affidavit in connection with its opposition purportedly to bolster its causes of action only undermine these claims.  These additional documents show that: (1) Hospital cannot plausibly allege facts that Martin's Point promised to pay for any and all services, at any amount, or that Hospital reasonably relied on or expected payment for nearly $500,000 of billed charges; and (2) Hospital cannot demonstrate that it justifiably relied on the (unspecified) information that Martin's Point provided. (Dkt. 19, at p. 13-17).

Although Hospital inappropriately introduced additional documents into the record,[2] the provided documents clearly display the following disclaimer on Passage Health's forms in prominent language (bold and red font in the original):

> **Disclaimer: The medical provider acknowledges that a quote of benefits and/or authorization does not guarantee payment or verify eligibility. Payment of benefits are subject to all terms, conditions, limitations, and exclusions of the member's contract at time of service.  Nothing herein should be construed as a binding agreement to validate health benefits.  The information provided may result in non- coverage of services due to the fact that Passage Health International (PHI) relies on information being provided at the time of verification, which may not include coverage information for highest level of specificity.  PHI assumes no liability on the accuracy of the information being provided.  If any doubt provider is encouraged to collect from the patient at the time of service.**

---

[2] "Factual allegations made for the first time in a responsive memorandum are not properly considered in evaluating the sufficiency of a complaint under Rule 12(b)(6)."  *Forrester Winne v. Nat'l Collegiate Student Loan Tr. 2005-1*, No. 1:16-cv-00229-JDL, 2017 U.S. Dist. LEXIS 131174, at *15 (D. Me. Aug. 17, 2017) (citing *Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 365 n.5 (D.P.R. 2015) ("But the plaintiffs cannot, of course, add allegations or claims by furnishing them for the first time in an opposition to a motion to dismiss.")).

Thus, the documentary evidence demonstrates that Hospital's purported reliance or expectation of payment from a phone conversation is unreasonable when both the Prior Authorization forms and the Verification of Benefits form received by Hospital make clear that there was no guarantee of payment from those communications.

These documents further establish that Hospital has not and cannot plausibly allege the essential elements of either a promissory estoppel or negligent misrepresentation claim.  As such, any amended complaint will be futile because the amended complaint will fail to meet the pleading requirements of Fed. R. Civ. P. 8. The court must consider "futility through the lens of Federal Rule of Civil Procedure 12(b)(6)." *Parker v. Landry*, 935 F.3d 9, 13 (1st Cir. 2019). "[A] proposed amendment is futile if it fails to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

For the reasons stated above, Martin's Point respectfully requests that the Court dismiss the Complaint, with prejudice.

Dated: January 24, 2024                          Respectfully submitted,

Martin's Point Health Care, Inc.

By its attorneys,

*/s/  Timothy J. McKeon*
Timothy J. McKeon, Maine Bar # 005379
Brian Dunphy (*pro hac vice*)
Laura Martin (*pro hac vice*)
Mintz, Levin, Cohn, Ferris, Glovsky
  and Popeo, P.C.
One Financial Center
Boston, MA 02111
Tel. (617) 542-6000
Fax (617) 542-2241
TJMcKeon@mintz.com
BDunphy@mintz.com
LEMartin@mintz.com

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2024, I served a true and correct copy of the foregoing document via the Court's Electronic Filing System, which will electronically send notice to all counsel of record.

*/s/ Timothy J. McKeon*
Timothy J. McKeon

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| HOSPITAL QUIRURGICA DEL SUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-CV-00259-LEW |
| | ) | |
| MARTIN'S POINT HEALTH CARE, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER ON MOTION TO DISMISS</u>

In this action, Plaintiff Hospital Quirurgica Del Sur seeks to recover from Defendant Martin's Point, in its capacity as a healthcare insurer, the value of healthcare services it provided to an individual who participates in Martin's Point's Medicare Part C or "Medicare Advantage" program.  The matter is before the Court on Martin's Point's Motion to Dismiss (ECF No. 19).  For reasons that follow, the Motion is GRANTED.

### BACKGROUND

Hospital Quirurgica Del Sur is a Mexican corporation that provides hospital and healthcare services to patients in Cancun, Mexico.  From January 12, 2023, to February 16, 2023, James G. Taliaferro was voluntarily admitted to Hospital Quirurgica Del Sur.  Upon his admission to Hospital Quirurgica Del Sur and during his hospitalization, Taliaferro signed a written contract acknowledging that he would be responsible for paying all monies owed to the provider and/or billing administrator and provided information about his

applicable health insurance with Martin's Point Health Care, Inc., a Maine corporation with its principal place of business in Portland, Maine.

Non-party Passage Health International LLC is a limited liability company with a principal place of business in Fort Lauderdale, Florida. Passage performed billing submission, pre-authorization, and collection activities on behalf of Hospital Quirurgica Del Sur. Throughout Taliaferro's inpatient stay at Hospital Quirurgica Del Sur, Passage communicated with and received verification from Martin's Point that the proposed medical procedures in Mexico were covered by insurance provided by Martin's Point and that Taliaferro had applicable benefits for out of country emergency services. After receiving such assurances, Hospital Quirurgica Del Sur treated Taliaferro and he was eventually released.

Hospital Quirurgica Del Sur alleges that the services it provided to Taliaferro total $512,464.00. Hospital Quirurgica Del Sur's medical bills incurred on behalf of Taliaferro were provided to Martin's Point but Martin's Point refused to reimburse Hospital Quirurgica Del Sur except to the limit of $25,000.00. That amount is the maximum benefit for out-of-country medical services specified in Mr. Taliaferro's Medicare Part C health insurance contract with Martin's Point. Hospital Quirurgica Del Sur complains that Martin's Point never advised it of the existence of a $25,000.00 limitation even though Martin's Point informed Hospital Quirurgica Del Sur that Taliaferro's medical treatment in Mexico was covered by insurance with Martin's Point. More specifically, Hospital Quirurgica Del Sur alleges that it worked with Passage Health to verify coverage and Passage Heath had communications with Martin's Point, who made assurances that

Taliaferro's proposed medical procedures in Mexico were covered by its medical insurance.

Hospital Quirurgica Del Sur's Complaint asserts two causes of action: promissory estoppel and negligent misrepresentation.  As to the latter cause of action, Hospital Quirurgica Del Sur alleges that Martin's Point supplied false information that guided Hospital Quirurgica Del Sur in its business transactions relating to Mr. Taliaferro, to its detriment.  Hospital Quirurgica Del Sur does not allege, specifically, that there was a conversation with Martin's Point concerning the existence of insurance coverage limitations, but states that Martin's Point informed Passage Health that Taliaferro had "full medical insurance benefits."  Compl. ¶ 29.

In support of its Motion to Dismiss, Martin's Point provides a letter exhibit.  Mot. Ex. A (ECF No. 19-1).  The letter is authored by Martin's Point HealthCare and authorizes inpatient service for Mr. Taliaferro for several days.  The letter also states that the approval is subject to Medicare coding requirements for coverage and includes a code for CMS approval.  The letter also concludes, in bold, that PAYMENT IS BASED ON THE MEMBER'S ELIGIBILITY AND BENEFIT COVERAGE AT THE TIME OF SERVICE. *Id.*  Martin's Point asserts that it is proper to consider the exhibit in the context of a motion to dismiss because the authorization verification form is "integral to the claims in the complaint."  Mot. at 5 n.5 (citing *Brayman v. Porter*, No. 1:20-cv-00169-JAW, 2021 WL 342566 (D. Me. 2021)).  The letter bears the date January 30, 2023, which is roughly half-way through Mr. Taliaferro's hospitalization.

In response to Martin's Point's Motion, Hospital Quirurgica Del Sur supplies exhibits of its own. These include a Passage Health Verification of Benefits form dated January 18, 2023, shortly after Taliaferro's hospitalization. Response Ex. A (ECF No. 27-1). The documents do not appear to proclaim that Martin's Point is a Medicare Part C insurer, though there is a reference to "Medicare coding requirements" in at least one letter authored by Martin's Point.

Because the exhibits are integral to the communications between Martin's Point and Passage Health, and because those communications underlie Hospital Quirurgica Del Sur's causes of action, and because neither party disputes the authenticity of the documents, I have considered the documents in the context of the Motion to Dismiss, without converting the motion into a motion for summary judgment. *See Goldberg v. Unum Life Ins. Co. of Am.*, 527 F. Supp. 2d 164, 167 (D. Me. 2007).[1]

## DISCUSSION

Pursuant to Rule 12(b)(1), a defendant may file a motion to dismiss contending that the court lacks jurisdiction over the subject matter of the litigation. Fed. R. Civ. P. 12(b)(1). The burden to prove the existence of subject matter jurisdiction rests with the party invoking the court's jurisdiction. *Skwira v. United States*, 344 F.3d 64, 71 (1st Cir. 2003). For claims arising under the Medicare Act, which uses the same exhaustion requirement as the Social Security Act, the failure to exhaust administrative remedies provides a basis for

---

[1] This observation is offered only in an abundance of caution. In a Rule 12(b)(1) motion, "[t]he court, without conversion, may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiffs allegations." *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37 (1st Cir. 2000).

the dismissal of a district court action on jurisdictional grounds.  *Justiniano v. Soc. Sec. Admin.*, 876 F.3d 14, 19 (1st Cir. 2017); *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 7–8 & n.6 (1st Cir. 2005).

Martin's Point argues that Hospital Quirurgica Del Sur's causes of action cannot be maintained in this Court at this time and should be dismissed for lack of jurisdiction because federal law requires that Hospital Quirurgica Del Sur exhaust administrative remedies before filing a complaint seeking judicial review of its dispute with Martin's Point.  Mot. at 7–13.  Martin's Point's argument rests on its status as a Medicare Advantage organization ("MAO"), the fact that Mr. Taliaferro was insured by Martin's Point under Part C of the Medicare Act, and the fact that Hospital Quirurgica Del Sur's civil action is based on alleged misrepresentations concerning the availability of insurance benefits.

In response, Hospital Quirurgica Del Sur relies on the notion that it has plausibly plead garden variety state law claims arising in diversity.  Opposition at 1–2, 4–8.  Hospital Quirurgica Del Sur also asserts that "Martin's Point is applying inappropriate standards in asserting that the foreign hospital fails to comply with administrative requirements [because Hospital Quirurgica Del Sur] is . . . a non-Medicare, non-contracted provider, a distinction from a non-contracted provider within the United States"; Martin's Point "is free to offer services for out-of-network international claims for emergency services"; and Hospital Quirurgica Del Sur "properly alleged that they did so here and later reneged on . . . representations that coverage was available."  *Id.* at 5.  In its view, emergency overseas benefits "are not governed by Medicare" and, therefore, a foreign hospital "cannot enter into a contract with any Medicare Advantage Organization."  *Id.* at 5–6.

5

For reasons that follow, I am not persuaded by Hospital Quirurgica Del Sur that Martin's Point is "free" to provide whatever coverage it desires for international emergency service and that disputes concerning such benefits fall outside the Medicare program.

The Medicare program is a federal welfare benefit program that provides health insurance coverage to, among others, people 65 years of age and older. *Medicaid & Medicare Advantage Prods. Ass'n of Puerto Rico*, *Inc. v. Emanuelli Hernández*, 58 F.4th 5, 8 (1st Cir. 2023) (citing 42 U.S.C. § 1395c). Parts A and B of the Medicare Act afford medical benefits according to a fee-for-service schedule established by the Centers for Medicare and Medicaid Services ("CMS"), a sub-agency of the Department of Health and Human Services. *Id.* Part C of the Medicare Act establishes a Medicare Advantage program through which CMS contracts with private insurers that then develop their own networks of care to deliver both mandated Medicare benefits and some supplemental benefits that are not available under Parts A and B of Medicare. *Id.* The payment system under Part C differs from the fee-for-service schedule of Parts A and B, and generally entails a mash-up of market, welfare, and managed care attributes that, it is said, resemble a market-oriented approach to the delivery of healthcare services. *Id.* & n.1. Nonetheless, the provision of Part C benefits and disputes over payments remain very much within the Medicare program.

Persons who enroll in a plan offered by a MAO pay for supplemental benefits by means of premiums or cost sharing. 42 C.F.R. §§ 422.110(c)(2), 422.102(c). Although "CMS generally has little say over the package of supplemental benefits that a plan chooses to offer," MAOs' plans are subject to a battery of rules and standards and CMS must

6

approve all supplemental benefits included in a plan offered by a MAO.  42 U.S.C. §§ 1395w-26(b), 1395w-27(a); 42 C.F.R. § 422.110(f).  The approval process includes a review to ensure the MAOs meet financial solvency and capital adequacy standards.  42 U.S.C. § 1395w-26(a).  Typically, MAOs arrange for the provision of healthcare services to their enrollees by means of contract providers or managed care networks.  However, Medicare requires that certain services provided to enrollees be paid for even if the provider is not a contract provider, one example being emergency medical services.  *Id.* § 1395w-22(d)(1)(E); 42 C.F.R. §§ 422.100(b)(1), 422.113.

MAOs are insulated from state interference in the form of supplemental standards and are subject to near exclusive regulation by the Secretary of Department of Health and Human Service and CMS.  42 U.S.C. § 1395w-26(b)(3) ("The standards established under [Part C] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part.").  When disputes arise over the payment of a MAO enrollee's medical bills, Congress has prescribed an administrative review process.  *Id.* § 1395w-22(g).  The review process begins with initial and reconsideration determinations by the MAO, 42 C.F.R. §§ 422.566, 422.578, 422.582; moves on to review by an independent outside entity, *id.* § 422.592; continues with a hearing before an administrative law judge, *id.* § 422.600; proceeds to the Medicare Appeals Council, *id.* § 422.608; and culminates with judicial review of the final administrative determination, *id.* § 422.612.  The administrative review process is open to providers, who may proceed as an assignee of the enrollee's right to coverage, though the

regulations require that the provider waive any right to payment from the enrollee.  *Id.*

§§ 422.566(c)(1)(ii), 422.574(b).

The Medicare Act also makes Part C disputes subject to the provisions of, inter alia,

42 U.S.C. § 405(h).  *See* 42 U.S.C. § 1395ii.  Section 405(h) provides:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).  Section 405(h) is understood to dictate that the administrative review

process is the exclusive means of resolving disputes arising under the Medicare Act, even

to the extent of actions brought under section 1332 of Title 28 (diversity jurisdiction).  *See*

*Allstar Care Inc. v. Blue Cross & Blue Shield of S.C.*, 184 F. Supp. 2d 1295, 1298 (S.D.

Fla. 2002) (first citing *Bodimetric Health Servs.*, *Inc. v. Aetna Life & Casualty*, 903 F.2d

480, 489 (7th Cir. 1990); and then citing *Midland Psychiatric Assocs.*, *Inc. v. United States*,

145 F.3d 1000, 1003–04 (8th Cir. 1998)).

Based on this regulatory framework, the Ninth Circuit has held "that Congress

intended to impose under the Medicare Advantage program the same administrative

exhaustion requirement that applies to claims for benefits under original Medicare,"

meaning that judicial review must be held in abeyance until a final decision emerges from

the administrative review system.  *Global Rescue Jets*, *LLC v. Kaiser Found. Health Plan*,

*Inc.*, 30 F.4th 905 (9th Cir. 2022); *cf. Puerto Rican Ass'n of Physical Med. & Rehab.*, *Inc.*

*v. United States*, 521 F.3d 46, 48 (1st Cir. 2008) (observing that the section 405(h) bar requires the channeling of "virtually all legal attacks through the agency" (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000))); *Ill. Council*, 529 U.S. at 23 (observing that litigants "remain free, . . . after following the special review route that the statutes prescribe, to contest in court the lawfulness of any regulation or statute upon which an agency determination depends").   In *Global Rescue Jets*, a rescue service provided emergency service to persons who became ill in Mexico.  30 F.4th at 908.  The ill patients assigned their claims for Part C benefits from Kaiser to the rescue service. Kaiser declined to reimburse the rescue service except to the limit of Medicare approved rates, resulting in litigation.  *Id.* at 908–10.  The Ninth Circuit affirmed the dismissal of the lawsuit based on lack of subject matter jurisdiction—failure to exhaust administrative remedies.  *Id.* at 919–20.  It reasoned that the dispute over payment was "inextricably intertwined with claims for benefits under Part C of the Medicare Act," *id.* at 919, since the rescue service sought to recover payment from a MAO, *id.* at 916–19.  According to the Ninth Circuit, "Congress intended to impose . . . the same administrative exhaustion requirement that applies to claims for benefits under original Medicare."  *Id.* at 914; *see also id.* (observing that the "constraints on judicial review imposed by § 405(h) apply equally to claims for benefits under Part C" and citing *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584 (11th Cir. 2017)).[2]

---

[2] In *Tenet*, the Plaintiffs-Appellants were non-contract providers that presented the defendant MAO with periodic, recurring claims such that the MAO was able to adjust payments to recoup alleged, past overpayments, resulting in new, disputed underpayments.  The *Tenet* Court held that a non-contract provider that delivers services to a Medicare Part C enrollee is subject to the Medicare Act's administrative

For the reasons set forth in *Global Rescue Jets*, I am persuaded that Hospital Quirurgica Del Sur's effort to collect against Martin's Point is subject to the mandatory administrative review process. And based on *Allstar Care* and the authorities cited therein, *see supra*, Hospital Quirurgica Del Sur's reliance on diversity rather than federal question jurisdiction does not change the analysis.

Because Hospital Quirurgica Del Sur's claims seek to make a MAO pay for services provided to a Medicare Part C enrollee, I conclude that, at least for purposes of domestic litigation in state or federal court, their claims arise under the Medicare Act and must, preliminarily, be channeled through the administrative review process. Minimally, it is appropriate that this threshold jurisdictional question should be ironed out in this Circuit before this matter proceeds to discovery and trial (and before I consider Martin's Point's alternative arguments for dismissal for failure to state a claim). While Hospital Quirurgica Del Sur contends that its situation differs from the situation in *Global Rescue Jets*, because this case does not present a claim for breach of contract, I do not see why causes of action based on equity and torts should be treated differently than a cause of action based on contracts. All of these causes of action are similarly rooted in state common law and all succumb equally to the dictates of federal law.

---

apparatus because the provider's claim for reimbursement is based on the assignment of the Medicare Part C enrollee's right to coverage, and that the non-contract provider cannot plead its way around administrative exhaustion by presenting state common law claims arising out of the MAO's authorization to provide services and promise of reimbursement. *Id.* at 588–89.

Because the Complaint does not include allegations that demonstrate exhaustion of the administrative process, the Court lacks jurisdiction to review Martin's Point's refusal to pay the entire medical bill submitted by Hospital Quirurgica Del Sur.

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 19) is **GRANTED** and the case is **DISMISSED** for lack of subject matter jurisdiction.

 SO ORDERED.

Dated this 23rd day of April, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge

11

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

HOSPITAL QUIRURGICA DEL SUR     )
                                )
                                )
Plaintiff,                      )
                                )
v.                              )     CIVIL NO. 2:23-cv-00259-LEW
                                )
MARTIN'S POINT HEALTH CARE INC  )
                                )
Defendant,                      )


JUDGMENT OF DISMISSAL


In accordance with the Order on Motion to Dismiss entered by Chief Judge Lance

E. Walker on April 23, 2024,

JUDGMENT of Dismissal for lack of subject matter jurisdiction is hereby

entered.


                              CHRISTA K. BERRY
                              CLERK



                    By:    /s/ Jennifer G. Driscoll
                           Deputy Clerk


Dated: April 23, 2024

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

|  |  |
|---|---|
| HOSPITAL QUIRURGICA DEL SUR | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| MARTIN'S POINT HEALTH CARE, INC., | ) ) |
| Defendant. | ) ) ) |

Civil Action No. 2:23-cv-00259-LEW

## PLAINTIFF'S MOTION TO ALTER JUDGMENT PURSUANT TO RULE 59(e)

Pursuant to Federal Rule of Civ. P. 59(e), Plaintiff Hospital Quirurgica Del Sur, by and through their counsel, hereby files this motion to alter the Court's Order Granting Defendant's Motion to Dismiss, and to enter a new Order denying the motion and vacating the Judgment, and in support thereof states as follows:

### I.    FACTS

As the Court knows from prior pleadings and motion practice, Plaintiff Hospital is a Mexican Corporation that provides healthcare to patients in Cancun, Mexico, and in this case, a U.S. citizen. See Pl. Compl. ¶ 1. Defendant, Martin's Point Health Care, Inc. ("Martin's Point"), is a Maine corporation with a principal place of business in Portland, Maine. See *Id.* at ¶ 2. From approximately January 18, 2023 – February 16, 2023, James Taliaferro received medical care at Hospital Quirurgica Del Sur, after executing a written agreement regarding his applicable health insurance. See Pl. Compl. ¶¶ 11-12. After Mr. Taliaferro's treatment concluded, Martin's Point refused to reimburse Hospital for Mr. Taliaferro's treatment, citing a claimed limit of $25,000. See *Id.* at ¶ 20.

On April 23, 2024, this honorable Court granted Defendant's Motion to Dismiss. . See *ECF. Docket No.* 29. In doing so, this Court expressed doubt that disputes regarding benefits available to a Medicare recipient fall "outside the Medicare program." *Id.* at pg. 5-6. In doing so, this Court determined that Plaintiff's efforts to collect the outstanding balance against Defendant is "subject to the mandatory administrative review." *Id.* at pg. 8. Lastly, this Court held it lacked jurisdiction to review Defendant's refusal to pay for medical services based on a failure to "demonstrate exhaustion of the administrative process." *Id.* at pg. 10.

The Centers for Medicare and Medicaid Services ("CMS") does not consider billing disputes in the context of foreign provider disputes. *See* Ex. A, Affidavit Of Eindar Khant filed herewith. Doing so would place an unnecessary, and burdensome, strain on Medicare and exceed the scope of CMS' administrative authority. Plaintiff hereby submits this Motion to Amend the entry of dismissal in this matter as Plaintiff literally has no administrative remedies to exhaust, and as foreign provider of medical services, is outside the scope of review by CMS.

## II.   <u>ARGUMENT</u>

Federal Rule of Civil Procedure 59(e) allows litigants the opportunity to file "[a] motion to alter or amend a judgment." A party seeking relief pursuant to Rule 59(e) may be granted where "the original judgment evidence a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations. *Fontanillas-Lopez v. Morell Bauza Cartagena & Dapena, LLC*, 832 F.3d 50, 55 (1st Cir. 2016) (citing *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014)). Rule 59(e) allows "an attack on a judgment on the ground that the judgment is based on a manifest error of law." *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 189 (1st Cir. 2004) (referencing *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55 (1st Cir. 2003)).

<u>CMS or Medicare</u>

CMS rejects appeals from foreign medical providers since such providers fall outside the scope of CMS's purview to review either contracting or non-contracting party appeals from MAO insurers. A MAO under the Medicare Advantage Program is defined as a "public or private entity organized and licensed by a State as a risk-bearing entity (with the exception of provider-sponsored organizations receiving waivers) that is certified by CMS as meeting the MA contract requirements. 42 C.F.R. Section 422.2. A "grievance" is defined as "any complaint or dispute, other than one that constitutes an organization determination, expressing dissatisfaction with any aspect of an MA organization's or provider's operations, activities, or behavior, regardless of whether remedial action is requested." 42 C.F.R. Section 422.561. A MAO is required to "promptly determine and inform the enrollee whether the complaint is subject to its grievance procedures or its appeal procedures." 42 C.F.R. Section 422.564(b). The statute goes on to further explain the grievance guidelines pertaining to MAOs. 42 C.F.R. Section 422.562.

The Fifth Circuit has determined that a provider's direct claim against an insurer may not be subject to Medicare's administrative review. *see also RenCare Ltd. V. Humana Health Plan of Texas, Inc.*, 395 F.3d 555,559 (5th Cir. 2004). An "organization determination" may be a "refusal to provide or pay for services, in whole or in part." *RenCare Ltd.*, 395 F.3d at 559. In *RenCare,* the Court heard a dispute between a contracted provider regarding alleged breach of an express agreement. *Id.* Non-Medicare benefits are not always subject to the exhaustion requirement of Medicare.

In addressing the issue relating to non-contract providers (and this foreign hospital is even more removed from the CMS process than a non-contracting provider), the Court in *Sarasota County Public Hospital Board, v. Blue Cross and Blue Shield of Florida, Inc.*, 511 F.Supp.3d 1240 (M.D. Fl. 2004)*,* noted:

[The United States Department of Health and Human Services] unequivocally expresses its belief [1] that third-party contract providers (rather than noncontract providers ...) are not assignees" within the definition of Medicare's administrative exhaustion provisions and (2) that "extending an administrative exhaustion requirement to payment disputes purely between [a Medicare Advantage organization] and a provider would improperly tax, and potentially overwhelm, CMS's limited resources."

*Sarasota*, 511 F.Supp.3d at 1252 (citing *Tenet Health System*, 875 F.3d at 590–91).

In *Sarasota*, the Court described the action as "aris[ing] from a private billing dispute" and embraced *RenCare*'s holding that the contracted party Plaintiff retained "no duty to exhaust an administrative remedy under Medicare." *Id*. at 1253 (citing *Ohio State Chiropractic,* 647 F.App'x at 625).

As the Court pointed out in it Order, the First Circuit has not yet weighed in on this issue, and none of the cases relied upon by the Court involved foreign medical providers. Since foreign medical providers are neither contracting nor non-contracting parties as those phrases are used in CMS nomenclature, they cannot be part of an administrative review process such as the providers in the cases the Court relies upon in its decision.

CMS has regularly informed Passage Health that it does not get involved in any dispute between a foreign medical provider and an MAO and that such disputes cannot be adjudicated by CMS. See Affidavit of Eindar M. Khant filed herewith, and supporting written rejections from CMS of appeal requests made on behalf of other, foreign medical providers such as the plaintiff in each of the two matters filed in this Court.

Respectfully, the Court misapplied the applicable law as foreign medical providers have no standing with CMS to seek or receive adjudication from CMS of disputes with any MAO under the Medicare system. Accordingly, CMS treats such matters as private party disputes out of its bailiwick, and the plaintiff asks the Court to do the same and to adjudicate what is a private party dispute – a tort claim over which this Court has diversity jurisdiction. Otherwise, the

plaintiffs in each of these cases is placed in between the proverbial rock and hard place, and has nowhere to go to have its respective grievances addressed. It is the essential function of courts to adjudicate disputes, and here, where there is no other recourse, the plaintiffs will receive a windfall when the plaintiff cannot have its disputes heard in any forum, let alone this one. Such a situation removes "the ability of litigants to utilize judicial procedures designed to guarantee due process of law and by attempting to usurp a quintessential aspect of the judicial power traditionally vested in courts." Centennial Puerto Rico License Corp. v. Telecommunications Regul. Bd. of Puerto Rico, 634 F.3d 17, 29 (1st Cir. 2011).

III.   **CONCLUSION**

Plaintiff respectfully requests that this Court alter its decision and withdraw the Judgment of Dismissal.

Respectfully submitted,

Hospital Quirurgica Del Sur

By its attorney,

/s/ Mark A. Darling
Mark A. Darling, Maine Bar # 4802
Litchfield Cavo, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
Darling@litchfieldcavo.com

**233**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 21, 2024, I served a true and correct copy of the foregoing document via the Court's Electronic Filing System, which will electronically send notice to all counsel of record.

/s/  Mark A. Darling _____

Mark A. Darling

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HOSPITAL QUIRURGICA DEL SUR | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| MARTIN'S POINT HEALTH CARE, INC., | ) ) |
| Defendant. | ) ) ) |

Civil Action No. 2:23-cv-00259-LEW

## AFFIDAVIT OF EINDAR M. KHANT

I, Eindar M. Khant, swear and aver as follows:

1. I am the CEO OF Passage Health International, Inc.  I have personal knowledge of, and have reviewed company records relating to submission of billing disputes to CMS (Centers for Medicare Services) between Passage Health's foreign, medical provider clients and MAO or Medicare Part C providers.

2. Attached are two examples of situations where Passage Health submitted billing and payment requests on behalf of foreign medical providers to a Part C or MAO provider, and where CMS flatly rejected any appeal stating that it does not handle, remedy or adjudicate claims between any MAO and any foreign medical provider.  Foreign medical providers cannot be either contracting or non-contracting parties in the CMS vocabulary since they cannot participate in Medicare since they are outside of the USA.

3. In example matter number 1. Plaintiff submitted a complaint to CMS on August 28, 2023. *See* Exhibit 1.

235

4. On August 29, 2023, CMS responded and stated "CMS does <u>not</u> adjudicate or process claims on behalf of MAO plans from this office." *Id.* My understanding of the phrase "this office" does not mean that such claims are adjudicated at a different geographical office, since CMS responds to claims by region, and no region will adjudicate a payment dispute between any foreign provider and any MAO.

5. On November 20, 2023, Plaintiff submitted a Complaint to CMS for another foreign medical provider for unpaid medical bills from an MAO. *See* Exhibit 2.

6. On May 8, 2024, Plaintiff send a follow-up e-mail inquiring about the status of this complaint.

7. On this same day, CMS responded stating "CMS does not investigate, mediate, etc. between plans and providers." *Id*.

8. Based on my personal knowledge, CMS declines to accept, handle or adjudicate any payment or billing disputes between foreign medical providers and any MAO since foreign medical providers are outside the scope of the CMS administrative review process. Foreign providers are neither contracting not non-contracting parties.  They have no status with CMS and that is why CMS rejects such claims out of hand.

**SIGNED AND SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY THIS  <u>21st</u>  DAY OF MAY 2024.**

*Eindar Khant*
_____
<u>EINDAR M. KHANT</u>

# EXHIBIT 1

# RE: Complaint-Submission | CMS ID: H5425- ⬛

### CMS ROSFODHPP <ROSFODHPP@cms.hhs.gov>

Tue 8/29/2023 3:31 PM

To: Mursaleen Nissar <mnissar@internationalbillingoffice.com>;

📎  1 attachments (174 KB)

Provider Claims Disputes and Complaints Ver 3 EXTERNAL (005).pdf;

Mursaleen,

Please resubmit your complaint using the attached Provider Complaint form file. Be aware that CMS needs to copy and paste from your file.

Also, you did not provide the beneficiary's Medicare number or SS# in section 1.5. When submitting the Provider Complaint form, please make sure to complete all the sections on the Provider complaint form especially section 1.5 regarding the Medicare Beneficiary Number (MBN).  The MBN is the beneficiary's Medicare number located on the beneficiary's red, white and blue Medicare card.  You may need to contact the beneficiary to obtain the beneficiary's Medicare number.

For section 1.11, please enter the date the appeal was filed with the plan and include a summary of the complaint.
For section 1.12, please enter the name(s) of individual (s) at the plan your organization communicated with to resolve the appeal issue and include the dates communicated.

if services were rendered in California, Arizona, Nevada, Hawaii and Pacific Territories (States and areas under the jurisdiction of CMS San Francisco Regional office), you may complete the attached Provider Claims Disputes and Complaints form, version 3 (Provider complaint form) and submit it to CMS San Francisco Regional office at rosfodhpp@cms.hhs.gov for review. If a Complaint is entered the plan will contact you directly with resolution within 30 days. You may also choose to follow up on the status of the complaint with the plan directly with the complaint ID provided by CMS.

If services were not rendered in California, Arizona, Nevada, Hawaii and/or Pacific territories, please refer to the below chart regarding the appropriate CMS Regional office to send the completed Provider form. The chart shows the CMS Regional offices, which States and areas assigned to each CMS Regional office and the corresponding mailbox to send your completed form.

As a reminder, CMS may assist you in facilitating communication with the MAO plan however not in a routine basis. MAO plans are responsible for defining and adhering to an appeal process for contracted providers as elaborated in the provider's and plan contracts.

Additionally, it is not CMS' role to determine medical necessity for an appeal case nor to determine appropriate claims payment amounts for payment disputes. CMS does not adjudicate or process claims on behalf of MAO plans from this office.

Finally, please submit your completed Provider complaint form password protected and email the password in a separate email. please provide your current contact information and include your company name and address on your email. Do not include additional files in your submission.

CMS Regional offices

| CMS/DHPO Location | Assigned States | DHPO Mailbox Address |
|---|---|---|
| Boston | CT, MA, ME, NH, VT | robosdmhpo@cms.hhs.gov |
| New York | NJ, NY, PR | ronyprovider@cms.hhs.gov |

**238**

| Philadelphia | DC, DE, MD, PA, VA, WV | partdcomplaints_ro3@cms.hhs.gov |
| Atlanta | AL, FL, GA, KY, MS, NC, SC, TN | partdcomplaints_ro4@cms.hhs.gov |
| Chicago | IL, IN, MI, MN, OH, WI | rochidmo@cms.hhs.gov |
| Dallas | AR, LA, NM, OK, TX | rodalmahpb@cms.hhs.gov |
| Kansas City | IA, KS, MO, NE | rokcmhpo@cms.hhs.gov |

Thanks,

CMS ROSFODHPP-R

**From:** Mursaleen Nissar <mnissar@internationalbillingoffice.com>
**Sent:** Monday, August 28, 2023 2:00 PM
**To:** CMS ROSFODHPP <ROSFODHPP@cms.hhs.gov>
**Subject:** Complaint-Submission | CMS ID: H5425-█

Dear Team

Please see the attached corrected complaint letter

Company Name: Passage Health International
Servicing address: PO BOX 39662, Fort Lauderdale, Florida 33339, United States
Physical Address: 701 E Commercial Blvd FL 4, Oakland Park, FL 33334, United States
Contact Number: (954)-889-3791

Thank you

--
**Mursaleen Nissar**
JR International Claim Specialist

_____

Office: +1 954 903 7445 X 324
Fax: +1 954 376 6163
_____

Please always forward your responses or inquiries to info@internationalbillingoffice.com This ensures that your e-mails or requests are answered in a timely manner.

_____

Confidentiality Notice: This email is sent in an unsecured format and is not encrypted. Response to this email signifies that you accept any risks involved in unauthorized access to this email and choose to continue communicating with us in this fashion. This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information and/or protected health information (PHI) intended only for the use of the recipient(s) named above and may be subject to protection under HIPAA in the USA, PIPEDA in Canada, GDPR in the European Union and other countries, applicable under international laws. If you are not the intended recipient, or the employee or the agent responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying,distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone at +1 (954) 903-7445,and permanently delete this e-mail and any attachments.

**239**

Passage Health International, L.L.C. is doing business as (dba) International Billing Office.

# EXHIBIT 2

# RE: Complaint RE-Submission | CMS ID: H1112- 

Nash, Panya (CMS/OPOLE) <Panya.Nash@cms.hhs.gov>

Wed 5/8/2024 4:24 PM

To:Mursaleen Nissar <mnissar@internationalbillingoffice.com>;

Good afternoon Nissar,

CMS does not interceding in such matters, and we are unable to dictate what claims plans enter into their system. The inquiry submitted fostered the intended communication, it was not intended to dictate the plans actions. Please contact the plan regarding this issue.

Thanks,

Panya Nash PhD, LCSW
Senior Caseworker
Philadelphia/Atlanta Drug & Health Plan Operations Group
Office of Program Operations & Local Engagement
Centers for Medicare & Medicaid Services
P: (404) 562-7175
F: (443) 380-7479

---

**From:** Mursaleen Nissar <mnissar@internationalbillingoffice.com>
**Sent:** Wednesday, May 8, 2024 4:15 PM
**To:** Nash, Panya (CMS/OPOLE) <Panya.Nash@cms.hhs.gov>
**Subject:** Re: Complaint RE-Submission | CMS ID: H1112-█

Dear Panya

The insurance never rejected , denied or acknowledged the claim therefore there is no claim on their end to appeal on,  because whenever we try to contact them they say the same thing that there is no claim on file and they advice us to re-submit the claim and again and again without reaching to any resolution

The CMS complaint was previously initiated on this case but the insurance still didn't entered this claim into their systems

Thank you

**Mursaleen Nissar**
*International Claims Specialist*

**Office: +1 954 903 7445 Ext: 324**
**Fax: +1 954 376 6163**
**Please always forward your responses or inquiries to info@internationalbillingoffice.com This ensures that your e-mails or requests are answered in a timely manner.**

**Confidentiality Notice:** This email is sent in an unsecured format and is not encrypted. Response to this email signifies that you accept any risks involved in unauthorized access to this email and choose to continue communicating with us in this fashion. This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information and/or protected health information (PHI) intended only for the use of the recipient(s) named above and may be subject to protection under HIPAA in the USA, PIPEDA in Canada, GDPR in the European Union and other countries, applicable under international laws. If you are not the intended recipient, or the employee or the agent responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone at +1 (954) 903-7445,and permanently delete this e-mail and any attachments.

**Passage Health International, L.L.C. is doing business as (dba) International Billing Office.**

---

**From:** Nash, Panya (CMS/OPOLE) <Panya.Nash@cms.hhs.gov>
**Sent:** Wednesday, May 8, 2024 3:53:15 PM
**To:** Mursaleen Nissar
**Subject:** RE: Complaint RE-Submission | CMS ID: H1112-█

Good afternoon,

Please note CMS complaints/inquiries only fosters communication (we enter the case and the plan reaches out to you within 30 days) between the plan and provider, hence why we require providers to exhaust the appeals process from the plan. CMS does not investigate, mediate, etc. between plans and providers.

Please provide evidence of having received a final decision notice from the appeals process for this office to review your complaint.

Thanks,

Panya Nash PhD, LCSW
Senior Caseworker
Philadelphia/Atlanta Drug & Health Plan Operations Group
Office of Program Operations & Local Engagement
Centers for Medicare & Medicaid Services
P: (404) 562-7175
F: (443) 380-7479

---

**From:** Mursaleen Nissar <mnissar@internationalbillingoffice.com>
**Sent:** Wednesday, May 8, 2024 10:30 AM
**To:** CMS PartCDInquiriesRO4 <PartCDInquiriesRO4@cms.hhs.gov>
**Subject:** Re: Complaint RE-Submission | CMS ID: H1112-█

Dear Team

We have submitted our complaint regarding the above beneficiary on 11/20/2023 which was initiated under complaint ID# C2303240342

However we have been advised by a Medicare complaints handler that we need to submit our claim to the medical group directly, but as of today we have still not received a response from the medical group or even from the Medicare complaints handler , the claim still remains non paid and not entered by the plan

Please send an inquiry to the plan regarding this matter

Thank you

**_Mursaleen Nissar_**
_International Claims Specialist_

**Office: +1 954 903 7445 Ext: 324**
**Fax: +1 954 376 6163**
**Please always forward your responses or inquiries to info@internationalbillingoffice.com This ensures that your e-mails or requests are answered in a timely manner.** _____

**Confidentiality Notice:** This email is sent in an unsecured format and is not encrypted. Response to this email signifies that you accept any risks involved in unauthorized access to this email and choose to continue communicating with us in this fashion. This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information and/or protected health information (PHI) intended only for the use of the recipient(s) named above and may be subject to protection under HIPAA in the USA, PIPEDA in Canada, GDPR in the European Union and other countries, applicable under international laws. If you are not the intended recipient, or the employee or the agent responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone at +1 (954) 903-7445,and permanently delete this e-mail and any attachments.
**Passage Health International, L.L.C. is doing business as (dba) International Billing Office.**

**From:** Mursaleen Nissar
**Sent:** Monday, November 20, 2023 3:46:02 PM
**To:** partdcomplaints_ro4@cms.hhs.gov
**Subject:** Re: Complaint RE-Submission | CMS ID: H1112-█

Dear Team

The file is password protected , the password for the attached file is : **passage**

Thank you

---

**From:** Mursaleen Nissar
**Sent:** Monday, November 20, 2023 3:45:10 PM
**To:** partdcomplaints_ro4@cms.hhs.gov
**Subject:** Complaint RE-Submission | CMS ID: H1112-█

Dear Team

Please find the attached complaint letter

Company Name: Passage Health International
Servicing address: PO BOX 11577, Fort Lauderdale, Florida 33339, United States
Physical Address: 5900 N ANDREWS AVE. STE 802 FORT LAUDERDALE FL. 33309
Contact Number: (954)-903-7445 ext. 324

Thank you

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| HOSPITAL QUIRURGICA DEL SUR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:23-cv-00259-LEW |
| v. ) | |
| ) | |
| MARTIN'S POINT HEALTH CARE, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT MARTIN'S POINT HEALTH CARE, INC.'S OPPOSITION TO
PLAINTIFF HOSPITAL HOSPITAL QUIRURGICA DEL SUR'S MOTION TO ALTER
JUDGMENT PURSUANT TO RULE 59(e)**

Plaintiff Hospital Quirurgica Del Sur's ("Hospital") Motion to Alter Judgment Pursuant to

Rule 59(e) contends that the Court made an error of law, but rather than demonstrating any error

by the Court, Hospital's motion demonstrates its incorrect understanding of Medicare's mandated

administrative appeal process. Because Hospital has not met the standard under Rule 59(e),

Martin's Point Health Care Inc. ("Martin's Point") thus urges the Court to deny Hospital's motion

and uphold dismissal of Hospital's complaint.

Relief through a Rule 59(e) motion "is granted sparingly" and Hospital cannot demonstrate

the judgment (Dkt. 30) is a manifest error of law. Hospital does not, and cannot, show that it can

proceed with a lawsuit in federal court unless it exhausts its administrative remedies through the

Medicare administrative appeal process. This appeal process is mandated by the heavily regulated

Medicare program when seeking to resolve a dispute about payment from a Medicare Advantage

plan for services rendered to a Medicare Advantage beneficiary. Hospital does not offer a single

statute, regulation, case, or other authority that supports its contention that the Court erred.

Although Hospital impermissibly tries to introduce new documents into the record that were not included with the Complaint or in its briefing to oppose the motion to dismiss, those documents undermine its argument. If the Court were to consider the new documents, the communications from the Centers for Medicare & Medicaid Services ("CMS") instruct Hospital to exhaust the administrative appeal process, as the Court found Hospital must do. Hospital confuses the CMS grievance process with the "separate and distinct" Medicare administrative appeal process for payment disputes that Hospital must exhaust before this Court has jurisdiction over its claims.[1] 42 CFR 422.564(b) (stating that grievances are "[d]istinguished from appeals. Grievance procedures are separate and distinct from appeal procedures, which address organization determinations as defined in § 422.566(b)."). Because Hospital has not satisfied the standards under Rule 59(e), the Court should deny the motion and the judgment dismissing the case should stand.

## I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Hospital provides hospital and health care services to patients in Cancun, Mexico. (Dkt. 1, at ¶ 1). Martin's Point Medicare Advantage health plan beneficiary, James G. Taliaferro, was admitted as a patient at Hospital. (*Id.* at ¶ 11). Hospital does not have a contract with Martin's Point. Hospital's agent, Passage Health, communicated with Martin's Point and Hospital alleges that it only treated Mr. Taliaferro after receiving assurances from Passage Health that it would receive payment. (*Id.* at ¶¶ 14-15). Martin's Point reimbursed Hospital for the services provided according to the terms of Mr. Taliaferro's Medicare Advantage health plan. (*See id.* at ¶¶ 20-21). Hospital contends that Martin's Point has not properly reimbursed it for services provided to Mr.

---

[1] Martin's Point described the appeals process in earlier briefing. (Dkt. 19, at p. 9-13).

Taliaferro. (*See id.* at ¶¶ 24-26). The Complaint does not allege that Passage Health or Hospital followed or exhausted the Medicare administrative appeal process prior to filing this lawsuit.

After considering briefing from both parties, the Court granted Martin's Point's Motion to Dismiss because Hospital's "claims seek to make a MAO pay for services provided to a Medicare Part C enrollee [therefore], at least for purposes of domestic litigation in state or federal court, their claims arise under the Medicare Act and must, preliminarily, be channeled through the administrative review process." (Dkt. 29, at p. 10). Hospital now brings this motion asserting the Court "misapplied the applicable law." (Dkt. 31, at p. 5).

## II.     LEGAL STANDARD

As this Court has explained, a Fed. R. Civ. P. Rule 59(e) motion "is granted sparingly, and only when the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations." *Roe v. Lynch*, No. 1:20-cv-00050-LEW, 2020 U.S. Dist. LEXIS 138284, at *1 (D. Me. June 22, 2020) quoting *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014). A manifest error "is plain and indisputable, and [] amounts to a complete disregard of the controlling law." *Venegas-Hernandez v. Sonolux Records*, 370 F. 3d 183, 195 (1st Cir. 2004) quoting Black's Law Dictionary 563 (7th ed. 1999) (finding a manifest error of law when judge calculated damages based on the infringed songs rather than the infringing albums). A Rule 59(e) motion is not "a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (citation omitted), *see also Markel Am. Ins. Co. v. D'az-Santiago*, 674 F.3d 21, 32-33 (1st Cir. 2012) (affirming denial of Rule 59(e) motion) ("As we have repeatedly admonished parties, [a Rule 59(e)] motion is not the place to present arguments that could, and should, have been raised before the court's pulling of its judgment trigger") (citation omitted).

## III.    <u>ARGUMENT</u>

Hospital fails to meet the standard for this Court to grant its Rule 59(e) motion because Hospital has not demonstrated that this Court's ruling is a manifest error of law. Further, Hospital relies on documents that it did not previously provide to the Court and which undermine its argument. In its decision, the Court carefully considered the pervasive Medicare regulatory scheme, the applicable administrative appeals process, and case law to determine that Hospital must exhaust its administrative remedies before filing suit, but Hospital had failed to do so.

First, Hospital repeats the argument that a foreign provider without a contract with a Medicare Advantage Organization (MAO) need not follow Medicare's administrative process to challenge payment, without providing any credible support. Hospital does not have a contract with Martin's Point yet relies on several cases where the providers have contracts with health plans. These cases are distinguishable because a provider with a contract must settle disputes according to the terms of the written contracts, whereas a non-contracted provider must follow the Medicare Act's administrative process. *See Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 591 (11th Cir. 2017) ("A contract provider's claims are determined entirely by reference to the written contract, not the Medicare Act.").

Hospital argues it is "even more removed from the CMS process than a non-contracting provider" (Dkt. 31, at p. 4) but Hospital does not have a contract with Martin's Point and is thus itself a non-contracting provider. Further, Hospital relies on an inapposite case where the provider had a contract with a health plan (unlike Hospital), and the case involved a billing dispute with the health plan under their contract.[2] *Sarasota County Public Hospital Board, v. Blue Cross and Blue*

---

[2] A contracted provider has an agreement with the MAO to provide Medicare Advantage plan enrollees with benefits pursuant to an agreed upon rate, whereas a non-contracted provider, such as Hospital, does not have a contract with a MAO and is "obligated to accept the Medicare-approved rate as payment in full" to the extent

*Shield of Florida, Inc*., 511 F. Supp. 3d 1240, 1252 (M.D. Fl. 2021). The cited case does not establish that Hospital is relieved of its obligations to follow Medicare's administrative process. Hospital also contends that "a provider's direct claim against an insurer may not be subject to Medicare's administrative review" (Dkt. 31, at p. 3) by relying on a case involving a provider with a contract. *RenCare Ltd. V. Humana Health Plan of Texas, Inc.*, 395 F.3d 555, 558-59 (5th Cir. 2004) (reversing lower court because RenCare waived it's right to seek payment from Medicare enrollees when it entered a contract with Humana to provide kidney dialysis services to the Medicare enrollees).

Second, Hospital contends that CMS "does not consider billing disputes in the context of foreign provider disputes" (Dkt. 31, at p. 2) and refers the Court to the separate and distinct grievance process throughout its brief. Hospital fails to acknowledge that CMS does not resolve billing disputes through this grievance process. A "grievance" is defined as "any complaint or dispute, ***other than*** one that constitutes an organization determination, expressing dissatisfaction with any aspect of an MA organization's or provider's operations, activities, or behavior, regardless of whether remedial action is requested." 42 C.F.R. § 422.561 (emphasis added). Organization determinations include the "MA organization's refusal to provide or pay for services, in whole or in part." 42 CFR § 422.566(b)(3). By definition, CMS's grievance process does not apply to payment disputes with MAOs.

Hospital's lawsuit against Martin's Point is clearly a dispute over payment, which is an organization determination that is separate and distinct from CMS's grievance process. Hospital's own brief cites to case law that clearly acknowledges that the Medicare administrative process, not the grievance process, is designed to address payment disputes such as the one before the Court,

---

benefits are available. (Dkt. 19, at p. 9 citing *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 910 (9th Cir. 2022) citing 42 U.S.C. § 1395w-22(k)(1); 42 C.F.R. § 422.214(a)(1)).

and thus Hospital must follow the administrative appeal procedures. (*See* Dkt. 31 at p. 3, citing *RenCare Ltd.,* 395 F.3d at 559 (stating that "Part C and CMS's implementing regulations establish mandatory administrative 'appeals procedures' for resolving disputes over 'organization determinations.' Disputes over any other matter are not subject to the same appeals process to which organization determinations are subject, but, instead have their own 'grievance procedures'.") (internal citations omitted)). *See also* 42 CFR 422.564(b). As such, Hospital has not shown that the Court's judgment is an error of law.

Indeed, Hospital's affidavit and the attached documents further show no error of law. Should the Court consider this improperly filed affidavit and additional materials not previously provided, the Court will see that CMS directed Hospital to follow and exhaust the administrative review process, as the Court concluded Hospital must do. Exhibit 1 is an email from CMS responding to a grievance that Hospital filed and referencing health plans' appeal processes for payment disputes:

> Additionally, it is not CMS' role to determine medical necessity for an appeal case nor to determine appropriate claims payment amounts for payment disputes. CMS does <u>not</u> adjudicate or process claims on behalf of MAO plans from this office.

In Exhibit 2, CMS states "we require providers to exhaust the appeals process from the plan," directing Hospital to follow the administrative process with the health plan, which is consistent with the Court's decision. Thus, Hospital has not shown any error of law.

As the Court correctly determined, because this is a dispute about payment received from a MAO for a Medicare Advantage plan beneficiary, Medicare requires administrative review before Hospital can file a lawsuit in federal courts. (Dkt. 29, at p. 10). The administrative appeal process is separate and distinct from the CMS grievance process Hospital relies on in its motion.

For the reasons stated above, Martin's Point respectfully requests that the Court deny Hospital's Motion to Alter Judgment Pursuant to Rule 59(e).

Dated: June 11, 2024                    Respectfully submitted,

                                        Martin's Point Health Care, Inc.

                                        By its attorneys,

                                        */s/ Timothy J. McKeon*
                                        Timothy J. McKeon, Maine Bar # 005379
                                        Brian Dunphy (*pro hac vice*)
                                        Laura Martin (*pro hac vice*)
                                        Mintz, Levin, Cohn, Ferris, Glovsky
                                         and Popeo, P.C.
                                        One Financial Center
                                        Boston, MA 02111
                                        Tel. (617) 542-6000
                                        Fax (617) 542-2241
                                        TJMcKeon@mintz.com
                                        BDunphy@mintz.com
                                        LEMartin@mintz.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2024, I served a true and correct copy of the foregoing

document via the Court's Electronic Filing System, which will electronically send notice to all

counsel of record.

                                        */s/ Timothy J. McKeon*
                                        Timothy J. McKeon

7

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| HOSPITAL QUIRURGICA DEL SUR | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-CV-00259-LEW |
| | ) | |
| MARTIN'S POINT HEALTH CARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER ON MOTION TO ALTER JUDGMENT</u>

Plaintiff Hospital Quirurgica Del Sur seeks to recover the costs of medical services that it provided to a patient in Mexico from Defendant Martin's Point Health Care, Inc. I previously granted Defendant's Motion to Dismiss because Plaintiff did not exhaust its administrative remedies. Order on Motion to Dismiss (ECF No. 29). The matter is before the Court on Plaintiff's Motion to Alter Judgment (ECF No. 31). Because Plaintiff has not demonstrated that the judgment of dismissal resulted from a manifest error of law, the Motion is DENIED.

Federal Rule of Civil Procedure 59(e) "permits an attack on a judgment on the ground that the judgment is based on a manifest error of law." *Venegas-Hernandez v. Sonolux Recs.*, 370 F.3d 183, 189 (1st Cir. 2004).

Plaintiff argues that this case was erroneously dismissed because it is a foreign provider of medical services and thus not able to access the administrative review process.

Mot. at 2.  In support, Plaintiff references the Fifth Circuit's decision in *RenCare*, *Ltd. v. Humana Health Plan of Texas*, *Inc.*, 395 F.3d 555 (5th Cir. 2004), and observes "that a provider's direct claim against an insurer may not be subject to Medicare's administrative review."  Mot. at 3.  In *RenCare*, the payment "dispute [was] solely between Humana and RenCare" based on their "privately-agreed-to payment plan."  395 F.3d at 558.  Because the parties had a private contract, the payment dispute was not "inextricably intertwined with a claim for Medicare benefits," so the exhaustion requirement did not apply.  *Id.* at 557–58.[1]  Because this case does not involve a contract, *RenCare* is distinguishable.  *See Tenet Healthsystem GB*, *Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 591 (11th Cir. 2017) (explaining that "Medicare regulations treat noncontract providers differently than contract providers" by permitting contract providers and Medicare Advantage Organizations ("MAOs") to define the terms of their agreements).

Plaintiff also argues that "[s]ince foreign medical providers are neither contracting nor non-contracting parties as those phrases are used in [Center for Medicare & Medicaid Services' (CMS)] nomenclature, they cannot be part of an administrative review process

---

[1] Plaintiff quotes an amicus brief filed by the United States Department of Health and Human Services in which it argued "'that third-party contract providers (rather than noncontract providers . . .) are not assignees' within the definition of Medicare's administrative exhaustion provisions."  *Sarasota Cnty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla.*, *Inc.*  511 F. Supp. 3d 1240, 1252 (M.D. Fla. 2021) (ellipses in original) (quoting *Tenet Healthsystem GB*, *Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 590 (11th Cir. 2017)).  As explained by the Eleventh Circuit, this argument overlooks the "critical" distinction "between contract providers and noncontract providers."  *Tenet Healthsystem*, 875 F.3d at 590.  When there is a billing dispute between a MAO and a contract provider, the provider is only pursuing a claim for reimbursement that belonged to itself under the contract, so its claim is not inextricably intertwined with a claim for Medicare benefits.  *See id.*  But when a hospital agrees to treat Medicare enrollees and agrees to hold those enrollees harmless for any costs incurred in connection with their medical treatments, the hospital "stand[s] in the shoes of the enrollees," so it must comply with the exhaustion requirement to assert an enrollees' claims.  *Id.* at 589.

2

such as the providers in the cases the Court relie[d] upon." Mot. at 4.  This checks off the lawyerly rhetoric box, but Plaintiff has not supported its argument with any case law. Instead, Plaintiff has offered the affidavit of Eindar M. Khant, the CEO of Passage Health International, Inc.  Mot. Ex. 1 at 1–2.  He states that CMS has "flatly rejected [appeals,] stating that it does not handle, remedy or adjudicate claims between any MAO and any foreign medical provider."  *Id.* at 1.  Khant further explains that "[f]oreign medical providers cannot be either contracting or non-contracting parties in the CMS vocabulary since they cannot participate in Medicare since they are outside of the USA."  *Id.*  In support, Plaintiff attached two emails capturing exchanges between other foreign medical providers and CMS in which CMS has purportedly rejected appeal requests.  *Id.* at 10–17.

Plaintiff's argument confounds the grievance process with the distinct appeals process for payment disputes.  The grievance process is reserved for "complaint[s] or dispute[s], *other than one that constitutes an organization determination*, expressing dissatisfaction with any aspect of an MA organization's or provider's operations, activities, or behavior, regardless of whether remedial action is requested."  42 C.F.R. § 422.561 (emphasis added).  Organization determinations encompass the "MA organization's refusal to provide or pay for services, in whole or in part."  42 C.F.R. § 422.566(b)(3). Accordingly, Plaintiff's payment dispute entails an organizational determination, and it is subject to "mandatory administrative 'appeals procedures.'"  *RenCare*, 395 F.3d at 559 (first citing 42 U.S.C. § 1395w-22(g); and then citing 42 C.F.R. §§ 422.560–422.622). Indeed, one of Plaintiff's proffered email exchanges references this appeals process.  *See* Mot Ex. 1 at 9.

In sum, Plaintiff has not demonstrated that the judgment of dismissal rested on a manifest error of law.   Thus, Plaintiff's Motion to Alter Judgment (ECF No. 31) is **DENIED**.

SO ORDERED.

Dated this 12th day of August, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge

4

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| HOSPITAL QUIRURGICA DEL SUR ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 2:23-cv-00259-LEW |
| ) | |
| v. ) | |
| ) | |
| MARTIN'S POINT HEALTH CARE, INC., ) | |
| ) | |
| Defendant. ) | |

<u>**PLAINTIFF'S NOTICE OF APPEAL**</u>

Plaintiff Hospital Amerimed Cancun S A DE C V, by and through their counsel, hereby files

this Notice of Appeal with respect to the following:

1) Order on Defendant's Motion to Dismiss dated April 23, 2024 and resulting

Judgment of Dismissal dated April 23, 2024; and

2) Order dated August 12, 2024 denying Rule 59 (e) Motion (filed on May 21, 2024) to

Alter the Court's April 23, 2024 Order and Judgment of Dismissal.

Respectfully submitted,
Hospital Quirurgica Del Sur
By its attorney,

/s/ Mark A. Darling
Mark A. Darling, Maine Bar # 4802
Litchfield Cavo, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
Darling@litchfieldcavo.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 6, 2024, I served a true and correct copy of the

foregoing document via the Court's Electronic Filing System, which will electronically send

notice to all counsel of record.

/s/  Mark A. Darling
Mark A. Darling